# EXHIBIT A

| FORM NLRB-502 (RD)<br>(10-24) | UNITED STATES OF AMERICA<br>NATIONAL LABOR RELATIONS BOARD<br>**RD PETITION** | DO NOT WRITE IN THIS SPACE | |
|---|---|---|---|
| | | Case No.<br>16-RD-374302 | Date Filed<br>9/30/25 |

**INSTRUCTIONS:** Unless e-Filed using the Agency's website, [www.nlrb.gov/], submit an original of this Petition to an NLRB office in the Region in which the employer concerned is located. The petition must be accompanied by both a showing of interest (see 7 below) and a certificate of service showing service on the employer and all other parties named in the petition of:(1) the petition; (2) Statement of Position form (Form NLRB-505); and (3) Description of Representation Case Procedures (Form NLRB 4812). The showing of interest should only be filed with the NLRB and should **not** be served on the employer or any other party.

1. **PURPOSE OF THIS PETITION:** RD- DECERTIFICATION (REMOVAL OF REPRESENTATIVE) - A substantial number of employees assert that the certified or currently recognized bargaining representative is no longer their representative. The Petitioner alleges that the following circumstances exist and requests that the National Labor Relations Board proceed under its proper authority pursuant to Section 9 of the National Labor Relations Act.

| 2a. Name of Employer<br>A.S.H. Electrical Services, LLC | 2b. Address(es) of Establishment(s) involved (Street and number, city, state, ZIP code)<br>3214 Sunset Drive, San Angelo, Texas 76904 | |
|---|---|---|
| 3a. Employer Representative - Name and Title<br>Adam Johnke- Co-Owner | 3b. Address (If same as 2b - state same)<br>Same | |

| 3c. Tel. No.<br>325-716-6696 | 3d. Fax No.<br>N/A | 3e. Cell No.<br>325-656-1641 | 3f. E-Mail Address<br>adam@ashelectricalservices.com |
|---|---|---|---|

| 4a. Type of Establishment (Factory, mine, wholesaler, etc.)<br>Electrical Contractor | 4b. Principal product or service<br>Electrical Contracting- installation and service |
|---|---|

| 5a. Description of Unit Involved | 5b. City and State where unit<br>is located: |
|---|---|
| Included:<br>employees covered under CBA - electricians<br><br>Excluded:<br>generator technicians, operations | San Angelo, Texas |

| 6. No. of Employees in Unit 2 | 7. Do a substantial number (30% or more) of the employees in the unit no longer wish to be represented by the certified or currently recognized bargaining representative? ☒ Yes ☐ No |
|---|---|

| 8a. Name of Recognized or Certified Bargaining Agent<br>I.B.E.W. Local Union # 520 | 8b. Affiliation, if any<br>AFL-CIO | |
|---|---|---|

| 8c. Address<br>4818 East Ben White Boulevard, Suite 300<br>Austin, Texas 78741 | 8d. Tel. No.<br>512-326-9540 | 8e. Cell No.<br>N/A |
|---|---|---|
| | 8f. Fax No.<br>512-326-9596 | 8g. E-Mail Address<br>ben_brenneman@ibew520.org |

| 9. Date of Recognition or Certification<br>May 13, 2021 | 10. Expiration Date of Current or Most Recent Contract, if any (Month, Day, Year)<br>June 4, 2028 |
|---|---|

| 11a. Is there now a strike or picketing at the Employer's establishment(s) involved? ☐ Yes ☒ No | 11b. If so, approximately how many employees are participating? () |
|---|---|

11c. The Employer has been picketed by or on behalf of (Insert Name)        a labor organization, of

(Insert Address)        since (Month, Day, Year)

12. Organizations or individuals other those named in items 8 and 11c, which have claimed recognition as representatives and other organizations and individuals known to have a representative interest in any employees in the unit described in item 5 above. (If none, so state)    None

| 12a. Name<br>N/A | 12b. Address<br>N/A | 12c. Tel. No.<br>N/A | 12d. Fax No.<br>N/A |
|---|---|---|---|
| | | 12e. Cell No.<br>N/A | 12f. E-Mail Address<br>N/A |

| 13. Election Details: If the NLRB conducts an election in this matter, state your position with respect to any such election. | 13a. Election Type: ☐ Manual  ☒ Mail  ☐ Mixed Manual/Mail | |
|---|---|---|
| 13b. Election Date(s)<br>October  7-10, 2025 | 13c. Election Time(s)<br>3:30 - 5:00 PM | 13d. Election Location(s)<br>4581 Christoval Road, San Angelo, Texas 76904 |

| 14. Full Name of Petitioner<br>Jared Lane Elkins | | |
|---|---|---|
| 14a. Address (Street and number, city, state, ZIP code)<br>█████████████ | 14b. Tel. No.<br>N/A | 14c. Fax No.<br>N/A |
| | 14d. Cell No.<br>████████ | 14e. E-Mail Address |
| 14f. Affiliation, if any None | | |

15. Representative of the Petitioner who will accept service of all papers for purposes of the representation proceeding.

| 15a. Name<br>Jared Lane Elkins | 15b. Title<br>Journeyman Electrician | |
|---|---|---|
| 15c. Address (Street and number, city, state, ZIP code)<br>████████████ | 15d. Tel. No.<br>N/A | 15e. Fax No.<br>N/A |
| | 15f. Cell No.<br>████████ | 15g. E-Mail Address |

I declare that I have read the above petition and that the statements are true to the best of my knowledge and belief.

| Name (Print)<br>Jared L. Elkins | Signature<br>Jared L. Elkins | Title<br>Journeyman Electrician | Date Filed<br>09/30/2025 |
|---|---|---|---|

**WILLFUL FALSE STATEMENTS ON THIS PETITION CAN BE PUNISHED BY FINE AND IMPRISONMENT (U.S. CODE, TITLE 18, SECTION 1001)**

PRIVACY ACT STATEMENT
Solicitation of the information on this form is authorized by the National Labor Relations Act (NLRA), 29 U.S.C. § 151 et seq. The principal use of the information is to assist the National Labor Relations Board (NLRB) in processing representation and related proceedings or litigation. The routine uses for the information are fully set forth in the Federal Register, 89 FR 24869 (April 9, 2024). The NLRB will further explain these uses upon request. Disclosure of this information to the NLRB is voluntary; however, failure to supply the information may cause the NLRB to decline to invoke its processes.



UNITED STATES GOVERNMENT
NATIONAL LABOR RELATIONS BOARD

REGION 16
819 Taylor Street, Room 8A24
Fort Worth, TX 76102-6107

Agency Website:
www.nlrb.gov
Telephone: (817)978-2921
Fax: (817)978-2928



Download
NLRB
Mobile
App

September 30, 2025

**URGENT**

Adam Johnke, Co-Owner
A.S.H. Electrical Services, LLC
3214 Sunset Drive
San Angelo, TX 76904
adam@ashelectricalservices.com

Re:    A.S.H. Electrical Services, LLC
       Case 16-RD-374302

Dear Mr. Johnke:

Enclosed is a copy of a petition that an Individual filed with the National Labor Relations Board (NLRB) seeking to decertify IBEW LOCAL UNION NO. 520 as the collective-bargaining representative of certain of your employees. After a petition is filed, the employer is required to promptly take certain actions so please read this letter carefully to make sure you are aware of the employer's obligations. This letter tells you how to contact the Board agent who will be handling this matter, about the requirement to post and distribute the Notice of Petition for Election, the requirement to complete and serve a Statement of Position Form, a scheduled hearing in this matter, other information needed including a voter list, your right to be represented, and NLRB procedures, including how to submit documents to the NLRB.

**Investigator:** This petition will be investigated by Field Attorney Colton E. Puckett, whose telephone number is (210)417-4391 and e-mail address is colton.puckett@nlrb.gov. The Board agent will contact you shortly to discuss processing the petition. If you have any questions, please do not hesitate to call the Board agent. If the agent is not available, you may contact Supervisory Field Attorney Bryan Dooley, whose telephone number is (682)703-7219 and e-mail address is bryan.dooley@nlrb.gov. If appropriate, the NLRB attempts to schedule an election either by agreement of the parties or by holding a hearing and then directing an election.

**Required Posting and Distribution of Notice:** You must post the enclosed Notice of Petition for Election by **October 2, 2025,** in conspicuous places, including all places where notices to employees are customarily posted. The Notice of Petition for Election must be posted so all pages are simultaneously visible. If you customarily communicate electronically with employees in the petitioned-for unit, you must also distribute the notice electronically to them. You must maintain the posting until the petition is dismissed or withdrawn or this notice is replaced by the Notice of Election. Posting and distribution of the Notice of Petition for Election will inform the employees whose representation is at issue and the employer of their rights and obligations under

A.S.H. Electrical Services, LLC              - 2 -                    September 30, 2025
Case 16-RD-374302

the National Labor Relations Act in the representation context. Failure to post or distribute the notice may be grounds for setting aside an election if proper and timely objections are filed.

**Required Statement of Position:** In accordance with Section 102.63(b) of the Board's Rules, the employer is required to complete the enclosed Statement of Position form (including the attached Commerce Questionnaire), have it signed by an authorized representative, and file a completed copy (with all required attachments) with this office and serve it on all parties named in the petition such that it is received by them by **noon Central Time** on **October 7, 2025**. This form solicits information that will facilitate entry into election agreements or streamline the pre-election hearing if the parties are unable to enter into an election agreement. **This form must be e-Filed, but unlike other e-Filed documents, will not be timely if filed on the due date but after noon October 7, 2025.** If you have questions about this form or would like assistance in filling out this form, please contact the Board agent named above.

*List(s) of Employees:* The employer's Statement of Position must include a list of the full names (that employees use at work), work locations, shifts, and job classifications of all individuals in the proposed unit as of the payroll period preceding the filing of the petition who remain employed at the time of filing. If the employer contends that the proposed unit is inappropriate, the employer must separately list the full names, work locations, shifts and job classifications of all individuals that it contends must be added to the proposed unit to make it an appropriate unit. The employer must also indicate those individuals, if any, whom it believes must be excluded from the proposed unit to make it an appropriate unit. These lists must be alphabetized (overall or by department). Unless the employer certifies that it does not possess the capacity to produce the lists in the required form, the lists must be in a table in a Microsoft Word file (.doc or .docx) or a file that is compatible with Microsoft Word, the first column of the table must begin with each employee's last name, and the font size of the list must be the equivalent of Times New Roman 10 or larger. That font does not need to be used but the font must be that size or larger. A sample, optional form for the list is provided on the NLRB website at www.nlrb.gov/sites/default/files/attachments/basic-page/node-4559/Optional%20Forms%20for%20Voter%20List.docx.

*Failure to Supply Information:* Failure to supply the information requested by this form may preclude you from litigating issues under Section 102.66(d) of the Board's Rules and Regulations. Section 102.66(d) provides as follows:

> A party shall be precluded from raising any issue, presenting any evidence relating to any issue, cross-examining any witness concerning any issue, and presenting argument concerning any issue that the party failed to raise in its timely Statement of Position or to place in dispute in response to another party's Statement of Position or response, except that no party shall be precluded from contesting or presenting evidence relevant to the Board's statutory jurisdiction to process the petition. Nor shall any party be precluded, on the grounds that a voter's eligibility or inclusion was not contested at the pre-election hearing, from challenging the eligibility of any voter during the election. If a party contends that the proposed unit is not appropriate in its Statement of Position but fails to specify the classifications, locations, or other employee groupings that must be added to or

A.S.H. Electrical Services, LLC      - 3 -      September 30, 2025
Case 16-RD-374302

excluded from the proposed unit to make it an appropriate unit, the party shall also be precluded from raising any issue as to the appropriateness of the unit, presenting any evidence relating to the appropriateness of the unit, cross-examining any witness concerning the appropriateness of the unit, and presenting argument concerning the appropriateness of the unit. If the employer fails to timely furnish the lists of employees described in §§ 102.63(b)(1)(iii), (b)(2)(iii), or (b)(3)(iii), the employer shall be precluded from contesting the appropriateness of the proposed unit at any time and from contesting the eligibility or inclusion of any individuals at the pre-election hearing, including by presenting evidence or argument, or by cross-examination of witnesses.

**Notice of Hearing:**  Enclosed is a Notice of Representation Hearing to be conducted at **9:00 AM** on **Wednesday, October 8, 2025,** at **a Place to be Determined or by Videoconference**, if the parties do not voluntarily agree to an election.  If a hearing is necessary, the hearing will run on consecutive days until concluded unless the regional director concludes that extraordinary circumstances warrant otherwise.  Before the hearing begins, the NLRB will continue to explore potential areas of agreement with the parties in order to reach an election agreement and to eliminate or limit the costs associated with formal hearings.

Upon request of a party, the regional director may postpone the hearing for up to 2 business days upon a showing of special circumstances and for more than 2 business days upon a showing of extraordinary circumstances.  A party desiring a postponement should make the request to the regional director in writing, set forth in detail the grounds for the request, and include the positions of the other parties regarding the postponement.  E-Filing the request is required.  A copy of the request must be served simultaneously on all the other parties, and that fact must be noted in the request.

**Other Information Needed Now:**  Please submit to this office, as soon as possible, the following information needed to handle this matter:

(a)    A copy of any existing or recently expired collective-bargaining agreements, and any amendments or extensions, or any recognition agreements covering any of your employees in the unit involved in the petition (the petitioned-for unit);

(b)    The name and contact information for any other labor organization (union) claiming to represent any of the employees in the petitioned-for unit;

(c)    If potential voters will need notices or ballots translated into a language other than English, the names of those languages and dialects, if any.

(d)    If you desire a formal check of the showing of interest, you must provide an alphabetized payroll list of employees in the petitioned-for unit, with their job classifications, for the payroll period immediately before the date of this petition. Such a payroll list should be submitted as early as possible prior to the hearing. Ordinarily a formal check of the showing of interest is not performed using the employee list submitted as part of the Statement of Position.

**Voter List:**  If an election is held in this matter, the employer must transmit to this office and to the other parties to the election, an alphabetized list of the full names (that employees use

A.S.H. Electrical Services, LLC               - 4 -                    September 30, 2025
Case 16-RD-374302

at work), work locations, shifts, job classifications, and contact information (including home addresses, available personal email addresses, and available home and personal cellular telephone numbers) of eligible voters. Usually, the list must be furnished within 2 business days of the issuance of the Decision and Direction of Election or approval of an election agreement. I am advising you of this requirement now, so that you will have ample time to prepare this list. The list must be electronically filed with the Region and served electronically on the other parties. To guard against potential abuse, this list may not be used for purposes other than the representation proceeding, NLRB proceedings arising from it or other related matters.

**Right to Representation:** You have the right to be represented by an attorney or other representative in any proceeding before us. If you choose to be represented, your representative must notify us in writing of this fact as soon as possible by completing Form NLRB-4701, Notice of Appearance. This form is available on our website, www.nlrb.gov, or at the Regional office upon your request.

If someone contacts you about representing you in this case, please be assured that no organization or person seeking your business has any "inside knowledge" or favored relationship with the NLRB. Their knowledge regarding this matter was only obtained through access to information that must be made available to any member of the public under the Freedom of Information Act.

**Procedures:** Pursuant to Section 102.5 of the Board's Rules and Regulations, parties must submit all documentary evidence, including statements of position, exhibits, sworn statements, and/or other evidence, by electronically submitting (E-Filing) them through the Agency's web site (www.nlrb.gov). You must e-file all documents electronically or provide a written statement explaining why electronic submission is not possible or feasible. Failure to comply with Section 102.5 will result in rejection of your submission. The Region will make its determinations solely based on the documents and evidence properly submitted. All evidence submitted electronically should be in the form in which it is normally used and maintained in the course of business (i.e., native format). Where evidence submitted electronically is not in native format, it should be submitted in a manner that retains the essential functionality of the native format (i.e., in a machine-readable and searchable electronic format). If you have questions about the submission of evidence or expect to deliver a large quantity of electronic records, please promptly contact the Board agent investigating the petition.

**Controlled Unclassified Information (CUI):** This National Labor Relations Board (NLRB) proceeding may contain Controlled Unclassified Information (CUI). Subsequent information in this proceeding may also constitute CUI. National Archives and Records Administration (NARA) regulations at 32 CFR Part 2002 apply to all executive branch agencies that designate or handle information that meets the standards for CUI.

* * *

Information about the NLRB and our customer service standards is available on our website, www.nlrb.gov, or from an NLRB office upon your request.

A.S.H. Electrical Services, LLC           - 5 -                    September 30, 2025
Case 16-RD-374302

    We can provide assistance for persons with limited English proficiency or disability.  Please let us know if you or any of your witnesses would like such assistance.

                              Very truly yours,

                              Timothy L. Watson
                              Regional Director


Enclosures
    1.    Petition
    2.    Notice of Petition for Election (Form 5492)
    3.    Notice of Representation Hearing
    4.    Description of Procedures in Certification and Decertification Cases (Form 4812)
    5.    Statement of Position form and Commerce Questionnaire (Form 505)
    6.    Description of Voter List Requirement after Hearing in Certification and Decertification Cases (Form 5580)

 National Labor Relations Board 

# NOTICE OF PETITION FOR ELECTION

This notice is to inform employees that an Individual has filed a petition with the National Labor Relations Board (NLRB), a Federal agency, in Case 16-RD-374302, seeking an election to determine if the employees of A.S.H Electric Services, LLC in the unit set forth below wish to be represented by IBEW LOCAL UNION NO. 520 for the purposes of collective bargaining:

      Included: Employees covered under CBA -electricians.

      Excluded: Generator technicians, operations, guards and supervisors as defined by the Act.

This notice also provides you with information about your basic rights under the National Labor Relations Act, the processing of the petition, and rules to keep NLRB elections fair and honest.

## YOU HAVE THE RIGHT under Federal Law

- **To self-organization**
- **To form, join, or assist labor organizations**
- **To bargain collectively through representatives of your own choosing**
- **To act together for the purposes of collective bargaining or other mutual aid or protection**
- **To refuse to do any or all of these things unless the union and employer, in a state where such agreements are permitted, enter into a lawful union-security agreement requiring employees to pay periodic dues and initiation fees. Nonmembers who inform the union that they object to the use of their payments for nonrepresentational purposes may be required to pay only their share of the union's costs of representational activities (such as collective bargaining, contract administration, and grievance adjustments).**

## PROCESSING THIS PETITION

Elections do not necessarily occur in all cases after a petition is filed.  NO FINAL DECISIONS HAVE BEEN MADE YET regarding the appropriateness of the proposed unit or whether an election will be held in this matter.  If appropriate, the NLRB will first see if the parties will enter into an election agreement that specifies the method, date, time, and location of an election and the unit of employees eligible to vote.  If the parties do not enter into an election agreement, usually a hearing is held to receive evidence on the

appropriateness of the unit and other issues in dispute.  After a hearing, an election may be directed by the NLRB, if appropriate.

**IF AN ELECTION IS HELD,** it will be conducted by the NLRB by secret ballot and Notices of Election will be posted before the election giving complete details for voting.

# ELECTION RULES

The NLRB applies rules that are intended to keep its elections fair and honest and that result in a free choice.  If agents of any party act in such a way as to interfere with your right to a free election, the election can be set aside by the NLRB.  Where appropriate the NLRB provides other remedies, such as reinstatement for employees fired for exercising their rights, including backpay from the party responsible for their discharge.

The following are examples of conduct that interfere with employees' rights and may result in setting aside the election:

- Threatening loss of jobs or benefits by an employer or a union
- Promising or granting promotions, pay raises, or other benefits, to influence an employee's vote by a party capable of carrying out such promises
- An employer firing employees to discourage or encourage union activity or a union causing them to be fired to encourage union activity
- Making campaign speeches to assembled groups of employees on company time, where attendance is mandatory, within the 24-hour period before the polls for the election first open or, if the election is conducted by mail, from the time and date the ballots are scheduled to be sent out by the Region until the time and date set for their return
- Incitement by either an employer or a union of racial or religious prejudice by inflammatory appeals
- Threatening physical force or violence to employees by a union or an employer to influence their votes

Please be assured that **IF AN ELECTION IS HELD,** every effort will be made to protect your right to a free choice under the law.  Improper conduct will not be permitted.  All parties are expected to cooperate fully with the NLRB in maintaining basic principles of a fair election as required by law.  The NLRB as an agency of the United States Government does not endorse any choice in the election.

For additional information about the processing of petitions, go to <u>www.nlrb.gov</u> or contact the NLRB at (210)472-6140.

THIS IS AN OFFICIAL GOVERNMENT NOTICE AND MUST NOT BE DEFACED BY ANYONE.  IT MUST REMAIN POSTED WITH ALL PAGES SIMULTANEOUSLY VISIBLE UNTIL REPLACED BY THE NOTICE OF ELECTION OR THE PETITION IS DISMISSED OR WITHDRAWN.



**UNITED STATES OF AMERICA**
**BEFORE THE NATIONAL LABOR RELATIONS BOARD**
**REGION 16**



| | |
|---|---|
| **A.S.H ELECTRIC SERVICES, LLC**<br><br>**Employer**<br><br>**and**<br><br>**AN INDIVIDUAL**<br><br>**Petitioner**<br><br>**and**<br><br>**IBEW LOCAL UNION NO. 520**<br><br>**Intervenor** | **Case 16-RD-374302** |

## NOTICE OF REPRESENTATION HEARING

The Petitioner filed the attached petition pursuant to Section 9(c) of the National Labor Relations Act. It appears that a question affecting commerce exists as to whether the employees in the unit described in the petition wish to be represented by a collective-bargaining representative as defined in Section 9(a) of the Act.

YOU ARE HEREBY NOTIFIED that, pursuant to Sections 3(b) and 9(c) of the Act, at **9:00 AM** on **Wednesday, October 8, 2025,** and on consecutive days thereafter until concluded, at **a Place to be Determined or by Videoconference**, a hearing will be conducted before a hearing officer of the National Labor Relations Board. At the hearing, the parties will have the right to appear in person or otherwise, and give testimony.

YOU ARE FURTHER NOTIFIED that, pursuant to Section 102.63(b) of the Board's Rules and Regulations, **A.S.H Electric Services, LLC, IBEW LOCAL UNION NO. 520** must complete the Statement of Position and file it and all attachments with the Regional Director and serve it on the parties listed on the petition such that is received by them by no later than **noon** Central time on **October 7, 2025**.

**Pursuant to Section 102.5 of the Board's Rules and Regulations, all documents filed in cases before the Agency must be filed by electronically submitting (E-Filing) through the Agency's website (www.nlrb.gov), unless the party filing the document does not have access to the means for filing electronically or filing electronically would impose an undue burden.** Documents filed by means other than E-Filing must be accompanied by a statement explaining why the filing party does not have access to the means for filing electronically or filing electronically would impose an undue burden. Detailed instructions for using the NLRB's E-Filing system can be found in the E-Filing System User Guide.

The Statement of Position must be E-Filed but, unlike other E-Filed documents, must be filed by **noon Central** time on the due date in order to be timely.  If an election agreement is signed by all parties and returned to the Regional Office before the due date of the Statement of Position, the Statement of Position is not required to be filed.

Dated: September 30, 2025

Timothy L. Watson
Regional Director
National Labor Relations Board
Region 16
819 Taylor Street, Room 8A24
Fort Worth, Texas 76102-6107

FORM NLRB-4812
   (12-23)

# UNITED STATES OF AMERICA
# NATIONAL LABOR RELATIONS BOARD

## DESCRIPTION OF REPRESENTATION CASE PROCEDURES
## IN CERTIFICATION AND DECERTIFICATION CASES

The National Labor Relations Act grants employees the right to bargain collectively through representatives of their own choosing and to refrain from such activity. A party may file an RC, RD or RM petition with the National Labor Relations Board (NLRB) to conduct a secret ballot election to determine whether a representative will represent, or continue to represent, a unit of employees. An **RC** petition is generally filed by a union that desires to be certified as the bargaining representative. An **RD** petition is filed by employees who seek to remove the currently recognized union as the bargaining representative. An **RM** petition is filed by an employer who seeks an election because one or more individuals or unions have sought recognition as the bargaining representative, or based on a reasonable belief supported by objective considerations that the currently recognized union has lost its majority status. This form generally describes representation case procedures in RC, RD and RM cases, also referred to as certification and decertification cases.

**Right to be Represented** – Any party to a case with the NLRB has the right to be represented by an attorney or other representative in any proceeding before the NLRB. A party wishing to have a representative appear on its behalf should have the representative complete a Notice of Appearance (Form NLRB-4701), and E-File it at www.nlrb.gov or forward it to the NLRB Regional Office handling the petition as soon as possible.

**Filing and Service of Petition** – A party filing an RC, RD or RM petition is required to serve a copy of its petition on the parties named in the petition along with this form and the Statement of Position form. The petitioner files the petition with the NLRB, together with (1) a certificate showing service of these documents on the other parties named in the petition, and (2) a showing of interest to support the petition. The showing of interest is not served on the other parties.

**Notice of Hearing** – After a petition in a certification or decertification case is filed with the NLRB, the NLRB reviews the petition, certificate of service, and the required showing of interest for sufficiency, assigns the petition a case number, and promptly sends letters to the parties notifying them of the Board agent who will be handling the case. In most cases, the letters include a Notice of Representation Hearing. Except in cases presenting unusually complex issues, this pre-election hearing is set for a date 8 calendar days (excluding intervening federal holidays) from the date of service of the notice of hearing. Once the hearing begins, it will continue day to day until completed absent extraordinary circumstances. The Notice of Representation Hearing also sets the due date for filing and serving the Statement(s) of Position. Included with the Notice of Representation Hearing are the following: (1) copy of the petition, (2) this form, (3) Statement of Position for non-petitioning parties, (4) Notice of Petition for Election, and (5) letter advising how to contact the Board agent who will be handling the case and discussing those documents.

**Hearing Postponement**:  Requests to postpone the hearing are not routinely granted, but the regional director may postpone the hearing for up to 2 business days upon request of a party showing special circumstances and for more than 2 business days upon request of a party showing extraordinary circumstances.  A party wishing to request a postponement should make the request in writing and set forth in detail the grounds for the request.  The request should include the positions of the other parties regarding the postponement.  The request must be filed electronically ("E-Filed") on the Agency's website (www.nlrb.gov) by following the instructions on the website.  A copy of the request must be served simultaneously on all the other parties, and that fact must be noted in the request.

**Statement of Position Form and List(s) of Employees** – The Statement of Position form solicits commerce and other information that will facilitate entry into election agreements or streamline the pre-election hearing if the parties are unable to enter into an election agreement.  In an **RC** or **RD** case, as part of its Statement of Position form, the employer also provides a list of the full names (that employees use at work), work locations, shifts, and job classifications of all individuals in the proposed unit.  If the employer contends that the proposed unit is not appropriate, the employer must separately list the same information for all individuals that the employer contends must be added to the proposed unit to make it an appropriate unit, and must further indicate those individuals, if any, whom it believes must be excluded from the proposed unit to make it an appropriate unit.  These lists must be alphabetized (overall or by department).  Unless the employer certifies that it does not possess the capacity to produce the lists in the required form, the lists must be in a table in a Microsoft Word file (.doc or .docx) or a file that is compatible with Microsoft Word, the first column of the table must begin with each employee's last name, and the font size of the list must be the equivalent of Times New Roman 10 or larger.  That font does not need to be used but the font must be that size or larger.  A sample, optional form for the list is provided on the NLRB website at http://www.nlrb.gov/sites/default/files/attachments/basic-page/node-4559/Optional Forms for Voter List.docx

Ordinarily the Statement of Position must be filed with the Regional Office and served on the other parties such that it is received by them by noon 7 calendar days from the issuance of the Notice of Hearing.  The regional director may postpone the due date for filing and serving the Statement of Position for up to 2 business days upon request of a party showing special circumstances and for more than 2 business days upon request of a party showing extraordinary circumstances.  The Statement of Position form must be E-Filed but, unlike other E-Filed documents, will not be timely if filed on the due date but after noon in the time zone of the Region where the petition is filed.  Consequences for failing to satisfy the Statement of Position requirement are discussed on the following page under the heading "Preclusion."  A request to postpone the hearing will not automatically be treated as a request for an extension of the Statement of Position due date.  If a party wishes to request both a postponement of the hearing and a postponement of the Statement of Position due date, the request must make that clear and must specify the reasons that postponements of both are sought.

**Posting and Distribution of Notice of Petition for Election** – Within 2 business days after service of the notice of hearing, the employer must post the Notice of Petition for Election in conspicuous places, including all places where notices to employees are customarily posted, and must also distribute it electronically to the employees in the petitioned-for unit if the employer customarily

communicates with these employees electronically. The employer must maintain the posting until the petition is dismissed or withdrawn, or the Notice of Petition for Election is replaced by the Notice of Election. The employer's failure properly to post or distribute the Notice of Petition for Election may be grounds for setting aside the election if proper and timely objections are filed.

**Election Agreements** – Elections can occur either by agreement of the parties or by direction of the regional director or the Board. Three types of agreements are available: (1) a Consent Election Agreement (Form NLRB-651); (2) a Stipulated Election Agreement (Form NLRB-652); and (3) a Full Consent Agreement (Form NLRB-5509). In the Consent Election Agreement and the Stipulated Election Agreement, the parties agree on an appropriate unit and the method, date, time, and place of a secret ballot election that will be conducted by an NLRB agent. In the Consent Agreement, the parties also agree that post-election matters (election objections or determinative challenged ballots) will be resolved with finality by the regional director; whereas in the Stipulated Election Agreement, the parties agree that they may request Board review of the regional director's post-election determinations. A Full Consent Agreement provides that the regional director will make final determinations regarding all pre-election and post-election issues.

**Hearing Cancellation Based on Agreement of the Parties** – The issuance of the Notice of Representation Hearing does not mean that the matter cannot be resolved by agreement of the parties. On the contrary, the NLRB encourages prompt voluntary adjustments and the Board agent assigned to the case will work with the parties to enter into an election agreement, so the parties can avoid the time and expense of participating in a hearing.

**Hearing** – A hearing will be held unless the parties enter into an election agreement approved by the regional director or the petition is dismissed or withdrawn.

   ***Purpose of Hearing***: The primary purpose of a pre-election hearing is to determine if a question of representation exists. A question of representation exists if a proper petition has been filed concerning a unit appropriate for the purpose of collective bargaining or, in the case of a decertification petition, concerning a unit in which a labor organization has been certified or is being currently recognized by the employer as the bargaining representative. Disputes concerning individuals' eligibility to vote or inclusion in an appropriate unit ordinarily need not be litigated or resolved before an election is conducted.

   ***Issues at Hearing***: Issues that might be litigated at the pre-election hearing include: jurisdiction; labor organization status; bars to elections; unit appropriateness; expanding and contracting unit issues; inclusion of professional employees with nonprofessional employees; seasonal operation; potential mixed guard/non-guard unit; and eligibility formulas. At the hearing, the timely filed Statement of Position will be received into evidence and, prior to the introduction of further evidence, all other parties will respond on the record to each issue raised in the Statement. The hearing officer will not receive evidence concerning any issue as to which the parties have not taken adverse positions, except for evidence regarding the Board's jurisdiction over the employer and evidence concerning any issue, such as the appropriateness of the proposed unit, as to which the regional director determines that record evidence is necessary.

***Preclusion***:  At the hearing, a party will be precluded from raising any issue, presenting any evidence relating to any issue, cross-examining any witness concerning any issue, and presenting argument concerning any issue that the party failed to raise in its timely Statement of Position or to place in dispute in response to another party's Statement of Position or response, except that no party will be precluded from contesting or presenting evidence relevant to the Board's statutory jurisdiction to process the petition.  Nor shall any party be precluded, on the grounds that a voter's eligibility or inclusion was not contested at the pre-election hearing, from challenging the eligibility of any voter during the election.  If a party contends that the proposed unit is not appropriate in its Statement of Position but fails to specify the classifications, locations, or other employee groupings that must be added to or excluded from the proposed unit to make it an appropriate unit, the party shall also be precluded from raising any issue as to the appropriateness of the unit, presenting any evidence relating to the appropriateness of the unit, cross examining any witness concerning the appropriateness of the unit, and presenting argument concerning the appropriateness of the unit.  As set forth in §102.66(d) of the Board's rules, if the employer fails to timely furnish the lists of employees, the employer will be precluded from contesting the appropriateness of the proposed unit at any time and from contesting the eligibility or inclusion of any individuals at the pre-election hearing, including by presenting evidence or argument, or by cross-examination of witnesses.

***Conduct of Hearing***:  If held, the hearing is usually open to the public and will be conducted by a hearing officer of the NLRB.  Any party has the right to appear at any hearing in person, by counsel, or by other representative, to call, examine, and cross-examine witnesses, and to introduce into the record evidence of the significant facts that support the party's contentions and are relevant to the existence of a question of representation.  The hearing officer also has the power to call, examine, and cross-examine witnesses and to introduce into the record documentary and other evidence. Witnesses will be examined orally under oath.  The rules of evidence prevailing in courts of law or equity shall not be controlling.  Parties appearing at any hearing who have or whose witnesses have disabilities falling within the provisions of Section 504 of the Rehabilitation Act of 1973, as amended, and 29 C.F.R. 100.503, and who in order to participate in this hearing need appropriate auxiliary aids, as defined in 29 C.F.R. 100.503, should notify the regional director as soon as possible and request the necessary assistance.

***Official Record***:  An official reporter will make the only official transcript of the proceedings and all citations in briefs or arguments must refer to the official record. (Copies of exhibits should be supplied to the hearing officer and other parties at the time the exhibit is offered in evidence.)  All statements made at the hearing will be recorded by the official reporter while the hearing is on the record.  If a party wishes to make off-the-record remarks, requests to make such remarks should be directed to the hearing officer and not to the official reporter.  After the close of the hearing, any request for corrections to the record, either by stipulation or motion, should be forwarded to the regional director.

***Motions and Objections***:  All motions must be in writing unless stated orally on the record at the hearing and must briefly state the relief sought and the grounds for the motion.  A copy of any motion must be served immediately on the other parties to the proceeding.  Motions made during the hearing are filed with the hearing officer.  All other motions are filed with the regional director, except that motions made after the transfer of the record to the Board are filed with the

Board.  If not E-Filed, an original and two copies of written motions shall be filed.  Statements of reasons in support of motions or objections should be as concise as possible.  Objections shall not be deemed waived by further participation in the hearing.  On appropriate request, objections may be permitted to stand to an entire line of questioning.  Automatic exceptions will be allowed to all adverse rulings.

*Election Details***:**  Prior to the close of the hearing the hearing officer will: (1) solicit the parties' positions (but will not permit litigation) on the type, date(s), time(s), and location(s) of the election and the eligibility period; (2) solicit the name, address, email address, facsimile number, and phone number of the employer's on-site representative to whom the regional director should transmit the Notice of Election if an election is directed; (3) inform the parties that the regional director will issue a decision as soon as practicable and will immediately transmit the document to the parties and their designated representatives by email, facsimile, or by overnight mail (if neither an email address nor facsimile number was provided); and (4) inform the parties of their obligations if the director directs an election and of the time for complying with those obligations.

*Oral Argument and Briefs***:** Upon request, any party is entitled to a reasonable period at the close of the hearing for oral argument, which will be included in the official transcript of the hearing.  At any time before the close of the hearing, any party may file a memorandum addressing relevant issues or points of law.  Post-hearing briefs shall be filed only upon special permission of the regional director and within the time and addressing the subjects permitted by the regional director. If filed, copies of the memorandum or brief shall be served on all other parties to the proceeding and a statement of such service shall be filed with the memorandum or brief.  No reply brief may be filed except upon special leave of the regional director.  If allowed, briefs must be formatted as double-spaced in an 8½ by 11 inch format and must be e-filed through the Board's website, www.nlrb.gov.

**Regional Director Decision** - After the hearing, the regional director issues a decision directing an election, dismissing the petition or reopening the hearing.  A request for review of the regional director's pre-election decision may be filed with the Board at any time after issuance of the decision until 10 business days after a final disposition of the proceeding by the regional director.  Accordingly, a party need not file a request for review before the election in order to preserve its right to contest that decision after the election.  Instead, a party can wait to see whether the election results have mooted the basis of an appeal.  The Board will grant a request for review only where compelling reasons exist therefor.

**Voter List** – The employer must provide to the regional director and the parties named in the election agreement or direction of election a list of the full names, work locations, shifts, job classifications, and contact information (including home addresses, available personal email addresses, and available home and personal cellular ("cell") telephone numbers) of all eligible voters.  (In construction industry elections, unless the parties stipulate to the contrary, also eligible to vote are all employees in the unit who either (1) were employed a total of 30 working days or more within the 12 months preceding the election eligibility date or (2) had some employment in the 12 months preceding the election eligibility date and were employed 45 working days or more within the 24 months immediately preceding the election eligibility date.  However, employees meeting either of those criteria who were terminated for cause or who quit voluntarily prior to the

completion of the last job for which they were employed, are not eligible.) The employer must also include in a separate section of the voter list the same information for those individuals whom the parties have agreed should be permitted to vote subject to challenge or those individuals who, according to the direction of election, will be permitted to vote subject to challenge. The list of names must be alphabetized (overall or by department) and be in the same Microsoft Word file (or Microsoft Word compatible file) format as the initial lists provided with the Statement of Position form unless the parties agree to a different format or the employer certifies that it does not possess the capacity to produce the list in the required form. When feasible, the list must be filed electronically with the regional director and served electronically on the other parties named in the agreement or direction. To be timely filed and served, the voter list must be received by the regional director and the parties named in the agreement or direction respectively within 2 business days after the approval of the agreement or issuance of the direction of elections unless a longer time is specified in the agreement or direction. A certificate of service on all parties must be filed with the regional director when the voter list is filed. The employer's failure to file or serve the list within the specified time or in proper format shall be grounds for setting aside the election whenever proper and timely objections are filed. The parties shall not use the list for purposes other than the representation proceeding, Board proceedings arising from it, and related matters.

**Waiver of Time to Use Voter List** – Under existing NLRB practice, an election is not ordinarily scheduled for a date earlier than 10 calendar days after the date when the employer must file the voter list with the Regional Office. However, the parties entitled to receive the voter list may waive all or part of the 10-day period by executing Form NLRB-4483. A waiver will not be effective unless all parties who are entitled to the list agree to waive the same number of days.

**Election** – Information about the election, requirements to post and distribute the Notice of Election, and possible proceedings after the election is available from the Regional Office and will be provided to the parties when the Notice of Election is sent to the parties.

**Withdrawal or Dismissal** – If it is determined that the NLRB does not have jurisdiction or that other criteria for proceeding to an election are not met, the petitioner is offered an opportunity to withdraw the petition. If the petitioner does not withdraw the petition, the regional director will dismiss the petition and advise the petitioner of the reason for the dismissal and of the right to appeal to the Board.

## REVIEW THE FOLLOWING IMPORTANT INFORMATION
## BEFORE FILLING OUT A STATEMENT OF POSITION FORM

**Completing and Filing this Form:** The Notice of Hearing indicates which parties are responsible for completing the form. If you are required to complete the form, you must have it signed by an authorized representative and file a completed copy (including all attachments) with the RD and serve copies on all parties named in the petition by the date and time established for its submission. If more space is needed for your answers, additional pages may be attached. If you have questions about this form or would like assistance in filling out this form, please contact the Board agent assigned to handle this case. **You must E-File your Statement of Position at www.nlrb.gov, but unlike other e-Filed documents, it will *not* be timely if filed on the due date but after noon in the time zone of the Region where the petition was filed.**

**Note:** *Non-employer parties who complete this Statement of Position are NOT required to complete items 8f and 8g of the form, or to provide a commerce questionnaire or the lists described in item 7.*

**Required Lists:** The employer's Statement of Position must include a list of the full names (that employees use at work), work locations, shifts, and job classifications of all individuals in the proposed unit as of the payroll period preceding the filing of the petition who remain employed at the time of filing. If the employer contends that the proposed unit is inappropriate, the employer must separately list the full names, work locations, shifts and job classifications of all individuals that it contends must be added to the proposed unit to make it an appropriate unit. The employer must also indicate those individuals, if any, whom it believes must be excluded from the proposed unit to make it an appropriate unit. These lists must be alphabetized (overall or by department). Unless the employer certifies that it does not possess the capacity to produce the lists in the required form, the lists must be in a table in a Microsoft Word file (.doc or .docx) or a file that is compatible with Microsoft Word, the first column of the table must begin with each employee's last name, and the font size of the list must be the equivalent of Times New Roman 10 or larger. That font does not need to be used but the font must be that size or larger. A sample, optional form for the list is provided on the NLRB website at **www.nlrb.gov/sites/default/files/attachments/basic-page/node-4559/Optional Forms for Voter List.docx**.

**Consequences of Failure to Supply Information:** Failure to supply the information requested by this form may preclude you from litigating issues under 102.66(d) of the Board's Rules and Regulations. Section 102.66(d) provides as follows:

A party shall be precluded from raising any issue, presenting any evidence relating to any issue, cross-examining any witness concerning any issue, and presenting argument concerning any issue that the party failed to raise in its timely Statement of Position or to place in dispute in response to another party's Statement of Position or response, except that no party shall be precluded from contesting or presenting evidence relevant to the Board's statutory jurisdiction to process the petition. Nor shall any party be precluded, on the grounds that a voter's eligibility or inclusion was not contested at the pre-election hearing, from challenging the eligibility of any voter during the election. If a party contends that the proposed unit is not appropriate in its Statement of Position but fails to specify the classifications, locations, or other employee groupings that must be added to or excluded from the proposed unit to make it an appropriate unit, the party shall also be precluded from raising any issue as to the appropriateness of the unit, presenting any evidence relating to the appropriateness of the unit, cross-examining any witness concerning the appropriateness of the unit, and presenting argument concerning the appropriateness of the unit. If the employer fails to timely furnish the lists of employees described in §§102.63(b)(1)(iii), (b)(2)(iii), or (b)(3)(iii), the employer shall be precluded from contesting the appropriateness of the proposed unit at any time and from contesting the eligibility or inclusion of any individuals at the pre-election hearing, including by presenting evidence or argument, or by cross-examination of witnesses.

FORM NLRB-505
(12-20)

UNITED STATES GOVERNMENT
NATIONAL LABOR RELATIONS BOARD
**STATEMENT OF POSITION**

| | DO NOT WRITE IN THIS SPACE | |
|---|---|---|
| Case No.<br>16-RD-374302 | Date Filed<br>September 30, 2025 | |

**INSTRUCTIONS:** Submit this Statement of Position to an NLRB Office in the Region in which the petition was filed and serve it and all attachments on each party named in the petition in this case such that it is received by them by the date and time specified in the notice of hearing.

**Note:** Non-employer parties who complete this form are NOT required to complete items 8f or 8g below or to provide a commerce questionnaire or the lists described in item 7.

| 1a. Full name of party filing Statement of Position | 1c. Business Phone: | 1e. Fax No.: |
|---|---|---|
| 1b. Address *(Street and number, city, state, and ZIP code)* | 1d. Cell No.: | 1f. e-Mail Address |

2. Do you agree that the NLRB has jurisdiction over the Employer in this case?   [  ] Yes    [  ] No
*(A completed commerce questionnaire (Attachment A) must be submitted by the Employer, regardless of whether jurisdiction is admitted)*

3. Do you agree that the proposed unit is appropriate?   [  ] Yes    [  ] No   *(If not, answer 3a and 3b.)*

3a. State the basis for your contention that the proposed unit is not appropriate.  *(If you contend a classification should be excluded or included briefly explain why, such as shares a community of interest or are supervisors or guards.)*

3b. State any classifications, locations, or other employee groupings that must be added to or excluded from the proposed unit to make it an appropriate unit.

| Added | Excluded |
|---|---|

4. Other than the individuals in classifications listed in 3b, list any individual(s) whose eligibility to vote you intend to contest at the pre-election hearing in this case and the basis for contesting their eligibility.

5. Is there a bar to conducting an election in this case?   [  ] Yes    [  ] No   *If yes, state the basis for your position.*

6. Describe all other issues you intend to raise at the pre-election hearing.

7. The employer must provide the following lists which must be alphabetized (overall or by department) in the format specified at **www.nlrb.gov/sites/default/files/attachments/basic-page/node-4559/Optional Forms for Voter List.docx**.
(a) A list containing the full names, work locations, shifts and job classification of all individuals in the proposed unit as of the payroll period immediately preceding the filing of the petition who remain employed as of the date of the filing of the petition. (Attachment B)
(b) If the employer contends that the proposed unit is inappropriate the employer must provide (1) a separate list containing the full names, work locations, shifts and job classifications of all individuals it contends must be *added* to the proposed unit, if any to make it an appropriate unit, (Attachment C) and (2) a list containing the full names of any individuals it contends must be *excluded* from the proposed unit to make it an appropriate unit. (Attachment D)

8a. State your position with respect to the details of any election that may be conducted in this matter.  Type:  [ ] Manual    [ ] Mail    [ ] Mixed Manual/Mail

| 8b. Date(s) | 8c. Time(s) | 8d. Location(s) |
|---|---|---|
| 8e. Eligibility Period (e.g. special eligibility formula) | 8f. Last Payroll Period Ending Date | 8g. Length of payroll period<br>[  ] Weekly    [  ]Biweekly    [  ] Other *(specify length)* |

**9. Representative who will accept service of all papers for purposes of the representation proceeding**

| 9a. Full name and title of authorized representative | 9b. Signature of authorized representative | 9c. Date |
|---|---|---|
| 9d. Address *(Street and number, city, state, and ZIP code)* | | 9e. e-Mail Address |
| 9f. Business Phone No.: | 9g. Fax No. | 9h. Cell No. |

**WILLFUL FALSE STATEMENTS ON THIS PETITION CAN BE PUNISHED BY FINE AND IMPRISONMENT (U.S. CODE, TITLE 18, SECTION 1001)**
**PRIVACY ACT STATEMENT**

Solicitation of the information on this form is authorized by the National Labor Relations Act (NLRA), 29 U.S.C. Section 151 et seq. The principal use of the information is to assist the National Labor Relations Board (NLRB) in processing representation proceedings. The routine uses for the information are fully set forth in the Federal Register, 71 Fed. 74942-43 (December 13, 2006). The NLRB will further explain these uses upon request. Failure to supply the information requested by this form may preclude you from litigating issues under 102.66(d) of the Board's Rules and Regulations and may cause the NLRB to refuse to further process a representation case or may cause the NLRB to issue you a subpoena and seek enforcement of the subpoena in federal court.

FORM NLRB-5081
(3-11)

**NATIONAL LABOR RELATIONS BOARD**

## QUESTIONNAIRE ON COMMERCE INFORMATION

Please read carefully, answer all applicable items, and return to the NLRB Office.  If additional space is required, please add a page and identify item number.

| CASE NAME | CASE NUMBER 16-RD-374302 |
|---|---|

**1.  EXACT LEGAL TITLE OF ENTITY (As filed with State and/or stated in legal documents forming entity)**

**2.    TYPE OF ENTITY**

[ ] CORPORATION    [ ] LLC    [ ] LLP    [ ] PARTNERSHIP    [ ] SOLE PROPRIETORSHIP    [ ] OTHER (Specify )

**3. IF A CORPORATION or LLC**

| A. STATE OF INCORPORATION OR FORMATION | B.  NAME, ADDRESS, AND RELATIONSHIP (e.g. parent, subsidiary) OF ALL RELATED ENTITIES |
|---|---|

**4.  IF AN LLC OR ANY TYPE OF PARTNERSHIP, FULL NAME AND ADDRESS OF ALL MEMBERS OR PARTNERS**

**5.  IF A SOLE PROPRIETORSHIP, FULL NAME AND ADDRESS OF PROPRIETOR**

**6.  BRIEFLY DESCRIBE THE NATURE OF YOUR OPERATIONS** *(Products handled or manufactured, or nature of services performed).*

| 7A.  PRINCIPAL LOCATION: | 7B.  BRANCH LOCATIONS: |
|---|---|

**8.  NUMBER OF PEOPLE PRESENTLY EMPLOYED**

| A.  TOTAL: | B.  AT THE ADDRESS INVOLVED IN THIS MATTER: |
|---|---|

**9.  DURING THE MOST RECENT** *(Check the appropriate box):* [ ] CALENDAR   [ ] 12 MONTHS    or [ ] FISCAL YEAR  *(FY DATES                    )*

|  | YES | NO |
|---|---|---|
| A.  Did you **provide services** valued in excess of $50,000 directly to customers outside your State?  If no, indicate actual value. $ | | |
| B.  If you answered no to 9A, did you **provide services** valued in excess of $50,000 to customers in your State who purchased goods valued in excess of $50,000 from directly outside your State?  If no, indicate the value of any such services you provided. $ | | |
| C.  If you answered no to 9A and 9B, did you **provide services** valued in excess of $50,000 to public utilities, transit systems, newspapers, health care institutions, broadcasting stations, commercial buildings, educational institutions, or retail concerns?  If less than $50,000, indicate amount. $ | | |
| D.  Did you **sell goods** valued in excess of $50,000 directly to customers located outside your State? If less than $50,000, indicate amount.  $ | | |
| E.  If you answered no to 9D, did you **sell goods** valued in excess of $50,000 directly to customers located inside your State who purchased other goods valued in excess of $50,000 from directly outside your State?  If less than $50,000, indicate amount. $ | | |
| F.  Did you **purchase and receive goods** valued in excess of $50,000 from directly outside your State?  If less than $50,000, indicate amount.  $ | | |
| G.  Did you **purchase and receive goods** valued in excess of $50,000 from enterprises who received the goods directly from points outside your State?    If less than $50,000, indicate amount. $ | | |
| H.    **Gross Revenues** from all sales or performance of services *(Check the largest amount)*:  [ ] $100,000   [ ] $250,000   [ ] $500,000   [ ] $1,000,000 or more   If less than $100,000, indicate amount. | | |
| I.    **Did you begin operations within the last 12 months?**   If yes, specify date: | | |

**10. ARE YOU A MEMBER OF AN ASSOCIATION OR OTHER EMPLOYER GROUP THAT ENGAGES IN COLLECTIVE BARGAINING?**

[ ] YES   [ ] NO  *(If yes, name and address of association or group).*

**11. REPRESENTATIVE BEST QUALIFIED TO GIVE FURTHER INFORMATION ABOUT YOUR OPERATIONS**

| NAME | TITLE | E-MAIL ADDRESS | TEL. NUMBER |
|---|---|---|---|

**12. AUTHORIZED REPRESENTATIVE COMPLETING THIS QUESTIONNAIRE**

| NAME AND TITLE *(Type or Print)* | SIGNATURE | E-MAIL ADDRESS | DATE |
|---|---|---|---|

**PRIVACY ACT STATEMENT**

Solicitation of the information on this form is authorized by the National Labor Relations Act (NLRA), 29 U.S.C. § 151 et seq. The principal use of the information is to assist the National Labor Relations Board (NLRB) in processing representation and/or unfair labor practice proceedings and related proceedings or litigation.  The routine uses for the information are fully set forth in the Federal Register, 71 Fed. Reg. 74942-43 (Dec. 13, 2006). The NLRB will further explain these uses upon request. Disclosure of this information to the NLRB is voluntary. However, failure to supply the information may cause the NLRB to refuse to process any further a representation or unfair labor practice case, or may cause the NLRB to issue you a subpoena and seek enforcement of the subpoena in federal court.

FORM NLRB-5580
(6-20)

# UNITED STATES OF AMERICA
# NATIONAL LABOR RELATIONS BOARD

## DESCRIPTION OF VOTER LIST REQUIREMENT AFTER HEARING IN CERTIFICATION AND DECERTIFICATION CASES

If an election is directed, the employer must provide the voter list.  To be timely filed and served, the voter list must be *received* by the Regional Director and the parties named in the Decision and Direction of Election within 2 business days after the issuance of the Decision unless a longer period, based on extraordinary circumstances, is specified in the Decision and Direction of Election.  A certificate of service on all parties must be filed with the Regional Director when the voter list is filed.  The region will not serve the voter list.

**List Contents -** The list must include the full names (that employees use at work), work locations, shifts, job classifications, and contact information (including home addresses, available personal email addresses and available home and personal cellular telephone numbers of all eligible voters). The Employer must also include in separate sections of that list the same information for those individuals the parties have agreed will be permitted to vote subject to challenge or those individuals who, according to the Decision and Direction of Election, will be permitted to vote subject to challenge.

**List Format -** The list must be in an electronic format approved by the General Counsel, unless the Employer certifies that it does not have the capacity to produce the list in the required format. Accordingly, unless otherwise agreed to by the parties, the list must be provided in a table in a Microsoft Word file (.doc or .docx) or a file that is compatible with Microsoft Word (.doc or .docx). The first column of the list must begin with each employee's last name and the list must be alphabetized (overall or by department) by last name.  Because the list will be used during the election, the font size of the list must be the equivalent of Times New Roman 10 or larger.  That font does not need to be used but the font must be that size or larger.  A sample, optional form for the list is provided on the NLRB website at: **www.nlrb.gov/sites/default/files/attachments/basic-page/node-4559/Optional Forms for Voter List.docx.**

It may be appropriate for the Employer to produce multiple versions of the list where the data required is kept in separate databases or files so long as all of the lists link the information to the same employees, using the same names, in the same order and are provided within the allotted time. If the Employer provides multiple lists, the list used at the election will be the list containing the employees' names and addresses.

**Filing of the List -** The voter list must be filed electronically by submitting (E-Filing) it through the Agency's website (**www.nlrb.gov**), unless the Employer provides a written statement explaining why electronic submission is not possible or feasible. The Employer must also electronically serve the list on the other parties.  To file electronically, go to **www.nlrb.gov**, click on *E-File Case Documents*, and follow the detailed instructions.  The burden of establishing the timely filing and receipt of the list is on the sending party.  If you have questions about the submission, please promptly contact the Board agent investigating the petition.

**Service of the List -** The list must be served on the parties named in the Decision and Direction of Election within 2 business days after issuance of the Decision, unless another date has been specified.  A certificate of service on all parties must be filed with the Regional Director when the voter list is filed.  The Employer's failure to file or serve the list within the specified time or in proper format shall be grounds for setting aside the election whenever proper and timely objections are filed.  The Employer may not object to the failure to file or serve the list within the specified time or in the proper format if it is responsible for the failure.

The parties are not allowed to use the list for purposes other than the representation proceeding, Board proceedings arising from it, and related matters.

# EXHIBIT B

**UNITED STATES OF AMERICA**
**BEFORE THE NATIONAL LABOR RELATIONS BOARD**
**REGION 16**

**A.S.H. ELECTRICAL SERVICES, LLC**

       **Employer**

    **and**                        **Case 16-RD-374302**

**JARED LANE ELKINS, AN INDIVIDUAL**

        **Petitioner**

    **and**

**INTERNATIONAL BROTHERHOOD OF**
**ELECTRICAL WORKERS, LOCAL UNION 520**

        **Union**

**ORDER TO SHOW CAUSE AND**
**RESCHEDULING REPRESENTATION HEARING**

On September 30, 2025, Jared Lane Elkins, an Individual, (Petitioner) filed the instant RD petition seeking to decertify the International Brotherhood of Electrical Workers, Local Union 520 (Union) as representative of employees of A.S.H. Electrical Services (Employer).

There is a dispute as to whether a question concerning representation exists. The relevant procedural background of this matter is as follows:[1]

1.  On May 13, 2021, the Employer, the Union, and Central Texas Chapter, National Electrical Contractors Association (NECA) signed "Letter of Assent – A." The Employer authorized NECA as its collective bargaining representative for all matters contained in or pertaining to the current and any subsequent approved labor agreement between NECA and the Union.

2.  On May 30, 2023, the Employer provided written notice to the Union that it was terminating the Letter of Assent – A.

---

[1] In recounting this procedural history, I take administrative notice of the contents of the case file in Case 16-RM-362398 and the parties' pleadings in *Int'l Brother of Electrical Workers Local 520 v. A.S.H. Electrical Services, LLC,* No. 1:25-CV-01643 (W.D. Tex. filed Oct. 13, 2025). See, e.g., *Lord Jim's*, 264 NLRB 1098, 1098 fn. 1 (1982) (The Board may take judicial notice of its own files); *J. S. Abercrombie Co.*, 83 NLRB 524, 524-525, (1949) (Board takes judicial notice of representation proceeding, noting it "is the practice of the Board to take judicial notice of its own records and proceedings."); *McVey v. McVey*, 26 F. Supp. 3d 980, 984 (C.D. Cal. 2014) (Citing cases and finding judicial notice of pleadings in related case appropriate under FRE 201). To the extent that any party believes the facts described herein are incorrect, they should so state in their submission pursuant to this Order.

3. On December 27, 2023, the Employer provided notice to the Union of its intent to terminate the then-operative Collective Bargaining Agreement (the First CBA) between the Employer and Union.

4. On March 24, 2025, the Employer filed an RM Petition in Case 16-RM-362398 claiming a good faith uncertainty about majority support for the existing relationship.

5. On March 27, 2025, I issued an Order to Show Cause ordering the parties to provide their position, evidence, and legal argument concerning whether the parties had a relationship governed by Section 8(f) or 9(a) of the Act.

6. On April 3, 2025, I issued an Order Dismissing Petition and Withdrawing Notice of Representation Hearing. In that Order I found the Employer failed to establish a Section 9(a) relationship between the Union and Employer under the Act.

7. On or about April 17, 2025, prior to the expiration of the First CBA, the Union invoked an interest arbitration clause contained within the First CBA. The matter was arbitrated and on May 13, 2025, a joint labor-management panel ordered the Employer to sign and implement a new CBA (the Second CBA).

8. On or about May 23, 2025, the Employer requested the joint labor-management panel reconsider its decision. The panel denied the Employer's reconsideration request on June 10, 2025.

9. The First CBA expired on June 1, 2025.

10. To date, the Employer has failed and refused to sign the Second CBA.

11. On October 13, 2025, the Union filed suit in the United States District Court, Western District of Texas seeking to enforce the arbitration award.

12. On November 6, 2025, the Employer filed an Answer and Counterclaim to Plaintiff's Original Complaint. In its pleading, the Employer asserted, *inter alia*, that the labor-management arbitration panel lacked the authority to order the Employer to sign and implement the Second CBA.

13. As a result of the Employer's failure and refusal to sign and implement the Second CBA, and the concomitant District Court litigation over the propriety of such, there is a question of whether there is a current 8(f) relationship between the Employer and Union.

Under Section 9(c)(1) of the Act, a prerequisite to conducting a representation election is the existence of a question concerning representation. Based on the above, there are substantial and material issues of fact and law as to whether further processing of the petition is warranted. Accordingly,

**IT IS HEREBY ORDERED** that any party hereto provide written cause of its legal position and argument as to whether the instant petition warrants further processing. **Any submission should be accompanied by supporting documentary evidence and cite relevant**

2

**and applicable legal authority**.  More specifically, the parties' submissions in response to this Order should address the following matter:

Please provide your position as to the following:

1.  Whether the parties currently have a relationship governed by Section 8(f) of the Act.

2.  Whether the instant petition should be stayed pending a resolution of the District Court litigation between the Employer and Union.

All submissions to this Order must be in writing and E-filed via the Agency's website, including a showing that the responses were duly served on all other parties, and should be accompanied by supporting documentary evidence and relevant applicable legal authority.  All submissions must be received by this office by **4:45 p.m. Central Standard Time** on **November 25, 2025**.

**IT IS FURTHER ORDERED** that the hearing in this matter is rescheduled from 9:00 a.m. on October 8, 2025, to **9:00 a.m. on Wednesday, December 3, 2025, by Videoconference.**

**YOU ARE FURTHER NOTIFIED** that, pursuant to Section 102.63(b) of the Board's Rules and Regulations, **A.S.H Electric Services, LLC, and International Brotherhood of Electrical Workers, Local Union 520,** must complete the Statement of Position and file it and all attachments with the Regional Director and serve it on the parties listed on the petition such that is received by them by no later than **noon** Central time on **Tuesday, December 2, 2025.**

**DATED** at Fort Worth, Texas, this 21st day of November 2025.

_____
Timothy L. Watson
Regional Director
National Labor Relations Board
Region 16
Fritz G. Lanham Federal Building
819 Taylor Street, Room 8A24
Fort Worth, Texas  76102-6178

# EXHIBIT C

JacksonLewis

**Jackson Lewis P.C.**
500 N. Akard Street, Suite 2500
Dallas TX 75201
(214) 520-2400 Direct
(214) 520-2008 Fax
jacksonlewis.com
Direct Dial: 972-728-3258

Jonathan.Elifson@jacksonlewis.com

November 25, 2025

Timothy Watson, Regional Director
National Labor Relations Board
819 Taylor Street, Room 8A24
Fort Worth, TX 76102

Re: Order to Show Cause, Case No.16-RD-374302

Dear Mr. Watson:

I am writing in response to the Order to Show Cause you issued in the above-captioned matter on November 21, 2025. Therein, you request the position of the parties regarding whether the Region should continue processing the RD petition in this matter, which was filed by Jared Lane Elkins, one of the Employer's two bargaining unit employees, on September 30, 2025. Specifically, you request the parties' position on (1) whether the parties have a relationship governed by Section 8(f) of the Act, and (2) whether the instant petition should be stayed pending a resolution of the District Court litigation between the Employer and the Union.

The Region should process the RD petition because processing the petition is the most effective way to address the parties' representation dispute, or "question concerning representation." The Union in this matter, IBEW Local 520, has clearly demonstrated through its actions that it believes 8(f) relationship exists, as it is seeking to enforce the purported Collective Bargaining Agreement ("Imposed CBA") which followed the Employer's termination of both the assignment of its bargaining rights to NECA and IBEW (Exhibit A) and the termination of the then-current CBA (Exhibit B).

Following the Union's efforts to impose a new CBA through arbitration, the Union has continued to treat the relationship as an ongoing 8(f) relationship. For example, on September 17, 2025, the Union filed what purported to be a grievance over the wage rates contained in the Imposed CBA (Exhibit C). That same day, the Union made a related information request (Exhibit D). In Response, through the undersigned, the Employer made it clear that the parties have no bargaining relationship, just as it had previously done (Exhibit E). In addition to clearly stating that the parties have no bargaining relationship, the Employer has communicated to the Union that the CBA the Union has sought to impose is invalid. In the District Court litigation, the Employer has advanced six grounds for the invalidity of the Imposed CBA: (1) that the Council on Industrial Relations ("CIR," an arbitration panel) exceeded its authority by imposing a CBA on Defendant after the Defendant terminated its bargaining relationship with Plaintiff; (2) the CIR's award does not draw its essence from the prior CBA, (3) the CIR's decision violates public policy and due process; (4) the CIR's process was procedurally defective, lacking transparency, reasoning and fairness; (5) the CIR was improperly constituted and engaged in conduct undermining the integrity of the arbitration process; and (6) CIR's award is invalid and unenforceable under federal labor law.

# JacksonLewis

To summarize: the Employer has repeatedly told the Union that no 8(f) relationship exists, and the Union has repeatedly demonstrated through its actions that it believes such a relationship does exist.  At minimum, the Union is insisting that a valid 8(f) agreement exists.  Processing the RD petition is the most efficient and straightforward way to resolve the dispute over whether an 8(f) relationship exists. The case law is abundantly clear:

> To further protect employee choice, the second proviso to Section 8(f) permits employees and other parties, including rival unions, to file election petitions to replace or decertify an 8(f) union representative at any time. The 8(f) representative itself may also petition for an election to become the unit employees' 9(a) representative. *However, if an election is held during the term of an 8(f) agreement, "[a] vote to reject the signatory [8(f)] union will void the 8(f) agreement and will terminate the 8(f) relationship."* Deklewa, 282 NLRB at 1385. Thus, if an 8(f) bargaining representative loses an election, not only does it not become the unit employees' 9(a) representative, it is also ousted as their 8(f) representative. *Raymond Interior Systems,* 367 NLRB No. 124 (2019)(emphasis added).

Further, upon the expiration of pre-hire agreements covered by Section 8(f) of the Act, either party may repudiate the 8(f) relationship.  *John Deklewa & Sons*, 282 NLRB 1375, 1377 (1987), *enfd. sub. nom, Int'l Ass'n of Bridge, Structural, & Ornamental Iron Workers, Local 3 v. N.L.R.B.*, 843 F.2d 770 (3d Cir. 1988).  Here, the Employer undoubtedly repudiated the 8(f) relationship but the Union continues to treat the Employer as if it has an ongoing bargaining obligation.

Although the Employer is confident that the Imposed CBA is invalid, the Region's processing of the RD petition filed by one of the Employer's two bargaining employees will make it unnecessary for the Court to make an ultimate determination.  This will conserve judicial resources and allow the Board to utilize its expertise in matters of labor relations.  In other words, if the Union loses the election, the parties' 8(f) relationship is considered terminated and the purported 8(f) agreement (here, the imposed CBA) is considered void.  Erasing any doubt about the status of the purported 8(f) agreement is in the interest of both parties.

A failure to process the RD petition would mean that the Union could continue to seek to force-feed a void CBA with punitive wage rates far above the typically much-higher Austin area rates (but which apply to the lower-cost San Angelo area) on the Employer for life, despite the Employer having no ongoing bargaining relationship with the Union or any bargaining obligation. This also would mean that the NLRB is effectively saying that there is no way of ending the parties' relationship through its processes.

Allowing the Union to insist that it has a "contract for life" denies the Employer due process. Such a position is an affront to the foundational principles of Section 8(f) of the Act, which allows the parties to end their relationship at any time and to repudiate an 8(f) Agreement following its expiration. Therefore, to follow the clear case law and to be consistent with the Board's public policy, the Region should process the RD petition.

The District Court should stay its proceedings in light of the NLRB proceedings rather than the NLRB staying its own proceedings. This week, the Employer intends to move the District Court to stay its proceedings so that the NLRB may have sufficient time to consider the applicable legal

# JacksonLewis

issues and process the petition. Processing the RD petition will be much quicker, cheaper, and straightforward than forcing a relatively small electrical contractor to spend thousands and thousands of dollars on legal bills to defend itself against costly litigation by a Union who is—at best—indifferent to the livelihoods of its owners and employees. Processing the RD petition will also ensure that judicial resources are conserved.

We appreciate your consideration of our position and trust that the Region will follow the applicable case law and process the RD petition.  The NLRA provides a mechanism for employees' voices to be heard in the representation process—including in circumstances involving 8(f) relationships— and we respectfully ask that you process the RD petition.

Sincerely,

Jonathan Elifson
Counsel for Employer A.S.H. Electrical
Services, LLC

EXHIBIT
A

# BELLNUNNALLY
ATTORNEYS & COUNSELORS

JAY WALLACE
TEL: 214.740.1407
FAX: 214.740.1407
JWALLACE@BELLNUNNALLY.COM

December 27, 2023

**VIA CMRRR #9414 7266 9904 2221 4527 24**
I.B.E.W. Local Union 520
Attn: Diarmid Campbell
909 Caddo Street
San Angelo, Texas 76901

**VIA CMRRR #9414 7266 9904 2221 4527 31**
Central Texas Chapter, NECA
Attn: Don Kanetzky
4000 Caven Road
Austin, Texas 78744

Re:    Confirmation of May 30, 2023 Termination of Letter of Assent-A, Labor Agreement, and Bargaining Rights Assigned to NECA and IBEW, Local Union No. 520

To Whom it May Concern:

This firm represents A.S.H. Electrical Services, LLC ("A.S.H."). Direct all future communications regarding your contractual relationship with A.S.H and its termination to me.

As you are aware, A.S.H. sent a letter to both Central Texas Chapter, NECA and I.B.E.W. Local Union 520 ("Local Union") dated May 30, 2023 stating its intent to terminate its contract with both entities upon 150 days' notice and detailing the Local Union's failures to uphold its obligations under the collective bargaining agreement. According to the terms set forth in the Letter of Assent-A, A.S.H.'s May 30, 2023 letter, receipt of which has been confirmed, dutifully informed Local Union and Central Texas Chapter, NECA of its intent to terminate.

With regard to the Local Union's failures, specifically, the Local Union fraudulently induced A.S.H. into the Letter of Assent-A by promising to provide qualified craftsmen and women knowing that it could not fulfil this promise.

Furthermore, the Local Union made additional promises to A.S.H. that the union craftsmen in A.S.H.'s workforce would be subject to the Code of Excellence program, ensuring that the workers would adhere to certain rules and regulations. However, when issues with drug use by craftsmen **on the job** were brought before the Local Union, the Local Union took no action, despite such behaviors by craftsmen putting A.S.H. at high risk of liability, as well as its clients' and the general public's safety in risk.   A.S.H. will not and cannot tolerate the Local Union's negligent operations within its business.



For these reasons, among others, A.S.H. properly provided notice of termination on May 30, 2023. Accordingly, A.S.H. considers its contractual relationship with IBEW to be terminated as of November 1, 2023 and withdrawals and/or revokes all collective bargaining rights assigned to the Local Union and Central Texas Chapter, NECA.

Sincerely,

Jay Wallace



<div style="border:1px solid black; display:inline-block;">

**EXHIBIT**

# B

</div>

**A.S.H. ELECTRICAL SERVICES, LLC**
**P.O. BOX 61905**
**SAN ANGELO, TEXAS, 76904**
**325.716.6696**

**I.B.E.W. LOCAL UNION 520**
**CENTRAL TEXAS CHAPTER, NECA**

**May, 30, 2023**

In accordance with the provisions of the Letter of Assent- A, between A.S.H. Electrical Services, LLC, Central Texas Chapter, NECA, and IBEW Local Union 520, this letter shall serve as notice of A.S.H. Electrical Services, LLC intent to terminate our partnership with I.B.E.W. Local Union 520 and the Central Texas Chapter, NECA.  It is the position of A.S.H. Electrical Services, LLC that due to lack of qualified craftsmen, the local union HAS NOT and CANNOT provide employees which are crucial to furthering of our business plan/model.  To provide qualified men and women to the employer was the very basis of the agreement.  Unfortunately, conversely, it seems as though our purpose has been to provide the local union with membership.  Furthermore, much emphasis was placed upon the Code of Excellence program. Issues which were brought before representatives of Local Union 520 were conveniently "brushed under the rug" with no regard as to the negative impact upon the contractor.  Quite frankly, I find it absurd a program exists in which- A: the content is not enforced, rather it becomes just another "training class "and box to check. B: Program attempts to instruct an individual to be a responsible, ethical, adult when accepting and continuing employment with a contractor. For these reasons, A.S.H. Electrical Services, LLC will no longer participate in a single sided equation in which there exists one beneficiary.  This letter shall serve as our 150-day notice to terminate the Letter of Assent- A, signed May 13, 2021.

Respectfully,

_Adam C. Johnke_

**Adam C. Johnke- Partner**

Date: _May 30, 2023_

_Shannon J. Carpenter_

**Shannon J. Carpenter- Partner**

Date: _May 30, 2023_

**Adam Johnke**

Operations Manager

A.S.H. Electric

3214 Sunset Dr.

San Angelo TX. 76906

**EXHIBIT**

**C**

9-17-2025

Dear Adam Johnke,

**Subject: Initiation of Grievance Investigation – Contract Violation Allegation**

This letter serves as notice regarding a grievance received concerning a potential violation of contract terms related to Contract Wage Adjustments.

After an initial review, we have identified the following section(s) of the contract that may have been violated:

- **Section 4.03, [Minimum regular straight time Rate] of the CBA**: New bargained wages were effective June 2nd, 2025.

To ensure a comprehensive and timely investigation of this matter, a field agent will need access to the job site within the next 48 hours. Is A.S.H. Electric aware of any special requirements for entry or visitation of the site such as:

- **Safety Compliance**: PPE requirements or necessary safety training

- **Access Restrictions**: Any restrictions for entering or working on the site

- **Sign-In Process**: The procedure for entering the jobsite

- **Site-Specific Rules**: Any unique regulations or policies on the site

- **Entry and Parking Locations**: Directions for entering and parking on the site

Please provide this information as soon as possible to avoid any delays or miscommunications. We want to make sure everything is smooth and least disruptive as practicable. If you have any questions or concerns, please feel free to contact me. If a site visit cannot be arranged within the designated 48-hour time frame, provide an explanation for the delay and provide an alternative process for scheduling the visit at the earliest possible opportunity.

Should you have any questions or need further clarification, please contact me at 512-289-1561 or via email at diarmid_campbell@ibew520.org.

Thank you for your attention to this issue.

Sincerely,
Diarmid Campbell
Assistant Business Agent
IBEW Local 520

**Adam Johnke**

Operations Manager

A.S.H. Electric

3214 Sunset Dr.

San Angelo, TX. 76906

<table>
<tr><td>**EXHIBIT**<br>**D**</td></tr>
</table>

9-17-2025

Dear Adam Johnke,

IBEW Local Union 520 requests that A.S.H. Electric provide the information described below, all of which are relevant to the Local Union's performance of its representative function.

For the period from **June 2, 2025, to the present**, please provide the following information:

1) Name and contact information for each employee who has performed and/or is performing any of the work covered by the collective bargaining agreement between IBEW Local 520 and the Central Texas Chapter of NECA.
2) The number of hours worked by each employee named in response to question #1 above.
3) The date and method of hire for each employee named in response to question #1 above.
4) All sites of construction, including address, project start and completion dates, and full site rosters including crew breakdown for each employee named in response to question #1.
5) All payroll information with respect to each employee named in response to question #1 above, including payments to benefit plans and to the Local Union on behalf of each employee.
6) A copy of any records demonstrating calls for electrical workers submitted to the Local Union.

Please provide the requested information within ten days of the date of this letter. If you have any questions about any of this or believe that any of the requested information is exempted from disclosure under the NLRA, please notify Diarmid Campbell at IBEW Local Union 520 of the exemptions immediately and provide all other information without delay. Thank you.

Sincerely,

Diarmid Campbell

Assistant Business Agent

IBEW Local 520

# JacksonLewis

Jackson Lewis P.C.
500 N. Akard Street, Suite 2500
Dallas TX 75201
(214) 520-2400 Direct
(214) 520-2008 Fax
jacksonlewis.com
Direct Dial: 972-728-3258

Jonathan.Elifson@jacksonlewis.com

**EXHIBIT**

**E**

October 1, 2025

Diarmid Campbell, Assistant Business Agent
IBEW Local 520
4818 E. Ben White Blvd, Suite 300
Austin, TX 78741

Re: Grievance and Request for Information

Dear Mr. Campbell:

This Firm represents A.S.H. Electrical Services, LLC ("A.S.H.") with respect to all disputes with IBEW Local 520. Please direct all further communications regarding A.S.H. to me.

On September 17, 2025, you sent my client what purports to be a grievance "concerning a potential violation of terms related to Contract Wage Adjustments."  As you know, on December 27, 2023, A.S.H. sent a letter to IBEW Local 520 stating that "A.S.H. considers its contractual relationship with IBEW to be terminated as of November 1, 2023, and withdraws and revokes all collective bargaining rights assigned to the Local Union and Central Texas Chapter, NECA." (Exhibit A). This letter followed A.S.H.'s May 30, 2023, notice of cancellation of both the Letter of Assent assigning A.S.H.'s bargaining rights to the Central Texas Chapter of NECA and the parties' CBA (Exhibit B). As no valid collective bargaining agreement or collective bargaining relationship with IBEW Local 520 currently exists, there is no basis to process a purported "grievance."

Further, because A.S.H. terminated its previous 8(f) relationship with the Union, it has no duty under Section 8(a)(5) of the Act to furnish information requested by the Union. Because my client has no duty to furnish IBEW Local 520 with the information it requested on September 17, 2025, (and again today), A.S.H. will not be furnishing you with the requested information.

Should you wish to discuss this matter, I can be reached by phone at (972)728-3258 or via e-mail at Jonathan.Elifson@jacksonlewis.com

Sincerely,

/s/ *Jonathan Elifson*

Jonathan Elifson
Counsel for A.S.H. Electric

# EXHIBIT D







**KENNETH W. COOPER**
*International President*

**PAUL A. NOBLE**
*International Secretary- Treasurer*

**CHRISTIAN J. WAGNER**
*International Vice President,*
*Seventh District*

*INTERNATIONAL*
*BROTHERHOOD*
*OF ELECTRICAL*
*WORKERS*

SEVENTH DISTRICT

320 Westway Place, Suite 531 • Arlington, TX 76018 • Phone 817-557-1611 • Fax 817-557-4801 • Email: ivpd_07@ibew.org

November 25, 2025

Timothy L Watson
Regional Director
NLRB Region 16
819 Taylor St Room 8A24
Fort Worth, TX 76102-6107

**Re:     Order to Show Cause in *A.S.H. Electrical Services*, 16-RD-374302**

Dear Mr. Watson,

The petition in this matter asserts that there now exists a CBA which expires on June 4, 2028. The Employer, on the other hand, denies the existence of a valid Agreement.  While the Local Union agrees with the Petitioner that there exists a CBA that expires on June 4, 2028, that CBA is not one that the Board recognizes as a valid 8(f) agreement enforceable by Section 8(a)(5).  Absent a valid 8(f) agreement that the Board would recognize as such, the petition in this case must be administratively dismissed.

**Facts**

On May 13, 2021 the Employer signed a Letter of Assent, assigning its bargaining rights to the Central Texas Chapter NECA, and binding itself to the then extant collective bargaining agreement and any successor agreements negotiated by NECA and IBEW Local 520.  (Exhibit 1). In May 2022 IBEW Local 520 and NECA entered into a successor CBA with effective dates of June 2, 2022 and June 1, 2025. (Exhibit 2). By the terms of the May 13, 2021 Letter of Assent the 2022-2025 CBA bound the Employer.

On December 27, 2023, during the mid-term of the then extant CBA the Employer notified the Central Texas Chapter NECA and IBEW Local 520 that it was terminating both the Letter of Assent and the CBA.  (Exhibit 3).  See, *Rome Electrical Systems*, 349 NLRB 745 (2007), enfd. 286 Fed.Appx. 697 (11th Cir. 2008)(describing the requirement for terminating the Letter of Assent and the separate requirement to propose to terminate the CBA). After a series of letters between the Employer and the Local Union it appeared that the Employer understood that a mid-term termination of the Letter of Assent and CBA is not permissible.  The Local Union did, however, accept the premature termination notices as sufficient to terminate the Letter of Assent upon its anniversary date and as notice of the Employer's desire to terminate the CBA at its expiration date.  (Exhibit 4).  Subsequently the Local Union timely notified the Employer of its proposal to modify the CBA by letter on February 3, 2025.  (Exhibit 5).

The Local Union acknowledges that the 2022-2025 CBA was an 8(f) agreement that the Board would recognize as such and enforce via Section 8(a)(5). Thus the Employer was free

under the statute to terminate the 8(f) relationship upon expiration of the agreement. *John Deklewa & Sons*, 282 NLRB 1375 (1987), enfd. sub nom. *Iron Workers Local 3 v. NLRB*, 843 F.2d 770 (3d Cir. 1987), cert. denied 488 U.S. 889 (1988). However, though the Employer was not required by statute to bargain for a new CBA, it had agreed to do so. This agreement is found at Section 1.02 of the 2022-2025 CBA. See, *IBEW Local 716 (KST Electric, LTD)*, 16-CB-7938 (Advice Memorandum, March 23, 2010).

In accordance with Section 1.02 of the 2022-2025 CBA the Local Union and the Employer attempted to bargain a successor agreement. As the deadline to file for interest arbitration approached without the parties yet agreeing to a successor, the Local Union invited the Employer to jointly submit the case to interest arbitration. 2022-2025 CBA, Section 1.02(d). Getting no response to this request, the Union unilaterally filed an interest arbitration case on April 17, 2025. (Exhibit 6, ¶¶ 9-11).

The interest arbitration case was decided by the Council on Industrial Relations on May 13, 2025, directing the Employer to sign and immediately implement the new contract. (Exhibit 7). On May 23, 2025 the Employer petitioned CIR for reconsideration of its May 13, 2025 award. CIR denied the Employer's request on June 10, 2025. (Exhibit 8).

The Employer has refused to sign the contract imposed by the Council on Industrial Relations. In the face of that refusal, the Local Union filed suit in the United States District Court for the Western District of Texas. The Employer has responded to the Union's effort to confirm the Council on Industrial Relations' award by claiming to have repudiated the 2022-2025 CBA during its term and denying the existence of a valid contract.

### There Currently Exists No 8(f) Agreement that the Board Would Recognize or Enforce

The Board has described collective bargaining agreements that are permitted by Section 8(f) in part as those that are enforceable through the mechanisms of Section 8(a)(5) and Section 8(b)(3). *John Deklewa & Sons*, 282 NLRB 1375, 1377 (1987)(subsequent history omitted). The Employer here has asserted that there has been no 8(f) agreement in place since as far back as May 20, 2023. (Exhibit 9). Despite the Board's holding in *Deklewa* the Employer apparently claims it has the right to, and indeed has terminated the 2022-2025 CBA during its term.

While the Local Union disputes the right of an employer to repudiate an 8(f) agreement during its term, it agrees that at the time this petition was filed, and continuing thru today, there has existed no contract that the Board would recognize as a valid, enforceable 8(f) agreement. In the absence of such agreement there can be no question concerning representation. The contract that now exists is one that was imposed through interest arbitration. Such a contract, because it is the product of a permissive subject of bargaining, is not an 8(f) agreement that the Board would enforce, but is enforceable only through a Section 301 proceeding. *Hope Electrical Corp.*, 399 NLRB 933, 933 (2003). See also, *Local Union 666 v. Stokes Electric Service, Inc.*, 225 F.3d 415, 424 (4th Cir. 2000)(contract imposed through interest arbitration is enforceable by the court though the union has lost 8(f) status).

In *A.S.H. Electrical Services, LLC*, 16-RM-362398 (April 3, 2025) the Employer had alleged that during the term of the 2022-2025 CBA the Local Union and the Employer were in a 9(a) relationship. Local Union 520 disputed that assertion at that time, alleging the relationship was instead governed by Section 8(f). Back then there did exist a valid 8(f) agreement enforceable by the Board under Sections 8(a)(5) and 8(b)(3), and had employees filed a decertification petition at that time there would have existed a question concerning representation. But the Employer jumped the gun and filed an RM petition. Because the Local Union had never claimed majority support the Regional Director administratively dismissed the RM petition for lack of a question concerning representation.

The Regional Director must again administratively dismiss this petition because absent an 8(f) agreement or a claim of majority support there is now no question concerning representation either.

### The Petition Must be Administratively Dismissed Now Rather than Stayed

The ruling of the court will have no effect whatsoever on the fact that the contract it enforces is not one recognized by the Board as a valid enforceable 8(f) agreement. *Hope Electric*, supra. The contract at issue in *Hope* was one that had been enforced by the United States District Court for the District of Western District of Missouri. In that case the General Counsel argued that in the absence of court enforcement the Board should continue to apply *Tampa Sheet Metal Co.*, 288 NLRB 322 (1988) to find that a contract which is the product of interest arbitration, a well-established permissive subject of bargaining, is unenforceable thru Sections 8(a)(5) and 8(b)(3). But, he argued, once a court enforces such a contract the Board should enforce it as well. *Hope*, supra at 938.

The *Hope* Board rejected the urging of the General Counsel to hold that there is a difference between the statutory enforceability of an interest arbitration award that has been granted court enforcement and one that has not. It held instead that a contract imposed through interest arbitration is not one that the statute empowers the Board to enforce, even though a court may enforce it as a contractual matter. Accordingly, it administratively dismissed a related decertification petition. Supra at fn. 2. This is what the law requires here—immediate administrative dismissal.

### No Question Concerning Representation Exists

As there does not exist either a 9(a) relationship nor an 8(f) agreement that the Board would recognize or enforce, there is no question concerning representation. The Employer seems to agree that there is no enforceable 8(f) agreement. The Regional Director must administratively dismiss this petition.

Sincerely,

**Certificate of Service**

On November 25, 2025 I e-filed this document with NLRB Region 16 and served a copy on the Petitioner and the Employer representatives listed below:

Jared Elkins:          jaredelkins@gmail.com
Adam Johenke:          adam@ashelectricalservices.com
Jonathan Elifson:      Jonathan.elifson@jacksonlewis.com

# EX. 1

LETTER OF ASSENT - A

In signing this letter of assent, the undersigned firm does hereby authorize[1] Central Texas Chapter, NECA

as its collective bargaining representative for all matters contained in or pertaining to the current and any subsequent

approved[2] Inside _____ labor agreement between the

[1] Central Texas Chapter, NECA _____ and Local Union[3] 520 , IBEW.

In doing so, the undersigned firm agrees to comply with, and be bound by, all of the provisions contained in said current and subsequent

approved labor agreements. This authorization, in compliance with the current approved labor agreement, shall become effective

on the[4] 13th day of May , 2021 .

It shall remain in effect until terminated by the undersigned employer giving written notice to the

[1] Central Texas Chapter, NECA _____ and to the Local Union at least one hundred fifty (150)

days prior to the then current anniversary date of the applicable approved labor agreement.

The Employer agrees that if a majority of its employees authorize the Local Union to represent them in collective
bargaining, the Employer will recognize the Local Union as the NLRA Section 9(a) collective bargaining agent for all
employees performing electrical construction work within the jurisdiction of the Local Union on all present and future jobsites.

In accordance with Orders issued by the United States District Court for the District of Maryland on October 10, 1980,
in Civil Action HM-77-1302, if the undersigned employer is not a member of the National Electrical Contractors Association, this letter of
assent shall not bind the parties to any provision in the above-mentioned agreement requiring payment into the National Electrical Industry
Fund, unless the above Orders of Court shall be stayed, reversed on appeal, or otherwise nullified.

SUBJECT TO THE APPROVAL OF THE INTERNATIONAL PRESIDENT, IBEW

A.S.H. Electrical Services, LLC
[5] Name of Firm

P.O. Box 61905
Street Address/P.O. Box Number

San Angelo Texas
City, State (Abbr.) Zip Code

[6] Federal Employer Identification No. 82-4418735

SIGNED FOR THE EMPLOYER Adam C Johnke - Co-Owner

BY[7] Shannon Carpenter - Co-Owner
(original signature)

NAME[8] Shannon Carpenter Adam Johnke

TITLE/DATE Co-Owners 5-13-2021

> **APPROVED**
> **INTERNATIONAL OFFICE - I.B.E.W.**
>
> **May 18, 2021**
>
> Lonnie R. Stephenson, Int'l President
> This approval does not make the
> International a party to this agreement

SIGNED FOR THE UNION[3] 520 , IBEW

BY[7] Ben Brenneman
(original signature)

NAME[8] Ben Brenneman

TITLE/DATE Business Mgr./Financial Secretary

INSTRUCTIONS (All items must be completed in order for assent to be processed)

[1] NAME OF CHAPTER OR ASSOCIATION
   Insert full name of NECA Chapter or Contractors Association involved.
[2] TYPE OF AGREEMENT
   Insert type of agreement. Example: Inside, Outside Utility, Outside
   Commercial, Outside Telephone, Residential, Motor Shop, Sign, Tree
   Trimming, etc. The Local Union must obtain a separate assent to each
   agreement the employer is assenting to.
[3] LOCAL UNION
   Insert Local Union Number.
[4] EFFECTIVE DATE
   Insert date that the assent for this employer becomes effective. Do not
   use agreement date unless that is to be the effective date of this Assent.

[5] EMPLOYER'S NAME & ADDRESS
   Print or type Company name & address.

[6] FEDERAL EMPLOYER IDENTIFICATION NO.
   Insert the identification number which must appear on all forms filed
   by the employer with the Internal Revenue Service.

[7] SIGNATURES
[8] SIGNER'S NAME
   Print or type the name of the person signing the Letter of Assent.
   International Office copy must contain actual signatures-not repro-
   duced-of a Company representative as well as a Local Union officer.

A MINIMUM OF FIVE COPIES OF THE JOINT SIGNED ASSENTS MUST BE SENT TO THE INTERNATIONAL OFFICE FOR PROCESSING.
AFTER APPROVAL, THE INTERNATIONAL OFFICE WILL RETAIN ONE COPY FOR OUR FILES, FORWARD ONE COPY TO THE IBEW
DISTRICT VICE PRESIDENT AND RETURN THREE COPIES TO THE LOCAL UNION OFFICE. THE LOCALUNION SHALL RETAIN ONE
COPY FOR THEIR FILES AND PROVIDE ONE COPY TO THE SIGNATORY EMPLOYER AND ONE COPY TO THE LOCAL NECA CHAPTER.

IBEW.FORM 302 REV. 9/01

# EX. 2



# June 2, 2022 – June 1, 2025

## AGREEMENT
## Between

## The CENTRAL TEXAS CHAPTER of the NATIONAL ELECTRICAL CONTRACTORS ASSOCIATION, INC.
## and

## LOCAL UNION NO. 520 of the INTERNATIONAL BROTHERHOOD OF ELECTRICAL WORKERS
## Austin, Texas

# TABLE OF CONTENTS

Parties Clause...........................................................................................................1

Basic Principles........................................................................................................1

Article I – *Effective Date, Changes, Grievances, Disputes* ..............................................1

Article II – *Employers Rights, Union Rights, Favored Nations Clause* ...........................3

Article III – *Standard Inside Referral, Journeyman Wireman – Journeyman Technician*............8

Article IV – *Hours, Wage Payment* ...........................................................................12

Article V – *General Rules*........................................................................................16

Article VI – *Standard Inside Apprenticeship Language*................................................19

Article VII – *Vacation* ............................................................................................23

Article VIII – *Annuity Plan*.....................................................................................23

Article IX – *401(k) Savings Plan* .............................................................................24

Article X – *Health and Welfare* ...............................................................................24

Article XI – *National Labor Management Cooperative Committee* ...............................24

Article XII – *P.A.C. Fund*.......................................................................................25

Article XIII...............................................................................................................26

Article XIV – *Substance Abuse Language* ................................................................26

Article XV – *Code of Excellence, Separability Clause* ...............................................26

**June 2, 2022 – June 1, 2025**
**AGREEMENT**
**Between**

**The CENTRAL TEXAS CHAPTER of the**
**NATIONAL ELECTRICAL CONTRACTORS**
**ASSOCIATION, INC.**
**and**

**LOCAL UNION NO. 520 of the**
**INTERNATIONAL BROTHERHOOD OF**
**ELECTRICAL WORKERS**
**Austin, Texas**

## PARTIES CLAUSE

Agreement by and between the CENTRAL TEXAS CHAPTER, NATIONAL ELECTRICAL CONTRACTORS ASSOCIATION and LOCAL UNION 520, INTERNATIONAL BROTHERHOOD OF ELECTRICAL WORKERS. As used hereinafter in this Agreement, the term "Chapter" shall mean the CENTRAL TEXAS CHAPTER, NATIONAL ELECTRICAL CONTRACTORS ASSOCIATION, and the term "Union" shall mean LOCAL UNION NO. 520, IBEW. The term "Employer" shall mean an individual firm who has been recognized by an Assent to this Agreement.

## BASIC PRINCIPLES

The Employer and the Union have a common and sympathetic interest in the Electrical Industry. Therefore, a working system and harmonious relations are necessary to improve the relationship between the Employer, the Union, and the Public. Progress in Industry demands a mutuality of confidence between the Employer and the Union. All will benefit by continuous peace, and by adjusting any differences by rational, common sense methods. Now, therefore, in consideration of the mutual promises and agreements herein contained, the parties hereto agree as follows:

## ARTICLE I
## EFFECTIVE DATE/CHANGES/GRIEVANCES/DISPUTES

Section 1.01: This Agreement shall take effect on June 2, 2022 and shall remain in effect through June 1, 2025, unless otherwise specifically provided for herein. It shall continue in effect from year to year thereafter, from the start of the first full pay period in June through the last pay period starting in May of each year, unless changed or terminated in the way later provided herein.

Section 1.02(a): Either party desiring to change or terminate this Agreement must provide written notification at least 90 days prior to the expiration date of the Agreement or any anniversary date occurring thereafter.

(b) Whenever notice is given for changes, the nature of the changes desired must be specified in the notice, or no later than the first negotiating meeting unless mutually agreed otherwise.

(c) The existing provisions of the Agreement, including this Article, shall remain in full force and effect until a conclusion is reached in the matter of proposed changes.

(d)  Unresolved issues or disputes arising out of the failure to negotiate a renewal or modification of this agreement that remain on the 20th of the month preceding the next regular meeting of the Council on Industrial Relations for the Electrical Contracting Industry (CIR) may be submitted jointly or unilaterally to the Council for adjudication.  Such unresolved issues or disputes shall be submitted no later than the next regular meeting of the Council following the expiration date of this agreement or any subsequent anniversary date.  The Council's decisions shall be final and binding.

(e) When a case has been submitted to the Council, it shall be the responsibility of the negotiating committee to continue to meet weekly in an effort to reach a settlement on the local level prior to the meeting of the Council.

(f) Notice of a desire to terminate this Agreement shall be handled in the same manner as a proposed change.

Section 1.03: This Agreement shall be subject to change or supplement at any time by mutual consent of the parties hereto. Any such change or supplement agreed upon shall be reduced to writing, signed by the parties hereto.

Section 1.04: During the term of this Agreement, there shall be no stoppage of work either by strike or lockout because of any proposed changes in this Agreement or dispute over matters relating to this Agreement. All such matters must be handled as stated herein.

**GRIEVANCES/DISPUTES**

Section 1.05: There shall be a Labor-Management Committee of three representing the Union and three representing the Employers. It shall meet regularly at such stated times as it may decide. However, it shall also meet within 48 hours when notice is given by either party. It shall select its own Chairman and Secretary. The Local Union shall select the Union representatives and the Chapter shall select the management representatives.

Section 1.06: All grievances or questions in dispute shall be adjusted by the duly authorized representative of each of the parties to this Agreement. In the event that these two are unable to adjust any matter within 48 hours, they shall refer the same to the Labor-Management Committee.

Section 1.07: All matters coming before the Labor-Management Committee shall be decided by a majority vote. Four members of the Committee, two from each of the parties hereto, shall be a quorum for the transaction of business, but each party shall have the right to cast the full vote of its membership and it shall be counted as though all were present and voting.

Section 1.08: Should the Labor-Management Committee fail to agree or to adjust any matter, such shall then be referred to the Council on Industrial Relations for the Electrical Contracting Industry for adjudication. The Council's decisions shall be final and binding.

Section 1.09: When any matter in dispute has been referred to conciliation or arbitration for adjustment, the provisions and conditions prevailing prior to the time such matters arose shall not be changed or abrogated until agreement has been reached or a ruling has been made.

Section 1.10: The Labor-Management Committee shall not recognize any grievance or dispute unless written notice of the charge is given within thirty (30) days after the representatives of the parties to this Agreement first became aware, or reasonably should have been aware, of a violation of this Agreement. This shall not apply to any Section which requires money to be deposited to any Trust Fund.

### ARTICLE II
### Employers Rights - Union Rights
### Favored Nations Clause

Section 2.01: The Union agrees that if, during the life of this Agreement, it grants to any other Employer in the Electrical Contracting Industry on work covered by this Agreement, any better terms or conditions than those set forth in this Agreement, such better terms or conditions shall be made available to the Employer under this Agreement and the Union shall immediately notify the Employer of any such concession.

Section 2.02: The Employer recognizes the Union as the exclusive representative of all its employees performing work within the jurisdiction of the Union for the purpose of collective bargaining in respect to rates of pay, wages, hours of employment and other conditions of employment.

Section 2.03(a): Certain qualifications, knowledge, experience, and financial responsibility are required of everyone desiring to be an Employer in the Electrical Industry. Therefore, an Employer who contracts for electrical work is a person, firm, or corporation, having these qualifications and maintaining a place of business and suitable financial status to meet payroll requirements and employing at least one Journeyman Wireman.

(b) All Employers subject to the terms of this Agreement shall carry an Indemnity Bond, issued by a company authorized to do business in the State of Texas, the minimum for all employers shall be $5,000.00 as evidence of financial responsibility, and to insure proper payments to the Electrical Joint Apprenticeship and Training Trust Fund, the National Employees Benefit Board, the Austin Vacation Trust Fund, IBEW Local Union 520 Annuity Plan and Health

3

and Welfare Plan, 401(k), and P.A.C. deductions, to Local Union 520, for any union dues or assessments withheld on behalf of employees, and wages required under this Agreement be paid directly to the affected employee(s). Bond amounts greater than $5000 shall be required based on the following formula outlined below:

(c) Each employer signatory to the collective bargaining agreement shall be required to secure a welfare bond of at least $5000. Employers shall be required to secure larger bonds based on the following formula: Employers shall provide a welfare bond based on the average monthly hours worked utilizing the previous three years to calculate the average. This number shall be multiplied by the aggregate amount of the benefit package and rounded up to the next one thousandth. If an employer has been delinquent in the payment of benefits more than twice, they shall be required to pay benefits timely on a weekly basis for a period of six months and secure the required bond. After a period of six months of timely benefit payments the employer may return to the monthly schedule. If an employer has no previous experience in the jurisdiction the bond shall be based on the estimated monthly hours of the project to be worked. The maximum bond for any employer shall be $50,000.

The aforesaid Bond shall be executed for a period of time to conform to the time limitations set forth in this Agreement and shall be renewed as provided for in subsequent Agreements.

The Bond shall provide that it may not be canceled by either the Employer or the insurance carrier without thirty (30) days written notice in advance to the Union by Certified, Registered, or Insured mail from the Surety. Proof of the execution of the Bond, in the form of an affidavit executed by the insurance carrier, shall be furnished the Union for each Employer. Such affidavit shall show on its face that it may not be canceled by either the insurance carrier of the Employer without prior notification to the Union. The Local Union shall furnish a copy of the affidavit of Bond to each Fund.

The Obligee (Local Union 520, IBEW) shall notify the Surety within thirty (30) days after having knowledge of a breach of this Agreement by the principal hereof.

(d) Fringe benefits provided for under this Agreement are due and payable on or before the 15th day of the month following the month, covering the hours worked by each employee. Each Employer shall file a monthly report for each fringe benefit, in the form established, therefore, each report shall be filed, regardless of whether or not the Employer has employed any employee in the month covered by said report.

Any Employer who fails to file a report and pay contributions for any of the fringe benefits by the 15th day following the month in which such report or payment is due shall be considered delinquent and is in violation of this Agreement. If payments are not mailed in time to reach the Benefit Fund by the prescribed time, interest at the rate of 1½% monthly will be due and payable. Each Employer shall make available applicable books and records for the purpose of auditing same to determine the amount of his liability and shall pay the expense of audit if delinquencies are found, under guidelines of the Funds. Action to collect contributions may be brought in the name of the respective Fund involved, its Trustees and any assignee or agent

designated by said Trustees. Employer hereby accepts and agrees to the terms of each trust agreement and plan for such fringe Benefit Fund.

A delinquent Employer shall be liable to any employee affected by such delinquency for all benefits lost by such employee by virtue of such delinquency, and such delinquent Employer shall also be liable for reasonable attorneys' fees for any action brought to recover the amount of said benefits.

"This section does not waive or deny any remedies of collection in other sections of this Agreement, Trust or a remedy at law".

Section 2.04: For all employees covered by this Agreement the Employer shall carry Workman's Compensation Insurance with a Company authorized to do business in this State, Social Security, and such other protective insurance as may be required by the laws of this State and shall furnish satisfactory proof of such to the Union. He shall also make contributions to the State Unemployment Compensation Commission.

Section 2.05(a): It is agreed that in accord with the Employees Benefit Agreement of the National Electrical Benefit Fund ("NEBF"), as entered into between the National Electrical Contractors Association and the International Brotherhood of Electrical Workers on September 3, 1946, as amended, and now delineated as the Restated Employees Benefit Agreement and Trust, that unless authorized otherwise by the NEBF the individual Employer will forward monthly to the NEBF's designated local collection agent an amount equal to three percent (3 %) of the gross monthly labor payroll, paid to, or accrued by, the employees in this bargaining unit, and a completed payroll report prescribed by the NEBF. The payment shall be made by check or draft and shall constitute a debt due and owing to the NEBF on the last day of each calendar month, which may be recovered by the suit initiated by the NEBF or its assignee. The payment and the payroll report shall be mailed to reach the office of the appropriate local collection agent not later than fifteen (15) calendar days following the end of each calendar month.

The individual Employer hereby accepts, and agrees to be bound by, the Restated Employees Benefit Agreement and Trust.

(b)    An individual Employer who fails to remit as provided above shall be additionally subject to having his Agreement terminated upon seventy-two (72) hours' notice in writing being served by the Union, provided the individual Employer fails to show satisfactory proof that the required payments have been paid to the appropriate local collection agent.

The failure of an individual Employer to comply with the applicable provisions of the Restated Employees Benefit Agreement and Trust shall also constitute a breach of this Agreement.

Section 2.06: The Union reserves the right to discipline its members for violations of its laws, rules, and agreements.

5

<u>Section 2.07</u>: The Local Union is part of the International Brotherhood of Electrical Workers and any violation or annulment by an individual Employer of the approved Agreement of this or any other Local Union of the IBEW, other than violations of Paragraph 2 of this Section, will be sufficient cause for the cancellation of his Agreement by the Local Union after a finding has been made by the International President of the Union that such a violation or annulment has occurred.

The subletting, assigning, or transfer by an individual Employer of any work in connection with electrical work to any person, firm or corporation not recognizing the IBEW or one of its Local Unions as the collective bargaining representative of his employees on any electrical work in the jurisdiction of this or any other Local Union to be performed at the site of the construction, alteration, painting or repair of a building, structure or other work, will be deemed a material breach of this Agreement.

Notwithstanding anything in this Agreement, the Employer may sublet, assign, or transfer the installation of wiring and devices for fire alarm or security systems if those systems are low voltage system, the installation of lightning protection system, trenching and backfilling excavation to a specialty contractor.

The Employer may also sublet, assign, or transfer any work requiring employees to place themselves in any trench that is greater than a depth of five feet.

The following work, systems and/or functions shall not be covered by the terms of this agreement: field instrumentation and installation, process control instrumentation and installation, instrument and control loop testing and certification, instrument calibration, instrument certification, PLC equipment, PLC programming, distributed control and SCADA systems, control system SCADA & HMI software development and programming, radio telemetry systems, and manufacture of control panels.

Nothing in this Agreement should be construed to require the Employer to purchase manufactured products from employers signatory to a collective bargaining agreement.

All charges of violation of Paragraph 2 of this Section shall be considered as a dispute and shall be processed in accordance with the provisions of this Agreement covering the procedure for the handling of grievances and the final and binding resolution of disputes.

<u>Section 2.08</u>: No member of Local Union 520, while he remains a member of such Local Union and subject to employment by the Employers operating under this Agreement shall himself become a contractor for the performance of any electrical work.

<u>Section 2.09</u>: Only two individuals connected with an employing concern as owner, manager, superintendent, partner, or member of a Board of Directors shall perform any manual electrical work where it displaces the service of a Journeyman; and then only when he has at least one Journeyman, working under the terms of this Agreement, employed and working the same hours including overtime, with the exception of emergency repairs not to last over two (2) hours.

<u>Section 2.10(a)</u>: The Union understands the Employer is responsible to perform the work required by the owner. The Employer shall, therefore, have no restrictions except those specifically provided for in the collective bargaining agreement, in planning, directing, and controlling the operation of all his work, in deciding the number and kind of employees to properly perform the work, in hiring and laying off employees, in transferring employees from job to job within the Local Union's geographical jurisdiction, in determining the need and number as well as the person who will act as Foreman, in requiring all employees to observe the Employer's and/or owner's rules and regulations not inconsistent with this Agreement, in requiring all employees to observe all safety regulations, and in discharging employees for proper cause.

(b)     The employer shall have the right to call a Foreman by name provided:

A)     The employer shall notify the business manager in writing of the name of the individual who is to be requested for employment as a Foreman. Upon such request, the business manager shall refer said Foreman provided the name appears on the highest priority group.

B)     When an employee is called as a Foreman, he must remain as a Foreman for 500 hours or must receive a reduction in force.

### **Portability**

<u>Section 2.11</u>: The Employer if signatory to a collective bargaining agreement or to a letter of assent to an agreement with another IBEW Local Union, may bring an unlimited amount of Supervisory bargaining unit employees employed in that Local Union's jurisdiction into Local Union 520's jurisdiction to perform supervisory work.  Supervisory bargaining unit employees are defined as those that direct bargaining unit employees.  The Employer may also bring one (1) bargaining unit employee employed in that Local Union's jurisdiction into Local Union 520's after the Employer employs one (1) Local Union 520's bargaining unit employee; if necessary this process will continue to alternate.  The Employer shall maintain a minimum of a one (1) to one (1) ratio of Local Union 520's bargaining unit employees to those that are brought in through this Portability provision. The employees brought in through portability may remain on the specific job until the job is complete.  All employees brought in through this portability provision must check in with the Business Manager of IBEW Local Union 520 and all working assessments shall be paid to Local Union 520.  All charges of violations of this section shall be considered as a dispute and shall be processed in accordance with the provisions of the Agreement for the handling of grievances with the exception that any decision of a local labor-management committee that may be contrary to the intent of the parties to the National Agreement on employee Portability, upon recommendation of either or both the appropriate IBEW International Vice President or NECA Regional Executive Director, is subject to review, modification, or rescission by the Council on Industrial Relations.

Section 2.12:  The Union has the right to appoint a Steward at any shop and/or job where workmen are employed under the terms of this Agreement.  The Employer shall be notified in writing of who the Steward is.  No Steward shall be discriminated against by the Employer because of the faithful performance of his duties as Steward.

## ARTICLE III
## Standard Inside Referral

Section 3.01:  In the interest of maintaining an efficient system of production in the Industry, providing for an orderly procedure of referral of applicants for employment preserving the legitimate interests of the employees in their employment status within the area and of eliminating discrimination in employment because of membership or non-membership in the Union, the parties hereto agree to the following system of referral of applicants for employment.

Section 3.02:  The Union shall be the sole and exclusive source of referral of applicants for employment.

Section 3.03:  The Employer shall have the right to reject any applicant for employment.

Section 3.04:  The Union shall select and refer applicants for employment without discrimination against such applicants by reason of membership or non-membership in the Union and such selection and referral shall not be affected in any way by rules, regulations, bylaws, constitutional provisions or any other aspect or obligation of Union membership policies or requirements.  All such selection and referral shall be in accord with the following procedure.

Section 3.05:  The Union shall maintain a register of applicants for employment established on the basis of the Groups listed below.  Each applicant for employment shall be registered in the highest priority Group for which he qualifies.

## Journeyman Wireman - Journeyman Technician

**GROUP I**    All applicants for employment who have four or more years' experience in the trade, are residents of the geographical area constituting the normal construction labor market, have passed a journeyman's examination given by a duly constituted Inside Construction Local Union of the I.B.E.W. or has been certified as a Journeyman Wireman by any inside Joint Apprenticeship and Training Committee, <u>and</u>, who have been employed in the trade for a period of at least one year in the last four years in the geographical area covered by the collective bargaining agreement.

Group I status shall be limited to one Local Union at one time. An applicant who qualifies for Group I in a local union shall be so registered electronically and remain on Group I in that local union unless and until the applicant designates another local union as his or her Group I local union. If an applicant qualifies for Group I status in a local union other than his or her home local union and designates that local as his or her Group I local union, the business manager of the new Group I status local union shall by electronic means notify the business manager of the applicant's former Group I status local union.

**GROUP II**    All applicants for employment who have four or more years' experience in the trade and who have passed a Journeyman Wireman's examination given by a duly constituted Inside Construction Local Union of the IBEW or have been certified as a Journeyman Wireman by any Inside Joint Apprenticeship and Training Committee.

**GROUP III**    All applicants for employment who have two or more years' experience in the trade, are residents of the geographical area constituting the normal construction labor market, and who have been employed for at least six months in the last three years in the geographical area covered by the collective bargaining agreement.

**GROUP IV**    All applicants for employment who have worked at the trade for more than one year.

Section 3.06:  If the registration list is exhausted and the Local Union is unable to refer applicants for employment to the Employer within 48 hours from the time of receiving the Employer's request, Saturdays, Sundays and holidays excepted, the Employer shall be free to secure applicants without using the Referral Procedure. But such applicants, if hired, shall have the status of "temporary employees".

Section 3.07:  The Employer shall notify the Business Manager promptly of the names and Social Security numbers of such "temporary employees" and shall replace such "temporary employees" as soon as registered applicants for employment are available under the Referral Procedure.

Section 3.08:  "Normal construction labor market" is defined to mean the following geographical area plus the commuting distance adjacent thereto which includes the area from which the normal labor supply is secured: Travis, Bastrop, Hays, Blanco, Burnet, Williamson, Lee, Llano, San Saba, Burleson, Caldwell, Fayette, Runnels, Coleman, Brown, Tom Green, Concho, McCulloch, Menard, Mason, Kimble and parts of Coryell and Bell Counties to include that part of Fort Hood in Coryell County south of Cowhouse Creek, and not to extend more than two (2) miles into Bell County from the Southeast boundary line of Coryell County, Gray Field, and the City of Killeen, and parts of Lampasas, Bell and Milam Counties, which are nearer to Austin than Waco, in the State of Texas.

The above geographical area is agreed upon by the parties to include the area defined by the Secretary of Labor to be the appropriate prevailing wage areas under the Davis-Bacon Act to which the Agreement applies.

Section 3.09:  "Resident" means a person who has maintained his permanent home in the above defined geographical area for a period of not less than one year or who, having had a permanent home in this area, has temporarily left with the intention of returning to this area as his permanent home.

Section 3.10:  "Examinations" - An "Examination" shall include experience rating tests if such examination shall have been given prior to the date of this procedure, but from and after the date

of this procedure, shall include only written and/or practical examinations given by a duly constituted Inside Construction Local Union of the IBEW. Reasonable intervals of time for examinations are specified as ninety (90) days. An applicant shall be eligible for examination if he has four years' experience in the trade.

Section 3.11: The Union shall maintain an "Available for Work List" which shall list the applicants within each Group in chronological order of the dates they register their availability for employment.

Section 3.12(a): An applicant who is hired and who receives, through no fault of his own, work of forty hours or less shall, upon re-registration, be restored to his appropriate place within his Group.

(b)     An applicant who has registered on the "Available for Work List" must renew his application every thirty (30) days or his name will be removed from the "List."

Section 3.13: Employers shall advise the Business Manager of the Local Union of the number of applicants needed. The Business Manager shall refer applicants to the Employer by first referring applicants in GROUP I in the order of their place on the "Available for Work List" and then referring applicants in the same manner successively from the "Available for Work List" in GROUP II, then GROUP III, and then Group IV. Any applicant who is rejected by the Employer shall be returned to his appropriate place within this GROUP and shall be referred to other employment in accordance with the position of his GROUP and his place within his GROUP.

Section 3.13(a): An applicant who is discharged for cause two times within a 12-month period shall be referred to the neutral member of the Appeals Committee for a determination as to the applicant's continued eligibility for referral. The neutral member of the Appeals Committee shall, within three business days, review the qualifications of the applicant and the reasons for the discharges. The neutral member of the Appeals Committee may, in his or her sole discretion: (1) require the applicant to obtain further training from the JATC before again being eligible for referral; (2) disqualify the applicant for referral for a period of four weeks, or longer, depending on the seriousness of the conduct and/or repetitive nature of the conduct; (3) refer the applicant to an employee assistance program, if available, for evaluation and recommended action; or (4) restore the applicant to his/her appropriate place on the referral list.

Section 3.14: The only exceptions which shall be allowed in this order of referral are as follows:

(a)     When the employer states bona fide requirements for special skills and abilities in his request for applicants, the Business Manager shall refer the first applicant on the register possessing such skills and abilities.

(b)     The age ratio clause in the Agreement calls for the employment of an additional employee or employees on the basis of age. Therefore, the Business Manager shall refer the first applicant on the register satisfying the applicable age requirements provided, however, that all names in higher priority Groups, if any, shall first be exhausted before such overage reference can be made.

Section 3.15:  An Appeals Committee is hereby established, composed of one member appointed by the Union, one member appointed by the Employer or by the Association, as the case may be, and a Public Member appointed by both these members.

Section 3.16:  It shall be the function of the Appeals Committee to consider any complaint of any employee or applicant for employment arising out of the administration by the Local Union of Sections 4 through 14 of this Agreement.  The Appeals Committee shall have the power to make a final and binding decision on any such complaint which shall be complied with by the Local Union.  The Appeals Committee is authorized to issue procedural rules for the conduct of its business, but it is not authorized to add to, subtract from, or modify any of the provisions to this Agreement and its decisions shall be in accord with this Agreement.

Section 3.17:  A representative of the Employer or of the Association, as the case may be, designated to the Union in writing, shall be permitted to inspect the Referral Procedure records at any time during normal business hours.

Section 3.18:  A copy of the Referral Procedure set forth in this Agreement shall be posted on the Bulletin Board in the offices of the Local Union and in the offices of the Employers who are parties to this Agreement.

Section 3.19:  Apprentices shall be hired and transferred in accordance with the apprenticeship provisions of the Agreement between the parties.

Section 3.20:  When making reductions in the number of employees due to lack of work, Employers shall use the following procedure:

(a)    Temporary employees, if any are employed, shall be laid off first. Then employees in Group IV shall be laid off next, if any are employed in this Group. Next to be laid off are employees in Group III, if any are employed in this Group, then those in Group II, and then those in Group I.

(b)    Paragraph (a) will not apply as long as the special skills requirement as provided for in Section 14(a) is required.

(c)    Supervisory employees covered by the terms of this Agreement will be excluded from layoff as long as they remain in the supervisory capacity.  When they are reduced to the status of Journeyman, they will be slotted in the appropriate group in Paragraph (a) above.

Section 3.21:  Effective January 1, 2020 all Journeymen and Apprentices are required to provide proof of completion, by originally issued card or certificate, of an OSHA 10 safety training course.

## ARTICLE IV
## Hours - Wage Payment

Section 4.01(a):   Eight hours work between the hours of 6:00 A.M. and 6:30 P.M. with thirty (30) minutes for a lunch period, shall constitute a workday.  Forty (40) hours within (5) days, Monday through Friday, inclusive, shall constitute the work week. Saturday may be used for a make-up day due to inclement weather.  If Saturday is used as a make up day, a minimum of eight (8) hours will be scheduled.  The payroll week shall end on Sunday midnight of each week.  Any workman required to punch a time clock that requires more than five (5) minutes to check out shall be paid for any additional time used in checking out.  Workmen reporting to the shop or job shall not report earlier than 15 minutes prior the starting time.  If practical, workmen directed to report to the job shall be at their place of work at the starting time and shall remain at their place of work until quitting time unless otherwise instructed by the Employer.

(b)     Any change from the regular working hours must be five (5) or more day's duration.  When any change in the starting time is made, lunch period, overtime, and shifts may be changed accordingly.

(c)     On jobs where it is required by the general contractor or owner that four ten-hour days be scheduled, the first ten hours of work per day shall be paid at the straight time hourly rate of pay.  The four-day work week will be Monday through Thursday.  Friday may be used for a make-up day due to inclement weather.  If Friday is used as a make-up day, a minimum of 8 hours will be scheduled.

Section 4.02:  All work performed outside of regularly scheduled hours will be paid at one and one-half times the regular straight-time rate, provided the employee works all of the regular scheduled hours made available, as defined in Art. IV Sec. 4.01(a) and Sec. 4.01(c).  In the event the employee does not work all of the regularly scheduled hours available he will receive no premium rate until after he has worked 40 hours.  Work on Sundays shall be paid at double the straight-time rate.  The following holidays:  New Year's Day, Memorial Day, Fourth of July, Labor Day, Veteran's Day, Thanksgiving Day, the Friday following Thanksgiving Day, and Christmas Day, shall be paid at double the straight-time rate.  Holidays shall be recognized only on the day on which they fall.

 Section 4.03:  The minimum regular straight-time rate of wages for Journeyman Inside Wireman (JIW) shall be as follows:

Effective June 6, 2022:  $32.00
Effective January 2, 2023:  $34.00
Effective January 1, 2024:  $35.00
Effective January 6, 2025:  $35.75

| APPENDIX A – MINIMUM BENEFITS | | | | | |
|---|---|---|---|---|---|
| **Multiplier** | **Classification** | **NEBF** | **Annuity** | **Medical** | **JATC** |
| 130% of JIW wage rate | General Foreman (area foreman required) | 3% | 8% | $5.45 | 1%*** |
| 120% of JIW wage rate | General Foreman (no area foreman required) | 3% | 8% | $5.45 | 1%*** |
| 120% of JIW wage rate | Area Foreman | 3% | 8% | $5.45 | 1%*** |
| 110% of JIW wage rate | Foreman | 3% | 8% | $5.45 | 1%*** |
| 100% | Journeyman Inside Wireman | 3% | 8%* | $5.45 | 1%*** |
| **Apprentice Wireman** | | | | | |
| 50% of JIW wage rate | 1st Year - Period 1 | 3% | ** | $3.70 | 1%*** |
| 55% of JIW wage rate | 1st Year - Period 2 | 3% | 3% | $3.70 | 1%*** |
| 60% of JIW wage rate | 2nd Year - Period 3 | 3% | 3% | $3.70 | 1%*** |
| 70% of JIW wage rate | 3rd Year - Period 4 | 3% | 5% | $3.70 | 1%*** |
| 75% of JIW wage rate | 4th Year - Period 5 | 3% | 5% | $3.70 | 1%*** |
| 80% of JIW wage rate | 5th Year - Period 6 | 3% | 8% | $3.70 | 1%*** |
| | Unindentured Apprentice | 3% | | $3.70 | 1%*** |

\* 9% effective January 6th 2025
\*\* 1% effective January 6th 2025
\*\*\* 1% of Journeyman Straight-Time Rate

Section 4.04: The Employer shall pay all wages in cash or check weekly, not later than quitting time on Friday.  The Employer may pay wages by direct deposit, through debit card by cash or by check. Employees may be required to execute authorization forms for direct electronic deposit of wages on a weekly basis to the bank or credit union of the employee's choice. This manner of payment, once adopted, may not be changed by the Employer except upon 14-day advance written notification to the employee with notification to the Union. In the event that employees are not paid by the above-stated time, waiting time at the regular straight time rate (not to exceed eight (8) hours in any one twenty-four (24) hour period) shall be charged until payment is made. The previous sentence only applies in the event that there has been a previous instance within the

preceding twelve (12) months of the Employer failing to timely pay wages. Otherwise, paid waiting time only begins if payment has not been received by quitting time on Friday.

Section 4.05:  Should an Employer issue a paycheck that does not clear the bank for payment, provided the employee does not hold said check for more than thirty (30) days before making attempt to cash said check, then said Employer, while in the jurisdiction of the Local Union, thereafter shall pay in cash.

Section 4.06:  When Friday is a recognized holiday, wages shall be paid Thursday for all work during that week.  An itemized statement shall be furnished each workman, showing total hours worked, total wages earned, and any deductions from such wages.

Section 4.07:  Any man reporting for work and being laid off, not having been notified the day previous of such layoff shall receive not less than two (2) hours wages in order to gather his tools and personal belongings and shall be paid off in full immediately.  In the event the employee is not paid off, waiting time at the regular rate (not to exceed eight [8] hours in any one twenty-four [24] hour period) shall be charged until payment is made.  Two (2) hours wages for gathering tools and personal belongings will not be paid if the employee has not notified the Employer of a previous day's absence.  An employee who voluntarily quits shall receive the employee's final paycheck on the next contractually scheduled pay day.

Section 4.08(a):  When men are directed to report to a job or shop and do not start to work due to causes other than weather conditions, they shall receive two (2) hours pay.

(b)    When men receive two (2) hours pay as show-up time, they shall remain available for work for a full two (2) hour period.

(c)    If requested by the Employer, during inclement weather conditions, men shall remain on the job available for work and shall receive two (2) hours pay.

(d)    When men are directed to report to a job and are instructed to go to work by the Employer or his representative, weather conditions permitting, and they refuse, they shall not receive the two (2) hours show-up time.

(e)    When men are called out on trouble or emergency calls outside of regularly scheduled working hours, they shall be paid from the time they leave home until they return at the overtime rate, with a minimum of one (1) hour's work.

Section 4.09:  The Employer shall pay for traveling time and provide for at least one of the following provisions:

(i)    Furnish transportation from shop to job and job to job and job to shop during the regular working hours; or

(ii)   Reimburse the employee for mileage at the standard mileage rate determined by the Internal Revenue Service for actual mileage from shop to job and job to job and job to shop during all the regular working hours to be reimbursed.

On work outside the jurisdiction of the Union, the Employer shall provide one of the following:

(i)    Furnish transportation, board and all other necessary expenses;

(ii)    Reimburse the employee for mileage at the standard mileage rate determined by the Internal Revenue Service and furnish board and all other necessary expenses.

Section 4.10:  No traveling time shall be paid before or after working hours to workmen for traveling to or from any job when workmen are ordered to report to the job, provided his day ends at such job.

Section 4.11:  The Employer shall furnish a monthly payroll report to Local Union 520 postmarked no later than 15th day of the following month, giving workman's name, classification, wage rate, straight-time hours worked, overtime hours and gross wages paid to all workmen.  This report shall identify the exact date of all employees who have quit or been discharged during the working period covered by this report.

A monthly payroll report to the Local Union and to all Trust Funds shall be completed and mailed each month, whether the Contractor has workmen employed or not.

Section 4.12:  Workmen being laid off or discharged by an Employer or workmen severing their employment shall be given a termination slip stating the reason for termination and signed by their immediate supervisor or their Employer, and a copy shall be sent to Local Union 520 and the Central Texas Chapter, N.E.C.A.  Additionally, employers shall provide a termination slip to the JATC Training Director in the case of an apprentice.

Section 4.13:   When so elected by the contractor, multiple shifts of eight (8) hours for at least five (5) days' duration may be worked.  When two (2) ore three (3) shifts are worked:

The first shift (day shift) shall consist of eight (8) consecutive hours worked between the hours of 8:00 A.M. and 4:30 P.M. Workmen on the "day shift" shall be paid at the regular hourly rate of pay for all hours worked.

The second shift (swing shift) shall consist of eight (8) consecutive hours worked between the hours of 4:30 P.M. and 1:00 A.M. Workmen on the "swing shift" shall be paid at the regular hourly rate of pay plus **10%** for all hours worked.

The third shift (graveyard shift) shall consist of eight (8) consecutive hours worked between the hours of 1:00 A.M. and 9:00 A.M. Workmen on the "graveyard shift" shall be paid at the regular hourly rate of pay plus **15%** for all hours worked.

The Employer shall be permitted to adjust the starting hours of the shift by up to two (2) hours in order to meet the needs of the customer.

If the parties to the Agreement mutually agree, the shift week may commence with the third shift (graveyard shift) at 12:30 A.M. Monday to coordinate the work with the customer's work

15

schedule.  However, any such adjustment shall last for at least five (5) consecutive days duration unless mutually changed by the parties to this Agreement.

An unpaid lunch period of thirty (30) minutes shall be allowed on each shift.  All overtime work required before the established start time and after the completion of eight (8) hours of any shift shall be paid at one and one-half times the "shift" hourly rate.

There shall be no pyramiding of overtime rates and double the straight time rate shall be the maximum compensation for any hour worked.  There shall be no requirement for a day shift when either the second or third shift is worked.

## UNION DUES DEDUCTION

Section 4.14:  Upon receipt of a voluntary written authorization the Employer agrees to deduct and forward to the Financial Secretary of the Local Union - the additional working dues from the pay of each employee.  The amount to be deducted shall be the amount specified in the approved Local Union Bylaws.  Such amount shall be certified to the Employer by the Local Union upon request by the Employer.

## ARTICLE V
## General Rules

Section 5:01:  In order to comply with existing laws, nothing in this Agreement shall be construed as limiting the right of Employers to move, transfer, or assign employees from his shop to any specific job or from any job to any other job upon which said Employer holds a contract for the performance of the electrical work.  An employee, once on the Employer's payroll, may be worked by him at any location at the discretion of the Employer.

Section 5.02:  When the Employer has no shop located in the jurisdiction of this Union, then under such circumstances the job site shall be considered the city in which the shop is located with one job site designated as the permanent shop.

Section 5.03:  On all jobs requiring five (5) or more Journeymen, at least every fifth Journeyman, if available, shall be fifty (50) years of age or older.

Section 5.04(a):  Journeyman shall provide themselves with the following tools:

| | |
|---|---|
| One tester not over 1000 volts or one Multi Volt Tester | Combination square-Tri-square Adjustable 12" blade |
| Knife | Hacksaw frame |
| Crescent wrench 8" to 12" | Two pair channel lock type pliers |
| Screw drivers | One pair long nose pliers |
| Hammer | One pair Dyke pliers |
| Small level | One chalk line |
| Plumb bob | Keyhole saw |
| Awl or Center punch | One steel measuring tape at least |

16

| | |
|---|---|
| Pencil | 16' long |
| One pair side cutting pliers | Pipe wrench 12" to 14" or small |
|   7" or larger | Chain tong |
| Wire stripper | |

(b)    Journeyman may furnish other similar tools but shall not be required to do so.

(c)    A Journeyman may carry or store in his toolbox small tools furnished by and belonging to his Employer (power tools excluded).  Such tools must be the property of the Employer, to be returned to him upon request or termination of the employee but are not to be replaced by the employee if broken or stolen.

(d)    Apprentices shall provide themselves with the following tools only, except that first-year Apprentice may provide himself with a small toolbox and a third- or fourth-year Apprentice may have a toolbox on the job and start building up his tool list towards that of a Journeyman.

| | |
|---|---|
| 2 pair channel lock type pliers | Pencil |
| 1 pair side cutters pliers - 7" | Hammer |
|   or larger | One voltage tester not over 1000 or Multi Volt Tester |
| One steel measuring tape at least 16' long | Small level |
| Screw drivers | Hacksaw frame |
| Knife | Wire stripper |
| Awl | |

He may furnish one pair of long-nose and one pair of Dyke pliers if he desires.

(e)    The Employer shall furnish necessary locked storage to reasonably protect tools from the weather and vandalism on large jobs where it is necessary to leave tools on the job.

Section 5:05:  The Employer shall furnish all other necessary tools or equipment. Workmen will be held responsible for the tools or equipment issued to them providing the Employer furnishes the necessary lockers, toolboxes, or other safe place of storage. Tools must be taken out and put away during working hours.

Section 5.06:  Workmen shall install all electrical work in a safe and workman like manner in accordance with applicable code and contract specifications.

Section 5.07:  The representatives of the Union shall be allowed access to any building at any reasonable time where members of the Union are employed.

Section 5.08:  In all shops or on all jobs where four (4) or more Journeymen are employed, one Journeyman shall be designated as a Foreman.

On all jobs, the first working crew may consist of a maximum of eleven (11) men, that is, ten (10) Journeyman and one (1) working Foreman.

When a second crew is established, it may consist of a maximum of eleven (11) men, that is, ten (10) Journeymen and one (1) working General Foreman.

When a third or subsequent crew is established, it may consist of a maximum of eleven (11) men, that is, ten (10) Journeymen and one (1) working Foreman.  Each crew shall be supervised by a Foreman and the Foremen shall be supervised by the General Foreman.

No General Foremen shall supervise more than fifty-five (55) men, including Journeymen and Foremen.  For each additional fifty-five (55) men, the above procedures shall repeat except that the sixth and subsequent Foremen shall be supervised by an Area Foreman.

Section 5.09:  Foremen, Area Foremen, and General Foremen shall be permitted to use tools. This shall not mean that they cannot handle material. Foremen may be required to attend and complete Foremen courses when provided.

Section 5.10:  On jobs requiring a Foreman, workmen are not to take directions, orders or accept the layout from anyone other than their Foreman. Foremen are to take directions, orders, or layout from their Area Foreman only, when Area Foremen are required.  When Area Foremen are not required, Foremen shall take directions, orders or layouts from the General Foreman only. Area Foremen shall take directions, orders or layout from the General Foreman only.

Section 5.11:  No workman on one job shall replace a workman on another for any overtime work.  All overtime work on any job shall be distributed fair and equal to all workmen. Exceptions to the two conditions above shall include the need for special skills or when workmen have not worked the available straight time hours during the "work week" as defined in Article IV, Section 1.

Section 5.12:  The Employer shall see that cold water (in warm weather) and first-aid kits are available on all jobs and/or trucks.

Section 5.13:  The Employer shall furnish protective equipment for workmen on energized circuits or equipment carrying 300 volts or more.  On all energized circuits or equipment carrying 440 volts or over, as a safety measure, two (2) or more Journeymen must work together.

Section 5.14:  All conduit shall be cut and threaded by workmen covered by this Agreement.

Section 5.15:  Where pipe cutting and threading machines, electric drills, electric benders, electric chipping hammers, sanders, similar portable tools and all other power-driven equipment are used, such shall be operated by workmen covered by this agreement in the jurisdiction of the IBEW.

Section 5.16:   All pulling of wire or cable shall be done by workmen covered by this Agreement.

Section 5.17:   Journeyman cable splicers shall furnish only hand tools.  On all work of joining, splicing and insulating and the placing of flame-proof covering where wiped lead joints are necessary, it shall be performed by cable splicers.  Journeymen only shall be used in assisting cable splicers, except that one de-energized enclosures, an Apprentice may be used.  Cable splicers shall not be required to work on wires or cables when the difference in potential is over 200 volts between any two conductors or between any conductor and ground, unless assisted by one Journeyman.  In no case shall cable splicers be required to work on energized cables carrying in excess of 480-volt circuit.

Section 5.18:   Welders gloves, sleeves, hoods and all hard hats shall be furnished by the Employer. Workmen may be required to sign a payroll deduction form to authorize the deduction from their final paycheck to cover reimbursement of unreturned hard hats.  Charges shall not exceed actual cost paid by the Contractor.

Section 5.19:   The installation of all electrical raceways whether metal, wood, fiber, plastic clay or of any other conceivable composition, when used to contain electrical or grounding system conductors, and the installation, preparation and connection of all electrical and/or grounding or bonding conductors shall be performed by workmen employed under the terms of this Agreement and paid the hourly applicable negotiated wage rate contained herein unless it is an integral part of the building structure.

Section 5.20:   No work shall be performed on Labor Day except in case of emergency.

Section 5.21:   On any job of five (5) or more days duration on the main campus of the University of Texas, the Employer will either provide for employee parking within three blocks of the job or arrange for covered transportation from a parking area within two miles of the job.

## ARTICLE VI
## Standard Inside Apprenticeship Language

Section 6.01:   There shall be a local Joint Apprenticeship and Training Committee (JATC) consisting of a total of 6 or 8 members who shall also serve as Trustees to the local apprenticeship and training trust. An equal number of members (either 3 or 4) shall be appointed, in writing, by the local chapter of the National Electrical Contractors Association (NECA) and the local union of the International Brotherhood of Electrical Workers (IBEW).

The local apprenticeship standards shall be in conformance with national guideline standards and industry policies to ensure that each apprentice has satisfactorily completed the NJATC required hours and course of study.  All apprenticeship standards shall be registered with the NJATC before being submitted to the appropriate registration agency.

The JATC shall be responsible for the training of apprentices, journeymen, installers, technicians, and all others (un-indentured, intermediate journeymen, etc.).

Section 6.02:   All JATC member appointments, reappointments, and acceptance of appointments shall be in writing.  Each member shall be appointed for a 3-year term, unless being appointed for a lesser period of time to complete an expired term. The terms shall be staggered, with one (1) term from each side expiring each year. JATC members shall complete their appointed term unless removed for cause by the party they represent, or they voluntarily resign. All vacancies shall be filled immediately

The JATC shall select from its membership, but not both from the same party, a Chairman and a Secretary who shall retain voting privileges. The JATC will maintain one (1) set of minutes for JATC committee meetings and a separate set of minutes for trust meetings.

The JATC should meet on a monthly basis, and also upon the call of the Chairman.

Section 6.03:   Any issue concerning an apprentice, or an apprenticeship matter shall be referred to the JATC for its review, evaluation, and resolve, as per standards and policies.  If the JATC deadlocks on any issue, the matter shall be referred to the Labor-Management Committee for resolution as outlined in Article One of this Agreement; except for trust fund matters, which shall be resolved as stipulated in the local trust instrument.

Section 6.04:   There shall be only one (1) JATC and one (1) local apprenticeship and training trust.  The JATC may, however, establish joint subcommittees to meet specific needs, such as residential or telecommunications apprenticeship. The JATC may also establish a subcommittee to oversee an apprenticeship program within a specified area of the jurisdiction covered by this agreement.

All subcommittee members shall be appointed, in writing, by the party they represent. A subcommittee member may or may not be a member of the JATC.

Section 6.05:   The JATC may select and employ a part-time or a full-time Training Director and other support staff, as it deems necessary. In considering the qualifications, duties, and responsibilities of the Training Director, the JATC should review the Training Director's Job Description provided by the NJATC.  All employees of the JATC shall serve at the pleasure and discretion of the JATC.

Section 6.06:   To help ensure diversity of training, provide reasonable continuous employment opportunities, and comply with apprenticeship rules and regulations, the JATC, as the program sponsor, shall have full authority for issuing all job training assignments and for transferring apprentices from one employer to another. The employer shall cooperate in providing apprenticeships with needed work experiences. The local union referral office shall be notified, in writing, of all job training assignments. If the employer is unable to provide reasonable continuous employment for apprentices, the JATC is to be so notified.

Section 6.07:   All apprentices shall enter the program through the JATC as provided for in the registered apprenticeship standards and selections procedures.

An apprentice may have their indenture canceled by the JATC at any time prior to completion as stipulated in the registered standards. Time worked and accumulated in apprenticeship shall not be considered for local union referral purposes until the apprentice has satisfied all conditions of apprenticeship. Individuals terminated from apprenticeship shall not be assigned to any job in any classification, or participate in any related training, unless they are reinstated in apprenticeship as per the standards, or they qualify through means other than apprenticeship, at sometime in the future, but no sooner than two years after their class has completed apprenticeship, and they have gained related knowledge and job skills to warrant such classification.

Section 6.08:  The JATC shall select and indenture a sufficient number of apprentices to meet local manpower needs.  The JATC is authorized to indenture the number of apprentices necessary to meet the jobsite ratio as per section 6.12.

Section 6.09:  Though the JATC cannot guarantee any number of apprentices, if a qualified employer requests an apprentice, the JATC shall make every effort to honor the request.  If unable to fill the request within ten (10) working days, the JATC shall select and indenture the next available person from the active list of qualified applicants.  An active list of qualified applicants shall be maintained by the JATC as per the selection procedures.

Section 6.10:  To accommodate short-term needs when apprentices are unavailable, the JATC shall assign un-indentured workers who meet the basic qualifications for apprenticeship.  Un-indentured workers shall not remain employed if apprentices become available for OJT assignment.  Un-indentured workers shall be used to meet job site ratios except on wage-and-hour (prevailing wage) job sites.

Before being employed, the un-indentured person must sign a letter of understanding with the JATC and the employer - agreeing that they are not to accumulate more than two thousand (2,000) hours as an un-indentured, that they are subject to replacement by indentured apprentices, and that they are not to work on wage-and-hour (prevailing wage) job sites.

Should an un-indentured worker be selected for apprenticeship, the JATC will determine, as provided for in the apprenticeship standards, if some credit for hours worked as an un-indentured will be applied toward the minimum OJT hours of apprenticeship.

The JATC may elect to offer voluntary related training to un-indentured; such as Math Review, English, Safety, Orientation/Awareness, introduction to OSHA, First-Aid and CPR.  Participation shall be voluntary.

Section 6.11:  The employer shall contribute to the local health and welfare plans and to the National Electrical Benefit Fund (NEBF) on behalf of all apprentices and un-indentured.  Contributions to other benefit plans may be addressed in other sections of this agreement.  (See Article IV Section 4.03).

Section 6.12:  Each job site shall be allowed a ratio of one (1) apprentice(s) for everyone (1) Journeyman Wireman.

| Number of Journeymen | Maximum Number of Apprentices/ Unindentured |
|---|---|
| 1 to 3 | 1 to 3 |
| 4 to 6 | 4 to 6 |
| etc. | etc. |

The first person assigned to any job shall be a Journeyman Wireman.

A job site is considered to be the physical location where employees report for their work assignments.  The employer's shop (service center) is considered to be a separate, single job site. All other physical locations where workers report for work are each considered to be a single, separate job site.

Section 6.13:  An apprentice is to be under the supervision of a Journeyman Wireman at all times.  This does not imply that the apprentice must always be in-sight-of a Journeyman Wireman.  Journeymen are not required to constantly watch the apprentice. Supervision will not be of a nature that prevents the development of responsibility and initiative. Work may be laid out by the employer's designated supervisor or journeyman based on their evaluation of the apprentice's skills and ability to perform the job tasks. Apprentices shall be permitted to perform job tasks in order to develop job skills and trade competencies.  Journeymen are permitted to leave the immediate work area without being accompanied by the apprentice.

Apprentices who have satisfactorily completed the first four years of related classroom training using the NJATC curriculum and accumulated a minimum of 6,500 hours of OJT with satisfactory performance, shall be permitted to work alone on any job site and receive work assignments in the same manner as a Journeyman Wireman. An apprentice shall not be the first person assigned to a job site and apprentices shall not supervise the work of others.

Section 6.14:  Upon satisfactory completion of apprenticeship, the JATC shall issue all graduating apprentices an appropriate diploma from the NJATC.  The JATC shall encourage each graduating apprentice to apply for college credit through the NJATC. The JATC may also require each apprentice to acquire any electrical license required for journeymen to work in the jurisdiction covered by this agreement.

Section 6.15:  The parties to this Agreement shall be bound by the Local Joint Apprenticeship and Training Trust Fund Agreement which shall conform to Section 302 of the Labor-Management Relations Act of 1947 as amended, ERISA, and other applicable regulations.

The Trustees authorized under this Trust Agreement are hereby empowered to determine the reasonable value of any facilities, materials, or services furnished by either party.  All funds shall be handled and disbursed in accordance with the Trust Agreement.

Section 6.16:  All employers subject to the terms of this Agreement shall contribute the amount of funds specified by the party's signatory to the local apprenticeship and training trust agreement.  The current rate of contribution is:  1% of the Journeyman straight-time rate per hour for each hour worked. This sum shall be due the Trust Fund by the same date as is their payment to the NEBF under the terms of the Restated Employers Benefit Agreement and Trust.

## ARTICLE VII
### Vacation

Section 7.01:  Upon written authorization from the employee, the Employer shall make a weekly payroll deduction of six percent (6%) from the gross pay of each employee. The employee shall request the payroll deduction at the beginning of employment with an employer. The employee shall notify the employer, in writing of any modifications to their participation status for the voluntary payroll deduction in the month of January or July. Payroll deduction revisions will be made effective on the first payroll of the following month. The Employer monthly shall forward the amount of individual deductions from each employee as shown on the monthly payroll to Velocity Credit Union, ATTN: Teller Operations, P.O. Box 1089, Austin, TX, 78767, for deposit to that employee's Velocity Credit Union vacation account, and simultaneously shall provide the Local Union with a written report which sets forth, for each employee, the number of hours worked, the employee's classification and pay rate, the employee's gross pay, and the amounts deducted.

Section 7.02:  The payment and payroll report shall be mailed to reach the Velocity Credit Union no later than the 15th day of the month following the end of each benefit period.

Section 7.03:  Each employee shall be allowed to take two (2) weeks of annual vacation between February 1st and January 31st.

Section 7.04:  An Employer's failure to timely remit the payroll deductions or payroll report to the Velocity Credit Union, or the payroll report to the Local Union, as required above shall be treated as a delinquent contribution under the terms of the applicable Inside Construction Agreement.

## ARTICLE VIII
### Annuity Plan

It is mutually agreed between the parties hereto and in accordance with the IBEW Local Union 520 Annuity Plan entered into by and between the Central Texas Chapter, NECA, and Local Union 520, IBEW, the Employer will forward to the Annuity Plan an amount equal to the percentage levels per Appendix A (See Article IV Section 4.03) of the gross wages of all classifications of employees for all hours worked within the geographical limits of the Union's jurisdiction when work is performed for any Employer operating under this Agreement. The payment shall be made monthly, together with the payroll report forms specified in Article IV.

## ARTICLE IX
## 401(k) Savings Plan

All employers signatory to this Agreement and/or employing workmen under the terms of this Agreement, shall deduct from each employee's Gross Weekly Payroll of employees who wish to participate, a voluntary deductible amount to be deposited into a 401(k) savings plan, upon the written request of each employee. Employees may enroll at the beginning of the employment with an Employer and enroll or change withholding each year during the month of January or July. Withholding will be made effective on the first payroll of the following month.

## ARTICLE X
## Health and Welfare

It is hereby mutually agreed between the parties hereto and in accordance with the Benefit contract governing the electrical benefit fund entered into by and between the Central Texas Chapter, NECA, and Local Union 520, IBEW, that the Employer will forward to the Central Texas Health and Benefit Plan the following contributions as per Appendix A (See Article IV Section 4.03) for all hours actually worked by each employee (both straight time and overtime) within the geographical limits of the Union's jurisdiction when work is performed for any Employers operating under the terms of the basic Agreement for all Employers. Payments shall be made monthly together with a monthly payroll report on a form that will be furnished for that purpose by the Trustees of the Electrical Benefit Plan.

It is agreed that employers shall contribute solely up to $5.45 per hour of increases declared by the Trustees of the Plan. Any increases above $5.45 shall be split equally between the employer and employee through a wage reduction of the JIW rate of pay, all other classifications shall adjust accordingly.

## ARTICLE  XI

## National Labor Management Cooperative Committee

Section 11.01: The parties agree to participate in the NECA-IBEW National Labor-Management Cooperation Fund, under authority of Section 6(b) of the Labor-Management Cooperation Act of 1978, 29 U.S.C. §175(a) and Section 302(c)(9) of the Labor-Management Relations Act, 29 U.S.C. §186(c)(9). The purposes of this Fund include the following:

(1)      to improve communication between representatives of labor and management;
(2)      to provide workers and employers with opportunities to study and explore new and innovative joint approaches to achieving organizational effectiveness;
(3)      to assist workers and employers in solving problems of mutual concern not susceptible to resolution within the collective bargaining process;
(4)      to study and explore ways of eliminating potential problems which reduce the competitiveness and inhibit the economic development of the electrical construction industry;

24

(5)    to sponsor programs which improve job security, enhance economic and community development, and promote the general welfare of the community and the industry;

(6)    to encourage and support the initiation and operation of similarly constituted local labor-management cooperation committees;

(7)    to engage in research and development programs concerning various aspects of the industry, including, but not limited to, new technologies, occupational safety and health, labor relations, and new methods of improved production;

(8)    to engage in public education and other programs to expand the economic development of the electrical construction industry;

(9)    to enhance the involvement of workers in making decisions that affect their working lives; and

(10)    to engage in any other lawful activities incidental or related to the accomplishment of these purposes and goals.

Section 11.02:  The Fund shall function in accordance with, and as provided in, its Agreement and Declaration of Trust, and any amendments thereto and any other of its governing documents. Each Employer hereby accepts, agrees to be bound by, and shall be entitled to participate in the NLMCC, as provided in said Agreement and Declaration of Trust.

Section 11.03:  Each employer shall contribute one cent ($.01) per hour worked under this Agreement up to a maximum of 150,000 hours per year.  Payment shall be forwarded monthly, in a form and manner prescribed by the Trustees, no later than fifteen (15) calendar days following the last day of the month in which the labor was performed. The Central  Texas Chapter, NECA, or its designee, shall be the collection agent for this Fund.

Section 11.04:  If an Employer fails to make the required contributions to the Fund, the Trustees shall have the right to take whatever steps are necessary to secure compliance. In the event the Employer is in default, the Employer shall be liable for a sum equal to 15% of the delinquent payment, but not less than the sum of twenty dollars ($20), for each month payment of contributions is delinquent to the Fund, such amount being liquidated damages, and not a penalty, reflecting the reasonable damages incurred by the Fund due to the delinquency of the payments.  Such amount shall be added to and become a part of the contributions due and payable, and the whole amount due shall bear interest at the rate of ten percent (10%) per annum until paid. The Employer shall also be liable for all costs of collecting the payment together with attorneys' fees.

## ARTICLE XII
## P.A.C. Fund

The Employer agrees to deduct and transmit to the Local Union 520, IBEW, Committee on Political Education (IBEW-COPE) .05 cents for each clock hour worked from the wages of those employees who voluntarily authorize such contributions on the forms provided for that purpose by IBEW-COPE.

The deductions will be made monthly and reported and remitted in accordance with Article IV, Section 11 of this Agreement.

Any Employee may revoke the voluntary authorization at any time by notifying the Company and IBEW-COPE in writing of a desire to do so.

The Union will indemnify and save the Company harmless from any claims, suits, or any other form of liability as a result of making payroll deductions described above.

## ARTICLE XIII

This Agreement set forth the entire contract between the Chapter and the Union and supersedes all previous understandings and Agreements between them and amendments thereto.

## ARTICLE XIV
## Substance Abuse Language

The dangers and costs that alcohol and other chemical abuses can create in the electrical contracting industry in terms of safety and productivity are significant. The parties to this Agreement resolve to combat chemical abuse in any form and agree that, to be effective, programs to eliminate substance abuse and impairment should contain a strong rehabilitation component. The local parties recognize that the implementation of a drug and alcohol policy and program must be subject to all applicable federal, state, and local laws and regulations. Such policies and programs must also be administered in accordance with accepted scientific principles and must incorporate procedural safeguards to ensure fairness in application and protection of legitimate interests of privacy and confidentiality. To provide a drug-free workforce for the Electrical Construction Industry, each IBEW local union and NECA chapter shall implement an area-wide Substance Abuse Testing Policy. The policy shall include minimum standards as required by the IBEW and NECA. Should any of the required minimum standards fail to comply with federal, state, and/or local laws and regulations, they shall be modified by the local union and chapter to meet the requirements of those laws and regulations.

## ARTICLE XV
## Code of Excellence

The parties to this Agreement recognize that to meet the needs of our customers, both employer and employee must meet the highest levels of performance, professionalism, and productivity. The Code of Excellence has proven to be a vital element in meeting the customers' expectations. Therefore, each IBEW local union and NECA chapter shall implement a Code of Excellence Program. The program shall include minimum standards as designed by the IBEW and NECA.

ARTICLE XV1 – Local Union 520 Administrative Fund

    (a) Effective June 6, 2022, all employers subject to the terms of this Agreement shall contribute an amount equal to ten cents($.10) per hour worked by each employee working under the terms of this agreement. The sum shall be due no later than the 15th of the month following the end of the calendar month in which the work was performed on a form provided by the Administration Fund.

    (b) These funds are for the administration of the benefits processing and the Administrator of the "Fund" shall be appointed by the Central Texas Chapter, NECA. The Administrator and CTXNECA will indemnify and save the Union harmless from any claims, suits, or any other form of liability as a result or administering this fund as described above.

    (c) No part of the funds collected under this fund shall be used for any purpose which is held to be in conflict with the interests of the IBEW and its Local Unions.

    (d) The failure of an individual employer to comply with the applicable provisions of the fund shall constitute a breach of this labor agreement and shall be subject to the same delinquency requirements as pertain to the other trust funds set forth in this agreement. It shall be the responsibility of the fund and/or the fund administrator, not the Local Union to enforce this provision.

## **Separability Clause**

Should any provision of this Agreement be declared illegal by any court of competent jurisdiction, such provision shall immediately become null and void, leaving the remainder of the Agreement in full force and effect and the parties shall, thereupon, seek to negotiate substitute provisions which are in conformity with the applicable laws.

SIGNED FOR THE UNION:                    SIGNED FOR THE EMPLOYER:

Local Union No. 520 of the International          Central Texas Chapter National Electrical
Brotherhood of Electrical Workers               Contractors Association

By: _____        By: _____
    Ben Brenneman                              Don Kanetzky
    Business Manager/Financial Secretary        Chapter Manager

Date: _6/1/2022_____                     Date: _6-1-2022_____

**1ˢᵗ YEAR APPRENTICE WAGE**
**MEMORANDUM OF UNDERSTANDING**

**BETWEEN**

**CENTRAL TEXAS CHAPTER, NECA**

**AND**

**IBEW LOCAL UNION 520**


It is mutually agreed upon between IBEW Local 520 and Central Texas Chapter, NECA, effective May 27, 2019, that the minimum wage for a first-year apprentice shall be $15.00 per hour. This MOU shall remain in effect until such time as 50% of the JIW wage rate is greater than $15.00 per hour.


SIGNED FOR THE UNION:                    SIGNED FOR THE EMPLOYER:

Local Union No. 520 of the International      CENTRAL TEXAS CHAPTER, NECA
Brotherhood of Electrical Workers

By: _____          By: _____
Ben Brenneman                                Don Kanetzky
Business Manager/Financial Secretary          Executive Director

Date 6/1/2022                                 Date 6-1-2022

# CE ADVANCEMENT
## MEMORANDUM OF UNDERSTANDING

### BETWEEN

### CENTRAL TEXAS CHAPTER, NECA

### AND

### IBEW LOCAL UNION 520

A CE shall obtain a Texas State Journeyman's License before being upgraded to JIW status.

SIGNED FOR THE UNION:                    SIGNED FOR THE EMPLOYER:

Local Union No. 520 of the International      CENTRAL TEXAS CHAPTER, NECA
Brotherhood of Electrical Workers

By: _____          By: _____
Ben Brenneman                             Don Kanetzky
Business Manager/Financial Secretary      Executive Director

Date 6/1/2022                             Date 6-1-2022

2022 Residential MOU

**Scope:** This MOU shall apply to all dwelling units including single family dwellings, apartments, and condominiums four stories and below. This MOU shall not apply to the commercial portion of mixed-use developments.

1. A CW/CE, having attained a Residential Journeyman's License, shall be awarded 2000 SBCs/ OJT hours. This CW/CE shall be allowed to work unsupervised on residential construction/service work.
2. A worker holding a Residential or Unrestricted Journeyman's License shall be the first person assigned to any residential project.
3. On all residential projects with four or more workers, a worker holding a Residential Journeyman's License shall be designated Residential foreman. This Residential foreman shall be allowed to supervise a crew of up to 10 workers of his classification or below, including first- and second-year apprentices. This Residential foreman shall receive a 10% pay premium above his/her classification.
4. On all residential projects requiring more than 11 workers, one shall be designated Residential General Foreman. The Residential General Foreman shall receive a 20% pay premium above his/her classification.
5. There shall be one foreman per 10 workers.
6. A CW/CE with a Residential Journeyman's License shall continue to accrue SBCs/OJT hours and be advanced in the CW/CE program accordingly.

SIGNED FOR THE UNION:

Local Union No. 520 of the International Brotherhood of Electrical Workers

By: _____
      Ben Brenneman
      Business Manager/Financial Secretary

Date: 6/7/2022

SIGNED FOR THE EMPLOYER:

Central Texas Chapter National Electrical Contractors Association

By: _____
      Don Kanetzky
      Chapter Manager

Date: 6-7-2K22

**SHORT CALL EXTENSION**

**MEMORANDUM OF UNDERSTANDING**
**BETWEEN**
**CENTRAL TEXAS CHAPTER, NECA**
**AND**
**IBEW LOCAL UNION 520**

In order to accommodate short term employment needs of the employer signed to this agreement, and the needs of our customers, the union and employer agree to the following:

Article III, Section 3.12 of the Inside Agreement between Central Texas Chapter, NECA and Local Union 520, of the International Brotherhood of Electrical Workers, shall have the following language added to the existing language contained in Article III, Section 3.12:

> A forty (40) hour call may be extended an additional forty (40) hours by the employer is job conditions warrant such extension. An applicant is not required to stay for the second forty (40) hour period unless told in advance the job as for eighty (80) hours. For the purposes of calculating hours worked under this Memorandum, only the <u>straight time hours worked</u> will be used. Any overtime worked during the one (1) or two (2) week period covered by this Memorandum <u>will not affect the applicant's position</u> on the Out-of-Work List.

This Memorandum shall continue in effect from year to year hereafter unless changed or terminated in the same manner as prescribed for the Inside Agreement.

By: _____
Chris Wagner
Business Manager/Financial Secretary
IBEW Local Union 520

Date _6/1/2022_____

By: _____
Don Kanetzky
Executive Director
Central Texas NECA

Date _6-1-2022_____

**SMALL WORKS**
**MEMORANDUM OF UNDERSTANDING**

**BETWEEN**

**CENTRAL TEXAS CHAPTER, NECA**

**AND**

**IBEW LOCAL UNION 520**

IBEW Local Union 520 and Central Texas Chapter NECA bargaining unit employers have repeatedly discussed possible solutions to gaining market share within the small works arena. In an effort to assist all signatory contractors in this arena, Local 520 offers the following:

**Four Person Crew**

Effective June 6, 2022 the Union agrees on any/all jobs throughout the Local 520 jurisdiction, with four (4) or less employees, the signatory contractor may utilize the services of a Construction Electrician (CE) and/or a 6th period apprentice. This CE or apprentice must be in possession of a State of Texas Journeyman License and may work alone, if necessary.

Additionally, the licensed CE may supervise up to three (3) additional equal or lower classified workers (CE's and/or CW's). This crew mix would not include Apprentice Wiremen. As long as the jobsite requires 4 or less employees, there will be no need for a Journeyman Inside Wireman (JIW) nor a Foreman (F). Should the four-person crew increase to five (5) or more, a licensed JIW or a licensed Foreman must be utilized.

Due to the market conditions, the parties recognize this agreement to be a variance to Article VI Section 6.12 of the inside agreement that necessitates the JIW being the first person on the job. The parties recognize Apprentices and CW/CEs operate under a formal training program where OJT under direct and indirect supervision by a JIW is still an important component to their development. Therefore, employers must be diligent to ensure CW/CE employees receive OJT training supervised by a JIW outside of these qualifying projects.

Signatory Contractors are not limited to any number of Four Person Crew jobsites. Pay rates and applicable benefits for the above classified workers shall be the ones listed in the Local 520 Inside Collective Bargaining Agreement between IBEW Local Union 520 and Central Texas Chapter NECA.

This Memorandum of Understanding will expire on June 2, 2025 unless both Parties agree to extend it for an additional timeframe.

SIGNED FOR THE UNION:

Local Union No. 520 of the International Brotherhood of Electrical Workers

By: _____

Ben Brenneman
Business Manager/Financial Secretary


Date _____


SIGNED FOR THE EMPLOYER:

CENTRAL TEXAS CHAPTER, NECA

By: _____

Don Kanetzky
Executive Director


Date _____

**Memorandum of Understanding**
**Summer Worker Program**

1.  Must be by informal understanding between the local Union, the Employer and the JATC, with written guidelines.

2.  The guidelines should specify the following conditions:

    a.  The maximum number to be employed.

    b.  Effective only when placement will not displace an Apprentice or Intermediate Journeyman.

    c.  Qualifications:
        1. At least 16 years old
        2. A bona fide student (evidence required)
        3. Summer worker and employer signatures on statement of understanding (sample attached)

    d.  Placement for a specific period of time, not to exceed 90 days.  (Ending with the first pay period in September).

    e.  Placed as a <u>Summer Worker</u>.  NOT as an apprentice.   (Cannot be referred, or worked on jobs requiring registered apprentices).

    f.  Rate of pay shall be equal to that of a first period indentured apprentice.

    g.  Work performed as a Summer Worker is not counted towards apprenticeship.

    h.  Wages paid to Summer Workers are included in gross labor payroll, and the 3% of gross labor payroll payment to NEBF must include Summer Workers wages.

    i.  Limited electrical work (same as unindentured apprentice).

By: _____           By: _____
Benn Brenneman                                  Don Kanetzky
Business Manager/Financial Secretary            Executive Director
IBEW Local Union 520                            Central Texas NECA

Date _6/1/2022_                         Date _6-1-2022_

**REVISED (Date corrected)**
**Memorandum of**
**Understanding**

**Between**
**IBEW Local Union**
**520 and**
**Central Texas Chapter, NECA**

Effective June 6, 2022 through June 2, 2025.

On jobs of five (5) or more days duration on the main campus* of the University of Texas, if parking is not provided, the employer will reimburse $6.00 per day for parking to each employee who reports to work on time and works all regular hours available to him. The employer is not responsible to provide transportation to and from parking areas.

By: _____    By: _____
Ben Brenneman                     Don Kanetzky
Business Manager/Financial Secretary    Executive Director
IBEW Local Union 520              Central Texas NECA

Date: 6/1/2022 _____    Date: 6-1-2022 _____

*from I-35 to Guadalupe Street, from East & West Dean Keeton Street to East & West Martin Luther King, Jr. Blvd.

## ZONE III MEMORANDUM OF UNDERSTANDING

It is mutually agreed between IBEW Local Union 520 and Central Texas Chapter, NECA, effective June 6, 2022, that the following counties shall be designated as "Zone III":

Runnels, Coleman, Brown, Tom Green, Concho, McCulloch, Menard, Mason, and Kimble

It is further agreed that, within Zone III, the JIW rate of pay shall be as follows:

| | |
|---|---|
| June 6, 2022: | $28.52 |
| January 1, 2023: | $28.52 |
| January 2, 2024: | $28.75 |
| January 6, 2025: | $29.00 |

Wage rates for CEs shall be set per the following table for the period of June 6, 2022 – June 2, 2025:

| CE 1 | CE 2 | CE 3 | CE 4 | CE 5 | CE 6 | CE 7 | CE 8 | CE 9 | CE 10 |
|------|------|------|------|------|------|------|------|------|-------|
| 45% | 45% | 50% | 55% | 60% | 65% | 70% | 75% | 80% | 90% |

All other terms and conditions of employment will be those set forth in the AGREEMENT Between The CENTRAL TEXAS CHAPTER of the NATIONAL ELECTRICAL CONTRACTORS ASSOCIATION, INC. and LOCAL UNION NO. 520 of the INTERNATIONAL BROTHERHOOD OF ELECTRICAL WORKERS.

SIGNED FOR THE UNION:                    SIGNED FOR THE CHAPTER:

Local Union No. 520 of the                    Central Texas Chapter
International Brotherhood of                   National Electrical Contractors
Electrical Workers                             Association, Inc.


_____                    _____
Ben Brenneman                                 Don Kanetzky
Business Manager                              Chapter Manager

6/7/2022                                      6-7-2022
_____                    _____
Date                                          Date



# Construction Wireman/Construction Electrician
# Memorandum of Understanding

**PURPOSE:**

This agreement has two goals; one is to recruit an adequate number of personnel to meet the demands of the electrical construction industry in the jurisdiction covered by the inside construction and maintenance agreement.  The second objective is to establish a standard by which those recruited will be properly placed for continuing skills based training.

**OBJECTIVES:**

A. Provide a uniform means by which individuals can be brought into the organized industry.
B. Provide employment opportunities for those individuals who may not meet the entrance requirements of the local AETA
C. Establish a fair wage scale based on a skill standard that provides a clear and formal path to becoming a Journeyman Inside Wireman while maintaining a productive workforce.
D. Provide electrical employees with experience and potential, an avenue to becoming a Journeyman Inside Wireman.
E. To provide a second chance program for those indentured apprentices who discover that they do not fit into the AETA program.
F. To provide Central Texas Chapter, NECA and IBEW Local Union 520 the autonomous means of developing training programs to meet the needs of changing local markets.

**DEFINITIONS:**

A. CW/CE – Construction Wireman/Construction Electrician
B. SBC – Skill Based Credits
C. AETA – Austin Electrical Training Alliance (formerly called Joint Apprenticeship Training Center)
D. JATC – Joint Apprenticeship Training Committee
E. LU 520 – International Brotherhood of Electrical Workers Local Union 520
F. NECA – Central Texas National Electrical Contractors Association
G. TDLR – Texas Department of Licensing and Regulation
H. OJT – On the Job Training

**SECTION 1 – ADMINISTRATION**

A. The AETA and LU 520 shall be responsible for:

1) Administering skill-based evaluations (supervised by Local Union staff)
2) Monitoring progress of the CW/CE for wage advancement
3) Develop and deliver skill-based training courses
4) Notifying LU 520 of the number of apprentices available for work assignments
5) Recruiting, processing and dispatching applicants to employers for assignment.



**Construction Wireman/Construction Electrician
Memorandum of Understanding**

B. Either party (NECA, LU 520 or AETA) may review all skill-based evaluations and evaluation procedures.

## SECTION 2 – WAGES, BENEFITS AND ADVANCEMENT

Upon successful accumulation of 16,000 Skill Based Credits (SBC) and successful completion of a Texas State Journeyman's License the Construction Electrician shall be upgraded to Journeyman Inside Wireman.

**A. Wages Appendices A1 and A2**

1. Accumulated SBC's shall determine the individuals initial pay rate. Individuals shall advance upon meeting the requirements shown in Appendix D.
   or

2. Experienced Applicants with verifiable industry wage -or- AETA Transferees (Ref: SECTION 5): wages shall remain frozen until accumulated SBC's warrant pay advancement.

**a. BENEFITS – REFERENCE APPENDICES A1 and A2:**

1. Accumulated SBC's shall determine what level of benefits shall apply.
2. All benefits shall be paid in accordance with the various trust fund qualifications.

**b. SKILLS BASED CREDITS (SBC'S)** shall accrue by the following methods:

1. One SBC per each OJT hour worked for a signatory contractor.
2. One SBC for every two (2) OJT hours worked for a non-signatory contractor (wage documentation required; no credit (SBC's) for hours worked prior to program enrollment).
3. SBC's from skill based evaluation.
4. SBC's credited by successful completion of skills based courses.  SBC's achieved in this manner shall not exceed 4,000 for the life of the program.
   (see APPENDIX C)

   Note:  In no case shall SBC's be earned above the stated maximums through the evaluation process and/or the optional course work within each skill discipline (see APPENDIX B).



**Construction Wireman/Construction Electrician
Memorandum of Understanding**

**c. <u>EXPERIENCED APPLICANTS SHALL</u>:**

1) Provide verifiable electrical industry wage documentation to establish their wage rate. <u>(wage documents for public works projects where a wage determination is established shall not be eligible for verification)</u>

<u>OR</u>

2) Take the next available skills based evaluation to determine how many SBC's shall be credited and establish initial wage rate.

   SEE APPENDICES A1 AND A2 FOR EVALUATION, CLASS SBC'S AND WAGE SCHEDULE.

## <u>SECTION 3 – IMPLEMENTATION:</u>

The LU 520 shall be primarily responsible for the recruitment, processing and dispatching of applicants to employers. The LU 520 shall provide all processing information to the AETA for the purpose of tracking the CW/CE's progress in the program.

The JATC shall be responsible for the training of participants in accordance with Article VI, section 6.01 of the inside agreement.

The EMPLOYER shall be responsible for providing a termination slip to the LU 520, NECA, and the AETA when a CW/CE becomes unemployed.

CW/CE shall be employed on a conditional basis for 90 days from their first assignment. During the conditional employment period the LU 520 and NECA shall determine the individuals continued status in the program.

No employer is guaranteed a specific number of CW/CE.

Each job shall follow a ratio of one or more (1 or more) CW/CE(s) to one (1) JIW.

An employer who fails or refuses to hire available apprentices, in accordance with the agreed upon ratio of apprentices to journeymen, shall not be entitled to hire CW/CE.

CW/CE may be transferred from one qualifying project to another by the employer.

CW/CE shall not be included in the calculation of the apprentice to journeyman ratio.

Referral records may be inspected at LU 520 by a representative of the Employer or the Association.



# Construction Wireman/Construction Electrician
# Memorandum of Understanding

Effective January 1, 2020 all Construction Wiremen and Construction Electricians are required to provide proof of completion, by originally issued card or certificate, of an OSHA 10 safety training course.

## SECTION 4 – SUPERVISION:

The CW/CE who has less than 8,000 SBC's shall be under the supervision of a Journeyman Inside Wireman. It shall be the responsibility of the supervisor to lay out the work required and to permit the CW/CE to perform the work on his/her own. A CW/CE who has 8,000 SBC's shall be allowed to work with no supervision but shall not supervise any apprentices or Journeyman Wireman.

## SECTION 5 – TRANSFERS:

A. All transfers shall be approved by the JATC.
B. Individuals are limited to a maximum of (2) transfers.
C. Transferees shall not experience a Wage Rate or Benefit Reduction.
D. AETA to CW/CE program:
   Local Apprentices from AETA apprenticeship program may transfer to the CW/CE program at an equal pay rate providing the apprentice has:
   1) A satisfactory work history (hours worked, absenteeism, and tardiness); and
   2) Established in writing the basis for the transfer.
   3) Apprentice transferees shall be credited one (1) SBC for each OJT Hour + (500) SBC's per completed academic year of apprenticeship. In no instance shall this transfer result in the apprentice being granted more than the maximum SBC's as shown below:

### AETA to CW/CE Credit Table

| AETA Completed | Credited SBC's | AETA Completed | Credited SBC's |
|---|---|---|---|
| Less than 1 year | 2000 | Completed 3rd year | 8000 |
| Complete 1st year | 4000 | Completed 4th year | 10000 |
| Complete 2nd year | 6000 | Completed 5th year | 12000 |

E. CW/CE to AETA Program:

   CW/CE meeting the requirements for entrance into the AETA program may transfer to the AETA program as outlined by the JATC standards. The transferring CW/CE will complete the IBEW/NECA ETA Proficiency Exam to determine placement in the academic portion of the training and will receive OJT Hour credits based on JATC guidelines. Transferees shall not experience a reduction in their wage rate.



# Construction Wireman/Construction Electrician Memorandum of Understanding

## SECTION 6 – TERM OF AGREEMENT:

This Agreement shall take effect on June 2, 2019.  The terms and conditions of this Agreement shall continue on jobs bid under said terms until such jobs are completed.

**Disputes:**    All allegations of infractions of this agreement shall be referred to the Labor Management Committee as defined in the current inside/maintenance collective bargaining agreement.  In the event of a deadlock the matter shall be referred to the IBEW Seventh District Vice-president and the NECA Southern Region Director for final and binding adjudication.  This agreement is a Memorandum of Understanding to the area inside construction and maintenance collective bargaining agreement and may continue with or without requirement of separate notice.

**Commitment:**  The two parties, by signature below, hereby commit and promise to use their best efforts to see that this Memorandum is used to its highest level for the maximum benefit of employers and employees alike.

The parties further promise and agree that if changes are needed to this Memorandum; those changes will be addressed in an atmosphere of mutual trust and cooperation for the equal benefit of employers and employees alike.  **Furthermore, any changes to this agreement or program shall be subject to review by the IBEW Seventh District Vice-President and the NECA Southern Region Director.**

_____    _____
Ben Brenneman                                          Don Kanetzky
Business Manager/Financial Secretary          Chapter Manager
IBEW Local Union 520                                Central Texas Chapter, NECA


Date:_____          Date: _____



# Construction Wireman/Construction Electrician
# Memorandum of Understanding

## APPENDIX A1 (CW1-CW6)

| Benefits | CE 1 | CE 2 | CE 3 | CE 4 | CE 5 | CE 6 |
|---|---|---|---|---|---|---|
| Range SBC'S | 0-2K | 2.01K-4K | 4.01K-6K | 6.01K-8K | 8.01K-10K | 10.01K-12K |
| JIW Rate | 44% | 44% | 49% | 54% | 59% | 64% |
| A.E.T.A. | NA | NA | NA | 1% of JIW | 1% of JIW | 1% of JIW |
| NLMCC | $0.01 | $0.01 | $0.01 | $0.01 | $0.01 | $0.01 |
| H&B | Plan C | Plan B | Plan B | Plan B | Plan B | Plan B |
| NEBF (3%) | 3% | 3% | 3% | 3% | 3% | 3% |
| Annuity | NA | NA | NA | 3% | 3% | 3% |
| AMF | .10 | .10 | .10 | .10 | .10 | .10 |

## APPENDIX A2 (CE1- CE 4)

| Benefits | CE 7 | CE 8 | CE 9 | CE 10 |
|---|---|---|---|---|
| Range SBC's | 12.01K-13K | 13.01K-14K | 14.01K-15K | 15.01K- more |
| JIW Rate | 68% | 73% | 78% | 85% |
| A.E.T.A. | 1% of JIW | 1% of JIW | 1% of JIW | 1% of JIW |
| NLMCC | $0.01 | $0.01 | $0.01 | $0.01 |
| H&B | Plan B | Plan B | Plan B | Plan B |
| NEBF (3%) | 3% | 3% | 3% | 3% |
| Annuity | 5% | 5% | 5% | 5% |
| AMF | .10 | .10 | .10 | .10 |

| |
|---|
| Low |
| Middle |
| High |



**Construction Wireman/Construction Electrician**
**Memorandum of Understanding**

**NOTE:  Benefit Schedule shown reflects current rates.  Rates shall be adjusted as per the Current Inside Agreement.**
**-Health and Welfare provides the employee with the option to select employee single coverage (for Levels 2, 3 & 4 only) or employee/dependent coverage (for Levels 2-8). Employees may change this election once each calendar year or more often as the trust fund rules provide.**
**-Only SBCs earned from participating employers qualify for benefits eligibility.**



## Construction Wireman/Construction Electrician
## Memorandum of Understanding

### APPENDIX B

| SKILL DISCIPLINE | MAX SBC's |
|---|---|
| Branch Wiring | 6,400 |
| Feeder Wiring | 1,600 |
| Panels & Transformers | 1,600 |
| Switchgear & Motor Control Center | 1,120 |
| Motors & Motor Controls | 800 |
| Lighting & Lighting Controls | 2,400 |
| Grounding | 160 |
| Devices | 320 |
| Electrical Codes & Ordinances | 160 |
| Blueprints & Specifications | 160 |
| Meters & Tools | 160 |
| OSHA & Job Safety | 160 |
| Agreements | 160 |
| Service & Troubleshooting | 800 |



**Construction Wireman/Construction Electrician
Memorandum of Understanding**

## APPENDIX C

**Optional Coursework SBC Curriculum Allocation**

| Skills Course | SBC's Credit | Course Hours |
|---|---|---|
| Branch Wiring | 920 | 72 |
| Electrical Codes & Ordinances | 320 | 30 |
| Service/Troubleshooting | 280 | 24 |
| Panels & Transformers | 280 | 24 |
| OSHA & Job Safety | 280 | 24 |
| Meters & Tools | 280 | 24 |
| Feeder Wiring | 280 | 24 |
| Blueprints & Specifications | 280 | 24 |
| Agreements | 240 | 24 |
| Switchgear & Motor Control Centers | 200 | 18 |
| Motors & Motor Controls | 200 | 18 |
| Lighting & Lighting Controls | 200 | 18 |
| Grounding | 120 | 12 |
| Devices | 120 | 12 |
| **TOTAL** | **4000** | **180** |



**Construction Wireman/Construction Electrician
Memorandum of Understanding**

## APPENDIX D

| Classification | SBC's | Training | Awarded |
|---|---|---|---|
| **CW2** | 2000 | Conduit Bending 1 | 230 |
| **CW3** | 4000 | Blueprint Reading | 280 |
| **CW4** | 6000 | Conduit Bending 2 | 230 |
| **CW5** | 8000 | Codeology | 120 |
| **CW6** | 10000 | Basic Code | 120 |
| **CE1** | 12000 | Conduit Bending 3 | 230 |
| **CE2** | 13000 | Grounding/Transformers | 320 (120+200) |
| **CE3** | 14000 | Services | 200 |
| **CE4** | 15000 | Motor Control | 280 |
| **JIW** | 16000 | | |

# EX. 3



BELLNUNNALLY
ATTORNEYS & COUNSELORS

JAY WALLACE
TEL: 214.740.1407
FAX: 214.740.1407
JWALLACE@BELLNUNNALLY.COM

December 27, 2023

**VIA CMRRR #9414 7266 9904 2221 4527 24**
I.B.E.W. Local Union 520
Attn: Diarmid Campbell
909 Caddo Street
San Angelo, Texas 76901

**VIA CMRRR #9414 7266 9904 2221 4527 31**
Central Texas Chapter, NECA
Attn: Don Kanetzky
4000 Caven Road
Austin, Texas 78744

Re:    Confirmation of May 30, 2023 Termination of Letter of Assent-A, Labor
Agreement, and Bargaining Rights Assigned to NECA and IBEW, Local
Union No. 520

To Whom it May Concern:

This firm represents A.S.H. Electrical Services, LLC ("A.S.H."). Direct all future communications regarding your contractual relationship with A.S.H and its termination to me.

As you are aware, A.S.H. sent a letter to both Central Texas Chapter, NECA and I.B.E.W. Local Union 520 ("Local Union") dated May 30, 2023 stating its intent to terminate its contract with both entities upon 150 days' notice and detailing the Local Union's failures to uphold its obligations under the collective bargaining agreement. According to the terms set forth in the Letter of Assent-A, A.S.H.'s May 30, 2023 letter, receipt of which has been confirmed, dutifully informed Local Union and Central Texas Chapter, NECA of its intent to terminate.

With regard to the Local Union's failures, specifically, the Local Union fraudulently induced A.S.H. into the Letter of Assent-A by promising to provide qualified craftsmen and women knowing that it could not fulfil this promise.

Furthermore, the Local Union made additional promises to A.S.H. that the union craftsmen in A.S.H.'s workforce would be subject to the Code of Excellence program, ensuring that the workers would adhere to certain rules and regulations. However, when issues with drug use by craftsmen **on the job** were brought before the Local Union, the Local Union took no action, despite such behaviors by craftsmen putting A.S.H. at high risk of liability, as well as its clients' and the general public's safety in risk. A.S.H. will not and cannot tolerate the Local Union's negligent operations within its business.



I.B.E.W. LOCAL UNION 520
CENTRAL TEXAS CHAPTER, NECA

For these reasons, among others, A.S.H. properly provided notice of termination on May 30, 2023. Accordingly, A.S.H. considers its contractual relationship with IBEW to be terminated as of November 1, 2023 and withdrawals and/or revokes all collective bargaining rights assigned to the Local Union and Central Texas Chapter, NECA.

Sincerely,

Jay Wallace

# EX. 4



Local 520

# INTERNATIONAL BROTHERHOOD OF ELECTRICAL WORKERS

## LOCAL UNION 520

**4818 East Ben White Boulevard, Suite 300 • Austin, Texas 78741**
**512.326.9540 • Fax 512.326.9596**

May 30, 2024

Adam Johnke
ASH Electrical Services
3214 Sunset Dr
San Angelo, TX 76904

Mr. Johnke,

I appreciate your commitment, as stated in your January 30, 2024 letter, to continue to abide by the terms of the CBA, at least through May 31, 2024. However, the CBA does not expire until June 1, 2025. In order to head off the litigation that will ensue the moment you prematurely move to terminate the CBA I will make one more attempt at explaining to you how termination or modification of the Agreement works.

As you note, Article I, Section 1.02(a) provides that "either party desiring to change or terminate this Agreement must provide written notification at least 90 days prior to the expiration date of the Agreement…" Though you provided the notice well over a year in advance of the expiration date of the Agreement, the Union will recognize that notice as you giving the Union a heads-up well in advance of the Agreement's expiration date that, once the Agreement expires on June 1, 2025, you wish to terminate the Agreement. The next phrase in Article I, Section 1.02 (a) states "…or any anniversary date occurring thereafter." This phrase means that, had you failed to timely provide notice 90 days prior to the expiration date, you would not forever waive your right to bargain for a termination of the Agreement, but rather you would again have a chance 90 days before the anniversary of the previous expiration date to again attempt to provide timely notice. Note that the duty to provide 90 days notice of a desire to change or terminate the Agreement applies to both parties. Thus, if the Local Union desires that the Agreement NOT be terminated, but instead to be "changed," the Union must provide you with notice at least 90 days prior to the June 1, 2025 expiration date. You can be assured that you will receive from the Union such notice at some point at least 90 days prior to the June 1, 2025 expiration date.

The exchange of notifications described in the paragraph above does not effect any change or termination of the Agreement. This merely begins a negotiation process wherein the parties must meet and confer to attempt to come to a mutual agreement. If none is reached then the parties may jointly or unilaterally submit the unresolved dispute to the Council on Industrial Relations (CIR). See Article I, Section 1.02(d). The CIR will then resolve the dispute by either authorizing your desired termination of the Agreement, or by imposing a new CBA with its own

expiration date.  Until the dispute is resolved the current Agreement's terms remain in effect.  See Article I, Section 1.02(c).

In your January 30, 2024 letter you cite to the CBA's Article I, Section 1.01 to claim that Article I allows parties to terminate the Agreement on an annual basis.  This is a misreading of the language.  What the language actually means is that, in the event the parties do not timely exchange the required notifications and just let the expiration date pass without terminating or changing the Agreement, there is another opportunity to terminate or to make changes by providing the required notifications prior to the anniversary of the CBA's expiration date.  And if they fail to provide the notifications after the first anniversary, they may do so at the next one, and so on.

Please confirm your understanding that the CBA remains in effect until changed or terminated in accordance with the terms of Article I, which contains no provisions allowing either party to unilaterally change or terminate it.  Also, to the extent you believe that the Local Union has not, in any way, abided by the Agreement, Article I, Sections 1.05-1.10 sets forth a grievance procedure for adjudicating your claims.  Please feel free to make use of that procedure.

Kind Regards

Ben Brenneman
Business Manager/Financial Secretary
IBEW Local 520

# EX. 5



# INTERNATIONAL BROTHERHOOD OF ELECTRICAL WORKERS

## LOCAL UNION 520

**4818 East Ben White Boulevard, Suite 300 • Austin, Texas 78741**
**512.326.9540 • Fax 512.326.9596**

Local 520

2/3/2025

Adam Jhonke
A.S.H. Electrical Services
4000 Caven Rd.
Austin, TX 78745

RE: Changes to the A.S.H. Electrical Services/IBEW 520 Agreement

Mr. Johnke,

As I assured you by letter of May 30, 2024, this is notice, per Article I, Section 1.02(a) of the Inside Agreement, of IBEW Local 520's desire to modify the terms and conditions of said Agreement. Further, per Section 1.02(b) of said Article, the proposed changes will be specified in writing and provided to you no later than the first bargaining session. I propose that we meet on February 20, 2025 to begin negotiating a successor Agreement. I am, of course, open to considering any alternative dates you might propose.

Should there be any questions concerning the nature of this notice, please contact me at your earliest convenience.

Thank you,

Ben Brenneman
Business Manager
IBEW Local 520

# EX. 6P

**IN THE UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF TEXAS, AUSTIN DIVISION**

| | | |
|---|---|---|
| INTERNATIONAL BROTHERHOOD OF | § | |
| ELECTRICAL WORKERS, LOCAL 520, | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 1:25-cv-1643 |
| | § | |
| A.S.H. ELECTRICAL SERVICES, LLC, | § | |
| Defendant. | § | |

## PLAINTIFF'S ORIGINAL COMPLAINT

TO THE HONORABLE UNITED STATES DISTRICT JUDGE:

Comes now Plaintiff, International Brotherhood of Electrical Workers ("IBEW"), Local 520, and complains of Defendant A.S.H. Electrical Services, LLC. In support of its complaint, Plaintiff states the following:

### NATURE OF THE ACTION

1.  IBEW Local 520 brings this action against Defendant to confirm and enforce a May 13, 2025 interest arbitration award, which included a new collective bargaining agreement ("CBA") issued by the Council on Industrial Relations for the Electrical Contracting Industry ("CIR"), an arbitration body co-sponsored by the National Electrical Contractors Association ("NECA") and the IBEW whose purpose is arbitrating labor disputes within the electrical industry. This action is filed under Section 301 of the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 185.

### JURISDICTION AND VENUE

2.  This Court has jurisdiction over Plaintiff's claims pursuant to 28 U.S.C. §§ 1331, 1343 and 29 U.S.C. § 185.

3.      A substantial part of the events and omissions giving rise to the claim in this suit occurred in Travis County, Texas, and venue is thus proper in this Court pursuant to 28 U.S.C. § 1391 and 29 U.S.C. § 185.

## PARTIES

4.      Plaintiff IBEW Local 520 is a "labor organization" as defined in 29 U.S.C. § 152(5), which represents and seeks to represent workers employed in the electrical industry in Central Texas.

5.      Defendant A.S.H. Electrical Services, LLC is a Texas limited liability company engaged in the electrical trade. Defendant is an "employer" as defined in 29 U.S.C. § 152(2). Defendant may be served with process by serving its registered agent, Adam Christopher Johnke, at 3214 Sunset Drive, San Angelo, Texas 76904, or wherever he may be found.

## FACTS

6.      On May 13, 2021, Defendant signed a Letter of Assent assigning its collective bargaining rights to the Central Texas Chapter of NECA as Defendant's representative and agreeing to be bound by the current and any subsequent approved Inside Agreement between NECA and Local 520. Under the Letter of Assent, Defendant became bound to an Inside Agreement ("the prior CBA") that remained effective until June 1, 2025, and continued in effect from year to year thereafter from June 1 through May 31 of each year, unless changed or terminated as provided for in other sections of the Agreement.

7.      Section 1.02(d) of the Prior CBA provided,

Unresolved issues or disputes arising out of a failure to negotiate a renewal or modification of this agreement that remain on the 20th of the month preceding the next regular meeting of the Council on Industrial Relations for the Electrical Contracting Industry (CIR) may be submitted jointly or unilaterally to the Council for adjudication. Such unresolved issues or disputes shall be submitted no later than the next regular meeting of the Council following the expiration date of this

agreement or any subsequent anniversary date. The Council's decisions shall be final and binding.

8.      On May 30, 2023, Defendant purported to revoke the Letter of Assent previously given to NECA. On December 27, 2023, Defendant announced its desire to terminate the Prior CBA. Local 520 informed Defendant that a mid-term termination of the Letter of Assent and the Prior CBA is not permissible. Local 520 did, however, accept the premature notices as sufficient to terminate the Letter of Assent upon its anniversary date and as notice of Defendant's desire to terminate the CBA at its expiration date.

9.      On February 3, 2025, Local 520 notified Defendant by letter of Local 520's desire to modify the CBA between the parties. The parties met to bargain several times in March and April 2025, but no agreement on a successor to the still effective Prior CBA was reached.

10.     In 2025, the CIR scheduled regular meetings in February, May, August and November. The August and November regular meetings post-dated the Prior CBA's June 1, 2025 expiration date. By April 2025, the CIR's May 2025 regular meeting was the only regular meeting scheduled to occur before that expiration date.

11.     On April 16, 2025, under Prior CBA Section 1.02(d), to timely provide notice in advance of the Prior CBA's expiration date, and to ensure preservation during the Prior CBA's term of Local 520's rights under that section, Local 520 advised Defendant of its wish to submit to the CIR, for adjudication during the CIR's May 2025 regular meeting, unresolved issues that remained between the parties as of April 20, 2025, and that may continue to be unresolved in bargaining conducted after April 20, 2025. Local 520 invited Defendant to join in the submission to the CIR. Defendant did not respond to the invitation, so on April 17, 2025, Local 520 unilaterally submitted the bargaining dispute to the CIR for adjudication under Section 1.02(d) of the Prior CBA.

12.    On May 1, 2025, the due date for submissions to CIR for adjudication during its May 2025 session, Local 520 presented its submission to the CIR, which included its proposed changes to the CBA. The bargaining dispute was presented to the CIR at its May 13, 2025 meeting. Defendant participated by brief only, and Local 520 participated by brief and oral argument by Business Manager Ben Brenneman and Assistant Business Manager Diarmid Campbell during interest arbitration proceedings before the CIR.

13.    The CIR's decision and award, dated May 13, 2025, in which the CIR noted its "careful consideration of the evidence submitted," ordered Local 520 and Defendant to sign and immediately implement the June 2, 2025 to June 4, 2028 collective bargaining agreement ("the New CBA") attached to and made a part of the CIR's decision and award. The CIR's decision and award addressed all the unresolved issues and disputes between the parties in the included New CBA.

14.    On May 23, 2025, Defendant requested that the CIR reconsider its decision based on Defendant's claim that "a just and reasonable weighing of evidence presented did not occur." The CIR responded by letter on June 10, 2025, stating, "The CIR fully considered the issues you have raised in your request for reconsideration. There is no basis for the CIR to reconsider its decision, which is final and binding on the parties."

15.    At all times since receiving the New CBA, Defendant has failed and refused to sign, implement, and be bound by the New CBA. Defendant continues to refuse to sign, implement, and be bound by the New CBA imposed upon it through interest arbitration before the CIR.

## CAUSE OF ACTION

16.     In hearing and deciding the unresolved bargaining issues and disputes placed before it by Local 520, and in issuing its decision and award, the CIR acted within the scope of its authority, to which Defendant agreed under the Prior CBA.

17.     The CIR arguably construed and/or applied the Prior CBA in issuing its May 13, 2025 decision and award, and the decision and award drew its essence from the Prior CBA. Any legal determination made by the CIR is beyond the authority of this Court to review and/or was proper. Under the Prior CBA and the CIR's May 13, 2025 decision and award, and accordingly under LMRA Section 301, 29 U.S.C. § 185, Defendant is obligated to accept the CIR's May 13, 2025 decision and award and to sign, implement, and comply with the New CBA that was a part of that decision and award. Local 520 is entitled to confirmation and enforcement of the CIR's May 13, 2025 decision and award.

## INJURY

18.     As a result of Defendant's refusal to sign, implement, and comply with the New CBA, Local 520 and its members have been harmed. Specifically, Local 520 has been deprived of the benefit of a contract it negotiated on behalf of its members and the benefits paid to several joint NECA/IBEW funds on Local 520's behalf. Local 520's members have been harmed by being deprived of wages, hours, working conditions, and benefits required by the New CBA imposed upon Defendant through interest arbitration.

## PRAYER FOR RELIEF

Wherefore, premises considered, Plaintiff respectfully requests that Defendant be cited to appear and answer herein, and upon hearing, that the Court award Plaintiff the following relief:

A.     Confirm and enforce the CIR's May 13, 2025 decision and award, and the included New CBA, by ordering Defendant to sign, implement, and comply with the entirety of the New CBA, including, but not limited to the payment of any unpaid compensation or unpaid fringe benefit contributions accrued from June 2, 2025 to the date of Defendant's full compliance with the New CBA.

B.     Order Defendant to submit to an audit by an accountant of Local 520's choosing to determine the amounts of any unpaid compensation and/or unpaid fringe benefit contributions accrued from June 2, 2025 to the date of Defendant's full compliance with the New CBA.

C.     Under Section 2.02(d) of the New CBA, order Defendant to pay to Local 520 all accountant and attorney fees it incurs in seeking the payment of monies identified in that section by bringing this action to confirm and enforce the CIR's May 13, 2025 decision and award.

D.     Order Defendant to pay any attorney fees and costs incurred by Local 520, in addition to those described in the preceding paragraph, by bringing this action to confirm and enforce the CIR's May 13, 2025 decision and award.

E.     Order all additional legal or equitable relief that the Court deems just and proper.


*Respectfully submitted,*

DEATS DURST & OWEN, PLLC

        /s/ Matt Bachop
Matt Bachop
TBN: 24055127
mbachop@ddollaw.com
8140 N Mopac Expy, Suite 4-250
Austin, Texas 78759
(512) 474-6200
FAX (512) 474-7896

Attorney for Plaintiff

# EX. 7.

# Council on Industrial Relations

## for the

# Electrical Contracting Industry



**DECISION NO.**    8883

PARTIES IN DISPUTE:
    A.S.H. Electric
    Local Union No. 520

Austin, Texas
May 13, 2025
Inside

PRESENTATION:
    By brief only for A.S.H. Electric
    By brief and oral argument for Local Union No. 520

APPEARANCES:
    For Local Union No. 520:  B. Brenneman, D. Campbell

MATTERS IN DISPUTE:
1. Article I, Section 1.01 – Length of Agreement
2. Article II, Section 2.01 – Favored Nations
3. Article IV, Section 4.02 – Paid Holidays
4. Article IV, Section 4.03 – Wages
5. Article V – General Rules
6. Article V – Walk Time
7. Article VI, Section 6.16 – Apprenticeship Contribution
8. Article VIII – Annuity Plan

MEMBERS OF COUNCIL SITTING:

| FOR THE EMPLOYER | FOR THE UNION |
| --- | --- |
| D. Laffoon | M. Hager |
| S. Krieg | C. Bergfeld |
| J. Brunia | A. Warwick |
| T. Maloney | D. McInerney |
| F. Piatt | R. Wolf |
| L. Bell | D. Robinson |

DECISION:

After careful consideration of the evidence submitted, the Council rules as follows:

In the instant case, the parties are directed to sign and immediately implement the Collective Bargaining Agreement which is attached hereto and hereby made a part of this decision. The Council retains jurisdiction over disputes pertaining to this Agreement including any wage/fringe opener(s) contained therein and such disputes are to be returned to Council through the normal procedures if the parties are unable to reach agreement.



Sponsored by the National Electrical Contractors Association • International Brotherhood of Electrical Workers®

Office of the Secretary • 900 7th Street, NW • Washington, DC 20001
Phone (202) 728-6165 • Fax (202) 728-6168 • Website: www.thecir.org



COUNCIL ON INDUSTRIAL RELATIONS
    FOR THE ELECTRICAL CONTRACTING INDUSTRY                    DECISION NO.    8883

UNANIMOUSLY ADOPTED:
Washington, DC
May 13, 2025

_____
        Acting Co-Chairman

_____
        Acting Co-Chairman

_____
            Secretary



June 2, 2025 -  June 4, 2028

# AGREEMENT
Between

## A.S.H. Electrical Services LLC

and

## LOCAL UNION NO. 520 of the INTERNATIONAL BROTHERHOOD OF ELECTRICAL WORKERS

Austin, Texas

**June 2, 2022 - June 1, 2025**
**AGREEMENT**

**Between**

**A.S.H. Electrical Services LLC**

**and**

**LOCAL UNION NO. 520 of the**
**INTERNATIONAL BROTHERHOOD OF**
**ELECTRICAL WORKERS**
**Austin, Texas**

## PARTIES CLAUSE

Agreement by and between the A.S.H. Electrical Services LLC and LOCAL UNION 520, INTERNATIONAL BROTHERHOOD OF ELECTRICAL WORKERS. As used hereinafter in this Agreement, the term "Employer" shall mean A.S.H. Electrical Services LLC, and the term "Union" shall mean LOCAL UNION NO. 520, IBEW.

## BASIC PRINCIPLES

The Employer and the Union have a common and sympathetic interest in the Electrical Industry. Therefore, a working system and harmonious relations are necessary to improve the relationship between the Employer, the Union, and the Public. Progress in Industry demands a mutuality of confidence between the Employer and the Union. All will benefit by continuous peace, and by adjusting any differences by rational, common sense methods. Now, therefore, in consideration of the mutual promises and agreements herein contained, the parties hereto agree as follows:

## ARTICLE I
## EFFECTIVE DATE/CHANGES/GRIEVANCES/DISPUTES

Section 1.01: This Agreement shall take effect on June 2, 2025 and shall remain in effect through June 4, 2028, unless otherwise specifically provided for herein. It shall continue in effect from year to year thereafter, from the start of the first full pay period in June through the last pay period starting in May of each year, unless changed or terminated in the way later provided herein.

Section 1.02(a): Either party or an Employer withdrawing representation from the Chapter or not represented by the Chapter, desiring to change or terminate this Agreement must provide written notification at least 90 days prior to the expiration date of this Agreement or any anniversary date occurring thereafter.

(b) Whenever notice is given for changes, the nature of the changes desired must be specified in the notice, or no later than the first negotiating meeting unless mutually agreed otherwise.

(c) The existing provisions of the Agreement, including this Article, shall remain in full force and effect until a conclusion is reached in the matter of proposed changes.

(d) In the event that either party, or an Employer withdrawing representation from the Chapter or not represented by the Chapter, has given a timely notice of proposed changes and an agreement has not been reached by the expiration date or by any subsequent anniversary date to renew, modify, or extend this Agreement, or to submit the unresolved issues to the Council on Industrial Relations for the Electrical Contracting Industry (CIR), either party or such an Employer, may serve the other a ten (10) day written notice terminating this Agreement. The terms and conditions of this Agreement shall remain in full force and effect until the expiration of the ten (10) day period.

(e) By mutual agreement only, the Chapter, or an Employer withdrawing representation from the Chapter or not represented by the Chapter, may jointly, with the Union, submit the unresolved issues to the Council on Industrial Relations for adjudication. Such unresolved issues shall be submitted no later than the next regular meeting of the Council following the expiration date of this Agreement or any subsequent anniversary dates. The Council's decisions shall be final and binding.

(f) When a case has been submitted to the Council, it shall be the responsibility of the negotiating committee to continue to meet weekly in an effort to reach a settlement on the local level prior to the meeting of Council.

(g) Notice of a desire to terminate this Agreement shall be handled in the same manner as a proposed change.

Section 1.03: This Agreement shall be subject to change or supplement at any time by mutual consent of the parties hereto. Any such change or supplement agreed upon shall be reduced to writing, signed by the parties hereto, and submitted to the International Office of the IBEW for approval, the same as this Agreement.

Section 1.04: During the term of this Agreement, there shall be no stoppage of work either by strike or lockout because of any proposed changes in this Agreement or dispute over matters relating to this Agreement. All such matters must be handled as stated herein.

## GRIEVANCES/DISPUTES

Section 1.05: There shall be a Labor-Management Committee of trustees representing the Union and three representing the Employers. It shall meet regularly at such stated times as it may decide. However, it shall also meet within 48 hours when notice is given by either party. It shall select its own Chairman and Secretary. The Local Union shall select the Union representatives and the Employer shall select the management representatives.

Section 1.06: All grievances or questions in dispute shall be adjusted by the duly authorized representative of each of the parties to this Agreement. In the event that these two are unable to adjust any matter within 48 hours, they shall refer the same to the Labor-Management Committee.

Section 1.07: All matters coming before the Labor-Management Committee shall be decided by a majority vote. Four members of the Committee, two from each of the parties hereto, shall be a quorum for the transaction of business, but each party shall have the right to cast the full vote of its membership and it shall be counted as though all were present and voting.

Section 1.08: Should the Labor-Management Committee fail to agree or to adjust any matter, such shall then be referred to the Council on Industrial Relations for the Electrical Contracting Industry for adjudication. The Council's decisions shall be final and binding.

Section 1.09: When any matter in dispute has been referred to conciliation or arbitration for adjustment, the provisions and conditions prevailing prior to the time such matters arose shall not be changed or abrogated until agreement has been reached or a ruling has been made.

Section 1.10: The Labor-Management Committee shall not recognize any grievance or dispute unless written notice of the charge is given within thirty (30) days after the representatives of the parties to this Agreement first became aware, or reasonably should have been aware, of a violation of this Agreement. This shall not apply to any Section which requires money to be deposited to any Trust Fund.

## ARTICLE II
## Employers Rights - Union Rights

Section 2.01: The Employer recognizes the Union as the exclusive representative of all its employees performing work within the jurisdiction of the Union for the purpose of collective bargaining in respect to rates of pay, wages, hours of employment and other conditions of employment.

Section 2.02(a): Certain qualifications, knowledge, experience, and financial responsibility are required of everyone desiring to be an Employer in the Electrical Industry. Therefore, an Employer who contracts for electrical work is a person, firm, or corporation, having these qualifications and maintaining a place of business and suitable financial status to meet payroll requirements and

employing at least one Journeyman Wireman.

(b) All Employers subject to the terms of this Agreement shall carry an Indemnity Bond, issued by a company authorized to do business in the State of Texas, the minimum for all employers shall be $5,000.00 as evidence of financial responsibility, and to insure proper payments to the Electrical Joint Apprenticeship and Training Trust Fund, the National Employees Benefit Board, the Austin Vacation Trust Fund, IBEW Local Union 520 Annuity Plan and Health and Welfare Plan, 401(k), and P.A.C. deductions, to Local Union 520, for any union dues or assessments withheld on behalf of employees, and wages required under this Agreement be paid directly to the affected employee(s). Bond amounts greater than $5000 shall be required based on the following formula outlined below:

(c) Each employer signatory to the collective bargaining agreement shall be required to secure a welfare bond of at least $5000. Employers shall be required to secure larger bonds based on the following formula: Employers shall provide a welfare bond based on the average monthly hours worked utilizing the previous three years to calculate the average. This number shall be multiplied by the aggregate amount of the benefit package and rounded up to the next one thousandth. If an employer has been delinquent in the payment of benefits more than twice, they shall be required to pay benefits timely on a weekly basis for a period of six months and secure the required bond. After a period of six months of timely benefit payments the employer may return to the monthly schedule. If an employer has no previous experience in the jurisdiction the bond shall be based on the estimated monthly hours of the project to be worked. The maximum bond for any employer shall be $50,000.

The aforesaid Bond shall be executed for a period of time to conform to the time limitations set forth in this Agreement and shall be renewed as provided for in subsequent Agreements.

The Bond shall provide that it may not be canceled by either the Employer or the insurance carrier without thirty (30) days written notice in advance to the Union by Certified, Registered, or Insured mail from the Surety. Proof of the execution of the Bond, in the form of an affidavit executed by the insurance carrier, shall be furnished the Union for each Employer. Such affidavit shall show on its face that it may not be canceled by either the insurance carrier of the Employer without prior notification to the Union. The Local Union shall furnish a copy of the affidavit of Bond to each Fund.

The Obligee (Local Union 520, IBEW) shall notify the Surety within thirty (30) days after having knowledge of a breach of this Agreement by the principal hereof.

(d) Fringe benefits provided for under this Agreement are due and payable on or before the 15th day of the month following the month, covering the hours worked by each employee. Each Employer shall file a monthly report for each fringe benefit, in the form established, therefore, each report shall be filed, regardless of whether or not the Employer has employed any employee in the month covered by said report.

Any Employer who fails to file a report and pay contributions for any of the fringe benefits by the 15th day following the month in which such report or payment is due shall be considered delinquent and is in violation of this Agreement. If payments are not mailed in time to reach the

Benefit Fund by the prescribed time, interest at the rate of 1½% monthly will be due and payable. Each Employer shall make available applicable books and records for the purpose of auditing same to determine the amount of his liability and shall pay the expense of audit if delinquencies are found, under guidelines of the Funds. Action to collect contributions may be brought in the name of the respective Fund involved, its Trustees and any assignee or agent designated by said Trustees. Employer hereby accepts and agrees to the terms of each trust agreement and plan for such fringe Benefit Fund.

A delinquent Employer shall be liable to any employee affected by such delinquency for all benefits lost by such employee by virtue of such delinquency, and such delinquent Employer shall also be liable for reasonable attorneys' fees for any action brought to recover the amount of said benefits.

"This section does not waive or deny any remedies of collection in other sections of this Agreement, Trust or a remedy at law".

Section 2.03: For all employees covered by this Agreement the Employer shall carry Workman's Compensation Insurance with a Company authorized to do business in this State, Social Security, and such other protective insurance as may be required by the laws of this State and shall furnish satisfactory proof of such to the Union. He shall also make contributions to the State Unemployment Compensation Commission.

Section 2.04(a): It is agreed that in accord with the Employees Benefit Agreement of the National Electrical Benefit Fund ("NEBF"), as entered into between the National Electrical Contractors Association and the International Brotherhood of Electrical Workers on September 3, 1946, as amended, and now delineated as the Restated Employees Benefit Agreement and Trust, that unless authorized otherwise by the NEBF the individual Employer will forward monthly to the NEBF's designated local collection agent an amount equal to three percent (3 %) of the gross monthly labor payroll, paid to, or accrued by, the employees in this bargaining unit, and a completed payroll report prescribed by the NEBF. The payment shall be made by check or draft and shall constitute a debt due and owing to the NEBF on the last day of each calendar month, which may be recovered by the suit initiated by the NEBF or its assignee. The payment and the payroll report shall be mailed to reach the office of the appropriate local collection agent not later than fifteen (15) calendar days following the end of each calendar month.

The individual Employer hereby accepts, and agrees to be bound by, the Restated Employees Benefit Agreement and Trust.

(b) An individual Employer who fails to remit as provided above shall be additionally subject to having his Agreement terminated upon seventy-two (72) hours' notice in writing being served by the Union, provided the individual Employer fails to show satisfactory proof that the required payments have been paid to the appropriate local collection agent.

The failure of an individual Employer to comply with the applicable provisions of the Restated Employees Benefit Agreement and Trust shall also constitute a breach of this Agreement.

Section 2.05: The Union reserves the right to discipline its members for violations of its laws,

rules, and agreements.

Section 2.06: The Local Union is part of the International Brotherhood of Electrical Workers and any violation or annulment by an individual Employer of the approved Agreement of this or any other Local Union of the IBEW, other than violations of Paragraph 2 of this Section, will be sufficient cause for the cancellation of his Agreement by the Local Union after a finding has been made by the International President of the Union that such a violation or annulment has occurred.

The subletting, assigning, or transfer by an individual Employer of any work in connection with electrical work to any person, firm or corporation not recognizing the IBEW or one of its Local Unions as the collective bargaining representative of his employees on any electrical work in the jurisdiction of this or any other Local Union to be performed at the site of the construction, alteration, painting or repair of a building, structure or other work, will be deemed a material breach of this Agreement.

Notwithstanding anything in this Agreement, the Employer may sublet, assign, or transfer the installation of wiring and devices for fire alarm or security systems if those systems are low voltage system, the installation of lightning protection system, trenching and backfilling excavation to a specialty contractor.

The Employer may also sublet, assign, or transfer any work requiring employees to place themselves in any trench that is greater than a depth of five feet.

The following work, systems and/or functions shall not be covered by the terms of this agreement: field instrumentation and installation, process control instrumentation and installation, instrument and control loop testing and certification, instrument calibration, instrument certification, PLC equipment, PLC programming, distributed control and SCADA systems, control system SCADA & HMI software development and programming, radio telemetry systems, and manufacture of control panels.

Nothing in this Agreement should be construed to require the Employer to purchase manufactured products from employer's signatory to a collective bargaining agreement.

All charges of violation of Paragraph 2 of this Section shall be considered as a dispute and shall be processed in accordance with the provisions of this Agreement covering the procedure for the handling of grievances and the final and binding resolution of disputes.

Section 2.07: No member of Local Union 520, while he remains a member of such Local Union and subject to employment by the Employers operating under this Agreement shall himself become a contractor for the performance of any electrical work.

Section 2.08: Only two individuals connected with an employing concern as owner, manager, superintendent, partner, or member of a Board of Directors shall perform any manual electrical work where it displaces the service of a Journeyman; and then only when he has at least one Journeyman, working under the terms of this Agreement, employed and working the same hours including overtime, with the exception of emergency repairs not to last over two (2) hours.

Section 2.09(a): The Union understands the Employer is responsible to perform the work required by the owner. The Employer shall, therefore, have no restrictions except those specifically provided for in the collective bargaining agreement, in planning, directing, and controlling the operation of all his work, in deciding the number and kind of employees to properly perform the work, in hiring and laying off employees, in transferring employees from job to job within the Local Union's geographical jurisdiction, in determining the need and number as well as the person who will act as Foreman, in requiring all employees to observe the Employer's and/or owner's rules and regulations not inconsistent with this Agreement, in requiring all employees to observe all safety regulations, and in discharging employees for proper cause.

(b) The employer shall have the right to call a Foreman by name provided:

A)    The employer shall notify the business manager in writing of the name of the individual who is to be requested for employment as a Foreman. Upon such request, the business manager shall refer said Foreman provided the name appears on the highest priority group.

B)    When an employee is called as a Foreman, he must remain as a Foreman for 500 hours or must receive a reduction in force.

## Portability

Section 2.10: The Employer, if signatory to a collective bargaining agreement or to a letter of assent to an agreement with another IBEW Local Union, may bring an unlimited amount of Supervisory bargaining unit employees employed in that Local Union's jurisdiction into Local Union 520's jurisdiction to perform supervisory work. Supervisory bargaining unit employees are defined as those that direct bargaining unit employees. The Employer may also bring one (1) bargaining unit employee employed in that Local Union's jurisdiction into Local Union 520's after the Employer employs one (1) Local Union 520's bargaining unit employee; if necessary this process will continue to alternate. The Employer shall maintain a minimum of a one (1) to one (1) ratio of Local Union 520's bargaining unit employees to those that are brought in through this Portability provision. The employees brought in through portability may remain on the specific job until the job is complete. All employees brought in through this portability provision must check in with the Business Manager of IBEW Local Union 520 and all working assessments shall be paid to Local Union 520. All charges of violations of this section shall be considered as a dispute and shall be processed in accordance with the provisions of the Agreement for the handling of grievances with the exception that any decision of a local labor-management committee that may be contrary to the intent of the parties to the National Agreement on employee Portability, upon recommendation of either or both the appropriate IBEW International Vice President or NECA Regional Executive Director. is subject to review, modification, or rescission by the Council on Industrial Relations.

Section 2.11: The Union has the right to appoint a Steward at any shop and/or job where workmen are employed under the terms of this Agreement. The Employer shall be notified in writing of who the Steward is. No Steward shall be discriminated against by the Employer because of the faithful performance of his duties as Steward.

## ARTICLE III
## Standard Inside Referral

<u>Section 3.01</u>:  In the interest of maintaining an efficient system of production in the Industry, providing for an orderly procedure of referral of applicants for employment preserving the legitimate interests of the employees in their employment status within the area and of eliminating discrimination in employment because of membership or non-membership in the Union, the parties hereto agree to the following system of referral of applicants for employment.

<u>Section 3.02</u>:  The Union shall be the sole and exclusive source of referral of applicants for employment.

<u>Section 3.03</u>:  The Employer shall have the right to reject any applicant for employment.

<u>Section 3.04</u>:  The Union shall select and refer applicants for employment without discrimination against such applicants by reason of membership or non-membership in the Union and such selection and referral shall not be affected in any way by rules, regulations, bylaws, constitutional provisions or any other aspect or obligation of Union membership policies or requirements. All such selection and referral shall be in accord with the following procedure.

<u>Section 3.05</u>:  The Union shall maintain a register of applicants for employment established on the basis of the Groups listed below.  Each applicant for employment shall be registered in the highest priority Group for which he qualifies.

### Journeyman Wireman - Journeyman Technician

**GROUP I** All applicants for employment who have four or more years' experience in the trade, are residents of the geographical area constituting the normal construction labor market, have passed a journeyman's examination given by a duly constituted Inside Construction Local Union of the I.B.E.W. or has been certified as a Journeyman Wireman by any inside Joint Apprenticeship and Training Committee, and, who have been employed in the trade for a period of at least one year in the last four years in the geographical area covered by the collective bargaining agreement.

Group I status shall be limited to one Local Union at one time. An applicant who qualifies for Group I in a local union shall be so registered electronically and remain on Group I in that local union unless and until the applicant designates another local union as his or her Group I local union. If an applicant qualifies for Group I status in a local union other than his or her home local union and designates that local as his or her Group I local union, the business manager of the new Group I status local union shall by electronic means notify the business manager of the applicant's former Group I status local union.

**GROUP II**  All applicants for employment who have four or more years' experience in the trade and who have passed a Journeyman Wireman's examination given by a duly constituted Inside Construction Local Union of the IBEW or have been certified as a Journeyman Wireman by any Inside Joint Apprenticeship and Training Committee.

**GROUP III**  All applicants for employment who have two or more years' experience in the trade, are residents of the geographical area constituting the normal construction labor market, and who have been employed for at least six months in the last three years in the geographical area covered by the collective bargaining agreement.

**GROUP IV**  All applicants for employment who have worked at the trade for more than one year.

<u>Section 3.06:</u> If the registration list is exhausted and the Local Union is unable to refer applicants for employment to the Employer within 48 hours from the time of receiving the Employer's request, Saturdays, Sundays and holidays excepted, the Employer shall be free to secure applicants without using the Referral Procedure. But such applicants, if hired, shall have the status of "temporary employees".

<u>Section 3.07:</u> The Employer shall notify the Business Manager promptly of the names and Social Security numbers of such "temporary employees" and shall replace such "temporary employees" as soon as registered applicants for employment are available under the Referral Procedure.

<u>Section 3.08:</u> "Normal construction labor market" is defined to mean the following geographical area plus the commuting distance adjacent thereto which includes the area from which the normal labor supply is secured: Travis, Bastrop, Hays, Blanco, Burnet, Williamson, Lee, Llano, San Saba, Burleson, Caldwell, Fayette, Runnels, Coleman, Brown, Tom Green, Concho, McCulloch, Menard, Mason, Kimble and parts of Coryell and Bell Counties to include that part of Fort Hood in Coryell County south of Cowhouse Creek, and not to extend more than two (2) miles into Bell County from the Southeast boundary line of Coryell County, Gray Field, and the City of Killeen, and parts of Lampasas, Bell and Milam Counties, which are nearer to Austin than Waco, in the State of Texas.

The above geographical area is agreed upon by the parties to include the area defined by the Secretary of Labor to be the appropriate prevailing wage areas under the Davis-Bacon Act to which the Agreement applies.

<u>Section 3.09:</u> "Resident" means a person who has maintained his permanent home in the above defined geographical area for a period of not less than one year or who, having had a permanent home in this area, has temporarily left with the intention of returning to this area as his permanent home.

<u>Section 3.10:</u> "Examinations" - An "Examination" shall include experience rating tests if such examination shall have been given prior to the date of this procedure, but from and after the date

of this procedure, shall include only written and/or practical examinations given by a duly constituted Inside Construction Local Union of the IBEW. Reasonable intervals of time for examinations are specified as ninety (90) days. An applicant shall be eligible for examination if he has four years' experience in the trade.

Section 3.11: The Union shall maintain an "Available for Work List" which shall list the applicants within each Group in chronological order of the dates they register their availability for employment.

Section 3.12(a): An applicant who is hired and who receives, through no fault of his own, work of forty hours or less shall, upon re-registration, be restored to his appropriate place within his Group.

(b) An applicant who has registered on the "Available for Work List" must renew his application every thirty (30) days or his name will be removed from the "List."

Section 3.13: Employers shall advise the Business Manager of the Local Union of the number of applicants needed. The Business Manager shall refer applicants to the Employer by first referring applicants in GROUP I in the order of their place on the "Available for Work List" and then referring applicants in the same manner successively from the "Available for Work List" in GROUP II, then GROUP III, and then GROUP IV. Any applicant who is rejected by the Employer shall be returned to his appropriate place within this GROUP and shall be referred to other employment in accordance with the position of his GROUP and his place within his GROUP.

Section 3.13(a): An applicant who is discharged for cause two times within a 12-month period shall be referred to the neutral member of the Appeals Committee for a determination as to the applicant's continued eligibility for referral. The neutral member of the Appeals Committee shall, within three business days, review the qualifications of the applicant and the reasons for the discharges. The neutral member of the Appeals Committee may, in his or her sole discretion: (1) require the applicant to obtain further training from the JATC before again being eligible for referral; (2) disqualify the applicant for referral for a period of four weeks, or longer, depending on the seriousness of the conduct and/or repetitive nature of the conduct; (3) refer the applicant to an employee assistance program, if available, for evaluation and recommended action; or (4) restore the applicant to his/her appropriate place on the referral list.

Section 3.14: The only exceptions which shall be allowed in this order of referral are as follows:

(a) When the employer states bona fide requirements for special skills and abilities in his request for applicants, the Business Manager shall refer the first applicant on the register possessing such skills and abilities.

(b) The age ratio clause in the Agreement calls for the employment of an additional employee or employees on the basis of age. Therefore, the Business Manager shall refer the first applicant on the register satisfying the applicable age requirements provided, however, that all names in higher priority Groups, if any, shall first be exhausted before such overage reference can be made.

Section 3.15: An Appeals Committee is hereby established, composed of one member appointed by the Union, one member appointed by the Employer or by the Association, as the case may be, and a Public Member appointed by both these members.

Section 3.16: It shall be the function of the Appeals Committee to consider any complaint of any employee or applicant for employment arising out of the administration by the Local Union of Sections 4 through 14 of this Agreement. The Appeals Committee shall have the power to make a final and binding decision on any such complaint which shall be complied with by the Local Union. The Appeals Committee is authorized to issue procedural rules for the conduct of its business, but it is not authorized to add to, subtract from, or modify any of the provisions to this Agreement and its decisions shall be in accord with this Agreement.

Section 3.17: A representative of the Employer or of the Association, as the case may be, designated to the Union in writing, shall be permitted to inspect the Referral Procedure records at any time during normal business hours.

Section 3.18: A copy of the Referral Procedure set forth in this Agreement shall be posted on the Bulletin Board in the offices of the Local Union and in the offices of the Employers who are parties to this Agreement.

Section 3.19: Apprentices shall be hired and transferred in accordance with the apprenticeship provisions of the Agreement between the parties.

Section 3.20: When making reductions in the number of employees due to lack of work, Employers shall use the following procedure:

(a) Temporary employees, if any are employed, shall be laid off first. Then employees in Group IV shall be laid off next, if any are employed in this Group. Next to be laid off are employees in Group III, if any are employed in this Group, then those in Group IV, and then those in Group I.

(b) Paragraph (a) will not apply as long as the special skills requirement as provided for in Section 14(a) is required.

(c) Supervisory employees covered by the terms of this Agreement will be excluded from layoff as long as they remain in the supervisory capacity. When they are reduced to the status of Journeyman, they will be slotted in the appropriate group in Paragraph (a) above.

Section 3.21: All Journeymen and Apprentices are required to provide proof of completion, by originally issued card or certificate, of an OSHA 10 safety training course.

**ARTICLE IV**
**Hours - Wage Payment**

Section 4.0l(a):    Eight hours work between the hours of 6:00 A.M. and 6:30 P.M. with thirty (30) minutes for a lunch period, shall constitute a workday. Forty (40) hours within (5) days, Monday through Friday, inclusive, shall constitute the work week. Saturday may be used for a make-up day due to inclement weather. If Saturday is used as a make up day, a minimum of eight (8) hours will be scheduled. The payroll week shall end on Sunday midnight of each week. Any workman required to punch a time clock that requires more than five (5) minutes to check out shall be paid for any additional time used in checking out. Workmen reporting to the shop or job shall not report earlier than 15 minutes prior the starting time. If practical, workmen directed to report to the job shall be at their place of work at the starting time and shall remain at their place of work until quitting time unless otherwise instructed by the Employer.

(b) Any change from the regular working hours must be five (5) or more day's duration. When any change in the starting time is made, lunch period, overtime, and shifts may be changed accordingly.

(c) The Employer with 24-hour notice to the Union may elect to work 4-10 hour days to be scheduled. The first 10 hours of work per day shall be paid at the hourly straight time rate of pay. When working 4-10s, the Employer can schedule the work week for Monday through Thursday, 10 hours per day. A second work week can be scheduled from Tuesday through Friday, 10 hours per day. The 4 day work week will be Monday through Thursday. Friday can be used as a make-up day due to inclement weather. If Friday is used as a make-up day, a minimum of 8 hours will be scheduled. Any four day/ten-hour work schedule shall be a minimum of 2 weeks duration.

(d) In order to coordinate with other crafts, summer hours, customer requests, and the like, the starting time for each job shall be subject to variance of not more than 1 hour. Advanced notice to the Union will be required to approve any such variance greater than 1 hour. These alternate starting times must run for a minimum of 5 consecutive workdays, and all other times listed in this agreement will shift accordingly.

Section 4.02:  All work performed outside of regularly scheduled hours will be paid at one and one-half times the regular straight-time rate, provided the employee works all of the regular scheduled hours made available, as defined in Art. IV Sec. 4.0l(a) and Sec. 4.0l(c). In the event the employee does not work all of the regularly scheduled hours available he will receive no premium rate until after he has worked 40 hours. Work on Sundays shall be paid at double the straight-time rate. The following holidays: New Year's Day, Memorial Day, Fourth of July, Labor Day, Veteran's Day, Thanksgiving Day, the Friday following Thanksgiving Day, and Christmas Day, shall be paid at double the straight-time rate. The following holidays shall be paid holidays starting June 2, 2025, Thanksgiving Day and Friday following, January 4, 2027, Christmas Day, January 3, 2028, New Year's Day. Eligible employees must have been employed for two weeks and worked the available workday before and the available workday after the holiday. Holidays shall be recognized only on the day on which they fall.

Section 4.03: The minimum regular straight-time rate of wages for Journeyman Inside Wireman (JIW) shall be as follows:

Effective June 2, 2025: $36.50
Effective January 5, 2026: $38.50
Effective January 4, 2027: $40.50
Effective January 3, 2028: $42.50

| APPENDIX A - MINIMUM BENEFITS | | | | | | |
|---|---|---|---|---|---|---|
| **Multiplier** | **Classification** | | **NEBF** | **Annuity** | **Medical** | **JATC** |
| 130% of JIW wage rate | General Foreman (area foreman required) | | 3% | 8% | $5.45 | 1%*** |
| 120% of JIW wage rate | General Foreman (no area foreman required) | | 3% | 8% | $5.45 | 1%*** |
| 120% of JIW wage rate | Area Foreman | | 3% | 8% | $5.45 | 1%*** |
| 110% of JIW wage rate | Foreman | | 3% | 8% | $5.45 | 1%*** |
| 100% | Journeyman Inside Wireman | | 3% | 8%* | $5.45 | 1%*** |
| **Apprentice Wireman** | | | | | | |
| 50% of JIW wage rate | 1st Year - Period 1 | 3% | ** | | $3.70 | 1%*** |
| 55% of JIW wage rate | 1st Year - Period 2 | 3% | 3% | | $3.70 | 1%*** |
| 60% of JIW wage rate | 2nd Year - Period 3 | 3% | 3% | | $3.70 | 1%*** |
| 70% of JIW wage rate | 3rd Year - Period 4 | 3% | 5% | | $3.70 | 1%*** |
| 75% of JIW wage rate | 4th Year - Period 5 | 3% | 5% | | $3.70 | 1%*** |
| 80% of JIW wage rate | 5th Year - Period 6 | 3% | 8% | | $3.70 | 1%*** |
| | Unindentured Apprentice | 3% | | | $3.70 | 1%*** |

  * 9% effective January 6th 2025
 ** 1% effective January 6th 2025
*** 1% of Journeyman Straight-Time Rate

Section 4.04: The Employer shall pay all wages in cash or check weekly, not later than quitting time on Friday. The Employer may pay wages by direct deposit, through debit card by cash or by

check. Employees may be required to execute authorization forms for direct electronic deposit of wages on a weekly basis to the bank or credit union of the employee's choice. This manner of payment, once adopted, may not be changed by the Employer except upon 14-day advance written notification to the employee with notification to the Union. In the event that employees are not paid by the above-stated time, waiting time at the regular straight time rate (not to exceed eight (8) hours in any one twenty-four (24) hour period) shall be charged until payment is made. The previous sentence only applies in the event that there has been a previous instance within the preceding twelve (12) months of the Employer failing to timely pay wages. Otherwise, paid waiting time only begins if payment has not been received by quitting time on Friday.

Section 4.05: Should the Employer issue a paycheck that does not clear the bank for payment, provided the employee does not hold said check for more than thirty (30) days before making attempt to cash said check, then said Employer, while in the jurisdiction of the Local Union, thereafter shall pay in cash.

Section 4.06: When Friday is a recognized holiday, wages shall be paid Thursday for all work during that week. An itemized statement shall be furnished each workman, showing total hours worked, total wages earned, and any deductions from such wages.

Section 4.07: Any man reporting for work and being laid off, not having been notified the day previous of such layoff shall receive not less than two (2) hours wages in order to gather his tools and personal belongings and shall be paid off in full immediately. In the event the employee is not paid off, waiting time at the regular rate (not to exceed eight [8] hours in any one twenty-four [24] hour period) shall be charged until payment is made. Two (2) hours wages for gathering tools and personal belongings will not be paid if the employee has not notified the Employer of a previous day's absence. An employee who voluntarily quits shall receive the employee's final paycheck on the next contractually scheduled pay day.

Section 4.08(a): When men are directed to report to a job or shop and do not start to work due to causes other than weather conditions, they shall receive two (2) hours pay.

(b) When men receive two (2) hours pay as show-up time, they shall remain available for work for a full two (2) hour period.

(c) If requested by the Employer, during inclement weather conditions, men shall remain on the job available for work and shall receive two (2) hours pay.

(d) When men are directed to report to a job and are instructed to go to work by the Employer or his representative, weather conditions permitting, and they refuse, they shall not receive the two (2) hours show-up time.

(e) When men are called out on trouble or emergency calls outside of regularly scheduled working hours, they shall be paid from the time they leave home until they return at the overtime rate, with a minimum of one (1) hour's work.

Section 4.09: The Employer shall pay for traveling time and provide for at least one of the following provisions:

(i)      Furnish transportation from shop to job and job to job and job to shop during the regular working hours; or

(ii)     Reimburse the employee for mileage at the standard mileage rate determined by the Internal Revenue Service for actual mileage from shop to job and job to job and job to shop during all the regular working hours to be reimbursed.

On work outside the jurisdiction of the Union, the Employer shall provide one of the following:

(i)      Furnish transportation, board and all other necessary expenses;

(ii)     Reimburse the employee for mileage at the standard mileage rate determined by the Internal Revenue Service and furnish board and all other necessary expenses.

Section 4.10:  No traveling time shall be paid before or after working hours to workmen for traveling to or from any job when workmen are ordered to report to the job, provided his day ends at such job.

Section 4.11: The Employer shall furnish a monthly payroll report to Local Union 520 postmarked no later than 15th day of the following month, giving workman's name, classification, wage rate, straight-time hours worked, overtime hours and gross wages paid to all workmen. This report shall identify the exact date of all employees who have quit or been discharged during the working period covered by this report.

A monthly payroll report to the Local Union and to all Trust Funds shall be completed and mailed each month, whether the Contractor has workmen employed or not.

Section 4.12:  Workmen being laid off or discharged by an Employer or workmen severing their employment shall be given a termination slip stating the reason for termination and signed by their immediate supervisor or their Employer, and a copy shall be sent to Local Union 520. Additionally, employers shall provide a termination slip to the JATC Training Director in the case of an apprentice.

Section 4.13:  When so elected by the contractor, multiple shifts of eight (8) hours for at least five (5) days' duration may be worked. When two (2) or three (3) shifts are worked:

The first shift (day shift) shall consist of eight (8) consecutive hours worked between the hours of 8:00 A.M. and 4:30 P.M. Workmen on the "day shift" shall be paid at the regular hourly rate of pay for all hours worked.

The second shift (swing shift) shall consist of eight (8) consecutive hours worked between the hours of 4:30 P.M. and 1:00 A.M. Workmen on the "swing shift" shall be paid at the regular hourly rate of pay plus **10%** for all hours worked.

The third shift (graveyard shift) shall consist of eight (8) consecutive hours worked between the hours of 1:00 A.M. and 9:00 A.M. Workmen on the "graveyard shift" shall be paid at the regular hourly rate of pay plus **15%** for all hours worked.

The Employer shall be permitted to adjust the starting hours of the shift by up to two (2) hours in order to meet the needs of the customer.

If the parties to the Agreement mutually agree, the shift week may commence with the third shift (graveyard shift) at 12:30 A.M. Monday to coordinate the work with the customer's work schedule. However, any such adjustment shall last for at least five (5) consecutive days duration unless mutually changed by the parties to this Agreement.

An unpaid lunch period of thirty (30) minutes shall be allowed on each shift. All overtime work required before the established start time and after the completion of eight (8) hours of any shift shall be paid at one and one-half times the "shift" hourly rate.

There shall be no pyramiding of overtime rates and double the straight time rate shall be the maximum compensation for any hour worked. There shall be no requirement for a day shift when either the second or third shift is worked.

## UNION DUES DEDUCTION

Section 4.14: Upon receipt of a voluntary written authorization the Employer agrees to deduct and forward to the Financial Secretary of the Local Union - the additional working dues from the pay of each employee. The amount to be deducted shall be the amount specified in the approved Local Union Bylaws. Such amount shall be certified to the Employer by the Local Union upon request by the Employer.

## ARTICLE V
## General Rules

Section 5:01: In order to comply with existing laws, nothing in this Agreement shall be construed as limiting the right of Employers to move, transfer, or assign employees from his shop to any specific job or from any job to any other job upon which said Employer bolds a contract for the performance of the electrical work. An employee, once on the Employer's payroll, may be worked by him at any location at the discretion of the Employer.

Section 5.02: When the Employer has no shop located in the jurisdiction of this Union, then under such circumstances the job site shall be considered the city in which the shop is located with one job site designated as the permanent shop.

Section 5.03: On all jobs requiring five (5) or more Journeymen, at least every fifth Journeyman, if available, shall be fifty (50) years of age or older.

Section 5.04(a): Journeyman shall provide themselves with the following tools:

| | |
|---|---|
| One tester not over 1000 volts or one Multi Volt Tester | Combination square-Tri-square |
| Knife | Adjustable 12" blade |
| Crescent Wrench 8" to 12" | Hacksaw frame |
| Screw drivers | Two pair channel lock type pliers |
| Hammer | One pair long nose pliers |
| Small level | One pair Dyke pliers |

| | |
|---|---|
| Plumb bob | One chalk line |
| Awl or Center punch | Keyhole saw |
| Pencil | One steel measuring tape at least 16' long |
| One pair side cutting pliers 7" or larger | Pipe wrench 12" to 14" or small |
| Wire stripper | Chain tong |

(b) Journeyman may furnish other similar tools but shall not be required to do so.

(c) A Journeyman may carry or store in his toolbox small tools furnished by and belonging to his Employer (power tools excluded). Such tools must be the property of the Employer, to be returned to him upon request or termination of the employee but are not to be replaced by the employee if broken or stolen.

(d) Apprentices shall provide themselves with the following tools only, except that first-year Apprentice may provide himself with a small toolbox and a third- or fourth-year Apprentice may have a toolbox on the job and start building up his tool list towards that of a Journeyman.

| | |
|---|---|
| 2 pair channel lock type pliers | Pencil |
| 1 pair side cutters pliers – 7" or larger | Hammer |
| One steel measuring tape at least 16' long | One voltage tester not over 1000 or Multi Volt Tester |
| Screw drivers | Small level |
| Knife | Hacksaw frame |
| Awl | Wire stripper |

He may furnish one pair of long-nose and one pair of Dyke pliers if he desires.

(e) The Employer shall furnish necessary locked storage to reasonably protect tools from the weather and vandalism on large jobs where it is necessary to leave tools on the job.

Section 5:05: The Employer shall furnish all other necessary tools or equipment. Workmen will be held responsible for the tools or equipment issued to them providing the Employer furnishes the necessary lockers, toolboxes, or other safe place of storage. Tools must be taken out and put away during working hours.

Section 5.06: Workmen shall install all electrical work in a safe and workman like manner in accordance with applicable code and contract specifications.

Section 5.07: The representatives of the Union shall be allowed access to any building at any reasonable time where members of the Union are employed.

Section 5.08: In all shops or on all jobs where four (4) or more Journeymen are employed, one Journeyman shall be designated as a Foreman.

On all jobs, the first working crew may consist of a maximum of eleven (11) men, that is, ten (10) Journeyman and one (1) working Foreman.

When a second crew is established, it may consist of a maximum of eleven (11) men, that is, ten

(10) Journeymen and one (1) working General Foreman.

When a third or subsequent crew is established, it may consist of a maximum of eleven (11) men, that is, ten (10) Journeymen and one (1) working Foreman. Each crew shall be supervised by a Foreman and the Foremen shall be supervised by the General Foreman.

No General Foremen shall supervise more than fifty-five (55) men, including Journeymen and Foremen. For each additional fifty-five (55) men, the above procedures shall repeat except that the sixth and subsequent Foremen shall be supervised by an Area Foreman.

Section 5.09: Foremen, Area Foremen, and General Foremen shall be permitted to use tools. This shall not mean that they cannot handle material. Foremen may be required to attend and complete Foremen courses when provided.

Section 5.10: On jobs requiring a Foreman, workmen are not to take directions, orders or accept the layout from anyone other than their Foreman. Foremen are to take directions, orders, or layout from their Area Foreman only, when Area Foremen are required. When Area Foremen are not required, Foremen shall take directions, orders or layouts from the General Foreman only. Area Foremen shall take directions, orders or layout from the General Foreman only.

Section 5.11: No workman on one job shall replace a workman on another for any overtime work. All overtime work on any job shall be distributed fair and equal to all workmen. Exceptions to the two conditions above shall include the need for special skills or when workmen have not worked the available straight time hours during the "work week" as defined in Article IV, Section 1.

Section 5.12: The Employer shall see that cold water (in warm weather) and first-aid kits are available on all jobs and/or trucks.

Section 5.13: The Employer shall furnish protective equipment for workmen on energized circuits or equipment carrying 300 volts or more. On all energized circuits or equipment carrying 440 volts or over, as a safety measure, two (2) or more Journeymen must work together.

Section 5.14: All conduit shall be cut and threaded by workmen covered by this Agreement.

Section 5.15: Where pipe cutting and threading machines, electric drills, electric benders, electric chipping hammers, sanders, similar portable tools and all other power-driven equipment are used, such shall be operated by workmen covered by this agreement in the jurisdiction of the IBEW.

Section 5.16: All pulling of wire or cable shall be done by workmen covered by this Agreement.

Section 5.17: Journeyman cable splicers shall furnish only hand tools. On all work of joining, splicing and insulating and the placing of flame-proof covering where wiped lead joints are necessary, it shall be performed by cable splicers. Journeymen only shall be used in assisting cable splicers, except that one de-energized enclosures, an Apprentice may be used. Cable splicers shall not be required to work on wires or cables when the difference in potential is over 200 volts between any two conductors or between any conductor and ground, unless assisted by one Journeyman. In no case shall cable splicers be required to work on energized cables carrying in excess of 480-volt circuit.

Section 5.18: Welders gloves, sleeves, hoods and all hard hats shall be furnished by the Employer. Workmen may be required to sign a payroll deduction form to authorize the deduction from their final paycheck to cover reimbursement of unreturned hard hats. Charges shall not exceed actual cost paid by the Contractor.

Section 5.19: The installation of all electrical raceways whether metal, wood, fiber, plastic clay or of any other conceivable composition, when used to contain electrical or grounding system conductors, and the installation, preparation and connection of all electrical and/or grounding or bonding conductors shall be performed by workmen employed under the terms of this Agreement and paid the hourly applicable negotiated wage rate contained herein unless it is an integral part of the building structure.

Section 5.20: No work shall be performed on Labor Day except in case of emergency.

Section 5.21: On any job of five (5) or more days duration on the main campus of the University of Texas, the Employer will either provide for employee parking within three blocks of the job or arrange for covered transportation from a parking area within two miles of the job.

## ARTICLE VI
## Standard Inside Apprenticeship Language

Section 6.01: There shall be a local Joint Apprenticeship and Training Committee (JATC) consisting of a total of 6 or 8 members who shall also serve as Trustees to the local apprenticeship and training trust. An equal number of members (either 3 or 4) shall be appointed, in writing, by the local chapter of the National Electrical Contractors Association (NECA) and the local union of the International Brotherhood of Electrical Workers (IBEW).

The local apprenticeship standards shall be in conformance with national guideline standards and industry policies to ensure that each apprentice has satisfactorily completed the NJATC required hours and course of study. All apprenticeship standards shall be registered with the NJATC before being submitted to the appropriate registration agency.

The JATC shall be responsible for the training of apprentices, journeymen, installers, technicians, and all others (un-indentured, intermediate journeymen, etc.).

Section 6.02: All JATC member appointments, reappointments, and acceptance of appointments shall be in writing. Each member shall be appointed for a 3-year term, unless being appointed for a lesser period of time to complete an expired term. The terms shall be staggered, with one (1) term from each side expiring each year. JATC members shall complete their appointed term unless removed for cause by the party they represent, or they voluntarily resign. All vacancies shall be filled immediately

The JATC shall select from its membership, but not both from the same party, a Chairman and a Secretary who shall retain voting privileges. The JATC will maintain one (1) set of minutes for JATC committee meetings and a separate set of minutes for trust meetings.

The JATC should meet on a monthly basis, and also upon the call of the Chairman.

Section 6.03: Any issue concerning an apprentice, or an apprenticeship matter shall be referred to the JATC for its review, evaluation, and resolve, as per standards and policies. If the JATC deadlocks on any issue, the matter shall be referred to the Labor-Management Committee for resolution as outlined in Article One of this Agreement; except for trust fund matters, which shall be resolved as stipulated in the local trust instrument.

Section 6.04: There shall be only one (1) JATC and one (1) local apprenticeship and training trust. The JATC may, however, establish joint subcommittees to meet specific needs, such as residential or telecommunications apprenticeship. The JATC may also establish a subcommittee to oversee an apprenticeship program within a specified area of the jurisdiction covered by this agreement.

All subcommittee members shall be appointed, in writing, by the party they represent. A subcommittee member may or may not be a member of the JATC.

Section 6.05: The JATC may select and employ a part-time or a full-time Training Director and other support staff, as it deems necessary. In considering the qualifications, duties, and responsibilities of the Training Director, the JATC should review the Training Director's Job Description provided by the NJATC. All employees of the JATC shall serve at the pleasure and discretion of the JATC.

Section 6.06: To help ensure diversity of training, provide reasonable continuous employment opportunities, and comply with apprenticeship rules and regulations, the JATC, as the program sponsor, shall have full authority for issuing all job training assignments and for transferring apprentices from one employer to another. The employer shall cooperate in providing apprenticeships with needed work experiences. The local union referral office shall be notified, in writing, of all job training assignments. If the employer is unable to provide reasonable continuous employment for apprentices, the JATC is to be so notified.

Section 6.07: All apprentices shall enter the program through the JATC as provided for in the registered apprenticeship standards and selections procedures.

An apprentice may have their indenture canceled by the JATC at any time prior to completion as stipulated in the registered standards. Time worked and accumulated in apprenticeship shall not be considered for local union referral purposes until the apprentice has satisfied all conditions of apprenticeship. Individuals terminated from apprenticeship shall not be assigned to any job in any classification, or participate in any related training, unless they are reinstated in apprenticeship as per the standards, or they qualify through means other than apprenticeship, at sometime in the future, but no sooner than two years after their class has completed apprenticeship, and they have gained related knowledge and job skills to warrant such classification.

Section 6.08: The JATC shall select and indenture a sufficient number of apprentices to meet local manpower needs. The JATC is authorized to indenture the number of apprentices necessary to meet the jobsite ratio as per section 6.12.

Section 6.09: Though the JATC cannot guarantee any number of apprentices, if a qualified employer requests an apprentice, the JATC shall make every effort to honor the request. If unable to fill the request within ten (10) working days, the JATC shall select and indenture the next available person from the active list of qualified applicants. An active list of qualified applicants shall be maintained by the JATC as per the selection procedures.

Section 6.10: To accommodate short-term needs when apprentices are unavailable, the JATC shall assign un-indentured workers who meet the basic qualifications for apprenticeship. Un- indentured workers shall not remain employed if apprentices become available for OJT assignment. Un-indentured workers shall be used to meet job site ratios except on wage-and-hour (prevailing wage) job sites.

Before being employed, the un-indentured person must sign a letter of understanding with the JATC and the employer - agreeing that they are not to accumulate more than two thousand (2,000) hours as an un-indentured, that they are subject to replacement by indentured apprentices, and that they are not to work on wage-and-hour (prevailing wage) job sites.

Should an un-indentured worker be selected for apprenticeship, the JATC will determine, as provided for in the apprenticeship standards, if some credit for hours worked as an un-indentured will be applied toward the minimum OJT hours of apprenticeship.

The JATC may elect to offer voluntary related training to un-indentured; such as Math Review, English, Safety, Orientation/Awareness, introduction to OSHA, First-Aid and CPR. Participation shall be voluntary.

Section 6.11: The employer shall contribute to the local health and welfare plans and to the National Electrical Benefit Fund (NEBF) on behalf of all apprentices and un-indentured. Contributions to other benefit plans may be addressed in other sections of this agreement. (See Article IV Section 4.03).

Section 6.12: Each job site shall be allowed a ratio of one (1) apprentice(s) for everyone (1) Journeyman Wireman.

| Number of Journeymen | Maximum Number of Apprentices/Unindentured |
|---|---|
| 1 to 3 | 1 to 3 |
| 4 to 6 | 4 to 6 |
| Etc. | Etc. |

The first person assigned to any job shall be a Journeyman Wireman.

A job site is considered to be the physical location where employees report for their work assignments. The employer's shop (service center) is considered to be a separate, single job site. All other physical locations where workers report for work are each considered to be a single, separate job site.

Section 6.13: An apprentice is to be under the supervision of a Journeyman Wireman at all times. This does not imply that the apprentice must always be in-sight-of a Journeyman Wireman. Journeymen are not required to constantly watch the apprentice. Supervision will not be of a nature that prevents the development of responsibility and initiative. Work may be laid out by the employer's designated supervisor or journeyman based on their evaluation of the apprentice's skills and ability to perform the job tasks. Apprentices shall be permitted to perform job tasks in order to develop job skills and trade competencies. Journeymen are permitted to leave the immediate work area without being accompanied by the apprentice.

Apprentices who have satisfactorily completed the first four years of related classroom training using the NJATC curriculum and accumulated a minimum of 6,500 hours of OJT with satisfactory performance, shall be permitted to work alone on any job site and receive work assignments in the same manner as a Journeyman Wireman. An apprentice shall not be the first person assigned to a job site and apprentices shall not supervise the work of others.

Section 6.14: Upon satisfactory completion of apprenticeship, the JATC shall issue all graduating apprentices an appropriate diploma from the NJATC. The JATC shall encourage each graduating apprentice to apply for college credit through the NJATC. The JATC may also require each apprentice to acquire any electrical license required for journeymen to work in the jurisdiction covered by this agreement.

Section 6.15: The parties to this Agreement shall be bound by the Local Joint Apprenticeship and Training Trust Fund Agreement which shall conform to Section 302 of the Labor- Management Relations Act of 1947 as amended, ERISA, and other applicable regulations.

The Trustees authorized under this Trust Agreement are hereby empowered to determine the reasonable value of any facilities, materials, or services furnished by either party. All funds shall be handled and disbursed in accordance with the Trust Agreement.

Section 6.16: All employers subject to the terms of this Agreement shall contribute the amount of funds specified by the party's signatory to the local apprenticeship and training trust agreement. The current rate of contribution is: 1% of the Journeyman straight-time rate per hour for each hour worked. This sum shall be due the Trust Fund by the same date as is their payment to the NEBF under the terms of the Restated Employers Benefit Agreement and Trust.

## ARTICLE VII
### Vacation

Section 7.01: Upon written authorization from the employee, the Employer shall make a weekly payroll deduction of six percent (6%) from the gross pay of each employee. The employee shall request the payroll deduction at the beginning of employment with an employer. The employee shall notify the employer, in writing of any modifications to their participation status for the voluntary payroll deduction in the month of January or July. Payroll deduction revisions will be made effective on the first payroll of the following month. The Employer monthly shall forward the amount of individual deductions from each employee as shown on the monthly payroll to Velocity Credit Union, ATTN: Teller Operations, P.O. Box 1089, Austin, TX, 78767, for deposit to that employee's Velocity Credit Union vacation account. and simultaneously shall provide the Local Union with a written report which sets forth, for each employee, the number of hours worked, the employee's classification and pay rate, the employee's gross pay, and the amounts deducted.

Section 7.02: The payment and payroll report shall be mailed to reach the Velocity Credit Union no later than the 15th day of the month following the end of each benefit period.

Section 7.03: Each employee shall be allowed to take two (2) weeks of annual vacation between February 1st and January 31st.

Section 7.04: An Employer's failure to timely remit the payroll deductions or payroll report to the

Velocity Credit Union, or the payroll report to the Local Union, as required above shall be treated as a delinquent contribution under the terms of the applicable Inside Construction Agreement.

## ARTICLE VIII
## Annuity Plan

It is mutually agreed between the parties hereto and in accordance with the IBEW Local Union 520 Annuity Plan entered into by and between the Central Texas Chapter, NECA, and Local Union 520, IBEW, the Employer will forward to the Annuity Plan an amount equal to the percentage levels per Appendix A (See Article IV Section 4.03) of the gross wages of all classifications of employees for all hours worked within the geographical limits of the Union's jurisdiction when work is performed for any Employer operating under this Agreement. The payment shall be made monthly, together with the payroll report forms specified in Article IV.

## ARTICLE IX
## 401(k) Savings Plan

All employers signatory to this Agreement and/or employing workmen under the terms of this Agreement, shall deduct from each employee's Gross Weekly Payroll of employees who wish to participate, a voluntary deductible amount to be deposited into a 401(k) savings plan, upon the written request of each employee. Employees may enroll at the beginning of the employment with an Employer and enroll or change withholding each year during the month of January or July. Withholding will be made effective on the first payroll of the following month.

## ARTICLE X
## Health and Welfare

It is hereby mutually agreed between the parties hereto and in accordance with the Benefit contract governing the electrical benefit fund entered into by and between the Central Texas Chapter, NECA, and Local Union 520, IBEW, that the Employer will forward to the Central Texas Health and Benefit Plan the following contributions as per Appendix A (See Article IV Section 4.03) for all hours actually worked by each employee (both straight time and overtime) within the geographical limits of the Union's jurisdiction when work is performed for any Employers operating under the terms of the basic Agreement for all Employers.  Payments shall be made monthly together with a monthly payroll report on a form that will be furnished for that purpose by the Trustees of the Electrical Benefit Plan.

It is agreed that employers shall contribute solely up to $5.45 per hour of increases declared by the Trustees of the Plan. Any increases above $5.45 shall be split equally between the employer and employee through a wage reduction of the JIW rate of pay, all other classifications shall adjust accordingly.

## ARTICLE XI
## National Labor Management Cooperative Committee

Section 11.01: The parties agree to participate in the NECA-IBEW National Labor-Management Cooperation Fund, under authority of Section 6(b) of the Labor-Management Cooperation Act of 1978, 29 U.S.C. §175(a) and Section 302(c)(9) of the Labor-Management Relations Act, 29 U.S.C. §186(c)(9). The purposes of this Fund include the following:

(1)    to improve communication between representatives of labor and management;

(2)    to provide workers and employers with opportunities to study and explore new and innovative joint approaches to achieving organizational effectiveness;

(3)    to assist workers and employers in solving problems of mutual concern not susceptible to resolution within the collective bargaining process;

(4)    to study and explore ways of eliminating potential problems which reduce the competitiveness and inhibit the economic development of the electrical construction industry;

(5)    to sponsor programs which improve job security, enhance economic and community development, and promote the general welfare of the community and the industry;

(6)    to encourage and support the initiation and operation of similarly constituted local labor-management cooperation committees;

(7)    to engage in research and development programs concerning various aspects of the industry, including, but not limited to, new technologies, occupational safety and health, labor relations, and new methods of improved production;

(8)    to engage in public education and other programs to expand the economic development of the electrical construction industry;

(9)    to enhance the involvement of workers in making decisions that affect their working lives; and

(10)    to engage in any other lawful activities incidental or related to the accomplishment of these purposes and goals.

Section 11.02: The Fund shall function in accordance with, and as provided in, its Agreement and Declaration of Trust, and any amendments thereto and any other of its governing documents. Each Employer hereby accepts, agrees to be bound by, and shall be entitled to participate in the NLMCC, as provided in said Agreement and Declaration of Trust.

Section 11.03: Each employer shall contribute one cent ($.01) per hour worked under this Agreement up to a maximum of 150,000 hours per year. Payment shall be forwarded monthly, in a form and manner prescribed by the Trustees, no later than fifteen (15) calendar days following the last day of the month in which the labor was performed. The Central Texas Chapter, NECA, or its designee, shall be the collection agent for this Fund.

Section 11.04: If an Employer fails to make the required contributions to the Fund, the Trustees shall have the right to take whatever steps are necessary to secure compliance. In the event the Employer is in default, the Employer shall be liable for a sum equal to 15% of the delinquent payment, but not less than the sum of twenty dollars ($20), for each month payment of contributions is delinquent to the Fund, such amount being liquidated damages, and not a penalty, reflecting the reasonable damages incurred by the Fund due to the delinquency of the payments.

Such amount shall be added to and become a part of the contributions due and payable, and the whole amount due shall bear interest at the rate of ten percent (10%) per annum until paid. The Employer shall also be liable for all costs of collecting the payment together with attorneys' fees.

## ARTICLE XII
### P.A.C. Fund

The Employer agrees to deduct and transmit to the Local Union 520, IBEW, Committee on Political Education (IBEW-COPE) .05 cents for each clock hour worked from the wages of those employees who voluntarily authorize such contributions on the forms provided for that purpose by IBEW-COPE. The deductions will be made monthly and reported and remitted in accordance with Article IV, Section 11 of this Agreement.

Any Employee may revoke the voluntary authorization at any time by notifying the Company and IBEW-COPE in writing of a desire to do so.

The Union will indemnify and save the Company harmless from any claims, suits, or any other form of liability as a result of making payroll deductions described above.

## ARTICLE XIII

This Agreement set forth the entire contract between the Chapter and the Union and supersedes all previous understandings and Agreements between them and amendments thereto.

## ARTICLE XIV
### Substance Abuse Language

The dangers and costs that alcohol and other chemical abuses can create in the electrical contracting industry in terms of safety and productivity are significant. The parties to this Agreement resolve to combat chemical abuse in any form and agree that, to be effective, programs to eliminate substance abuse and impairment should contain a strong rehabilitation component. The local parties recognize that the implementation of a drug and alcohol policy and program must be subject to all applicable federal, state, and local laws and regulations. Such policies and programs must also be administered in accordance with accepted scientific principles and must incorporate procedural safeguards to ensure fairness in application and protection of legitimate interests of privacy and confidentiality. To provide a drug-free workforce for the Electrical Construction Industry, each IBEW local union and NECA chapter shall implement an area-wide Substance Abuse Testing Policy. The policy shall include minimum standards as required by the IBEW and NECA. Should any of the required minimum standards fail to comply with federal, state, and/or local laws and regulations, they shall be modified by the local union and chapter to meet the requirements of those laws and regulations.

## ARTICLE XV
### Code of Excellence

The parties to this Agreement recognize that to meet the needs of our customers, both employer and employee must meet the highest levels of performance, professionalism, and productivity. The Code of Excellence has proven to be a vital element in meeting the customers' expectations.

Therefore, each IBEW local union and NECA chapter shall implement a Code of Excellence Program. The program shall include minimum standards as designed by the IBEW and NECA.

### Separability Clause

Should any provision of this Agreement be declared illegal by any court of competent jurisdiction, such provision shall immediately become null and void, leaving the remainder of the Agreement in full force and effect and the parties shall, thereupon, seek to negotiate substitute provisions which are in conformity with the applicable laws.

SIGNED FOR THE UNION:
Local Union No. 520 of the International
Brotherhood of Electrical Workers

SIGNED FOR THE EMPLOYER:
A.S.H. Electrical Services LLC

Ben Brenneman
Business Manager/Financial Secretary
IBEW Local Union 520

A.S.H. Electrical Services LLC Representative

# 1st YEAR APPRENTICE WAGE
## MEMORANDUM OF UNDERSTANDING

### BETWEEN

### A.S.H. ELECTRICAL SERVICES LLC

### AND

### IBEW LOCAL UNION 520

It is mutually agreed upon between IBEW Local 520 and A.S.H. Electrical Services LLC, effective May 27, 2019, that the minimum wage for a first-year apprentice shall be $15.00 per hour. This MOU shall remain in effect until such time as 50% of the JIW wage rate is greater than $15.00 per hour.

SIGNED FOR THE UNION:
Local Union No. 520 of the International
Brotherhood of Electrical Workers

SIGNED FOR THE EMPLOYER:
A.S.H. Electrical Services LLC

_____

Ben Brenneman
Business Manager/Financial Secretary
IBEW Local Union 520

_____

A.S.H. Electrical Services LLC Representative

# CE ADVANCEMENT
## MEMORANDUM OF UNDERSTANDING

### BETWEEN

### A.S.H. ELECTRICAL SERVICES

### LLC

### AND

### IBEW LOCAL UNION 520

A CE shall obtain a Texas State Journeyman's License before being upgraded to JIW status.

<u>SIGNED FOR THE UNION:</u>
Local Union No. 520 of the International
Brotherhood of Electrical Workers

<u>SIGNED FOR THE EMPLOYER:</u>
A.S.H. Electrical Services LLC

Ben Brenneman
Business Manager/Financial Secretary
IBEW Local Union 520

A.S.H. Electrical Services LLC Representative

**2022 Residential MOU**

**Scope:** This MOU shall apply to all dwelling units including single family dwellings, apartments, and condominiums four stories and below. This MOU shall not apply to the commercial portion of mixed-use developments.

1. A CW/CE, having attained a Residential Journeyman's License, shall be awarded 2000 SBCs/ OJT hours. This CW/CE shall be allowed to work unsupervised on residential construction/service work.
2. A worker holding a Residential or Unrestricted Journeyman's License shall be the first person assigned to any residential project.
3. On all residential projects with four or more workers, a worker holding a Residential Journeyman's License shall be designated Residential foreman. This Residential foreman shall be allowed to supervise a crew of up to 10 workers of his classification or below, including first- and second-year apprentices. This Residential foreman shall receive a 10% pay premium above his/her classification.
4. On all residential projects requiring more than 11 workers, one shall be designated Residential General Foreman. The Residential General Foreman shall receive a 20% pay premium above his/her classification.
5. There shall be one foreman per 10 workers.
6. A CW/CE with a Residential Journeyman's License shall continue to accrue SBCs/OJT hours and be advanced in the CW/CE program accordingly.

SIGNED FOR THE UNION:
Local Union No. 520 of the International
Brotherhood of Electrical Workers

SIGNED FOR THE EMPLOYER:
A.S.H. Electrical Services LLC

Ben Brenneman
Business Manager/Financial Secretary
IBEW Local Union 520

A.S.H. Electrical Services LLC Representative

### SHORT CALL EXTENSION

### MEMORANDUM OF UNDERSTANDING
### BETWEEN
### A.S.H. ELECTRICAL SERVICES
### LLC
### AND
### IBEW LOCAL UNION 520

In order to accommodate short term employment needs of the employer signed to this agreement, and the needs of our customers, the union and employer agree to the following:

Article III, Section 3.12 of the Inside Agreement between A.S.H. Electrical Services LLC and Local Union 520, of the International Brotherhood of Electrical Workers, shall have the following language added to the existing language contained in Article III, Section 3.12:

> A forty (40) hour call may be extended an additional forty (40) hours by the employer is job conditions warrant such extension. An applicant is not required to stay for the second forty (40) hour period unless told in advance the job as for eighty (80) hours. For the purposes of calculating hours worked under this Memorandum, only the straight time hours worked will be used. Any overtime worked during the one (1) or two (2) week period covered by this Memorandum will not affect the applicant's position on the Out-of-Work List.

This Memorandum shall continue in effect from year to year hereafter unless changed or terminated in the same manner as prescribed for the Inside Agreement.


SIGNED FOR THE UNION:
Local Union No. 520 of the International
Brotherhood of Electrical Workers

SIGNED FOR THE EMPLOYER:
A.S.H. Electrical Services LLC


_____

Ben Brenneman
Business Manager/Financial Secretary
IBEW Local Union 520

_____

A.S.H. Electrical Services LLC Representative

## SMALL WORKS
## MEMORANDUM OF UNDERSTANDING

### BETWEEN

### A.S.H. ELECTRICAL SERVICES LLC

### AND

### IBEW LOCAL UNION 520

IBEW Local Union 520 and EMPLOYER have repeatedly discussed possible solutions to gaining market share within the small works arena. In an effort to assist all signatory contractors in this arena, Local 520 offers the following:

**Four Person Crew**

Effective June 6, 2022, the Union agrees on any/all jobs throughout the Local 520 jurisdiction, with four (4) or less employees, the signatory contractor may utilize the services of a Construction Electrician (CE) and/or a 6th period apprentice. This CE or apprentice must be in possession of a State of Texas Journeyman License and may work alone, if necessary.

Additionally, the licensed CE may supervise up to three (3) additional equal or lower classified workers (CE's and/or CW's). This crew mix would not include Apprentice Wiremen. As long as the jobsite requires 4 or less employees, there will be no need for a Journeyman Inside Wireman (JIW) nor a Foreman (F). Should the four-person crew increase to five (5) or more, a licensed JIW or a licensed Foreman must be utilized.

Due to the market conditions, the parties recognize this agreement to be a variance to Article VI Section 6.12 of the inside agreement that necessitates the JIW being the first person on the job. The parties recognize Apprentices and CW/CEs operate under a formal training program where OJT under direct and indirect supervision by a JIW is still an important component to their development. Therefore, employers must be diligent to ensure CW/CE employees receive OJT training supervised by a JIW outside of these qualifying projects.

Signatory Contractors are not limited to any number of Four Person Crew jobsites. Pay rates and applicable benefits for the above classified workers shall be the ones listed in the Local 520 Inside Collective Bargaining Agreement between IBEW Local Union 520 and A.S.H. Electrical Services LLC.

This Memorandum of Understanding will expire on June 4, 2028, unless both Parties agree to extend it for an additional timeframe.

SIGNED FOR THE UNION:                    SIGNED FOR THE EMPLOYER:
Local Union No. 520 of the International    A.S.H. Electrical Services LLC
Brotherhood of Electrical Workers

Ben Brenneman
Business Manager/Financial Secretary
IBEW Local Union 520

A.S.H. Electrical Services LLC Representative

**Memorandum of Understanding**
**Summer Worker Program**

1.     Must be by informal understanding between the local Union, the Employer and the JATC, with written guidelines.

2.     The guidelines should specify the following conditions:

   a.     The maximum number to be employed.

   b.     Effective only when placement will not displace an Apprentice or Intermediate Journeyman.

   c.     Qualifications:
       1. At least 16 years old
       2. A bona fide student (evidence required)
       3. Summer worker and employer signatures on statement of understanding (sample attached)

   d.     Placement for a specific period of time, not to exceed 90 days. (Ending with the first pay period in September).

   e.     Placed as a <u>Summer Worker.</u>  NOT as an apprentice. (Cannot be referred or worked on jobs requiring registered apprentices).

   f.     Rate of pay shall be equal to that of a first period indentured apprentice.

   g.     Work performed as a Summer Worker is not counted towards apprenticeship.

   h.     Wages paid to Summer Workers are included in gross labor payroll, and the 3% of gross labor payroll payment to NEBF must include Summer Workers wages.

   i.     Limited electrical work (same as unindentured apprentice).


<u>SIGNED FOR THE UNION:</u>                    <u>SIGNED FOR THE EMPLOYER:</u>
Local Union No. 520 of the International           A.S.H. Electrical Services LLC
Brotherhood of Electrical Workers


_____          _____
Ben Brenneman
Business Manager/Financial Secretary
IBEW Local Union 520                              A.S.H. Electrical Services LLC Representative

**Memorandum
of Understanding**

**Between IBEW Local
Union 520
and
A.S.H. ELECTRICAL SERVICES LLC**

Effective June 2, 2025 through June 4, 2028.

On jobs of five (5) or more days duration on the main campus* of the University of Texas, if parking is not provided, the employer will reimburse $6.00 per day for parking to each employee who reports to work on time and works all regular hours available to him. The employer is not responsible to provide transportation to and from parking areas.

SIGNED FOR THE UNION:
Local Union No. 520 of the International
Brotherhood of Electrical Workers

SIGNED FOR THE EMPLOYER:
A.S.H. Electrical Services LLC

Ben Brenneman
Business Manager/Financial Secretary
IBEW Local Union 520

A.S.H. Electrical Services LLC Representative

*from I-35 to Guadalupe Street, from East & West Dean Keeton Street to East & West Martin Luther King, Jr. Blvd.



# Construction Wireman/Construction Electrician
# Memorandum of Understanding

**PURPOSE**:

This agreement has two goals; one is to recruit an adequate number of personnel to meet the demands of the electrical construction industry in the jurisdiction covered by the inside construction and maintenance agreement. The second objective is to establish a standard by which those recruited will be properly placed for continuing skills based training.

**OBJECTIVES**:

    A. Provide a uniform means by which individuals can be brought into the organized industry.
    B. Provide employment opportunities for those individuals who may not meet the entrance requirements of the local AETA
    C. Establish a fair wage scale based on a skill standard that provides a clear and formal path to becoming a Journeyman Inside Wireman while maintaining a productive workforce.
    D. Provide electrical employees with experience and potential, an avenue to becoming a Journeyman Inside Wireman.
    E. To provide a second chance program for those indentured apprentices who discover that they do not fit into the AETA program.
    F. To provide A.S.H. Electrical Services LLC and IBEW Local Union 520 the autonomous means of developing training programs to meet the needs of changing local markets.

**DEFINITIONS**:

    A. CW/CE – Construction Wireman/Construction Electrician
    B. SBC – Skill Based Credits
    C. AETA – Austin Electrical Training Alliance (formerly called Joint Apprenticeship Training Center)
    D. JATC – Joint Apprenticeship Training Committee
    E. LU 520 – International Brotherhood of Electrical Workers Local Union 520
    F. Employer – A.S.H. Electrical Services LLC
    G. TDLR – Texas Department of Licensing and Regulation
    H. OJT – On the Job Training

**SECTION 1 – ADMINISTRATION**

    A. The AETA and LU 520 shall be responsible for:

        1) Administering skill-based evaluations (supervised by Local Union staff)
        2) Monitoring progress of the CW/CE for wage advancement
        3) Develop and deliver skill-based training courses
        4) Notifying LU 520 of the number of apprentices available for work assignments
        5) Recruiting, processing and dispatching applicants to employers for assignment.



**Construction Wireman/Construction Electrician
Memorandum of Understanding**

B. Either party (EMPLOYER, LU 520 or AETA) may review all skill-based evaluations and evaluation procedures.

## SECTION 2 – WAGES, BENEFITS AND ADVANCEMENT

Upon successful accumulation of 16,000 Skill Based Credits (SBC) and successful completion of a Texas State Journeyman's License the Construction Electrician shall be upgraded to Journeyman Inside Wireman.

### A. Wages Appendices A1 and A2

    1.    Accumulated SBC's shall determine the individuals initial pay rate. Individuals shall advance upon meeting the requirements shown in Appendix D.
        or

    2.    Experienced Applicants with verifiable industry wage -or- AETA Transferees (Ref: SECTION 5): wages shall remain frozen until accumulated SBC's warrant pay advancement.

### a. BENEFITS – REFERENCE APPENDICES A1 and A2:

1. Accumulated SBC's shall determine what level of benefits shall apply.
2. All benefits shall be paid in accordance with the various trust fund qualifications.

### b. SKILLS BASED CREDITS (SBC'S) shall accrue by the following methods:

1. One SBC per each OJT hour worked for a signatory contractor.
2. One SBC for every two (2) OJT hours worked for a non-signatory contractor (wage documentation required; no credit (SBC's) for hours worked prior to program enrollment).
3. SBC's from skill based evaluation.
4. SBC's credited by successful completion of skills based courses. SBC's achieved in this manner shall not exceed 4,000 for the life of the program.
    (see APPENDIX C)

    Note: In no case shall SBC's be earned above the stated maximums through the evaluation process and/or the optional course work within each skill discipline (see APPENDIX B).



## Construction Wireman/Construction Electrician
## Memorandum of Understanding

### c. **EXPERIENCED APPLICANTS SHALL**:

1) Provide verifiable electrical industry wage documentation to establish their wage rate. (wage documents for public works projects where a wage determination is established shall not be eligible for verification)

OR

2) Take the next available skills based evaluation to determine how many SBC's shall be credited and establish initial wage rate.

SEE APPENDICES A1 AND A2 FOR EVALUATION, CLASS SBC'S AND WAGE SCHEDULE.

## **SECTION 3 – IMPLEMENTATION**:

The LU 520 shall be primarily responsible for the recruitment, processing and dispatching of applicants to employers. The LU 520 shall provide all processing information to the AETA for the purpose of tracking the CW/CE's progress in the program.

The JATC shall be responsible for the training of participants in accordance with Article VI, section 6.01 of the inside agreement.

The Employer shall be responsible for providing a termination slip to the LU 520 and the AETA when a CW/CE becomes unemployed.

CW/CE shall be employed on a conditional basis for 90 days from their first assignment. During the conditional employment period the LU 520 and A.S.H. Electrical Services LLC shall determine the individuals continued status in the program.

No employer is guaranteed a specific number of CW/CE.

Each job shall follow a ratio of one or more (1 or more) CW/CE(s) to one (1) JIW.

An employer who fails or refuses to hire available apprentices, in accordance with the agreed upon ratio of apprentices to journeymen, shall not be entitled to hire CW/CE.

CW/CE may be transferred from one qualifying project to another by the employer.

CW/CE shall not be included in the calculation of the apprentice to journeyman ratio.

Referral records may be inspected at LU 520 by a representative of the Employer.



# Construction Wireman/Construction Electrician
# Memorandum of Understanding

Effective January 1, 2020, all Construction Wiremen and Construction Electricians are required to provide proof of completion, by originally issued card or certificate, of an OSHA 10 safety training course.

## SECTION 4 – SUPERVISION:

The CW/CE who has less than 8,000 SBC's shall be under the supervision of a Journeyman Inside Wireman. It shall be the responsibility of the supervisor to lay out the work required and to permit the CW/CE to perform the work on his/her own. A CW/CE who has 8,000 SBC's shall be allowed to work with no supervision but shall not supervise any apprentices or Journeyman Wireman.

## SECTION 5 – TRANSFERS:

A. All transfers shall be approved by the JATC.
B. Individuals are limited to a maximum of (2) transfers.
C. Transferees shall not experience a Wage Rate or Benefit Reduction.
D. AETA to CW/CE program:
   Local Apprentices from AETA apprenticeship program may transfer to the CW/CE program at an equal pay rate providing the apprentice has:
   1) A satisfactory work history (hours worked, absenteeism, and tardiness); and
   2) Established in writing the basis for the transfer.
   3) Apprentice transferees shall be credited one (1) SBC for each OJT Hour + (500) SBC's per completed academic year of apprenticeship. In no instance shall this transfer result in the apprentice being granted more than the maximum SBC's as shown below:

### AETA to CW/CE Credit Table

| AETA Completed | Credited SBC's | AETA Completed | Credited SBC's |
|---|---|---|---|
| Less than 1 year | 2000 | Completed 3rd year | 8000 |
| Complete 1st year | 4000 | Completed 4th year | 10000 |
| Complete 2nd year | 6000 | Completed 5th year | 12000 |

E. CW/CE to AETA Program:

CW/CE meeting the requirements for entrance into the AETA program may transfer to the AETA program as outlined by the JATC standards. The transferring CW/CE will complete the IBEW/NECA ETA Proficiency Exam to determine placement in the academic portion of the training and will receive OJT Hour credits based on JATC guidelines. Transferees shall not experience a reduction in their wage rate.



# Construction Wireman/Construction Electrician
# Memorandum of Understanding

## SECTION 6 – TERM OF AGREEMENT:

This Agreement shall take effect on June 2, 2019. The terms and conditions of this Agreement shall continue on jobs bid under said terms until such jobs are completed.

**Disputes:** All allegations of infractions of this agreement shall be referred to the Labor Management Committee as defined in the current inside/maintenance collective bargaining agreement. In the event of a deadlock the matter shall be referred to the IBEW Seventh District Vice-president and the NECA Southern Region Director for final and binding adjudication. This agreement is a Memorandum of Understanding to the area inside construction and maintenance collective bargaining agreement and may continue with or without requirement of separate notice.

**Commitment:** The two parties, by signature below, hereby commit and promise to use their best efforts to see that this Memorandum is used to its highest level for the maximum benefit of employers and employees alike.

The parties further promise and agree that if changes are needed to this Memorandum; those changes will be addressed in an atmosphere of mutual trust and cooperation for the equal benefit of employers and employees alike. **Furthermore, any changes to this agreement or program shall be subject to review by the IBEW Seventh District Vice-President and the NECA Southern Region Director.**

SIGNED FOR THE UNION:
Local Union No. 520 of the International
Brotherhood of Electrical Workers

SIGNED FOR THE EMPLOYER:
A.S.H. Electrical Services LLC

_____

Ben Brenneman
Business Manager/Financial Secretary
IBEW Local Union 520

_____

A.S.H. Electrical Services LLC Representative



# Construction Wireman/Construction Electrician
## Memorandum of Understanding

### APPENDIX A1 (CW1-CW6)

| Benefits | CE 1 | CE 2 | CE 3 | CE 4 | CE 5 | CE 6 |
|---|---|---|---|---|---|---|
| Range SBC'S | 0-2K | 2.01K-4K | 4.01K-6K | 6.01K-8K | 8.01K-10K | 10.01K-12K |
| JIW Rate | 44% | 44% | 49% | 54% | 59% | 64% |
| A.E.T.A. | NA | NA | NA | 1% of JIW | 1% of JIW | 1% of JIW |
| NLMCC | $0.01 | $0.01 | $0.01 | $0.01 | $0.01 | $0.01 |
| H&B | Plan C | Plan B | Plan B | Plan B | Plan B | Plan B |
| NEBF (3%) | 3% | 3% | 3% | 3% | 3% | 3% |
| Annuity | NA | NA | NA | 3% | 3% | 3% |
| AMF | .10 | .10 | .10 | .10 | .10 | .10 |

### APPENDIX A2 (CE1- CE 4)

| Benefits | CE 7 | CE 8 | CE 9 | CE 10 |
|---|---|---|---|---|
| Range SBC's | 12.01K-13K | 13.01K-14K | 14.01K-15K | 15.01K- more |
| JIW Rate | 68% | 73% | 78% | 85% |
| A.E.T.A. | 1% of JIW | 1% of JIW | 1% of JIW | 1% of JIW |
| NLMCC | $0.01 | $0.01 | $0.01 | $0.01 |
| H&B | Plan B | Plan B | Plan B | Plan B |
| NEBF (3%) | 3% | 3% | 3% | 3% |
| Annuity | 5% | 5% | 5% | 5% |
| AMF | .10 | .10 | .10 | .10 |

| Low |
|---|
| Middle |
| High |

NOTE:  Benefit Schedule shown reflects current rates.  Rates shall be adjusted as per the Current Inside Agreement.

-Health and Welfare provides the employee with the option to select employee single coverage (for Levels 2, 3 & 4 only) or employee/dependent coverage (for Levels 2-8). Employees may change this election once each calendar year or more often as the trust fund rules provide.

-Only SBCs earned from participating employers qualify for benefits eligibility.



## Construction Wireman/Construction Electrician Memorandum of Understanding
### APPENDIX B

| SKILL DISCIPLINE | MAX SBC's |
|---|---|
| Branch Wiring | 6,400 |
| Feeder Wiring | 1,600 |
| Panels & Transformers | 1,600 |
| Switchgear & Motor Control Center | 1,120 |
| Motors & Motor Controls | 800 |
| Lighting & Lighting Controls | 2,400 |
| Grounding | 160 |
| Devices | 320 |
| Electrical Codes & Ordinances | 160 |
| Blueprints & Specifications | 160 |
| Meters & Tools | 160 |
| OSHA & Job Safety | 160 |
| Agreements | 160 |
| Service & Troubleshooting | 800 |



# Construction Wireman/Construction Electrician
# Memorandum of Understanding

## APPENDIX C

### Optional Coursework SBC Curriculum Allocation

| Skills Course | SBC's Credit | Course Hours |
|---|---|---|
| Branch Wiring | 920 | 72 |
| Electrical Codes & Ordinances | 320 | 30 |
| Service/Troubleshooting | 280 | 24 |
| Panels & Transformers | 280 | 24 |
| OSHA & Job Safety | 280 | 24 |
| Meters & Tools | 280 | 24 |
| Feeder Wiring | 280 | 24 |
| Blueprints & Specifications | 280 | 24 |
| Agreements | 240 | 24 |
| Switchgear & Motor Control Centers | 200 | 18 |
| Motors & Motor Controls | 200 | 18 |
| Lighting & Lighting Controls | 200 | 18 |
| Grounding | 120 | 12 |
| Devices | 120 | 12 |
| **TOTAL** | 4000 | 180 |



**Construction Wireman/Construction Electrician
Memorandum of Understanding**

APPENDIX D

| Classification | SBC's | Training | Awarded |
|---|---|---|---|
| CW2 | 2000 | Conduit Bending 1 | 230 |
| CW3 | 4000 | Blueprint Reading | 280 |
| CW4 | 6000 | Conduit Bending 2 | 230 |
| CW5 | 8000 | Codeology | 120 |
| CW6 | 10000 | Basic Code | 120 |
| CE1 | 12000 | Conduit Bending 3 | 230 |
| CE2 | 13000 | Grounding/Transformers | 320 (120+200) |
| CE3 | 14000 | Services | 200 |
| CE4 | 15000 | Motor Control | 280 |
| JIW | 16000 | | |



**Memorandum of Understanding**
**Four Year Apprenticeship Program Conversion**



Made and entered into April 10, 2023, between IBEW Local Union 520, hereafter referred to as the Union, and the EMPLOYER, hereafter referred to as the Employer. This Agreement shall remain in effect from year to year throughout the current collective bargaining agreement and will expire at that time on June 1, 2025.

1. The parties hereby agree that Article IV, Section 4.03 Appendix A (Wages) of the Inside Agreement between the parties shall be modified with an additional schedule to meet the needs of the apprenticeship wage and benefit schedule for those starting the (4) Four Year Program.

| Apprentice Wireman | | | | | | |
|---|---|---|---|---|---|---|
| Multiplier | Class | NEBF | Annuity | Medical | JATC | |
| 50% of JIW<br>0-999 Hrs | 1st Period | 3% | ** | $3.70 | 1%*** | |
| 55% of JIW<br>1000-1999 Hrs | 2nd Period | 3% | 3% | $3.70 | 1%*** | |
| 60% of JIW<br>2000-3499 Hrs | 3rd Period<br>**180 Hrs Instruction** | 3% | 3% | $3.70 | 1%*** | |
| 65% of JIW<br>3500-4999 Hrs | 4th Period<br>**360 Hrs Instruction** | 3% | 5% | $3.70 | 1%*** | |
| 70% of JIW<br>5000-6499 Hrs | 5th Period<br>**540 Hrs Instruction** | 3% | 5% | $3.70 | 1%*** | |
| 75% of JIW<br>6500-8000 Hrs | 6th Period<br>**720 Hrs Instruction** | 3% | 8% | $3.70 | 1%*** | |
| 50% of JIW<br>**Max Hrs2000** | Unindentured<br>Apprentice | 3% | --------------- | $2.65 | 1%*** | |
| **Journeyman 8000, completed 900 hours of related instruction and obtained State of Texas Journeyman license. Classroom instruction hours are cumulative.**<br>**I% effective January 6 2025<br>***1% of Journeyman Straight -Time Rate | | | | | | |

SIGNED FOR THE UNION:                    SIGNED FOR THE EMPLOYER:
Local Union No. 520 of the International   A.S.H. Electrical Services LLC
Brotherhood of Electrical Workers

_____          _____
Ben Brenneman
Business Manager/Financial Secretary      A.S.H. Electrical Services LLC Representative
IBEW Local Union 520

# EX. 8



# THE COUNCIL ON INDUSTRIAL RELATIONS
## FOR THE ELECTRICAL CONTRACTING INDUSTRY

OFFICE OF THE SECRETARY • 900 7th STREET, N.W. • WASHINGTON, D.C. 20001
PHONE (202) 728-6165 • FAX (202) 728-6168 • WEBSITE: WWW.THECIR.ORG

June 10, 2025

Mr. Adam C. Johnke                          Mr. Ben Brenneman
Co-Owner                                    Business Manager
A.S.H. Electrical Services, LLC             IBEW Local Union 520
P.O. Box 61905                              4818 East Ben White Blvd
San Angelo, Texas 76906                     Austin, TX 78741

RE: Reconsideration of Council on Industrial Relations Decision

Dear Mr. Johnke:

    We have received your request that the Council on Industrial Relations ("CIR")
reconsider its May 13, 2025, decision in which it directed A.S.H. Electrical Services, LLC and
IBEW Local 520 "to sign and immediately implement the Collective Bargaining Agreement"
attached to the CIR's decision.  The CIR fully considered the issues you have raised in your
request for reconsideration. There is no basis for the CIR to reconsider its decision, which is
final and binding on the parties.


Al D. Davis                                 Steve Krieg
Secretary, CIR                              Treasurer, CIR

SK/ADD:ek

Copy to:   Chris J. Wagner, International Vice President, IBEW Seventh District
           Frank Piatt, Executive Director, Southern Region, NECA

PARTIES IN DISPUTE:
    A.S.H. Electric
    Local Union No. 520

Austin, Texas
May 13, 2025
Inside

PRESENTATION:
    By brief only for A.S.H. Electric
    By brief and oral argument for Local Union No. 520

APPEARANCES:
    For Local Union No. 520:  B. Brenneman, D. Campbell

MATTERS IN DISPUTE:
1. Article I, Section 1.01 – Length of Agreement
2. Article II, Section 2.01 – Favored Nations
3. Article IV, Section 4.02 – Paid Holidays
4. Article IV, Section 4.03 – Wages
5. Article V – General Rules
6. Article V – Walk Time
7. Article VI, Section 6.16 – Apprenticeship Contribution
8. Article VIII – Annuity Plan

MEMBERS OF COUNCIL SITTING:

| FOR THE EMPLOYER | FOR THE UNION |
|---|---|
| D. Laffoon | M. Hager |
| S. Krieg | C. Bergfeld |
| J. Brunia | A. Warwick |
| T. Maloney | D. McInerney |
| F. Piatt | R. Wolf |
| L. Bell | D. Robinson |

DECISION:

After careful consideration of the evidence submitted, the Council rules as follows:

In the instant case, the parties are directed to sign and immediately implement the Collective Bargaining Agreement which is attached hereto and hereby made a part of this decision. The Council retains jurisdiction over disputes pertaining to this Agreement including any wage/fringe opener(s) contained therein and such disputes are to be returned to Council through the normal procedures if the parties are unable to reach agreement.

UNANIMOUSLY ADOPTED:
Washington, DC
May 13, 2025


_____          _____
            Acting Co-Chairman                                        Acting Co-Chairman



_____
                        Secretary



June 2, 2025 - June 4, 2028

AGREEMENT
Between

A.S.H. Electrical Services LLC

and

LOCAL UNION NO. 520 of the
INTERNATIONAL BROTHERHOOD OF
ELECTRICAL WORKERS

Austin, Texas

**June 2, 2022 - June 1, 2025**
**AGREEMENT**

**Between**

**A.S.H. Electrical Services LLC**

**and**

**LOCAL UNION NO. 520 of the**
**INTERNATIONAL BROTHERHOOD OF**
**ELECTRICAL WORKERS**
**Austin, Texas**

## PARTIES CLAUSE

Agreement by and between the A.S.H. Electrical Services LLC and LOCAL UNION 520, INTERNATIONAL BROTHERHOOD OF ELECTRICAL WORKERS. As used hereinafter in this Agreement, the term "Employer" shall mean A.S.H. Electrical Services LLC, and the term "Union" shall mean LOCAL UNION NO. 520, IBEW.

## BASIC PRINCIPLES

The Employer and the Union have a common and sympathetic interest in the Electrical Industry. Therefore, a working system and harmonious relations are necessary to improve the relationship between the Employer, the Union, and the Public. Progress in Industry demands a mutuality of confidence between the Employer and the Union. All will benefit by continuous peace, and by adjusting any differences by rational, common sense methods. Now, therefore, in consideration of the mutual promises and agreements herein contained, the parties hereto agree as follows:

## ARTICLE I
## EFFECTIVE DATE/CHANGES/GRIEVANCES/DISPUTES

<u>Section 1.01</u>: This Agreement shall take effect on June 2, 2025 and shall remain in effect through June 4, 2028, unless otherwise specifically provided for herein. It shall continue in effect from year to year thereafter, from the start of the first full pay period in June through the last pay period starting in May of each year, unless changed or terminated in the way later provided herein.

<u>Section 1.02(a)</u>: Either party or an Employer withdrawing representation from the Chapter or not represented by the Chapter, desiring to change or terminate this Agreement must provide written notification at least 90 days prior to the expiration date of this Agreement or any anniversary date occurring thereafter.

(b) Whenever notice is given for changes, the nature of the changes desired must be specified in the notice, or no later than the first negotiating meeting unless mutually agreed otherwise.

(c) The existing provisions of the Agreement, including this Article, shall remain in full force and effect until a conclusion is reached in the matter of proposed changes.

(d) In the event that either party, or an Employer withdrawing representation from the Chapter or not represented by the Chapter, has given a timely notice of proposed changes and an agreement has not been reached by the expiration date or by any subsequent anniversary date to renew, modify, or extend this Agreement, or to submit the unresolved issues to the Council on Industrial Relations for the Electrical Contracting Industry (CIR), either party or such an Employer, may serve the other a ten (10) day written notice terminating this Agreement. The terms and conditions of this Agreement shall remain in full force and effect until the expiration of the ten (10) day period.

(e) By mutual agreement only, the Chapter, or an Employer withdrawing representation from the Chapter or not represented by the Chapter, may jointly, with the Union, submit the unresolved issues to the Council on Industrial Relations for adjudication. Such unresolved issues shall be submitted no later than the next regular meeting of the Council following the expiration date of this Agreement or any subsequent anniversary dates. The Council's decisions shall be final and binding.

(f) When a case has been submitted to the Council, it shall be the responsibility of the negotiating committee to continue to meet weekly in an effort to reach a settlement on the local level prior to the meeting of Council.

(g) Notice of a desire to terminate this Agreement shall be handled in the same manner as a proposed change.

<u>Section 1.03</u>: This Agreement shall be subject to change or supplement at any time by mutual consent of the parties hereto. Any such change or supplement agreed upon shall be reduced to writing, signed by the parties hereto, and submitted to the International Office of the IBEW for approval, the same as this Agreement.

Section 1.04: During the term of this Agreement, there shall be no stoppage of work either by strike or lockout because of any proposed changes in this Agreement or dispute over matters relating to this Agreement. All such matters must be handled as stated herein.

## GRIEVANCES/DISPUTES

Section 1.05: There shall be a Labor-Management Committee of trustees representing the Union and three representing the Employers. It shall meet regularly at such stated times as it may decide. However, it shall also meet within 48 hours when notice is given by either party. It shall select its own Chairman and Secretary. The Local Union shall select the Union representatives and the Employer shall select the management representatives.

Section 1.06: All grievances or questions in dispute shall be adjusted by the duly authorized representative of each of the parties to this Agreement. In the event that these two are unable to adjust any matter within 48 hours, they shall refer the same to the Labor-Management Committee.

Section 1.07: All matters coming before the Labor-Management Committee shall be decided by a majority vote. Four members of the Committee, two from each of the parties hereto, shall be a quorum for the transaction of business, but each party shall have the right to cast the full vote of its membership and it shall be counted as though all were present and voting.

Section 1.08: Should the Labor-Management Committee fail to agree or to adjust any matter, such shall then be referred to the Council on Industrial Relations for the Electrical Contracting Industry for adjudication. The Council's decisions shall be final and binding.

Section 1.09: When any matter in dispute has been referred to conciliation or arbitration for adjustment, the provisions and conditions prevailing prior to the time such matters arose shall not be changed or abrogated until agreement has been reached or a ruling has been made.

Section 1.10: The Labor-Management Committee shall not recognize any grievance or dispute unless written notice of the charge is given within thirty (30) days after the representatives of the parties to this Agreement first became aware, or reasonably should have been aware, of a violation of this Agreement. This shall not apply to any Section which requires money to be deposited to any Trust Fund.

## ARTICLE II
## Employers Rights - Union Rights

Section 2.01: The Employer recognizes the Union as the exclusive representative of all its employees performing work within the jurisdiction of the Union for the purpose of collective bargaining in respect to rates of pay, wages, hours of employment and other conditions of employment.

Section 2.02(a): Certain qualifications, knowledge, experience, and financial responsibility are required of everyone desiring to be an Employer in the Electrical Industry. Therefore, an Employer who contracts for electrical work is a person, firm, or corporation, having these qualifications and maintaining a place of business and suitable financial status to meet payroll requirements and

employing at least one Journeyman Wireman.

(b) All Employers subject to the terms of this Agreement shall carry an Indemnity Bond, issued by a company authorized to do business in the State of Texas, the minimum for all employers shall be $5,000.00 as evidence of financial responsibility, and to insure proper payments to the Electrical Joint Apprenticeship and Training Trust Fund, the National Employees Benefit Board, the Austin Vacation Trust Fund, IBEW Local Union 520 Annuity Plan and Health and Welfare Plan, 401(k), and P.A.C. deductions, to Local Union 520, for any union dues or assessments withheld on behalf of employees, and wages required under this Agreement be paid directly to the affected employee(s). Bond amounts greater than $5000 shall be required based on the following formula outlined below:

(c) Each employer signatory to the collective bargaining agreement shall be required to secure a welfare bond of at least $5000. Employers shall be required to secure larger bonds based on the following formula: Employers shall provide a welfare bond based on the average monthly hours worked utilizing the previous three years to calculate the average. This number shall be multiplied by the aggregate amount of the benefit package and rounded up to the next one thousandth. If an employer has been delinquent in the payment of benefits more than twice, they shall be required to pay benefits timely on a weekly basis for a period of six months and secure the required bond. After a period of six months of timely benefit payments the employer may return to the monthly schedule. If an employer has no previous experience in the jurisdiction the bond shall be based on the estimated monthly hours of the project to be worked. The maximum bond for any employer shall be $50,000.

The aforesaid Bond shall be executed for a period of time to conform to the time limitations set forth in this Agreement and shall be renewed as provided for in subsequent Agreements.

The Bond shall provide that it may not be canceled by either the Employer or the insurance carrier without thirty (30) days written notice in advance to the Union by Certified, Registered, or Insured mail from the Surety. Proof of the execution of the Bond, in the form of an affidavit executed by the insurance carrier, shall be furnished the Union for each Employer. Such affidavit shall show on its face that it may not be canceled by either the insurance carrier of the Employer without prior notification to the Union. The Local Union shall furnish a copy of the affidavit of Bond to each Fund.

The Obligee (Local Union 520, IBEW) shall notify the Surety within thirty (30) days after having knowledge of a breach of this Agreement by the principal hereof.

(d) Fringe benefits provided for under this Agreement are due and payable on or before the 15th day of the month following the month, covering the hours worked by each employee. Each Employer shall file a monthly report for each fringe benefit, in the form established, therefore, each report shall be filed, regardless of whether or not the Employer has employed any employee in the month covered by said report.

Any Employer who fails to file a report and pay contributions for any of the fringe benefits by the 15th day following the month in which such report or payment is due shall be considered delinquent and is in violation of this Agreement. If payments are not mailed in time to reach the

Benefit Fund by the prescribed time, interest at the rate of 1½% monthly will be due and payable. Each Employer shall make available applicable books and records for the purpose of auditing same to determine the amount of his liability and shall pay the expense of audit if delinquencies are found, under guidelines of the Funds. Action to collect contributions may be brought in the name of the respective Fund involved, its Trustees and any assignee or agent designated by said Trustees. Employer hereby accepts and agrees to the terms of each trust agreement and plan for such fringe Benefit Fund.

A delinquent Employer shall be liable to any employee affected by such delinquency for all benefits lost by such employee by virtue of such delinquency, and such delinquent Employer shall also be liable for reasonable attorneys' fees for any action brought to recover the amount of said benefits.

"This section does not waive or deny any remedies of collection in other sections of this Agreement, Trust or a remedy at law".

Section 2.03: For all employees covered by this Agreement the Employer shall carry Workman's Compensation Insurance with a Company authorized to do business in this State, Social Security, and such other protective insurance as may be required by the laws of this State and shall furnish satisfactory proof of such to the Union. He shall also make contributions to the State Unemployment Compensation Commission.

Section 2.04(a): It is agreed that in accord with the Employees Benefit Agreement of the National Electrical Benefit Fund ("NEBF"), as entered into between the National Electrical Contractors Association and the International Brotherhood of Electrical Workers on September 3, 1946, as amended, and now delineated as the Restated Employees Benefit Agreement and Trust, that unless authorized otherwise by the NEBF the individual Employer will forward monthly to the NEBF's designated local collection agent an amount equal to three percent (3 %) of the gross monthly labor payroll, paid to, or accrued by, the employees in this bargaining unit, and a completed payroll report prescribed by the NEBF. The payment shall be made by check or draft and shall constitute a debt due and owing to the NEBF on the last day of each calendar month, which may be recovered by the suit initiated by the NEBF or its assignee. The payment and the payroll report shall be mailed to reach the office of the appropriate local collection agent not later than fifteen (15) calendar days following the end of each calendar month.

The individual Employer hereby accepts, and agrees to be bound by, the Restated Employees Benefit Agreement and Trust.

(b) An individual Employer who fails to remit as provided above shall be additionally subject to having his Agreement terminated upon seventy-two (72) hours' notice in writing being served by the Union, provided the individual Employer fails to show satisfactory proof that the required payments have been paid to the appropriate local collection agent.

The failure of an individual Employer to comply with the applicable provisions of the Restated Employees Benefit Agreement and Trust shall also constitute a breach of this Agreement.

Section 2.05: The Union reserves the right to discipline its members for violations of its laws,

rules, and agreements.

Section 2.06: The Local Union is part of the International Brotherhood of Electrical Workers and any violation or annulment by an individual Employer of the approved Agreement of this or any other Local Union of the IBEW, other than violations of Paragraph 2 of this Section, will be sufficient cause for the cancellation of his Agreement by the Local Union after a finding has been made by the International President of the Union that such a violation or annulment has occurred.

The subletting, assigning, or transfer by an individual Employer of any work in connection with electrical work to any person, firm or corporation not recognizing the IBEW or one of its Local Unions as the collective bargaining representative of his employees on any electrical work in the jurisdiction of this or any other Local Union to be performed at the site of the construction, alteration, painting or repair of a building, structure or other work, will be deemed a material breach of this Agreement.

Notwithstanding anything in this Agreement, the Employer may sublet, assign, or transfer the installation of wiring and devices for fire alarm or security systems if those systems are low voltage system, the installation of lightning protection system, trenching and backfilling excavation to a specialty contractor.

The Employer may also sublet, assign, or transfer any work requiring employees to place themselves in any trench that is greater than a depth of five feet.

The following work, systems and/or functions shall not be covered by the terms of this agreement: field instrumentation and installation, process control instrumentation and installation, instrument and control loop testing and certification, instrument calibration, instrument certification, PLC equipment, PLC programming, distributed control and SCADA systems, control system SCADA & HMI software development and programming, radio telemetry systems, and manufacture of control panels.

Nothing in this Agreement should be construed to require the Employer to purchase manufactured products from employer's signatory to a collective bargaining agreement.

All charges of violation of Paragraph 2 of this Section shall be considered as a dispute and shall be processed in accordance with the provisions of this Agreement covering the procedure for the handling of grievances and the final and binding resolution of disputes.

Section 2.07: No member of Local Union 520, while he remains a member of such Local Union and subject to employment by the Employers operating under this Agreement shall himself become a contractor for the performance of any electrical work.

Section 2.08: Only two individuals connected with an employing concern as owner, manager, superintendent, partner, or member of a Board of Directors shall perform any manual electrical work where it displaces the service of a Journeyman; and then only when he has at least one Journeyman, working under the terms of this Agreement, employed and working the same hours including overtime, with the exception of emergency repairs not to last over two (2) hours.

<u>Section 2.09(a):</u> The Union understands the Employer is responsible to perform the work required by the owner. The Employer shall, therefore, have no restrictions except those specifically provided for in the collective bargaining agreement, in planning, directing, and controlling the operation of all his work, in deciding the number and kind of employees to properly perform the work, in hiring and laying off employees, in transferring employees from job to job within the Local Union's geographical jurisdiction, in determining the need and number as well as the person who will act as Foreman, in requiring all employees to observe the Employer's and/or owner's rules and regulations not inconsistent with this Agreement, in requiring all employees to observe all safety regulations, and in discharging employees for proper cause.

(b) The employer shall have the right to call a Foreman by name provided:

A)   The employer shall notify the business manager in writing of the name of the individual who is to be requested for employment as a Foreman. Upon such request, the business manager shall refer said Foreman provided the name appears on the highest priority group.

B)   When an employee is called as a Foreman, he must remain as a Foreman for 500 hours or must receive a reduction in force.

## Portability

<u>Section 2.10:</u>  The Employer, if signatory to a collective bargaining agreement or to a letter of assent to an agreement with another IBEW Local Union, may bring an unlimited amount of Supervisory bargaining unit employees employed in that Local Union's jurisdiction into Local Union 520's jurisdiction to perform supervisory work. Supervisory bargaining unit employees are defined as those that direct bargaining unit employees. The Employer may also bring one (1) bargaining unit employee employed in that Local Union's jurisdiction into Local Union 520's after the Employer employs one (1) Local Union 520's bargaining unit employee; if necessary this process will continue to alternate. The Employer shall maintain a minimum of a one (1) to one (1) ratio of Local Union 520's bargaining unit employees to those that are brought in through this Portability provision. The employees brought in through portability may remain on the specific job until the job is complete. All employees brought in through this portability provision must check in with the Business Manager of IBEW Local Union 520 and all working assessments shall be paid to Local Union 520. All charges of violations of this section shall be considered as a dispute and shall be processed in accordance with the provisions of the Agreement for the handling of grievances with the exception that any decision of a local labor-management committee that may be contrary to the intent of the parties to the National Agreement on employee Portability, upon recommendation of either or both the appropriate IBEW International Vice President or NECA Regional Executive Director, is subject to review, modification, or rescission by the Council on Industrial Relations.

<u>Section 2.11:</u> The Union has the right to appoint a Steward at any shop and/or job where workmen are employed under the terms of this Agreement. The Employer shall be notified in writing of who the Steward is. No Steward shall be discriminated against by the Employer because of the faithful performance of his duties as Steward.

# ARTICLE III
## Standard Inside Referral

Section 3.01:  In the interest of maintaining an efficient system of production in the Industry, providing for an orderly procedure of referral of applicants for employment preserving the legitimate interests of the employees in their employment status within the area and of eliminating discrimination in employment because of membership or non-membership in the Union, the parties hereto agree to the following system of referral of applicants for employment.

Section 3.02:  The Union shall be the sole and exclusive source of referral of applicants for employment.

Section 3.03:  The Employer shall have the right to reject any applicant for employment.

Section 3.04:  The Union shall select and refer applicants for employment without discrimination against such applicants by reason of membership or non-membership in the Union and such selection and referral shall not be affected in any way by rules, regulations, bylaws, constitutional provisions or any other aspect or obligation of Union membership policies or requirements.  All such selection and referral shall be in accord with the following procedure.

Section 3.05:  The Union shall maintain a register of applicants for employment established on the basis of the Groups listed below.  Each applicant for employment shall be registered in the highest priority Group for which he qualifies.

## Journeyman Wireman - Journeyman Technician

**GROUP I** All applicants for employment who have four or more years' experience in the trade, are residents of the geographical area constituting the normal construction labor market, have passed a journeyman's examination given by a duly constituted Inside Construction Local Union of the I.B.E.W. or has been certified as a Journeyman Wireman by any inside Joint Apprenticeship and Training Committee, and, who have been employed in the trade for a period of at least one year in the last four years in the geographical area covered by the collective bargaining agreement.

Group I status shall be limited to one Local Union at one time.  An applicant who qualifies for Group I in a local union shall be so registered electronically and remain on Group I in that local union unless and until the applicant designates another local union as his or her Group I local union. If an applicant qualifies for Group I status in a local union other than his or her home local union and designates that local as his or her Group I local union, the business manager of the new Group I status local union shall by electronic means notify the business manager of the applicant's former Group I status local union.

**GROUP II**  All applicants for employment who have four or more years' experience in the trade and who have passed a Journeyman Wireman's examination given by a duly constituted Inside Construction Local Union of the IBEW or have been certified as a Journeyman Wireman by any Inside Joint Apprenticeship and Training Committee.

**GROUP III**  All applicants for employment who have two or more years' experience in the trade, are residents of the geographical area constituting the normal construction labor market, and who have been employed for at least six months in the last three years in the geographical area covered by the collective bargaining agreement.

**GROUP IV**  All applicants for employment who have worked at the trade for more than one year.

Section 3.06: If the registration list is exhausted and the Local Union is unable to refer applicants for employment to the Employer within 48 hours from the time of receiving the Employer's request, Saturdays, Sundays and holidays excepted, the Employer shall be free to secure applicants without using the Referral Procedure. But such applicants, if hired, shall have the status of "temporary employees".

Section 3.07: The Employer shall notify the Business Manager promptly of the names and Social Security numbers of such "temporary employees" and shall replace such "temporary employees" as soon as registered applicants for employment are available under the Referral Procedure.

Section 3.08: "Normal construction labor market" is defined to mean the following geographical area plus the commuting distance adjacent thereto which includes the area from which the normal labor supply is secured: Travis, Bastrop, Hays, Blanco, Burnet, Williamson, Lee, Llano, San Saba, Burleson, Caldwell, Fayette, Runnels, Coleman, Brown, Tom Green, Concho, McCulloch, Menard, Mason, Kimble and parts of Coryell and Bell Counties to include that part of Fort Hood in Coryell County south of Cowhouse Creek, and not to extend more than two (2) miles into Bell County from the Southeast boundary line of Coryell County, Gray Field, and the City of Killeen, and parts of Lampasas, Bell and Milam Counties, which are nearer to Austin than Waco, in the State of Texas.

The above geographical area is agreed upon by the parties to include the area defined by the Secretary of Labor to be the appropriate prevailing wage areas under the Davis-Bacon Act to which the Agreement applies.

Section 3.09: "Resident" means a person who has maintained his permanent home in the above defined geographical area for a period of not less than one year or who, having had a permanent home in this area, has temporarily left with the intention of returning to this area as his permanent home.

Section 3.10: "Examinations" - An "Examination" shall include experience rating tests if such examination shall have been given prior to the date of this procedure, but from and after the date

of this procedure, shall include only written and/or practical examinations given by a duly constituted Inside Construction Local Union of the IBEW. Reasonable intervals of time for examinations are specified as ninety (90) days. An applicant shall be eligible for examination if he has four years' experience in the trade.

Section 3.11: The Union shall maintain an "Available for Work List" which shall list the applicants within each Group in chronological order of the dates they register their availability for employment.

Section 3.12(a): An applicant who is hired and who receives, through no fault of his own, work of forty hours or less shall, upon re-registration, be restored to his appropriate place within his Group.

(b) An applicant who has registered on the "Available for Work List" must renew his application every thirty (30) days or his name will be removed from the "List."

Section 3.13: Employers shall advise the Business Manager of the Local Union of the number of applicants needed. The Business Manager shall refer applicants to the Employer by first referring applicants in GROUP I in the order of their place on the "Available for Work List" and then referring applicants in the same manner successively from the "Available for Work List" in GROUP II, then GROUP III, and then GROUP IV. Any applicant who is rejected by the Employer shall be returned to his appropriate place within this GROUP and shall be referred to other employment in accordance with the position of his GROUP and his place within his GROUP.

Section 3.13(a): An applicant who is discharged for cause two times within a 12-month period shall be referred to the neutral member of the Appeals Committee for a determination as to the applicant's continued eligibility for referral. The neutral member of the Appeals Committee shall, within three business days, review the qualifications of the applicant and the reasons for the discharges. The neutral member of the Appeals Committee may, in his or her sole discretion: (1) require the applicant to obtain further training from the JATC before again being eligible for referral; (2) disqualify the applicant for referral for a period of four weeks, or longer, depending on the seriousness of the conduct and/or repetitive nature of the conduct; (3) refer the applicant to an employee assistance program, if available, for evaluation and recommended action; or (4) restore the applicant to his/her appropriate place on the referral list.

Section 3.14: The only exceptions which shall be allowed in this order of referral are as follows:

(a) When the employer states bona fide requirements for special skills and abilities in his request for applicants, the Business Manager shall refer the first applicant on the register possessing such skills and abilities.

(b) The age ratio clause in the Agreement calls for the employment of an additional employee or employees on the basis of age. Therefore, the Business Manager shall refer the first applicant on the register satisfying the applicable age requirements provided, however, that all names in higher priority Groups, if any, shall first be exhausted before such overage reference can be made.

Section 3.15:  An Appeals Committee is hereby established, composed of one member appointed by the Union, one member appointed by the Employer or by the Association, as the case may be, and a Public Member appointed by both these members.

Section 3.16:  It shall be the function of the Appeals Committee to consider any complaint of any employee or applicant for employment arising out of the administration by the Local Union of Sections 4 through 14 of this Agreement.  The Appeals Committee shall have the power to make a final and binding decision on any such complaint which shall be complied with by the Local Union.  The Appeals Committee is authorized to issue procedural rules for the conduct of its business, but it is not authorized to add to, subtract from, or modify any of the provisions to this Agreement and its decisions shall be in accord with this Agreement.

Section 3.17:  A representative of the Employer or of the Association, as the case may be, designated to the Union in writing, shall be permitted to inspect the Referral Procedure records at any time during normal business hours.

Section 3.18:  A copy of the Referral Procedure set forth in this Agreement shall be posted on the Bulletin Board in the offices of the Local Union and in the offices of the Employers who are parties to this Agreement.

Section 3.19:  Apprentices shall be hired and transferred in accordance with the apprenticeship provisions of the Agreement between the parties.

Section 3.20:  When making reductions in the number of employees due to lack of work, Employers shall use the following procedure:

(a) Temporary employees, if any are employed, shall be laid off first. Then employees in Group IV shall be laid off next, if any are employed in this Group. Next to be laid off are employees in Group III, if any are employed in this Group, then those in Group IV, and then those in Group I.

(b) Paragraph (a) will not apply as long as the special skills requirement as provided for in Section 14(a) is required.

(c) Supervisory employees covered by the terms of this Agreement will be excluded from layoff as long as they remain in the supervisory capacity.  When they are reduced to the status of Journeyman, they will be slotted in the appropriate group in Paragraph (a) above.

Section 3.21:  All Journeymen and Apprentices are required to provide proof of completion, by originally issued card or certificate, of an OSHA 10 safety training course.

## ARTICLE IV
## Hours - Wage Payment

<u>Section 4.0l(a):</u>   Eight hours work between the hours of 6:00 A.M. and 6:30 P.M. with thirty (30) minutes for a lunch period, shall constitute a workday.  Forty (40) hours within (5) days, Monday through Friday, inclusive, shall constitute the work week. Saturday may be used for a make-up day due to inclement weather.  If Saturday is used as a make up day, a minimum of eight (8) hours will be scheduled.  The payroll week shall end on Sunday midnight of each week. Any workman required to punch a time clock that requires more than five (5) minutes to check out shall be paid for any additional time used in checking out. Workmen reporting to the shop or job shall not report earlier than 15 minutes prior the starting time.  If practical, workmen directed to report to the job shall be at their place of work at the starting time and shall remain at their place of work until quitting time unless otherwise instructed by the Employer.

(b) Any change from the regular working hours must be five (5) or more day's duration. When any change in the starting time is made, lunch period, overtime, and shifts may be changed accordingly.

(c) The Employer with 24-hour notice to the Union may elect to work 4-10 hour days to be scheduled. The first 10 hours of work per day shall be paid at the hourly straight time rate of pay. When working 4-10s, the Employer can schedule the work week for Monday through Thursday, 10 hours per day. A second work week can be scheduled from Tuesday through Friday, 10 hours per day. The 4 day work week will be Monday through Thursday. Friday can be used as a make-up day due to inclement weather. If Friday is used as a make-up day, a minimum of 8 hours will be scheduled. Any four day/ten-hour work schedule shall be a minimum of 2 weeks duration.

(d) In order to coordinate with other crafts, summer hours, customer requests, and the like, the starting time for each job shall be subject to variance of not more than 1 hour. Advanced notice to the Union will be required to approve any such variance greater than 1 hour. These alternate starting times must run for a minimum of 5 consecutive workdays, and all other times listed in this agreement will shift accordingly.

<u>Section 4.02:</u> All work performed outside of regularly scheduled hours will be paid at one and one-half times the regular straight-time rate, provided the employee works all of the regular scheduled hours made available, as defined in Art. IV Sec. 4.0l(a) and Sec. 4.0l(c).  In the event the employee does not work all of the regularly scheduled hours available he will receive no premium rate until after he has worked 40 hours.  Work on Sundays shall be paid at double the straight-time rate.  The following holidays:  New Year's Day, Memorial Day, Fourth of July, Labor Day, Veteran's Day, Thanksgiving Day, the Friday following Thanksgiving Day, and Christmas Day, shall be paid at double the straight-time rate. The following holidays shall be paid holidays starting June 2, 2025, Thanksgiving Day and Friday following, January 4, 2027, Christmas Day, January 3, 2028, New Year's Day. Eligible employees must have been employed for two weeks and worked the available workday before and the available workday after the holiday.  Holidays shall be recognized only on the day on which they fall.

Section 4.03:  The minimum regular straight-time rate of wages for Journeyman Inside Wireman (JIW) shall be as follows:

Effective June 2, 2025:  $36.50
Effective January 5, 2026:  $38.50
Effective January 4, 2027:  $40.50
Effective January 3, 2028:  $42.50

| APPENDIX A - MINIMUM BENEFITS | | | | | |
|---|---|---|---|---|---|
| **Multiplier** | **Classification** | **NEBF** | **Annuity** | **Medical** | **JATC** |
| 130% of JIW wage rate | General Foreman (area foreman required) | 3% | 8% | $5.45 | 1%*** |
| 120% of JIW wage rate | General Foreman (no area foreman required) | 3% | 8% | $5.45 | 1%*** |
| 120% of JIW wage rate | Area Foreman | 3% | 8% | $5.45 | 1%*** |
| 110% of JIW wage rate | Foreman | 3% | 8% | $5.45 | 1%*** |
| 100% | Journeyman Inside Wireman | 3% | 8%* | $5.45 | 1%*** |
| **Apprentice Wireman** | | | | | |
| 50% of JIW wage rate | 1st Year - Period 1 | 3% | ** | $3.70 | 1%*** |
| 55% of JIW wage rate | 1st Year - Period 2 | 3% | 3% | $3.70 | 1%*** |
| 60% of JIW wage rate | 2nd Year- Period 3 | 3% | 3% | $3.70 | 1%*** |
| 70% of JIW wage rate | 3rd Year - Period 4 | 3% | 5% | $3.70 | 1%*** |
| 75% of JIW wage rate | 4th Year- Period 5 | 3% | 5% | $3.70 | 1%*** |
| 80% of JIW wage rate | 5th Year - Period 6 | 3% | 8% | $3.70 | 1%*** |
| | Unindentured Apprentice | 3% | | $3.70 | 1%*** |

* 9% effective January 6th 2025
** 1% effective January 6th 2025
*** 1% of Journeyman Straight-Time Rate

Section 4.04: The Employer shall pay all wages in cash or check weekly, not later than quitting time on Friday.  The Employer may pay wages by direct deposit, through debit card by cash or by

check. Employees may be required to execute authorization forms for direct electronic deposit of wages on a weekly basis to the bank or credit union of the employee's choice. This manner of payment, once adopted, may not be changed by the Employer except upon 14-day advance written notification to the employee with notification to the Union. In the event that employees are not paid by the above-stated time, waiting time at the regular straight time rate (not to exceed eight (8) hours in any one twenty-four (24) hour period) shall be charged until payment is made. The previous sentence only applies in the event that there has been a previous instance within the preceding twelve (12) months of the Employer failing to timely pay wages. Otherwise, paid waiting time only begins if payment has not been received by quitting time on Friday.

Section 4.05:  Should the Employer issue a paycheck that does not clear the bank for payment, provided the employee does not hold said check for more than thirty (30) days before making attempt to cash said check, then said Employer, while in the jurisdiction of the Local Union, thereafter shall pay in cash.

Section 4.06:  When Friday is a recognized holiday, wages shall be paid Thursday for all work during that week.  An itemized statement shall be furnished each workman, showing total hours worked, total wages earned, and any deductions from such wages.

Section 4.07:  Any man reporting for work and being laid off, not having been notified the day previous of such layoff shall receive not less than two (2) hours wages in order to gather his tools and personal belongings and shall be paid off in full immediately.   In the event the employee is not paid off, waiting time at the regular rate (not to exceed eight [8] hours in any one twenty-four [24] hour period) shall be charged until payment is made. Two (2) hours wages for gathering tools and personal belongings will not be paid if the employee has not notified the Employer of a previous day's absence.  An employee who voluntarily quits shall receive the employee's final paycheck on the next contractually scheduled pay day.

Section 4.08(a):  When men are directed to report to a job or shop and do not start to work due to causes other than weather conditions, they shall receive two (2) hours pay.

(b) When men receive two (2) hours pay as show-up time, they shall remain available for work for a full two (2) hour period.

(c) If requested by the Employer, during inclement weather conditions, men shall remain on the job available for work and shall receive two (2) hours pay.

(d) When men are directed to report to a job and are instructed to go to work by the Employer or his representative, weather conditions permitting, and they refuse, they shall not receive the two (2) hours show-up time.

(e) When men are called out on trouble or emergency calls outside of regularly scheduled working hours, they shall be paid from the time they leave home until they return at the overtime rate, with a minimum of one (1) hour's work.

Section 4.09:  The Employer shall pay for traveling time and provide for at least one of the following provisions:

(i)     Furnish transportation from shop to job and job to job and job to shop during the regular working hours; or

(ii)     Reimburse the employee for mileage at the standard mileage rate determined by the Internal Revenue Service for actual mileage from shop to job and job to job and job to shop during all the regular working hours to be reimbursed.

On work outside the jurisdiction of the Union, the Employer shall provide one of the following:

(i)     Furnish transportation, board and all other necessary expenses;

(ii)     Reimburse the employee for mileage at the standard mileage rate determined by the Internal Revenue Service and furnish board and all other necessary expenses.

Section 4.10:  No traveling time shall be paid before or after working hours to workmen for traveling to or from any job when workmen are ordered to report to the job, provided his day ends at such job.

Section 4.11: The Employer shall furnish a monthly payroll report to Local Union 520 postmarked no later than 15th day of the following month, giving workman's name, classification, wage rate, straight-time hours worked, overtime hours and gross wages paid to all workmen.  This report shall identify the exact date of all employees who have quit or been discharged during the working period covered by this report.

A monthly payroll report to the Local Union and to all Trust Funds shall be completed and mailed each month, whether the Contractor has workmen employed or not.

Section 4.12:  Workmen being laid off or discharged by an Employer or workmen severing their employment shall be given a termination slip stating the reason for termination and signed by their immediate supervisor or their Employer, and a copy shall be sent to Local Union 520.  Additionally, employers shall provide a termination slip to the JATC Training Director in the case of an apprentice.

Section 4.13:  When so elected by the contractor, multiple shifts of eight (8) hours for at least five (5) days' duration may be worked.  When two (2) or three (3) shifts are worked:

The first shift (day shift) shall consist of eight (8) consecutive hours worked between the hours of 8:00 A.M. and 4:30 P.M. Workmen on the "day shift" shall be paid at the regular hourly rate of pay for all hours worked.

The second shift (swing shift) shall consist of eight (8) consecutive hours worked between the hours of 4:30 P.M. and 1:00 A.M. Workmen on the "swing shift" shall be paid at the regular hourly rate of pay plus **10%** for all hours worked.

The third shift (graveyard shift) shall consist of eight (8) consecutive hours worked between the hours of 1:00 A.M. and 9:00 A.M. Workmen on the "graveyard shift" shall be paid at the regular hourly rate of pay plus **15%** for all hours worked.

The Employer shall be permitted to adjust the starting hours of the shift by up to two (2) hours in order to meet the needs of the customer.

If the parties to the Agreement mutually agree, the shift week may commence with the third shift (graveyard shift) at 12:30 A.M. Monday to coordinate the work with the customer's work schedule. However, any such adjustment shall last for at least five (5) consecutive days duration unless mutually changed by the parties to this Agreement.

An unpaid lunch period of thirty (30) minutes shall be allowed on each shift. All overtime work required before the established start time and after the completion of eight (8) hours of any shift shall be paid at one and one-half times the "shift" hourly rate.

There shall be no pyramiding of overtime rates and double the straight time rate shall be the maximum compensation for any hour worked. There shall be no requirement for a day shift when either the second or third shift is worked.

## UNION DUES DEDUCTION

Section 4.14: Upon receipt of a voluntary written authorization the Employer agrees to deduct and forward to the Financial Secretary of the Local Union - the additional working dues from the pay of each employee. The amount to be deducted shall be the amount specified in the approved Local Union Bylaws. Such amount shall be certified to the Employer by the Local Union upon request by the Employer.

## ARTICLE V
## General Rules

Section 5:01: In order to comply with existing laws, nothing in this Agreement shall be construed as limiting the right of Employers to move, transfer, or assign employees from his shop to any specific job or from any job to any other job upon which said Employer bolds a contract for the performance of the electrical work. An employee, once on the Employer's payroll, may be worked by him at any location at the discretion of the Employer.

Section 5.02: When the Employer has no shop located in the jurisdiction of this Union, then under such circumstances the job site shall be considered the city in which the shop is located with one job site designated as the permanent shop.

Section 5.03: On all jobs requiring five (5) or more Journeymen, at least every fifth Journeyman, if available, shall be fifty (50) years of age or older.

Section 5.04(a): Journeyman shall provide themselves with the following tools:

| | |
|---|---|
| One tester not over 1000 volts or one Multi Volt Tester | Combination square-Tri-square |
| Knife | Adjustable 12" blade |
| Crescent Wrench 8" to 12" | Hacksaw frame |
| Screw drivers | Two pair channel lock type pliers |
| Hammer | One pair long nose pliers |
| Small level | One pair Dyke pliers |

| | |
|---|---|
| Plumb bob | One chalk line |
| Awl or Center punch | Keyhole saw |
| Pencil | One steel measuring tape at least 16' long |
| One pair side cutting pliers 7" or larger | Pipe wrench 12" to 14" or small |
| Wire stripper | Chain tong |

(b) Journeyman may furnish other similar tools but shall not be required to do so.

(c) A Journeyman may carry or store in his toolbox small tools furnished by and belonging to his Employer (power tools excluded). Such tools must be the property of the Employer, to be returned to him upon request or termination of the employee but are not to be replaced by the employee if broken or stolen.

(d) Apprentices shall provide themselves with the following tools only, except that first-year Apprentice may provide himself with a small toolbox and a third- or fourth-year Apprentice may have a toolbox on the job and start building up his tool list towards that of a Journeyman.

| | |
|---|---|
| 2 pair channel lock type pliers | Pencil |
| 1 pair side cutters pliers – 7" or larger | Hammer |
| One steel measuring tape at least 16' long | One voltage tester not over 1000 or Multi Volt Tester |
| Screw drivers | Small level |
| Knife | Hacksaw frame |
| Awl | Wire stripper |

He may furnish one pair of long-nose and one pair of Dyke pliers if he desires.

(e) The Employer shall furnish necessary locked storage to reasonably protect tools from the weather and vandalism on large jobs where it is necessary to leave tools on the job.

Section 5:05: The Employer shall furnish all other necessary tools or equipment. Workmen will be held responsible for the tools or equipment issued to them providing the Employer furnishes the necessary lockers, toolboxes, or other safe place of storage. Tools must be taken out and put away during working hours.

Section 5.06: Workmen shall install all electrical work in a safe and workman like manner in accordance with applicable code and contract specifications.

Section 5.07: The representatives of the Union shall be allowed access to any building at any reasonable time where members of the Union are employed.

Section 5.08: In all shops or on all jobs where four (4) or more Journeymen are employed, one Journeyman shall be designated as a Foreman.

On all jobs, the first working crew may consist of a maximum of eleven (11) men, that is, ten (10) Journeyman and one (1) working Foreman.

When a second crew is established, it may consist of a maximum of eleven (11) men, that is, ten

(10) Journeymen and one (1) working General Foreman.

When a third or subsequent crew is established, it may consist of a maximum of eleven (11) men, that is, ten (10) Journeymen and one (1) working Foreman. Each crew shall be supervised by a Foreman and the Foremen shall be supervised by the General Foreman.

No General Foremen shall supervise more than fifty-five (55) men, including Journeymen and Foremen. For each additional fifty-five (55) men, the above procedures shall repeat except that the sixth and subsequent Foremen shall be supervised by an Area Foreman.

Section 5.09: Foremen, Area Foremen, and General Foremen shall be permitted to use tools. This shall not mean that they cannot handle material. Foremen may be required to attend and complete Foremen courses when provided.

Section 5.10: On jobs requiring a Foreman, workmen are not to take directions, orders or accept the layout from anyone other than their Foreman. Foremen are to take directions, orders, or layout from their Area Foreman only, when Area Foremen are required. When Area Foremen are not required, Foremen shall take directions, orders or layouts from the General Foreman only. Area Foremen shall take directions, orders or layout from the General Foreman only.

Section 5.11: No workman on one job shall replace a workman on another for any overtime work. All overtime work on any job shall be distributed fair and equal to all workmen. Exceptions to the two conditions above shall include the need for special skills or when workmen have not worked the available straight time hours during the "work week" as defined in Article IV, Section 1.

Section 5.12: The Employer shall see that cold water (in warm weather) and first-aid kits are available on all jobs and/or trucks.

Section 5.13: The Employer shall furnish protective equipment for workmen on energized circuits or equipment carrying 300 volts or more. On all energized circuits or equipment carrying 440 volts or over, as a safety measure, two (2) or more Journeymen must work together.

Section 5.14: All conduit shall be cut and threaded by workmen covered by this Agreement.

Section 5.15: Where pipe cutting and threading machines, electric drills, electric benders, electric chipping hammers, sanders, similar portable tools and all other power-driven equipment are used, such shall be operated by workmen covered by this agreement in the jurisdiction of the IBEW.

Section 5.16: All pulling of wire or cable shall be done by workmen covered by this Agreement.

Section 5.17: Journeyman cable splicers shall furnish only hand tools. On all work of joining, splicing and insulating and the placing of flame-proof covering where wiped lead joints are necessary, it shall be performed by cable splicers. Journeymen only shall be used in assisting cable splicers, except that one de-energized enclosures, an Apprentice may be used. Cable splicers shall not be required to work on wires or cables when the difference in potential is over 200 volts between any two conductors or between any conductor and ground, unless assisted by one Journeyman. In no case shall cable splicers be required to work on energized cables carrying in excess of 480-volt circuit.

Section 5.18:  Welders gloves, sleeves, hoods and all hard hats shall be furnished by the Employer. Workmen may be required to sign a payroll deduction form to authorize the deduction from their final paycheck to cover reimbursement of unreturned hard hats.  Charges shall not exceed actual cost paid by the Contractor.

Section 5.19:  The installation of all electrical raceways whether metal, wood, fiber, plastic clay or of any other conceivable composition, when used to contain electrical or grounding system conductors, and the installation, preparation and connection of all electrical and/or grounding or bonding conductors shall be performed by workmen employed under the terms of this Agreement and paid the hourly applicable negotiated wage rate contained herein unless it is an integral part of the building structure.

Section 5.20:  No work shall be performed on Labor Day except in case of emergency.

Section 5.21:  On any job of five (5) or more days duration on the main campus of the University of Texas, the Employer will either provide for employee parking within three blocks of the job or arrange for covered transportation from a parking area within two miles of the job.

## ARTICLE VI
## Standard Inside Apprenticeship Language

Section 6.01:  There shall be a local Joint Apprenticeship and Training Committee (JATC) consisting of a total of 6 or 8 members who shall also serve as Trustees to the local apprenticeship and training trust. An equal number of members (either 3 or 4) shall be appointed, in writing, by the local chapter of the National Electrical Contractors Association (NECA) and the local union of the International Brotherhood of Electrical Workers (IBEW).

The local apprenticeship standards shall be in conformance with national guideline standards and industry policies to ensure that each apprentice has satisfactorily completed the NJATC required hours and course of study.  All apprenticeship standards shall be registered with the NJATC before being submitted to the appropriate registration agency.

The JATC shall be responsible for the training of apprentices, journeymen, installers, technicians, and all others (un-indentured, intermediate journeymen, etc.).

Section 6.02:  All JATC member appointments, reappointments, and acceptance of appointments shall be in writing.  Each member shall be appointed for a 3-year term, unless being appointed for a lesser period of time to complete an expired term. The terms shall be staggered, with one (1) term from each side expiring each year. JATC members shall complete their appointed term unless removed for cause by the party they represent, or they voluntarily resign. All vacancies shall be filled immediately

The JATC shall select from its membership, but not both from the same party, a Chairman and a Secretary who shall retain voting privileges. The JATC will maintain one (1) set of minutes for JATC committee meetings and a separate set of minutes for trust meetings.

The JATC should meet on a monthly basis, and also upon the call of the Chairman.

Section 6.03:  Any issue concerning an apprentice, or an apprenticeship matter shall be referred to the JATC for its review, evaluation, and resolve, as per standards and policies.  If the JATC deadlocks on any issue, the matter shall be referred to the Labor-Management Committee for resolution as outlined in Article One of this Agreement; except for trust fund matters, which shall be resolved as stipulated in the local trust instrument.

Section 6.04:  There shall be only one (1) JATC and one (1) local apprenticeship and training trust. The JATC may, however, establish joint subcommittees to meet specific needs, such as residential or telecommunications apprenticeship. The JATC may also establish a subcommittee to oversee an apprenticeship program within a specified area of the jurisdiction covered by this agreement.

All subcommittee members shall be appointed, in writing, by the party they represent. A subcommittee member may or may not be a member of the JATC.

Section 6.05:  The JATC may select and employ a part-time or a full-time Training Director and other support staff, as it deems necessary. In considering the qualifications, duties, and responsibilities of the Training Director, the JATC should review the Training Director's Job Description provided by the NJATC.  All employees of the JATC shall serve at the pleasure and discretion of the JATC.

Section 6.06:  To help ensure diversity of training, provide reasonable continuous employment opportunities, and comply with apprenticeship rules and regulations, the JATC, as the program sponsor, shall have full authority for issuing all job training assignments and for transferring apprentices from one employer to another. The employer shall cooperate in providing apprenticeships with needed work experiences. The local union referral office shall be notified, in writing, of all job training assignments. If the employer is unable to provide reasonable continuous employment for apprentices, the JATC is to be so notified.

Section 6.07:  All apprentices shall enter the program through the JATC as provided for in the registered apprenticeship standards and selections procedures.
An apprentice may have their indenture canceled by the JATC at any time prior to completion as stipulated in the registered standards. Time worked and accumulated in apprenticeship shall not be considered for local union referral purposes until the apprentice has satisfied all conditions of apprenticeship.  Individuals terminated from apprenticeship shall not be assigned to any job in any classification, or participate in any related training, unless they are reinstated in apprenticeship as per the standards, or they qualify through means other than apprenticeship, at sometime in the future, but no sooner than two years after their class has completed apprenticeship, and they have gained related knowledge and job skills to warrant such classification.

Section 6.08:  The JATC shall select and indenture a sufficient number of apprentices to meet local manpower needs. The JATC is authorized to indenture the number of apprentices necessary to meet the jobsite ratio as per section 6.12.

Section 6.09:  Though the JATC cannot guarantee any number of apprentices, if a qualified employer requests an apprentice, the JATC shall make every effort to honor the request.  If unable to fill the request within ten (10) working days, the JATC shall select and indenture the next available person from the active list of qualified applicants.  An active list of qualified applicants shall be maintained by the JATC as per the selection procedures.

<u>Section 6.10:</u> To accommodate short-term needs when apprentices are unavailable, the JATC shall assign un-indentured workers who meet the basic qualifications for apprenticeship. Un- indentured workers shall not remain employed if apprentices become available for OJT assignment. Un-indentured workers shall be used to meet job site ratios except on wage-and-hour (prevailing wage) job sites.

Before being employed, the un-indentured person must sign a letter of understanding with the JATC and the employer - agreeing that they are not to accumulate more than two thousand (2,000) hours as an un-indentured, that they are subject to replacement by indentured apprentices, and that they are not to work on wage-and-hour (prevailing wage) job sites.

Should an un-indentured worker be selected for apprenticeship, the JATC will determine, as provided for in the apprenticeship standards, if some credit for hours worked as an un-indentured will be applied toward the minimum OJT hours of apprenticeship.

The JATC may elect to offer voluntary related training to un-indentured; such as Math Review, English, Safety, Orientation/Awareness, introduction to OSHA, First-Aid and CPR. Participation shall be voluntary.

<u>Section 6.11:</u> The employer shall contribute to the local health and welfare plans and to the National Electrical Benefit Fund (NEBF) on behalf of all apprentices and un-indentured. Contributions to other benefit plans may be addressed in other sections of this agreement. (See Article IV Section 4.03).

<u>Section 6.12:</u> Each job site shall be allowed a ratio of one (1) apprentice(s) for everyone (1) Journeyman Wireman.

| Number of Journeymen | Maximum Number of Apprentices/Unindentured |
|:---:|:---:|
| 1 to 3 | 1 to 3 |
| 4 to 6 | 4 to 6 |
| Etc. | Etc. |

The first person assigned to any job shall be a Journeyman Wireman.

A job site is considered to be the physical location where employees report for their work assignments. The employer's shop (service center) is considered to be a separate, single job site. All other physical locations where workers report for work are each considered to be a single, separate job site.

<u>Section 6.13:</u> An apprentice is to be under the supervision of a Journeyman Wireman at all times. This does not imply that the apprentice must always be in-sight-of a Journeyman Wireman. Journeymen are not required to constantly watch the apprentice. Supervision will not be of a nature that prevents the development of responsibility and initiative. Work may be laid out by the employer's designated supervisor or journeyman based on their evaluation of the apprentice's skills and ability to perform the job tasks. Apprentices shall be permitted to perform job tasks in order to develop job skills and trade competencies. Journeymen are permitted to leave the immediate work area without being accompanied by the apprentice.

Apprentices who have satisfactorily completed the first four years of related classroom training using the NJATC curriculum and accumulated a minimum of 6,500 hours of OJT with satisfactory performance, shall be permitted to work alone on any job site and receive work assignments in the same manner as a Journeyman Wireman. An apprentice shall not be the first person assigned to a job site and apprentices shall not supervise the work of others.

Section 6.14: Upon satisfactory completion of apprenticeship, the JATC shall issue all graduating apprentices an appropriate diploma from the NJATC. The JATC shall encourage each graduating apprentice to apply for college credit through the NJATC. The JATC may also require each apprentice to acquire any electrical license required for journeymen to work in the jurisdiction covered by this agreement.

Section 6.15: The parties to this Agreement shall be bound by the Local Joint Apprenticeship and Training Trust Fund Agreement which shall conform to Section 302 of the Labor- Management Relations Act of 1947 as amended, ERISA, and other applicable regulations.

The Trustees authorized under this Trust Agreement are hereby empowered to determine the reasonable value of any facilities, materials, or services furnished by either party. All funds shall be handled and disbursed in accordance with the Trust Agreement.

Section 6.16: All employers subject to the terms of this Agreement shall contribute the amount of funds specified by the party's signatory to the local apprenticeship and training trust agreement. The current rate of contribution is: 1% of the Journeyman straight-time rate per hour for each hour worked. This sum shall be due the Trust Fund by the same date as is their payment to the NEBF under the terms of the Restated Employers Benefit Agreement and Trust.

## **ARTICLE VII**
### **Vacation**

Section 7.01: Upon written authorization from the employee, the Employer shall make a weekly payroll deduction of six percent (6%) from the gross pay of each employee. The employee shall request the payroll deduction at the beginning of employment with an employer. The employee shall notify the employer, in writing of any modifications to their participation status for the voluntary payroll deduction in the month of January or July. Payroll deduction revisions will be made effective on the first payroll of the following month. The Employer monthly shall forward the amount of individual deductions from each employee as shown on the monthly payroll to Velocity Credit Union, ATTN: Teller Operations, P.O. Box 1089, Austin, TX, 78767, for deposit to that employee's Velocity Credit Union vacation account, and simultaneously shall provide the Local Union with a written report which sets forth, for each employee, the number of hours worked, the employee's classification and pay rate, the employee's gross pay, and the amounts deducted.

Section 7.02: The payment and payroll report shall be mailed to reach the Velocity Credit Union no later than the 15th day of the month following the end of each benefit period.

Section 7.03: Each employee shall be allowed to take two (2) weeks of annual vacation between February 1st and January 31st.

Section 7.04: An Employer's failure to timely remit the payroll deductions or payroll report to the

Velocity Credit Union, or the payroll report to the Local Union, as required above shall be treated as a delinquent contribution under the terms of the applicable Inside Construction Agreement.

## ARTICLE VIII
## Annuity Plan

It is mutually agreed between the parties hereto and in accordance with the IBEW Local Union 520 Annuity Plan entered into by and between the Central Texas Chapter, NECA, and Local Union 520, IBEW, the Employer will forward to the Annuity Plan an amount equal to the percentage levels per Appendix A (See Article IV Section 4.03) of the gross wages of all classifications of employees for all hours worked within the geographical limits of the Union's jurisdiction when work is performed for any Employer operating under this Agreement. The payment shall be made monthly, together with the payroll report forms specified in Article IV.

## ARTICLE IX
## 401(k) Savings Plan

All employers signatory to this Agreement and/or employing workmen under the terms of this Agreement, shall deduct from each employee's Gross Weekly Payroll of employees who wish to participate, a voluntary deductible amount to be deposited into a 401(k) savings plan, upon the written request of each employee. Employees may enroll at the beginning of the employment with an Employer and enroll or change withholding each year during the month of January or July. Withholding will be made effective on the first payroll of the following month.

## ARTICLE X
## Health and Welfare

It is hereby mutually agreed between the parties hereto and in accordance with the Benefit contract governing the electrical benefit fund entered into by and between the Central Texas Chapter, NECA, and Local Union 520, IBEW, that the Employer will forward to the Central Texas Health and Benefit Plan the following contributions as per Appendix A (See Article IV Section 4.03) for all hours actually worked by each employee (both straight time and overtime) within the geographical limits of the Union's jurisdiction when work is performed for any Employers operating under the terms of the basic Agreement for all Employers. Payments shall be made monthly together with a monthly payroll report on a form that will be furnished for that purpose by the Trustees of the Electrical Benefit Plan.

It is agreed that employers shall contribute solely up to $5.45 per hour of increases declared by the Trustees of the Plan. Any increases above $5.45 shall be split equally between the employer -and employee through a wage reduction of the JIW rate of pay, all other classifications shall adjust accordingly.

## ARTICLE XI
## National Labor Management Cooperative Committee

Section 11.01: The parties agree to participate in the NECA-IBEW National Labor-Management Cooperation Fund, under authority of Section 6(b) of the Labor-Management Cooperation Act of 1978, 29 U.S.C. §175(a) and Section 302(c)(9) of the Labor-Management Relations Act, 29 U.S.C. §186(c)(9). The purposes of this Fund include the following:

(1)    to improve communication between representatives of labor and management;

(2)    to provide workers and employers with opportunities to study and explore new and innovative joint approaches to achieving organizational effectiveness;

(3)    to assist workers and employers in solving problems of mutual concern not susceptible to resolution within the collective bargaining process;

(4)    to study and explore ways of eliminating potential problems which reduce the competitiveness and inhibit the economic development of the electrical construction industry;

(5)    to sponsor programs which improve job security, enhance economic and community development, and promote the general welfare of the community and the industry;

(6)    to encourage and support the initiation and operation of similarly constituted local labor-management cooperation committees;

(7)    to engage in research and development programs concerning various aspects of the industry, including, but not limited to, new technologies, occupational safety and health, labor relations, and new methods of improved production;

(8)    to engage in public education and other programs to expand the economic development of the electrical construction industry;

(9)    to enhance the involvement of workers in making decisions that affect their working lives; and

(10)    to engage in any other lawful activities incidental or related to the accomplishment of these purposes and goals.

Section 11.02: The Fund shall function in accordance with, and as provided in, its Agreement and Declaration of Trust, and any amendments thereto and any other of its governing documents. Each Employer hereby accepts, agrees to be bound by, and shall be entitled to participate in the NLMCC, as provided in said Agreement and Declaration of Trust.

Section 11.03: Each employer shall contribute one cent ($.01) per hour worked under this Agreement up to a maximum of 150,000 hours per year. Payment shall be forwarded monthly, in a form and manner prescribed by the Trustees, no later than fifteen (15) calendar days following the last day of the month in which the labor was performed. The Central Texas Chapter, NECA, or its designee, shall be the collection agent for this Fund.

Section 11.04: If an Employer fails to make the required contributions to the Fund, the Trustees shall have the right to take whatever steps are necessary to secure compliance. In the event the Employer is in default, the Employer shall be liable for a sum equal to 15% of the delinquent payment, but not less than the sum of twenty dollars ($20), for each month payment of contributions is delinquent to the Fund, such amount being liquidated damages, and not a penalty, reflecting the reasonable damages incurred by the Fund due to the delinquency of the payments.

Such amount shall be added to and become a part of the contributions due and payable, and the whole amount due shall bear interest at the rate of ten percent (10%) per annum until paid. The Employer shall also be liable for all costs of collecting the payment together with attorneys' fees.

## ARTICLE XII
## P.A.C. Fund

The Employer agrees to deduct and transmit to the Local Union 520, IBEW, Committee on Political Education (IBEW-COPE) .05 cents for each clock hour worked from the wages of those employees who voluntarily authorize such contributions on the forms provided for that purpose by IBEW-COPE. The deductions will be made monthly and reported and remitted in accordance with Article IV, Section 11 of this Agreement.

Any Employee may revoke the voluntary authorization at any time by notifying the Company and IBEW-COPE in writing of a desire to do so.

The Union will indemnify and save the Company harmless from any claims, suits, or any other form of liability as a result of making payroll deductions described above.

## ARTICLE XIII

This Agreement set forth the entire contract between the Chapter and the Union and supersedes all previous understandings and Agreements between them and amendments thereto.

## ARTICLE XIV
## Substance Abuse Language

The dangers and costs that alcohol and other chemical abuses can create in the electrical contracting industry in terms of safety and productivity are significant. The parties to this Agreement resolve to combat chemical abuse in any form and agree that, to be effective, programs to eliminate substance abuse and impairment should contain a strong rehabilitation component. The local parties recognize that the implementation of a drug and alcohol policy and program must be subject to all applicable federal, state, and local laws and regulations. Such policies and programs must also be administered in accordance with accepted scientific principles and must incorporate procedural safeguards to ensure fairness in application and protection of legitimate interests of privacy and confidentiality. To provide a drug-free workforce for the Electrical Construction Industry, each IBEW local union and NECA chapter shall implement an area-wide Substance Abuse Testing Policy. The policy shall include minimum standards as required by the IBEW and NECA. Should any of the required minimum standards fail to comply with federal, state, and/or local laws and regulations, they shall be modified by the local union and chapter to meet the requirements of those laws and regulations.

## ARTICLE XV
## Code of Excellence

The parties to this Agreement recognize that to meet the needs of our customers, both employer and employee must meet the highest levels of performance, professionalism, and productivity. The Code of Excellence has proven to be a vital element in meeting the customers' expectations.

Therefore, each IBEW local union and NECA chapter shall implement a Code of Excellence Program. The program shall include minimum standards as designed by the IBEW and NECA.

## **Separability Clause**

Should any provision of this Agreement be declared illegal by any court of competent jurisdiction, such provision shall immediately become null and void, leaving the remainder of the Agreement in full force and effect and the parties shall, thereupon, seek to negotiate substitute provisions which are in conformity with the applicable laws.

SIGNED FOR THE UNION:                          SIGNED FOR THE EMPLOYER:
Local Union No. 520 of the International         A.S.H. Electrical Services LLC
Brotherhood of Electrical Workers

_____               _____
Ben Brenneman
Business Manager/Financial Secretary            A.S.H. Electrical Services LLC Representative
IBEW Local Union 520

**1st YEAR APPRENTICE WAGE**
**MEMORANDUM OF UNDERSTANDING**

**BETWEEN**

**A.S.H. ELECTRICAL SERVICES LLC**

**AND**

**IBEW LOCAL UNION 520**

It is mutually agreed upon between IBEW Local 520 and A.S.H. Electrical Services LLC, effective May 27, 2019, that the minimum wage for a first-year apprentice shall be $15.00 per hour. This MOU shall remain in effect until such time as 50% of the JIW wage rate is greater than $15.00 per hour.

SIGNED FOR THE UNION:                   SIGNED FOR THE EMPLOYER:
Local Union No. 520 of the International     A.S.H. Electrical Services LLC
Brotherhood of Electrical Workers

_____         _____
Ben Brenneman
Business Manager/Financial Secretary        A.S.H. Electrical Services LLC Representative
IBEW Local Union 520

**CE ADVANCEMENT**
**MEMORANDUM OF UNDERSTANDING**

**BETWEEN**

**A.S.H. ELECTRICAL SERVICES**

**LLC**

**AND**

**IBEW LOCAL UNION 520**

A CE shall obtain a Texas State Journeyman's License before being upgraded to JIW status.

SIGNED FOR THE UNION:
Local Union No. 520 of the International
Brotherhood of Electrical Workers

SIGNED FOR THE EMPLOYER:
A.S.H. Electrical Services LLC

Ben Brenneman
Business Manager/Financial Secretary
IBEW Local Union 520

A.S.H. Electrical Services LLC Representative

**2022 Residential MOU**

**Scope:** This MOU shall apply to all dwelling units including single family dwellings, apartments, and condominiums four stories and below. This MOU shall not apply to the commercial portion of mixed-use developments.

1. A CW/CE, having attained a Residential Journeyman's License, shall be awarded 2000 SBCs/ OJT hours. This CW/CE shall be allowed to work unsupervised on residential construction/service work.
2. A worker holding a Residential or Unrestricted Journeyman's License shall be the first person assigned to any residential project.
3. On all residential projects with four or more workers, a worker holding a Residential Journeyman's License shall be designated Residential foreman. This Residential foreman shall be allowed to supervise a crew of up to 10 workers of his classification or below, including first- and second-year apprentices. This Residential foreman shall receive a 10% pay premium above his/her classification.
4. On all residential projects requiring more than 11 workers, one shall be designated Residential General Foreman. The Residential General Foreman shall receive a 20% pay premium above his/her classification.
5. There shall be one foreman per 10 workers.
6. A CW/CE with a Residential Journeyman's License shall continue to accrue SBCs/OJT hours and be advanced in the CW/CE program accordingly.

SIGNED FOR THE UNION:                              SIGNED FOR THE EMPLOYER:
Local Union No. 520 of the International            A.S.H. Electrical Services LLC
Brotherhood of Electrical Workers


Ben Brenneman
Business Manager/Financial Secretary
IBEW Local Union 520                               A.S.H. Electrical Services LLC Representative

**SHORT CALL EXTENSION**

**MEMORANDUM OF UNDERSTANDING**
**BETWEEN**
**A.S.H. ELECTRICAL SERVICES**
**LLC**
**AND**
**IBEW LOCAL UNION 520**

In order to accommodate short term employment needs of the employer signed to this agreement, and the needs of our customers, the union and employer agree to the following:

Article III, Section 3.12 of the Inside Agreement between A.S.H. Electrical Services LLC and Local Union 520, of the International Brotherhood of Electrical Workers, shall have the following language added to the existing language contained in Article III, Section 3.12:

> A forty (40) hour call may be extended an additional forty (40) hours by the employer is job conditions warrant such extension. An applicant is not required to stay for the second forty (40) hour period unless told in advance the job as for eighty (80) hours. For the purposes of calculating hours worked under this Memorandum, only the straight time hours worked will be used. Any overtime worked during the one (1) or two (2) week period covered by this Memorandum will not affect the applicant's position on the Out-of-Work List.

This Memorandum shall continue in effect from year to year hereafter unless changed or terminated in the same manner as prescribed for the Inside Agreement.

SIGNED FOR THE UNION:
Local Union No. 520 of the International
Brotherhood of Electrical Workers

SIGNED FOR THE EMPLOYER:
A.S.H. Electrical Services LLC

Ben Brenneman
Business Manager/Financial Secretary
IBEW Local Union 520

A.S.H. Electrical Services LLC Representative

**SMALL WORKS**
**MEMORANDUM OF UNDERSTANDING**

**BETWEEN**

**A.S.H. ELECTRICAL SERVICES LLC**

**AND**

**IBEW LOCAL UNION 520**

IBEW Local Union 520 and EMPLOYER have repeatedly discussed possible solutions to gaining market share within the small works arena. In an effort to assist all signatory contractors in this arena, Local 520 offers the following:

**Four Person Crew**

Effective June 6, 2022, the Union agrees on any/all jobs throughout the Local 520 jurisdiction, with four (4) or less employees, the signatory contractor may utilize the services of a Construction Electrician (CE) and/or a 6th period apprentice. This CE or apprentice must be in possession of a State of Texas Journeyman License and may work alone, if necessary.

Additionally, the licensed CE may supervise up to three (3) additional equal or lower classified workers (CE's and/or CW's). This crew mix would not include Apprentice Wiremen. As long as the jobsite requires 4 or less employees, there will be no need for a Journeyman Inside Wireman (JIW) nor a Foreman (F). Should the four-person crew increase to five (5) or more, a licensed JIW or a licensed Foreman must be utilized.

Due to the market conditions, the parties recognize this agreement to be a variance to Article VI Section 6.12 of the inside agreement that necessitates the JIW being the first person on the job. The parties recognize Apprentices and CW/CEs operate under a formal training program where OJT under direct and indirect supervision by a JIW is still an important component to their development. Therefore, employers must be diligent to ensure CW/CE employees receive OJT training supervised by a JIW outside of these qualifying projects.

Signatory Contractors are not limited to any number of Four Person Crew jobsites. Pay rates and applicable benefits for the above classified workers shall be the ones listed in the Local 520 Inside Collective Bargaining Agreement between IBEW Local Union 520 and A.S.H. Electrical Services LLC.

This Memorandum of Understanding will expire on June 4, 2028, unless both Parties agree to extend it for an additional timeframe.

SIGNED FOR THE UNION:                    SIGNED FOR THE EMPLOYER:
Local Union No. 520 of the International       A.S.H. Electrical Services LLC
Brotherhood of Electrical Workers

_____

Ben Brenneman
Business Manager/Financial Secretary
IBEW Local Union 520

_____

A.S.H. Electrical Services LLC Representative

**Memorandum of Understanding**
**Summer Worker Program**

1.     Must be by informal understanding between the local Union, the Employer and the JATC, with written guidelines.

2.     The guidelines should specify the following conditions:

   a.     The maximum number to be employed.

   b.     Effective only when placement will not displace an Apprentice or Intermediate Journeyman.

   c.     Qualifications:
      1.  At least 16 years old
      2.  A bona fide student (evidence required)
      3.  Summer worker and employer signatures on statement of understanding (sample attached)

   d.     Placement for a specific period of time, not to exceed 90 days. (Ending with the first pay period in September).

   e.     Placed as a <u>Summer Worker.</u>  NOT as an apprentice. (Cannot be referred or worked on jobs requiring registered apprentices).

   f.     Rate of pay shall be equal to that of a first period indentured apprentice.

   g.     Work performed as a Summer Worker is not counted towards apprenticeship.

   h.     Wages paid to Summer Workers are included in gross labor payroll, and the 3% of gross labor payroll payment to NEBF must include Summer Workers wages.

   i.     Limited electrical work (same as unindentured apprentice).

<u>SIGNED FOR THE UNION:</u>                    <u>SIGNED FOR THE EMPLOYER:</u>
Local Union No. 520 of the International          A.S.H. Electrical Services LLC
Brotherhood of Electrical Workers

———————————————          ———————————————
Ben Brenneman
Business Manager/Financial Secretary          A.S.H. Electrical Services LLC Representative
IBEW Local Union 520

**Memorandum**

**of Understanding**

**Between IBEW Local**
**Union 520**
**and**
**A.S.H. ELECTRICAL SERVICES LLC**

Effective June 2, 2025 through June 4, 2028.

On jobs of five (5) or more days duration on the main campus* of the University of Texas, if parking is not provided, the employer will reimburse $6.00 per day for parking to each employee who reports to work on time and works all regular hours available to him. The employer is not responsible to provide transportation to and from parking areas.

SIGNED FOR THE UNION:                          SIGNED FOR THE EMPLOYER:
Local Union No. 520 of the International        A.S.H. Electrical Services LLC
Brotherhood of Electrical Workers

_____              _____
Ben Brenneman
Business Manager/Financial Secretary            A.S.H. Electrical Services LLC Representative
IBEW Local Union 520

*from I-35 to Guadalupe Street, from East & West Dean Keeton Street to East & West Martin Luther King, Jr. Blvd.



# Construction Wireman/Construction Electrician Memorandum of Understanding

**PURPOSE:**

This agreement has two goals; one is to recruit an adequate number of personnel to meet the demands of the electrical construction industry in the jurisdiction covered by the inside construction and maintenance agreement. The second objective is to establish a standard by which those recruited will be properly placed for continuing skills based training.

**OBJECTIVES:**

A. Provide a uniform means by which individuals can be brought into the organized industry.
B. Provide employment opportunities for those individuals who may not meet the entrance requirements of the local AETA
C. Establish a fair wage scale based on a skill standard that provides a clear and formal path to becoming a Journeyman Inside Wireman while maintaining a productive workforce.
D. Provide electrical employees with experience and potential, an avenue to becoming a Journeyman Inside Wireman.
E. To provide a second chance program for those indentured apprentices who discover that they do not fit into the AETA program.
F. To provide A.S.H. Electrical Services LLC and IBEW Local Union 520 the autonomous means of developing training programs to meet the needs of changing local markets.

**DEFINITIONS:**

A. CW/CE – Construction Wireman/Construction Electrician
B. SBC – Skill Based Credits
C. AETA – Austin Electrical Training Alliance (formerly called Joint Apprenticeship Training Center)
D. JATC – Joint Apprenticeship Training Committee
E. LU 520 – International Brotherhood of Electrical Workers Local Union 520
F. Employer – A.S.H. Electrical Services LLC
G. TDLR – Texas Department of Licensing and Regulation
H. OJT – On the Job Training

**SECTION 1 – ADMINISTRATION**

A. The AETA and LU 520 shall be responsible for:

1) Administering skill-based evaluations (supervised by Local Union staff)
2) Monitoring progress of the CW/CE for wage advancement
3) Develop and deliver skill-based training courses
4) Notifying LU 520 of the number of apprentices available for work assignments
5) Recruiting, processing and dispatching applicants to employers for assignment.



**Construction Wireman/Construction Electrician
Memorandum of Understanding**

B. Either party (EMPLOYER, LU 520 or AETA) may review all skill-based evaluations and evaluation procedures.

## SECTION 2 – WAGES, BENEFITS AND ADVANCEMENT

Upon successful accumulation of 16,000 Skill Based Credits (SBC) and successful completion of a Texas State Journeyman's License the Construction Electrician shall be upgraded to Journeyman Inside Wireman.

### A. Wages Appendices A1 and A2

1. Accumulated SBC's shall determine the individuals initial pay rate. Individuals shall advance upon meeting the requirements shown in Appendix D.
   or

2. Experienced Applicants with verifiable industry wage -or- AETA Transferees (Ref: SECTION 5): wages shall remain frozen until accumulated SBC's warrant pay advancement.

### a. BENEFITS – REFERENCE APPENDICES A1 and A2:

1. Accumulated SBC's shall determine what level of benefits shall apply.
2. All benefits shall be paid in accordance with the various trust fund qualifications.

### b. SKILLS BASED CREDITS (SBC'S) shall accrue by the following methods:

1. One SBC per each OJT hour worked for a signatory contractor.
2. One SBC for every two (2) OJT hours worked for a non-signatory contractor (wage documentation required; no credit (SBC's) for hours worked prior to program enrollment).
3. SBC's from skill based evaluation.
4. SBC's credited by successful completion of skills based courses. SBC's achieved in this manner shall not exceed 4,000 for the life of the program.
   (see APPENDIX C)

   Note: In no case shall SBC's be earned above the stated maximums through the evaluation process and/or the optional course work within each skill discipline (see APPENDIX B).



### Construction Wireman/Construction Electrician Memorandum of Understanding

#### c. **EXPERIENCED APPLICANTS SHALL**:

1) Provide verifiable electrical industry wage documentation to establish their wage rate. (wage documents for public works projects where a wage determination is established shall not be eligible for verification)

OR

2) Take the next available skills based evaluation to determine how many SBC's shall be credited and establish initial wage rate.

SEE APPENDICES A1 AND A2 FOR EVALUATION, CLASS SBC'S AND WAGE SCHEDULE.

### SECTION 3 – IMPLEMENTATION:

The LU 520 shall be primarily responsible for the recruitment, processing and dispatching of applicants to employers. The LU 520 shall provide all processing information to the AETA for the purpose of tracking the CW/CE's progress in the program.

The JATC shall be responsible for the training of participants in accordance with Article VI, section 6.01 of the inside agreement.

The Employer shall be responsible for providing a termination slip to the LU 520 and the AETA when a CW/CE becomes unemployed.

CW/CE shall be employed on a conditional basis for 90 days from their first assignment. During the conditional employment period the LU 520 and A.S.H. Electrical Services LLC shall determine the individuals continued status in the program.

No employer is guaranteed a specific number of CW/CE.

Each job shall follow a ratio of one or more (1 or more) CW/CE(s) to one (1) JIW.

An employer who fails or refuses to hire available apprentices, in accordance with the agreed upon ratio of apprentices to journeymen, shall not be entitled to hire CW/CE.

CW/CE may be transferred from one qualifying project to another by the employer.

CW/CE shall not be included in the calculation of the apprentice to journeyman ratio.

Referral records may be inspected at LU 520 by a representative of the Employer.



# Construction Wireman/Construction Electrician
# Memorandum of Understanding

Effective January 1, 2020, all Construction Wiremen and Construction Electricians are required to provide proof of completion, by originally issued card or certificate, of an OSHA 10 safety training course.

## SECTION 4 – SUPERVISION:

The CW/CE who has less than 8,000 SBC's shall be under the supervision of a Journeyman Inside Wireman. It shall be the responsibility of the supervisor to lay out the work required and to permit the CW/CE to perform the work on his/her own. A CW/CE who has 8,000 SBC's shall be allowed to work with no supervision but shall not supervise any apprentices or Journeyman Wireman.

## SECTION 5 – TRANSFERS:

A. All transfers shall be approved by the JATC.
B. Individuals are limited to a maximum of (2) transfers.
C. Transferees shall not experience a Wage Rate or Benefit Reduction.
D. AETA to CW/CE program:
   Local Apprentices from AETA apprenticeship program may transfer to the CW/CE program at an equal pay rate providing the apprentice has:
   1) A satisfactory work history (hours worked, absenteeism, and tardiness); and
   2) Established in writing the basis for the transfer.
   3) Apprentice transferees shall be credited one (1) SBC for each OJT Hour + (500) SBC's per completed academic year of apprenticeship. In no instance shall this transfer result in the apprentice being granted more than the maximum SBC's as shown below:

### AETA to CW/CE Credit Table

| AETA Completed | Credited SBC's | AETA Completed | Credited SBC's |
|---|---|---|---|
| Less than 1 year | 2000 | Completed 3rd year | 8000 |
| Complete 1st year | 4000 | Completed 4th year | 10000 |
| Complete 2nd year | 6000 | Completed 5th year | 12000 |

E. CW/CE to AETA Program:

   CW/CE meeting the requirements for entrance into the AETA program may transfer to the AETA program as outlined by the JATC standards. The transferring CW/CE will complete the IBEW/NECA ETA Proficiency Exam to determine placement in the academic portion of the training and will receive OJT Hour credits based on JATC guidelines. Transferees shall not experience a reduction in their wage rate.



# Construction Wireman/Construction Electrician Memorandum of Understanding

## SECTION 6 – TERM OF AGREEMENT:

This Agreement shall take effect on June 2, 2019.  The terms and conditions of this Agreement shall continue on jobs bid under said terms until such jobs are completed.

**Disputes:**  All allegations of infractions of this agreement shall be referred to the Labor Management Committee as defined in the current inside/maintenance collective bargaining agreement.  In the event of a deadlock the matter shall be referred to the IBEW Seventh District Vice-president and the NECA Southern Region Director for final and binding adjudication.  This agreement is a Memorandum of Understanding to the area inside construction and maintenance collective bargaining agreement and may continue with or without requirement of separate notice.

**Commitment:**  The two parties, by signature below, hereby commit and promise to use their best efforts to see that this Memorandum is used to its highest level for the maximum benefit of employers and employees alike.

The parties further promise and agree that if changes are needed to this Memorandum; those changes will be addressed in an atmosphere of mutual trust and cooperation for the equal benefit of employers and employees alike.  **Furthermore, any changes to this agreement or program shall be subject to review by the IBEW Seventh District Vice-President and the NECA Southern Region Director.**

SIGNED FOR THE UNION:
Local Union No. 520 of the International
Brotherhood of Electrical Workers

SIGNED FOR THE EMPLOYER:
A.S.H. Electrical Services LLC

_____

Ben Brenneman
Business Manager/Financial Secretary
IBEW Local Union 520

_____

A.S.H. Electrical Services LLC Representative



# Construction Wireman/Construction Electrician
## Memorandum of Understanding

### APPENDIX A1 (CW1-CW6)

| Benefits | CE 1 | CE 2 | CE 3 | CE 4 | CE 5 | CE 6 |
|---|---|---|---|---|---|---|
| Range SBC'S | 0-2K | 2.01K-4K | 4.01K-6K | 6.01K-8K | 8.01K-10K | 10.01K-12K |
| JIW Rate | 44% | 44% | 49% | 54% | 59% | 64% |
| A.E.T.A. | NA | NA | NA | 1% of JIW | 1% of JIW | 1% of JIW |
| NLMCC | $0.01 | $0.01 | $0.01 | $0.01 | $0.01 | $0.01 |
| H&B | Plan C | Plan B | Plan B | Plan B | Plan B | Plan B |
| NEBF (3%) | 3% | 3% | 3% | 3% | 3% | 3% |
| Annuity | NA | NA | NA | 3% | 3% | 3% |
| AMF | .10 | .10 | .10 | .10 | .10 | .10 |

### APPENDIX A2 (CE1- CE 4)

| Benefits | CE 7 | CE 8 | CE 9 | CE 10 |
|---|---|---|---|---|
| Range SBC's | 12.01K-13K | 13.01K-14K | 14.01K-15K | 15.01K- more |
| JIW Rate | 68% | 73% | 78% | 85% |
| A.E.T.A. | 1% of JIW | 1% of JIW | 1% of JIW | 1% of JIW |
| NLMCC | $0.01 | $0.01 | $0.01 | $0.01 |
| H&B | Plan B | Plan B | Plan B | Plan B |
| NEBF (3%) | 3% | 3% | 3% | 3% |
| Annuity | 5% | 5% | 5% | 5% |
| AMF | .10 | .10 | .10 | .10 |

| |
|---|
| Low |
| Middle |
| High |

**NOTE:  Benefit Schedule shown reflects current rates.  Rates shall be adjusted as per the Current Inside Agreement.**
**-Health and Welfare provides the employee with the option to select employee single coverage (for Levels 2, 3 & 4 only) or employee/dependent coverage (for Levels 2-8). Employees may change this election once each calendar year or more often as the trust fund rules provide.**
**-Only SBCs earned from participating employers qualify for benefits eligibility.**



**Construction Wireman/Construction Electrician**
**Memorandum of Understanding**
## APPENDIX B

| SKILL DISCIPLINE | MAX SBC's |
|:---:|:---:|
| Branch Wiring | 6,400 |
| Feeder Wiring | 1,600 |
| Panels & Transformers | 1,600 |
| Switchgear & Motor Control Center | 1,120 |
| Motors & Motor Controls | 800 |
| Lighting & Lighting Controls | 2,400 |
| Grounding | 160 |
| Devices | 320 |
| Electrical Codes & Ordinances | 160 |
| Blueprints & Specifications | 160 |
| Meters & Tools | 160 |
| OSHA & Job Safety | 160 |
| Agreements | 160 |
| Service & Troubleshooting | 800 |



**Construction Wireman/Construction Electrician
Memorandum of Understanding**

# APPENDIX C

### Optional Coursework SBC Curriculum Allocation

| Skills Course | SBC's Credit | Course Hours |
|---|---|---|
| **Branch Wiring** | **920** | **72** |
| **Electrical Codes & Ordinances** | **320** | **30** |
| **Service/Troubleshooting** | **280** | **24** |
| **Panels & Transformers** | **280** | **24** |
| **OSHA & Job Safety** | **280** | **24** |
| **Meters & Tools** | **280** | **24** |
| **Feeder Wiring** | **280** | **24** |
| **Blueprints & Specifications** | **280** | **24** |
| **Agreements** | **240** | **24** |
| **Switchgear & Motor Control Centers** | **200** | **18** |
| **Motors & Motor Controls** | **200** | **18** |
| **Lighting & Lighting Controls** | **200** | **18** |
| Grounding | 120 | 12 |
| Devices | 120 | 12 |
| **TOTAL** | **4000** | **180** |



**Construction Wireman/Construction Electrician
Memorandum of Understanding**

APPENDIX D

| Classification | SBC's | Training | Awarded |
|---|---|---|---|
| **CW2** | 2000 | Conduit Bending 1 | 230 |
| **CW3** | 4000 | Blueprint Reading | 280 |
| **CW4** | 6000 | Conduit Bending 2 | 230 |
| **CW5** | 8000 | Codeology | 120 |
| **CW6** | 10000 | Basic Code | 120 |
| **CE1** | 12000 | Conduit Bending 3 | 230 |
| **CE2** | 13000 | Grounding/Transformers | 320 (120+200) |
| **CE3** | 14000 | Services | 200 |
| **CE4** | 15000 | Motor Control | 280 |
| **JIW** | 16000 | | |



**Memorandum of Understanding**

**Four Year Apprenticeship Program Conversion**



Made and entered into April 10, 2023, between IBEW Local Union 520, hereafter referred to as the Union, and the EMPLOYER, hereafter referred to as the Employer. This Agreement shall remain in effect from year to year throughout the current collective bargaining agreement and will expire at that time on June 1, 2025.

1. The parties hereby agree that Article IV, Section 4.03 Appendix A (Wages) of the Inside Agreement between the parties shall be modified with an additional schedule to meet the needs of the apprenticeship wage and benefit schedule for those starting the (4) Four Year Program.

| Apprentice Wireman | | | | | |
|---|---|---|---|---|---|
| Multiplier | Class | NEBF | Annuity | Medical | JATC |
| 50% of JIW 0-999 Hrs | 1st Period | 3% | ** | $3.70 | 1%*** |
| 55% of JIW 1000-1999 Hrs | 2nd Period | 3% | 3% | $3.70 | 1%*** |
| 60% of JIW 2000-3499 Hrs | 3rd Period **180 Hrs Instruction** | 3% | 3% | $3.70 | 1%*** |
| 65% of JIW 3500-4999 Hrs | 4th Period **360 Hrs Instruction** | 3% | 5% | $3.70 | 1%*** |
| 70% of JIW 5000-6499 Hrs | 5th Period **540 Hrs Instruction** | 3% | 5% | $3.70 | 1%*** |
| 75% of JIW 6500-8000 Hrs | 6th Period **720 Hrs Instruction** | 3% | 8% | $3.70 | 1%*** |
| 50% of JIW **Max Hrs2000** | Unindentured Apprentice | 3% | ---------------- | $2.65 | 1%*** |
| **Journeyman 8000, completed 900 hours of related instruction and obtained State of Texas Journeyman license. Classroom instruction hours are cumulative.** <br> **I% effective January 6 2025 <br> ***1% of Journeyman Straight -Time Rate | | | | | |

SIGNED FOR THE UNION:                    SIGNED FOR THE EMPLOYER:
Local Union No. 520 of the International   A.S.H. Electrical Services LLC
Brotherhood of Electrical Workers

_____          _____
Ben Brenneman
Business Manager/Financial Secretary      A.S.H. Electrical Services LLC Representative
IBEW Local Union 520

# EX. 9

# JacksonLewis

**Jackson Lewis P.C.**
500 N. Akard Street, Suite 2500
Dallas TX 75201
(214) 520-2400 Direct
(214) 520-2008 Fax
**jacksonlewis.com**
Direct Dial: 972-728-3258

Jonathan.Elifson@jacksonlewis.com

October 1, 2025

Diarmid Campbell, Assistant Business Agent
IBEW Local 520
4818 E. Ben White Blvd, Suite 300
Austin, TX 78741

Re: Grievance and Request for Information

Dear Mr. Campbell:

This Firm represents A.S.H. Electrical Services, LLC ("A.S.H.") with respect to all disputes with IBEW Local 520. Please direct all further communications regarding A.S.H. to me.

On September 17, 2025, you sent my client what purports to be a grievance "concerning a potential violation of terms related to Contract Wage Adjustments."  As you know, on December 27, 2023, A.S.H. sent a letter to IBEW Local 520 stating that "A.S.H. considers its contractual relationship with IBEW to be terminated as of November 1, 2023, and withdraws and revokes all collective bargaining rights assigned to the Local Union and Central Texas Chapter, NECA." (Exhibit A). This letter followed A.S.H.'s May 30, 2023, notice of cancellation of both the Letter of Assent assigning A.S.H.'s bargaining rights to the Central Texas Chapter of NECA and the parties' CBA (Exhibit B). As no valid collective bargaining agreement or collective bargaining relationship with IBEW Local 520 currently exists, there is no basis to process a purported "grievance."

Further, because A.S.H. terminated its previous 8(f) relationship with the Union, it has no duty under Section 8(a)(5) of the Act to furnish information requested by the Union. Because my client has no duty to furnish IBEW Local 520 with the information it requested on September 17, 2025, (and again today), A.S.H. will not be furnishing you with the requested information.

Should you wish to discuss this matter, I can be reached by phone at (972)728-3258 or via e-mail at Jonathan.Elifson@jacksonlewis.com

Sincerely,

/s/ *Jonathan Elifson*

Jonathan Elifson
Counsel for A.S.H. Electric