IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| INTERNATIONAL BROTHERHOOD OF ELECTRICAL WORKERS, LOCAL 520, | § § § § | No. 1:25-CV-1643-DAE |
| Plaintiff, | § § | |
| v. | § § | |
| A.S.H. ELECTRICAL SERVICES, LLC, | § § § | |
| Defendant. | § | |

## ORDER DENYING MOTION TO TRANSFER

Before the Court is Defendant A.S.H. Electrical Services, LLC's

("A.S.H." or "Defendant") Opposed Motion to Transfer Venue to the Northern

District of Texas filed on January 5, 2026.  (Dkt. # 16.)  Plaintiff International

Brotherhood of Electrical Workers, Local 520 ("IBEW" or "Plaintiff") filed a

Response in Opposition on January 12, 2026.  (Dkt. # 17.)  Defendant filed a Reply

on January 20, 2026.  (Dkt. # 18.)  The Court finds this matter suitable for

disposition without a hearing.  After carefully considering the memoranda and

exhibits filed in support of and in opposition to the motion, the Court—for the

reasons that follow—**DENIES** Defendant's Motion to Transfer.  (Dkt. # 16.)

1

BACKGROUND

IBEW filed this action pursuant to the Labor Management Relations Act ("LMRA") to confirm and enforce an interest arbitration award dated May 13, 2025.  (Dkt. # 1 at 1.)

IBEW's complaint states that, on May 13, 2021, A.S.H. signed a Letter of Assent assigning its collective bargaining rights to the Central Texas Chapter of the National Electrical Contracts Association ("NECA").  (Id. at 2.)  By doing so, A.S.H. became bound to an existing collective bargaining agreement (the "Prior CBA"), which was effective through June 1, 2025, but would renew on a yearly basis unless terminated.  (Id.)  The Prior CBA contained provisions providing that disputes regarding renewal or modifications of the agreement be submitted for arbitration "jointly or unilaterally" to the Council on Industrial Relations for the Electrical Contracting Industry (CIR).  (Id.)  If a dispute was submitted to the CIR, the resulting decision was to be "final and binding."  (Id. at 2–3.)

On May 30, 2023, A.S.H. notified IBEW that it wished to withdraw its Letter of Assent to NECA's representation.  (Id. at 3.)  On December 27, 2023, A.S.H. notified IBEW of its desire to terminate the Prior CBA.  (Id.)  IBEW accepted A.S.H.'s termination effective upon the expiration of the Prior CBA.  (Id.)  However, on February 3, 2025, IBEW requested to meet with A.S.H. to attempt a

resolution on a modified agreement.  (Id.)  After the parties met several times in March and April with no success, IBEW submitted the dispute to the CIR as provided by the Prior CBA's arbitration provisions on April 17, 2025.  (Id.)

The precise dispute in this case surrounds whether the new collective bargaining agreement (the "New CBA") resulting from the interest arbitration award is enforceable against A.S.H.  (Id. at 1.)  IBEW accuses A.S.H. of refusing to "sign, implement, and be bound by the New CBA resulting from that arbitration award.  (Id. at 4.)  A.S.H. claims that the New CBA was obtained fraudulently by IBEW, that the CIR's decision was unreasonable and made in bad faith, and that therefore the New CBA violates the LMRA and is not valid.  (Dkt. # 6 at 6–7.)  A.S.H. further claims that imposing the New CBA upon him would violate public policy.  (Id. at 7.)

IBEW originally brought suit in the Western District of Texas on October 13, 2025.  (Dkt. # 1.)  As asserted in IBEW's Complaint, this Court has subject matter jurisdiction pursuant to 29 U.S.C. 185, which states that claims between employers and unions for contract violations "may be brought in any district court of the United States having jurisdiction of the parties, without respect to the amount in controversy or without regard to the citizenship of the parties."  See 28 U.S.C. § 185(a).

3

A.S.H. filed its answer and counterclaim on November 6, 2025.  (Dkt. # 6.)  A.S.H. then filed a Motion to Transfer Venue to the Northern District of Texas ("NDTX") on January 5, 2026.  (Dkt. # 16.)  IBEW filed a Response to A.S.H.'s Motion to Transfer on January 12, 2026.  (Dkt. # 17.)  A.S.H. filed its Reply on January 20, 2026.  (Dkt. # 18.)  The Motion to Transfer remains pending before this Court.

LEGAL STANDARD

A court must dismiss a case filed in an improper venue or, if the interests of justice demand it, transfer the case to a venue where the suit could have originally been brought.  28 U.S.C. § 1406(a).  When ruling on a Section 1406 motion, the court uses the same standard as a motion under Rule 12(b)(3).  Psarros v. Avior Shipping, Inc., 192 F. Supp. 2d 751, 753 (S.D. Tex. 2002) (noting 12(b)(3) provides a means by which defendants may obtain the relief described in Section 1406).  On such a motion, "the court must accept as true all allegations in the complaint and resolve all conflicts in favor of the plaintiff."  Braspetro Oil Servs. Co. v. Modec (USA), Inc., 240 F. App'x 612, 615 (5th Cir. 2007) (per curiam) (citations omitted).  Thus, a plaintiff may show that venue is proper by "setting forth facts that taken as true would establish venue."  Bigham v. Envirocare of Utah, Inc., 123 F. Supp. 2d 1046, 1048 (S.D. Tex. 2000) (citing Wilson v. Belin, 20 F.3d 644, 648 (5th Cir. 1994)).

4

The federal circuits are split on who has the burden of proof once a party has moved for dismissal or transfer for improper venue.  Amazon.com Servs. LLC v. NLRB, No. SA-24-CV-01000-XR, 2024 WL 4977179, at *3 (W.D. Tex. Sept. 29, 2024), appeal dismissed, 136 F.4th 577 (5th Cir.), withdrawn and superseded by 151 F.4th 221 (5th Cir.) and appeal dismissed, 151 F.4th 221 (5th Cir. 2025).  Although the Fifth Circuit has not set forth a definitive framework, its district courts generally hold that, after venue has been challenged by the defendant, the *plaintiff* bears the burden of proving they have chosen a proper venue for their claims.  Broadway Nat'l Bank v. Plano Encryption Techs., LLC, 173 F. Supp. 3d 469, 473 n.2 (W.D. Tex. 2016); Silva v. Frankford Crossing Shopping Ctr., TX, LP, No. 3:12-CV-2046-O-BH, 2013 WL 1264155, at *3 (N.D. Tex. Feb. 22, 2013), report and recommendation adopted, No. 3:12-CV-2046-O, 2013 WL 1281571 (N.D. Tex. Mar. 28, 2013).  The underlying policy behind this viewpoint is to discourage forum shopping by requiring plaintiffs to meet their threshold obligation of proving a case belongs in a given court. Amazon.com Servs. LLC, 2024 WL 4977179, at *3 (citing Seariver Mar. Fin. Holdings, Inc. v. Pena, 952 F. Supp. 455, 458 (S.D. Tex. 1996)).

If venue is improper, 28 U.S.C. § 1406(a) instructs district courts to "dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought."  28 U.S.C. § 1406(a).  The decision

to dismiss or transfer lies within the court's discretion.  AllChem Performance

Prods., Inc. v. Aqualine Warehouse, LLC, 878 F. Supp. 2d 779, 788 (S.D. Tex.

2012) (citing Dubin v. United States, 380 F.2d 813, 815 (5th Cir. 1967)).

Even if relief under Section 1406 is not available, a party objecting to

venue may move for permissive transfer under 28 U.S.C. § 1404(a), which "allows

a district court to transfer any civil action to any other district or division where it

might have been brought when the convenience of parties and witnesses and the

interest of justice so require."  In re TikTok, Inc., 85 F.4th 352, 357 (5th Cir. 2023)

(quoting Bechuck v. Home Depot U.S.A., Inc., 814 F.3d 287, 293 (5th Cir. 2016))

(internal quotation marks omitted).  A court may grant transfer under Section

1404(a) only if the moving party "clearly establishes good cause" by "clearly

demonstrating that a transfer is for the convenience of parties and witnesses, in the

interest of justice."  In re Clarke, 94 F.4th 502, 508 (5th Cir. 2024) (quoting Def.

Distributed v. Bruck, 30 F.4th 414, 433 (5th Cir. 2022)).  The moving party bears

the burden of establishing good cause.  Id.

To establish good cause, the moving party must clearly demonstrate

that its chosen venue is clearly more convenient, not just that it "is more likely than

not to be more convenient."  Id.  A preponderance of the evidence is not enough.

Def. Distributed, 30 F.4th at 433.  "[T]he fact that litigating would be more

convenient for the defendant elsewhere" is not alone enough to justify a transfer.

6

Id.  "Unless the balance of factors strongly favors the moving party, the plaintiff's choice of forum generally should not be disturbed."  Houston Trial Reports, Inc. v. LRP Publications, Inc., 85 F. Supp. 2d 663, 667–68 (S.D. Tex. 1999) (quoting Henderson v. AT&T Corp., 918 F. Supp. 1059, 1065 (S.D. Tex.1996)) (internal quotation marks omitted).

DISCUSSION

A.S.H. argues that venue in the Western District of Texas is improper and that this case should be transferred to the Northern District of Texas pursuant to 28 U.S.C. § 1406 in the interests of justice.  (Dkt. # 16 at 2.)  Alternatively, Defendant argues that the case should be transferred to the Northern District of Texas for the convenience of the witnesses of witnesses and parties pursuant to 28 U.S.C. § 1404.  (Id.)

I.      The Western District of Texas is a Proper Venue.

IBEW's complaint asserts venue based on a "substantial part of the events and omissions giving rise to the claim in this suit occurr[ing] in Travis County."  (Dkt. # 1 at 2.)  A.S.H. claims that venue is improper because, contrary to IBEW's allegations, a substantial part of the events or omissions did not in fact take place in Travis County, Texas.  (See Dkt. # 16 at 2.)  But the general rule[1] is

---

[1] Although not specifically discussed in A.S.H.'s motion or in IBEW's response, IBEW is a labor organization and brings this claim pursuant to Section 301 of the Labor Management Relations Act ("LMRA").  The LMRA contains its own

7

that venue is proper: (1) in any judicial district where a defendant resides, if all

defendants reside in the same district; (2) in a judicial district in which a

substantial part of the events or omissions giving rise to the claim occurred, or a

substantial part of property that is the subject of the action is situated; or (3) if no

proper district under subsections (1) and (2) exists, in any judicial district in which

any defendant is subject to the court's personal jurisdiction with respect to the

action.  28 U.S.C. § 1391(b)(1)–(3).  Accordingly, the Court will first review

IBEW's claim of venue under § 1391(b)(2) and, if necessary, review in turn the

applicability of § 1391(b)(1) and (3) to determine whether venue is proper in the

Western District of Texas.  See Trois v. Apple Tree Auction Ctr., Inc., 882 F.3d 485,

493 (5th Cir. 2018) (quoting Atl. Marine Const. Co. v. U.S. District Court,

571 U.S. 49, 56 (2013)).

---

jurisdiction and venue provisions granting the district courts subject matter
jurisdiction over "[s]uits for violation of contracts between an employer and a
labor organization in an industry affecting commerce."  See 28 U.S.C. § 185(a),
(c).  Under that statute, a suit for such violation may be brought in any judicial
district having jurisdiction over the parties.  Id. § 185(a).  Because even a suit
where venue is proper under § 1391(b)(2) requires the court to have personal
jurisdiction over the defendant, the Court will treat § 1391 as supplemental to
§ 185's jurisdictional requirements.  See, e.g., Stith v. Manor Baking Co.,
418 F. Supp. 150, 155 (W.D. Mo. 1976) (noting the LMRA is governed by the
general venue statute).

A.   <u>Defendant did not waive its objection to venue.</u>

IBEW's first response to the motion to transfer is that A.S.H. waived its venue objection.  (Dkt. # 17 at 2.)  An objection to venue typically is waived by failing to include it in the objecting party's responsive pleading or otherwise by motion.  Fed. R. Civ. P. 12(b)(3), (h)(1)(A)–(B).

Here, A.S.H. asserted in its answer an objection for improper venue because it denies that "a substantial part of the events and omissions giving rise to the claim in this suit occurred in Travis County, Texas."  (Dkt. # 6 at 2.)  IBEW now posits that A.S.H. waived any objection to venue in its counterclaim by stating, "Venue is proper in this Court under 28 U.S.C. § 1391."  (Dkt. # 17 at 2.)  But IBEW's truncated quotation conveniently ignores that A.S.H. reiterated its venue objection *in the same sentence* that IBEW partially quotes and claims waives A.S.H.'s objection.  (<u>See</u> Dkt. # 6 at 9.)  IBEW's reliance on Rule 12(h)(1)(B)(ii) therefore is incorrect because A.S.H. did include its objection to IBEW's asserted basis for venue in both its answer and counterclaim.

Moreover, a counterclaim generally does not waive a properly asserted jurisdictional objection if the objector complies with Rule 12 and the objection is not otherwise waived during litigation.  <u>Bayou Steel Corp. v. M/V Amstelvoorn</u>, 809 F.2d 1147, 1149 (5th Cir. 1987) (adopting the post-Federal Rules majority view that jurisdictional objections are not waived by a counterclaim

9

because to hold otherwise would be to revive the special appearance in the federal courts); Happy Mfg. Co. v. S. Air & Hydraulics, Inc., 572 F. Supp. 891, 893–94 (N.D. Tex. 1982) ("Here, defendants explicitly made their counterclaims contingent on the correctness of plaintiff's statement of venue in its complaint. Especially where the counterclaims were thus conditionally made, defendants cannot be held to have invoked this court's jurisdiction.").

Of course, even if a party properly objects to venue in their answer, a later motion made pursuant to Section 1406 may be waived if it is not "timely and sufficient." 28 U.S.C. § 1406(b). Here, A.S.H. filed its original answer and compulsory counterclaim[2] on November 6, 2025. (See generally Dkt. # 6.) A.S.H. then moved to stay the case pending action on decertification by the National Labor Relations Board; A.S.H. later withdrew this motion shortly before the Christmas holiday. (See Dkt. # 15.) On January 5, 2026 (the first Monday after the holiday season ended), A.S.H. moved to transfer. (See Dkt. # 16.) Given A.S.H.'s assertion of its venue objection in its answer as well as the fact that it moved for transfer less than three months into this case, A.S.H.'s motion is timely. Furthermore, A.S.H.'s motion is sufficient because it sets forth the statute upon

---

[2] As provided by Fed. R. Civ. P. 13(a)(1), A.S.H.'s counterclaim arises out of the same transaction or occurrence as IBEW's complaint and involves claims against IBEW only. (See generally Dkts. # 1, 6.)

which it relies, sets forth the grounds for transfer, and provides supporting facts and proof in the form of an affidavit of A.S.H.'s co-owner.  (See Dkt. # 16.)

Accordingly, because A.S.H. has not waived its venue objection, the Court will consider the merits of the motion to transfer.

B.  Venue is proper under § 1391(b)(2).

IBEW's complaint relies on a substantial part of the events or omissions taking place in the Western District when establishing venue in this district.  (See Dkt. # 1 at 2.)  A.S.H. objects to venue specifically because it claims that "[v]enue is proper in the San Angelo Division of the Northern District of Texas because most relevant events in the case took place within the San Angelo Division of the Northern District."  (Dkt. # 6 at 2.)  Where "most relevant events" take place, however, is not the standard for this inquiry.

When determining whether a substantial part of the events or omissions giving rise to a claim occurred in a district, courts do not ask themselves whether *most* of the events occurred in that district because a plaintiff is not confined to the "best" venue for their claims.  McClintock v. School Board, 299 F. App'x 363, 365 (5th Cir. 2008); Zurich Am. Ins. Co. v. Tejas Concrete & Materials Inc., 982 F. Supp. 2d 714, 722 (W.D. Tex. 2013) (quoting VP, LLC v. Newmar Corp., No. 11–2813, 2012 WL 6201828, at *9 (E.D. La. Dec. 12, 2012)).  Instead, plaintiff's chosen venue need only have a "substantial connection

11

to the claim." VP, LLC, 2012 WL 6201828, at *9. "'Substantiality' for venue purposes is more a qualitative than a quantitative inquiry, determined by assessing the overall nature of the plaintiff's claims and the nature of the specific events or omissions in the forum, and not by simply adding up the number of contacts." Zurich Am. Ins. Co., 982 F. Supp. 2d at 722 (citing Daniel v. Am. Bd. of Emergency Med., 428 F.3d 408, 432-33 (2d Cir. 2005)). The practical result of a proper substantiality analysis is that claims often will have more than one proper venue. Seariver Mar. Fin. Holdings, 952 F. Supp. at 458–59.

Historically, the general focus when analyzing venue was on the defendant's conduct, not the plaintiff's. See Bigham, 123 F. Supp. 2d at 1048 (citing Woodke v. Dahm, 70 F.3d 983, 985 (8th Cir. 1995)) ("Actions taken by a plaintiff do not support venue. Moreover, the fact that a plaintiff residing in a given judicial district feels the effects of a defendant's conduct in that district does not mean that the events or omissions occurred in that district."). However, in the development of cases in the decades since the 1990 amendments to § 1391, courts in this Circuit have construed the statute more broadly, lending greater substantiality to future effects as potential events or omissions in the forum district. See, e.g., Umphress v. Hall, 479 F. Supp. 3d 344, 352 (N.D. Tex. 2020) (noting the effect of the 1990 amendments and reasoning courts may now consider the location of the injurious effects of defendant's conduct when determining venue); see also

12

Vine Oil & Gas LP v. Indigo Minerals, LLC, No. 4:19-cv-00346, 2019 WL 4140842, at *5 (E.D. Tex. Aug. 30, 2019) (explaining that a "substantial part" of the events or omissions may potentially occur "where the parties acted or where the injuries occurred").

To determine whether IBEW's chosen venue has a substantial connection to the claim requires a review of IBEW's claim itself. See Trois, 882 F.3d at 493–494 (reversing in part the district court's improper-venue ruling because, even though venue was improper for the plaintiff's breach of contract case, venue was proper for their fraudulent misrepresentation claim). Here, IBEW filed this suit to enforce an interest arbitration award mandating a new collective bargaining agreement with A.S.H. (Dkt. # 1 at 1.) This makes it a suit for labor contract violations contemplated by 29 U.S.C. § 185(a) and gives rise to this Court's subject matter jurisdiction. See, e.g., Local Union No. 898 of Intern. Broth. of Elec. Workers, AFL-CIO v. XL Elec., Inc., No. CIV.A.6:01-CV-059-C, 2002 WL 31689677, at *1–2 (N.D. Tex. Nov. 26, 2002), aff'd, 380 F.3d 868 (5th Cir. 2004) (chronicling a set of facts similar to the instant case regarding an interest arbitration and subsequent enforcement action).

In the Fifth Circuit, a "substantial part of events" giving rise to a breach of contract action includes performance of the contract, meaning venue is proper in a district where the contract was performed. Bio World Merch., Inc. v.

13

Interactive Bus. Info. Sys., Inc., No. 3:19-CV-2072-E, 2020 WL 6047605, at *3

(N.D. Tex. Oct. 9, 2020) (citing American Carpet Mills v. Gunny Corp., 649 F.2d

1056, 1059 (5th Cir. 1981)).  Courts also look to "where the contract was

negotiated or executed, . . . and where the alleged breach occurred."  Frederick v.

Advanced Fin. Sols., Inc., 558 F. Supp. 2d 699, 705 (E.D. Tex. 2007) (quoting

James J. Flanagan Shipping Corp. v. Mediterranean Shipping Co. S.A., 2007 WL

2461817, at *2 (E.D. Tex. 2007)).  Furthermore, the Supreme Court has noted that

a judicial district in which the contract containing the arbitration provision was

performed would "clearly" be the proper venue for a subsequent arbitration action.

See Cortez Byrd Chips, Inc. v. Bill Harbert Const. Co., 529 U.S. 193, 198 (2000)

(concluding venue would be proper under § 1391(b)(2) in the district "within

which the contract was performed").  Although Cortez Byrd was governed by the

FAA, its reasoning logically suits this LMRA action[3] in that, here, the subject

arbitration award arises from the provisions of the Prior CBA, which according to

---

[3] Although generally suits for the enforcement of arbitration awards are governed by the Federal Arbitration Act, 9 U.S.C. §§ 1–16 (the "FAA"), arbitration awards pertaining to collective bargaining for labor are preempted by the LMRA.  Int'l Chem. Workers Union v. Columbian Chemicals Co., 331 F.3d 491, 494 (5th Cir. 2003) ("The LMRA applies to [collective bargaining agreements] and the FAA applies to individual arbitration agreements.").  District courts, however, may look to the FAA for guidance when asked to enforce labor arbitration awards. Id.  (citing United Paperworkers Int'l Union v. Misco, 484 U.S. 29, 41 n. 9 (1987)).

IBEW was at least partially performed in the Western District.  (See Dkt. # 17 at 1; 17-1 at 2.)

This Court admittedly has minimal factual details specifically as it pertains to where most events and conduct giving rise to IBEW's claim occurred. Of chief significance is that neither the Prior CBA nor the New CBA are before the Court.  But, generally, A.S.H. asserts that it executed the Letter of Assent by which it agreed to the Prior CBA from San Angelo. (Dkt. # 16 at 5.)  IBEW's complaint chronicles various meetings and negotiations between the parties but fails to include the locations of those meetings and negotiations.  (Dkt. # 1 at 2–4.)  IBEW indicates the parties met several times in March and April 2025 to negotiate a possible modification of the CBA in order that it continue but, again, IBEW's complaint fails to include the locations of those meetings.  (See id. at 3.)  Clearly, the parties negotiated at least in part by correspondence to and from their respective offices in San Angelo and Austin.  (See generally Dkt. # 17-3.)  A.S.H. asserts, and IBEW has not denied, that the interest arbitration took place in Washington, D.C.  (Dkt. # 6 at 8.)

However, IBEW alleges the collective bargaining agreements' "key provision" mandates that A.S.H. hire employees through IBEW's hiring hall in Austin.  (See Dkts. ## 17 at 1; 17-1 at 2.)  Although neither the Prior CBA nor the New CBA are before the Court, the Court will take this allegation as true.  See

15

Bigham, 123 F. Supp. 2d at 1048.  The result is that IBEW's alleged performance of the underlying contract (which contained the arbitration provision giving rise to this claim) took place at least in part in Travis County.  By nature of the Prior CBA, IBEW was to recruit for A.S.H. electrical contractors by utilizing the pool of available union members in Local 520's service area.  (Dkt. # 17-1 at 1–2.)  IBEW claims it coordinated with and dispatched these workers from its hiring hall in Austin; it even dispatched a worker from an Austin apprenticeship school to work for A.S.H. in San Angelo.  (Id.)  A.S.H. does not dispute this.  Moreover, IBEW claims the injurious effects of A.S.H.'s conduct have been felt in the Western District because A.S.H. is no longer utilizing the Local 520 hiring hall for hiring electrical workers.  (Dkt. # 1 at 5; Dkt. # 17 at 1, 4.)  IBEW specifically alleges that, due to A.S.H.'s conduct, Local 520—the majority of whose members reside in the Western District—have been deprived of the benefit of the contract negotiated on behalf of those members as well as "the benefits paid to several joint NECA/IBEW funds on Local 520's behalf."  (Dkt. # 1 at 5.)  It is exactly this sort of omission that gives rise to IBEW's claim against A.S.H. to enforce the interest arbitration award in an attempt to reinstate the collective bargaining agreement between the parties.

Accordingly, venue is proper in the Western District of Texas because at least part of IBEW's performance under the Prior CBA took place there and

now—as a result of A.S.H.'s alleged refusal to implement the New CBA—it isn't. (See Dkt. # 17 at 4.)

C.   Venue is also proper under § 1391(b)(1).

Even if a substantial part of the events leading up to IBEW's claim did not take place in the Western District, venue is still proper because A.S.H. resides here for purposes of venue.

As noted above, Section 1391 provides that venue is proper "in a judicial district in which a defendant resides, if all defendants reside in the same state."  28 U.S.C. § 1391(b)(1).  While a defendant who is a natural person resides for venue purposes where they are domiciled,[4] companies with the capacity to sue and be sued in their own name "reside" for venue purposes in any judicial district in which the court has personal jurisdiction over them regarding the action at hand. See id. § 1391(c)(2).  This analysis is further complicated in states like Texas that have more than one judicial district.  To determine venue "in a State which has more than one judicial district and in which a defendant that is a corporation[5] is

_____

[4] 28 U.S.C. § 1391(c)(1).

[5] Unlike § 1391(c)(2), §1391(d) refers only to "corporations."  However, our sister courts have previously followed the prevailing view that, given the statutory context and Congressional history, "corporations" in this provision includes unincorporated entities such as LLCs.  See, e.g., Graham v. Dyncorp Intern., Inc., 973 F. Supp. 2d 698, 701 n.2 (S.D. Tex. 2013) (noting the history of amendments to § 1391(c)–(d) and the possible "oversight" of failing to make their terms cohesive).

subject to personal jurisdiction at the time an action is commenced, such corporation shall be deemed to reside in any district in that State within which its contacts would be sufficient to subject it to personal jurisdiction if that district were a separate State." Id. § 1391(d). "The venue analysis thus largely collapses into a personal jurisdiction analysis." Graham v. Dyncorp Intern., Inc., 973 F. Supp. 2d 698, 701 (S.D. Tex. 2013).

Here, although A.S.H. denies that it resides in the Western District, there is no dispute that A.S.H. is a limited liability company with the capacity to sue and be sued in its own name, making its "residence" where it is subject to the court's personal jurisdiction regarding IBEW's claim. See 28 U.S.C. § 1391(c)(2). It is also undisputed that A.S.H. does not maintain offices or service clients in the Western District. (See Dkt. # 16 at 1–2.) Therefore, because Texas has multiple districts, the improper-venue question turns on whether A.S.H. had sufficient contacts with the Western District of Texas such as to subject A.S.H. to *specific* personal jurisdiction in this case if the Western District were a separate state.[6] See

---

[6] It is true that A.S.H. has never asserted a lack of personal jurisdiction in this case. Ordinarily, an objection to personal jurisdiction is waived by failing to assert it in a responsive pleading or by motion. Fed. R. Civ. P. 12(h)(1); Adams v. Unione Mediterranea Di Sicurta, 220 F.3d 659, 667 (5th Cir. 2000) (citing Travelers Indem. Co. v. Calvert Fire Ins. Co., 798 F.2d 826, 834 (5th Cir. 1986), on reh'g in part, 836 F.2d 850 (5th Cir. 1988)). If this were a case involving an out-of-state defendant seeking transfer to another jurisdiction, A.S.H.'s lack of objection might have relieved the Court of the ensuing detailed personal jurisdiction analysis. See Knapper v. Safety Kleen Sys., Inc., No. CIV A 908-CV-84-TH, 2009 WL 909479

id. § 1391(c)(2), (d); cf. Graham, 973 F. Supp. 2d at 702 (analyzing whether venue was proper under § 1391(d) using only the general personal jurisdiction standard because, since all the events of the claim occurred in Afghanistan, specific personal jurisdiction was not applicable).

A defendant's contacts justify a court's exercise of specific jurisdiction when the defendant "has purposefully directed its activities at the forum [] and the litigation results from alleged injuries that arise out of or relate to those activities." Cent. Freight Lines Inc. v. APA Transp. Corp., 322 F.3d 376, 381 (internal quotation marks omitted) (quoting Burger King Corp. v. Rudzewicz, 471 U.S. 462, 472 (1985)). In the Fifth Circuit, specific personal jurisdiction is a claim-specific inquiry involving a three-step analysis: "(1) whether the defendant has minimum contacts with the forum [], i.e., whether it purposely directed its activities toward the forum [] or purposefully availed itself of the privileges of conducting activities there; (2) whether the plaintiff's cause of action arises out of

---

(E.D. Tex. Apr. 3, 2009) ("All defendants have submitted [through waiver] to the jurisdiction of this Court. With their submission, the improper venue analysis ends."); KMR Capital, L.L.C. v. Bronco Energy Fund, Inc., No. CIVLSA06CA-189OG, 2006 WL 4007922 (W.D. Tex. July 11, 2006) (finding the defendant's waiver of personal jurisdiction also waived any objection to venue on § 1391(b)(1) grounds when the defendant asserted that venue was improper solely because a substantial part of the events or omissions giving rise to the plaintiff's claimed occurred in Arizona, not Texas). However, given A.S.H.'s status as a domestic defendant whose principal place of business is in Texas, the Court sees no reason why A.S.H. should have objected on personal jurisdiction grounds when it properly objected to venue.

or results from the defendant's forum-related contacts; and (3) whether the exercise of personal jurisdiction is fair and reasonable." McFadin v. Gerber, 587 F.3d 753, 759 (5th Cir. 2009); Seiferth v. Helicopteros Atuneros, Inc., 472 F.3d 266, 271 (5th Cir. 2006). "A single act directed at the forum state can confer personal jurisdiction so long as that act gives rise to the claim asserted." Moncrief Oil Int'l v. OAO Gazprom, 481 F.3d 309, 311 (5th Cir. 2007); see also Canyon Furn. Co. v. Sanchez, No. 18-cv-0753, 2018 WL 6265041, *5 (W.D. Tex. Nov. 8, 2018) ("Even where a defendant has no physical presence in the forum state, a single purposeful contact may be sufficient to confer personal jurisdiction if the cause of action arises from the contact.").

A review of the seminal case Burger King Corp. v. Rudzewicz, 471 U.S. 462 (1985) is helpful. In that case, nationwide franchiser Burger King successfully obtained Florida's exercise of personal jurisdiction over a Michigan resident and franchisee. 471 U.S. at 464–65, 487. The Supreme Court, in holding that the franchisee had purposely availed himself of the State of Florida by nature of his franchise agreement, noted the importance of a "highly realistic" approach to the minimum contacts analysis and stressed the importance of evaluating factors such as "prior negotiations and contemplated future consequences, along with the terms of the contract and the parties' course of actual dealing." Id. at 463. The Court emphasized the franchisee's establishment of a "substantial and continuing

20

relationship" with Burger King's headquarters in Florida by nature of the franchise agreement, and that the franchisee had failed to demonstrate how Florida's exercise of personal jurisdiction would be fundamentally unfair.  Id. at 487.

Here, as in Burger King, A.S.H. "deliberately reached out beyond" the Northern District in pursuit of the "manifold benefits that would derive from affiliation" with IBEW's union membership.  See id., 471 U.S. at 479–80.  A.S.H. contracted with IBEW when it signed the Letter of Assent and became bound by the Prior CBA.  (Dkt. # 1 at 1.)  IBEW alleges, and A.S.H. does not deny, that the Prior CBA required A.S.H. to hire new electrical workers through Local 520's hiring hall, which is administered in Austin.  (See Dkt. # 17 at 1; Dkt. # 17-1 at 1–2.)  The hiring hall encompasses union workers from more than twenty counties, the majority of which are in the Western District but four of which are in the Northern District, including Tom Green County,[7] where A.S.H.'s principal place of business is located.  The affidavit of Jonathan Murray, the Vice President and Assistant Business Manager for Local 520, states that IBEW members in any of the Local 520 counties may be dispatched to San Angelo to work for A.S.H., without regard to proximity.  (Dkt. # 17-1 at 1–2.)  The direct, future consequence of

---

[7] Local 520's website indicates their jurisdiction includes the Northern District counties of Tom Green County, Runnels County, Coleman County, and Brown County.  IBEW Local 520 Jurisdiction Map, https://www.ibew520.org/about/jurisdiction-map [https://perma.cc/A4GC-NTTA] (last visited April 20, 2026).

A.S.H.'s agreement to the Prior CBA was the hiring of all A.S.H. workers through IBEW's Austin hiring hall.  (See Dkt. # 17 at 1, 4.)  By agreeing to this sort of hiring scheme, and by using IBEW's Austin operations and hiring hall to gain access to a broader pool of potential workers, A.S.H. cultivated a "substantial and continuing relationship" with Local 520's headquarters in Austin, purposely availing itself of IBEW's presence in the Western District.  See Burger King, 471 U.S. at 487.  This is precisely the sort of business conduct that gives rise to personal jurisdiction.[8]  See, e.g., Inspection Leasing Inc. v. Tavas LLC, No. 1:24-CV-00319-DAE, 2024 WL 4329035, at *3 (W.D. Tex. Aug. 30, 2024) (exercising personal jurisdiction where the underlying contract was performed by plaintiff in Texas); Hancock Fabrics, Inc. v. Rowdec, LLC, No. 1:12CV131-SA-DAS, 2013

---

[8] Although not squarely applicable to this case, the Court notes Texas's longarm statute, which encompasses a nonresident who "recruits Texas residents, directly or through an intermediary located in this state, for employment inside or outside this state."  See Tex. Bus. & Com. Code § 17.042.  The Court does not necessarily presume the Western District, if a separate state, would have adopted the same longarm statute as the State of Texas.  See Graham v. Dyncorp Intern., Inc., 973 F. Supp. 2d 698, 702 (S.D. Tex. 2013) (declining to analyze intrastate venue by first analyzing Texas's longarm statute because § 1391(d) refers solely to contacts); 14D Charles Alan Wright et al., Federal Practice & Procedure § 3811.1 ("Since the statute does not say that it should, and there is no good reason to assume that the particular district would have the same long-arm statute as the state if it were a separate state, perhaps the better view is that whether this test is satisfied is wholly a question of federal law and that state law on amenability to process is irrelevant to the federal venue decision.").  Nevertheless, given the Texas legislature's clear interest in protecting Texas workers as expressed in the longarm statute, the Court finds the longarm provisions persuasive when analyzing whether Defendant conducted business in the Western District.

WL 866977, at *5 (N.D. Miss. Mar. 7, 2013) (exercising personal jurisdiction in a suit to confirm arbitrator's award when the defendant's sole contact with the forum was due to the underlying contract).

Furthermore, IBEW's cause of action arises out of its contract with A.S.H. Based on the pleadings, the only apparent contact A.S.H. has with the Western District regarding IBEW's claim is its alleged dealings with IBEW's local union and its union members pursuant to the Prior (and New) CBA, the enforcement of which forms the basis of this action. (See Dkt. # 17 at 1.) And, although A.S.H. complains in its motion to transfer that litigating in this district would be inconvenient, A.S.H. has failed to demonstrate that this Court's exercise of personal jurisdiction over it would be fundamentally unfair. Specifically, nothing in the pleadings or elsewhere indicates that A.S.H. entered into the Prior CBA without knowledge of the hiring provision or that IBEW would pull workers from throughout any of Local 520's service area. This Court has been given no reason to doubt that A.S.H. had full knowledge that IBEW would hire workers from its Austin hiring hall, regardless of the worker's county of residence.

Accordingly, venue is proper under § 1391(b)(2) because a substantial part of the events leading to IBEW's claim—its performance of the Prior CBA— occurred in this district. Venue is also proper under § 1391(b)(1) because A.S.H.'s contacts with the Western District by nature of the Prior CBA are such that A.S.H.

23

"resides" here for purposes of venue.  See 28 U.S.C. 1391(c)(2).  Either way, A.S.H.'s motion to transfer pursuant to 28 U.S.C. § 1406 is hereby DENIED.

II.   Transfer to The Northern District of Texas, San Angelo Division, is Not Warranted Under 28 U.S.C. § 1404.

In the alternative, Defendant moves the Court to permissibly transfer this case to the Northern District of Texas, San Angelo Division pursuant to 28 U.S.C. § 1404.  (Dkt. # 16 at 2.)  Whether transfer is appropriate depends upon whether transfer would serve "the convenience of parties and witnesses, in the interest of justice."  28 U.S.C. § 1404(a).

A.   The Case Could Have Been Brought in the Northern District of Texas.

"The threshold inquiry when determining eligibility for transfer is 'whether the judicial district to which transfer is sought would have been a district in which the claim could have been filed,' or whether all parties consent to a particular jurisdiction."  Savage v. Detroit Indep. Sch. Dist., No. 4:22-CV-00202, 2023 WL 3981266, at *2 (E.D. Tex. June 13, 2023) (quoting In re Volkswagen AG, 371 F.3d 201, 203 (5th Cir. 2004) ("Volkswagen I")).  The parties in this case do not dispute that this lawsuit could have been brought in the Northern District of Texas pursuant to § 1391, which states that venue is proper in the judicial district where the defendant resides.  28 U.S.C. § 1391(b)(1).  Here, A.S.H. maintains its principal place of business in San Angelo, the division seat to which A.S.H. seeks transfer.  (See Dkt. # 16 at 1–2.)

24

B.    Private and Public Interest Factors

To establish good cause and justify a transfer, the moving party must show "(1) that the marginal gain in convenience will be *significant*, and (2) that its evidence makes it plainly obvious . . . that those marginal gains will *actually* materialize in the transferee venue." Clarke, 94 F.4th at 508 (emphasis in original). In assessing whether the moving party has met this burden, the court considers four private-interest factors and four public-interest factors. TikTok, 85 F.4th at 358. No single factor is dispositive, and the Fifth Circuit has "cautioned against a raw counting of the factors that weighs each the same." Clarke, 94 F.4th at 509 (quoting TikTok, 85 F.4th at 358) (cleaned up). When the moving party fails to make a clear demonstration on a factor, the district court "cannot weigh [that] factor against the non-movant and in favor of transfer." Id. (quoting Def. Distributed, 30 F.4th at 434).

1.  Private-Interest Factors

The private-interest factors are: "(1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses, (3) the cost of attendance for willing witnesses; and (4) all other practical problems that make trial of a case easy, expeditious and inexpensive." In re Volkswagen of Am., Inc., 545 F.3d 304, 315 (5th Cir. 2008) (en banc) ("Volkswagen II")) (cleaned up).

25

i.    Relative Ease of Access to Sources of Proof

"The first factor focuses on the location of documents and physical evidence relating to the case." TikTok, 85 F.4th at 358 (quoting Volkswagen II, 545 F.3d at 316) (internal quotation marks omitted).  "The question is relative ease of access, not absolute ease of access." In re Radmax, Ltd., 720 F.3d 285, 288 (5th Cir. 2013) (per curiam).  If the current district does not have evidence relating to a case, this factor favors transfer.  TikTok, 85 F.4th at 358 (citing Volkswagen II, 545 F.3d at 316).  The availability of evidence electronically minimizes the weight of this factor on the transfer analysis.  Id. at 358–59 (citing In re Planned Parenthood Fed'n Am., Inc., 52 F.4th 625, 630 (5th Cir. 2022)).

In this case, both IBEW and A.S.H. claim the first factor in their favor because each maintains its own electronic and physical files in Austin and San Angelo, respectively.  IBEW asserts that "the CBA, the Letter of Assent, the correspondence between the parties concerning their bargaining relationship, and the interest arbitration award" all are maintained in its official records in Austin.  (Dkt. # 17 at 2–3.)  A.S.H. asserts that the CBA and Letter of Assent are maintained at its place of business in Austin.  (Dkt. # 16 at 7.)

From the outset, it appears that much of the written evidence is available electronically.  For example, IBEW attached the correspondence sent and received from its offices to its response to A.S.H.'s motion to transfer.  (See Dkt.

26

# 17-3.)  IBEW admits that the CBA, Letter of Assent, correspondence, and interest arbitration award "*have all been produced electronically in this litigation*[9] and are readily available to use in Austin."  (Dkt. # 17 at 3 (emphasis added).)  Because both IBEW and A.S.H. claim much of the same documentation exists at their respective offices, and this documentation has already been produced in electronic form in litigation, this factor appears to carry less weight given the relative ease of access to key written proof.  See TikTok, 85 F.4th at 358–59; see also Fed. R. Evid. 1003 ("A duplicate is admissible to the same extent as the original unless a genuine question is raised about the original's authenticity or the circumstances make it unfair to admit the duplicate.").

A.S.H. further relies on the facts that (1) A.S.H. maintains its bargaining unit employee files in San Angelo, and (2) IBEW's office in San Angelo also "likely" contains physical evidence.  (Dkt. # 16 at 7; Dkt. # 18 at 2.)  However, A.S.H. does not explain what this hypothetical evidence could be or what relevance they would have to the litigation at hand—IBEW's suit to confirm the New CBA.  Neither has A.S.H. alleged how transfer to the Northern District would reduce the burden of production on either party to this litigation.  See Healthpoint, Ltd. v. Derma Scis., Inc., 939 F. Supp. 2d 680, 688–89 (W.D. Tex.

---

[9] Again, neither the Prior CBA nor the interest arbitration award are before this Court for review.

2013) (citing Symbol Tech., Inc. v. Metrologic Instruments, Inc., 450 F. Supp. 2d 676, 678 (E.D. Tex. 2006)) (finding this factor neutral when movant failed to explain how transfer would make production easier for the parties and when any relevant documents were likely to be produced electronically). The Court certainly could speculate as to why these documents may be relevant but would have to do so only because A.S.H. has not met its burden of demonstrating why this factor clearly favors transfer.

Accordingly, the relative ease of access to sources of proof is neutral.

### ii. Availability of Compulsory Process to Secure Witness Attendance

"The second factor focuses on the availability of compulsory process to secure the attendance of witnesses." TikTok, 85 F.4th at 360 (quoting Volkswagen II, 545 F.3d at 315) (internal quotation marks omitted). This factor favors transfer when the current district does not have subpoena power over *non-party* witnesses but the proposed venue does "enjoy absolute subpoena power for both depositions and trial." Id. (quoting Volkswagen II, 545 F.3d at 316) (emphasis added). "[T]he availability of compulsory process receives less weight when it has not been alleged or shown that any witness would be unwilling to testify." Id. (quoting Planned Parenthood, 52 F.4th at 630–31 (internal quotation marks omitted)).

28

For its part, IBEW claims that neither party intends to rely on the testimony of any non-party witnesses.  (Dkt. # 17 at 3.)  A.S.H. disagrees.  It argues that "most of the key witnesses are . . . likely not located within the subpoena power of this Court in the Austin Division."  (Dkt. # 16 at 8.)  In addition to the two non-party witnesses identified in the motion to transfer, A.S.H. further points to its current and former employees hired under the Prior CBA.  (Dkts. ## 18 at 2; 18-1.)  A.S.H. also identifies Diarmid Campbell, a field organizer in San Angelo who A.S.H. asserts was their primary union contact, and Scott Hopkins, a NECA representative who apparently resides in Oklahoma.  (See Dkt. # 18 at 1, 3; 18-2 at 2.)  Although the transferee venue likely would not have subpoena power over Mr. Hopkins, Fed. R. Civ. P. 45(c)(1)(A)–(B), the fact that potential non-party witnesses exist in San Angelo coupled with the fact that IBEW has identified no non-party witnesses in the Western District would appear to give this factor at least some weight.

However, A.S.H. does not allege that any of these witnesses will be unwilling to testify in this proceeding.  "A party need not comply with Rule 45 and issue a subpoena if a non-party will consent to having his deposition taken by notice alone."  Morawski v. Farmers Tex. Cty. Mut. Ins. Co., No. 3:14–mc–21–D–BN, 2014 WL 717170, at *1 (N.D. Tex. Feb. 25, 2014).  Moreover, except for Mr. Hopkins, all of the non-party witnesses identified by the parties appear to reside or

29

work in Texas.  This means these witnesses *may* be compelled by subpoena as long as they would not incur substantial expense.  See Fed. R. Civ. P. 45(c)(1) ("A subpoena may command a person to attend a trial, hearing, or deposition . . . (B) within the state where the person resides, is employed, or regularly transacts business in person, if the person . . . (ii) is commanded to attend a trial and would not incur substantial expense.").  While A.S.H. makes the conclusory statement that every witness by nature of travel from San Angelo to Austin *would* incur such a substantial expense, courts have found similar or even greater burdens insubstantial.  See, e.g., Blanton v. Arrow Ford, Inc., No. 3:21-CV-00152-L, 2023 WL 4982258, at *3 (N.D. Tex. Aug. 3, 2023) (finding compulsory attendance would not incur substantial expense for travel between Abilene and Dallas, a distance of approximately 180 miles);  Ramirez v. Plains All Am. GP, LLC, No. PE:21-CV-00070-DC-DF, 2022 WL 607879, at *5 (W.D. Tex. Mar. 1, 2022) ("Defendant has furthermore not established that any of these witnesses would incur 'substantial expense' if compelled to make the intrastate round-trip to Pecos from Clyde or Natural Bridge Caverns, and therefore, the Court presumably possesses subpoena power over any such unwilling witnesses.").  Moreover, as the notes to Rule 45 indicate, the parties can secure compliance with such subpoenas by paying for the associated expenses.  Fed. R. Civ. P. 45, advisory committee's note to 2013 amendment ("When travel over 100 miles could impose substantial

expense on the witness, the party that served the subpoena may pay that expense and the court can condition enforcement of the subpoena on such payment.").

Simply put, the Court is not quite convinced that any issues involving compelled attendance will "actually materialize" in the transferee district. See Clarke, 94 F.4th 502 at 508. Given A.S.H.'s failure to plead that the witnesses will be uncooperative, the Court finds this factor is neutral but leaning toward transfer given the overall presence of the non-party witnesses in the transferee district.

iii.    Cost of Attendance for Willing Witnesses

Testifying imposes external costs on witnesses, even those willing to testify. "It is more convenient for witnesses to testify at home…." TikTok, 85 F.4th at 361. "[A]dditional distance means additional travel time ... meal and lodging expenses," additional time "witnesses must be away from their regular employment," and increased "personal costs associated with being away from work, family, and community." Id. This factor "attempts to internalize and minimize" these costs by "favoring the venue that is more convenient from the perspective of willing witnesses." Clarke, 94 F.4th at 514 (citing TikTok, 85 F.4th at 361; Volkswagen II, 545 F.3d at 317). Moreover, the Fifth Circuit has adopted distance as the metric for convenience. Id. The factor of inconvenience "positively and linearly scales" with the distance over 100 miles witnesses must travel to testify. Id. (citing TikTok, 85 F.4th at 361–62 & nn.8–9). This Court

31

notes that the distance between the Western District of Texas, Austin Division, and the Northern District of Texas, San Angelo Division, is approximately 200 miles.

The convenience of witnesses is arguably the most important factor in the court's consideration of a motion to transfer. Dupre v. Spanier Marine Corp., 810 F. Supp. 823, 825 (S.D. Tex. 1993). Specifically, the courts' focus under this factor is on the convenience of *key*, *non-party* witnesses. Timberlake v. Synthes Spine Co., L.P., No. CIV.A. V-08-4, 2008 WL 1836676, at *3 (S.D. Tex. Apr. 23, 2008) (citing Dupre, 810 F. Supp. at 825). The party moving for transfer "must clearly specify the key witnesses to be called and must make a general statement of what their testimony will cover." Cont'l Airlines, Inc. v. Am. Airlines, Inc., 805 F. Supp. 1392, 1396 (S.D. Tex. 1992); see also RLI Ins. Co. v. Caliente Oil, Inc., No. MO:17-CV-00183-DC, 2018 WL 11272846, at *7 (W.D. Tex. Aug. 21, 2018) (citing Mohamed v. Mazda Motor Corp., 90 F. Supp. 2d 757, 775 (E.D. Tex. 2000)) ("In a § 1404 motion to transfer, the movant must make more than a general allegation that the key witnesses are inconveniently located; the movant must specifically identify key witnesses and outline the substance of their testimony.").

Here, IBEW asserts that they only require the attendance of two IBEW employee witnesses for testimony. (Dkt. # 17 at 3.) A.S.H., on the other hand, identifies several party and nonparty witnesses who reside in the San Angelo area, including A.S.H.'s two owners, field organizer Campbell, A.S.H.'s two

32

current union employees, and several former union employees. (See Dkts. ## 16 at 2; 18 at 2; 18-1.) A.S.H. also identifies Mr. Hopkins, who works in Oklahoma. (Dkt. # 18 at 3.) Although A.S.H.'s purported witness list consists of several inconveniently located witnesses, A.S.H. has not clearly demonstrated what testimony it seeks to elicit from those witnesses, as is its burden under a motion to transfer. See Cont'l Airlines, Inc., 805 F. Supp. at 1396. Furthermore, A.S.H.'s current union workers and "key witness" Campbell are employees of named parties, making their convenience entitled to less weight. See id. at 1397.

Admittedly, A.S.H. does identify several former employees who were hired under the Prior CBA. (See Dkt. # 18 at 2 ("If necessary, the Court could subpoena those former employee witnesses regarding the work they performed for Defendant under the terms of the prior collective bargaining agreement."); Dkt. # 18-1 at 1.) But A.S.H.'s motion to transfer and reply do not indicate what, if any, evidentiary support the testimony of either the former or current employee witnesses would contribute to the actual case at hand. As IBEW states, this case remains at its core an action to have this Court confirm—or invalidate—an interest arbitration award. And A.S.H. has given the Court no reason to believe the testimony of former employees would be key to that determination.[10] See

---

[10] "[J]udicial review of an arbitration award arising from the terms of a CBA is narrowly limited." Albemarle Corp. v. United Steel Workers ex rel. AOWU Local 103, 703 F.3d 821, 824 (5th Cir. 2013) (citation and internal quotation marks

Healthpoint, 939 F. Supp. 2d at 689.  As a result, the Court is not convinced that any convenience to A.S.H.'s proposed employee witnesses will actually materialize in the transferee district.

The Court does not doubt that Mr. Campbell could be an important witness to this case.[11]  But while the presence of one *key* witness in San Angelo might tilt this factor in A.S.H.'s favor, it doesn't tilt it by much.  Accordingly, this factor favors transfer, but not strongly.

---

omitted).  "Courts are not authorized to review the arbitrator's decision on the merits despite allegations that the decision rests on factual errors or misinterprets the parties' agreement."  Major League Baseball Players Ass'n v. Garvey, 532 U.S. 504, 509 (2001).  Although the arbitrator "is confined to interpretation and application of the collective bargaining agreement" and cannot "dispense his own brand of industrial justice," courts should not overrule the arbitrator simply because they disagree with his interpretation.  Int'l Chem. Workers Union v. Columbian Chemicals Co., 331 F.3d 491, 495 (5th Cir. 2003) (quoting United Steelworkers of Am. v. Enter. Wheel & Car Corp., 363 U.S. 593, 597, 599 (1960)).  Accordingly, absent a determination that the arbitrator exceeded his authority in making the award, a court has no authority to question the merits of that award.  Id. (citing Weber Aircraft Inc. v. Gen. Warehousemen & Helpers Union Local 767, 253 F.3d 821, 824 (5th Cir. 2001)).

[11] Hopkins, too may be a key witness to this case.  (See Dkt. # 18-2 at 2 (identifying Mr. Hopkins as the "employer liaison" for proceedings of the CIR).) However, despite A.S.H.'s assertion that Oklahoma is closer to San Angelo to Austin, the Court believes there is no meaningful distinction.  On balance, Mr. Hopkins would be just as inconvenienced by traveling from Oklahoma to San Angelo as he would be from Oklahoma to Austin.

iv.    All Other Practical Problems

"The fourth factor considers all other practical problems that make trial of a case easy, expeditious and inexpensive." TikTok, 85 F.4th at 362 (quoting Volkswagen II, 545 F.3d at 315) (internal quotation marks omitted).  A court should not consider "garden-variety delay associated with transfer." Radmax, 720 F.3d at 289.  But if petitioners "inexcusably delayed" bringing their motion until "late in the litigation," this factor weighs against transfer.  TikTok, 85 F.4th at 362 (quoting Planned Parenthood, 52 F.4th at 631).

Here, A.S.H.'s motion was timely and would not result in unreasonable delay in the litigation.  But A.S.H. simply reiterates its prior arguments on nonparty witnesses and travel expenses in support of this factor. (Dkts. ## 16 at 8; 18 at 3.)  Accordingly, A.S.H. has not clearly shown this factor weighs in favor of transfer.

This factor is neutral.

2. Public-Interest Factors

The public interest factors are: "(5) the administrative difficulties flowing from court congestion; (6) the local interest in having localized interests decided at home; (7) the familiarity of the forum with the law that will govern the case; and (8) the avoidance of unnecessary problems of conflict of laws … [or] the

35

application of foreign law." <u>Clarke</u>, 94 F.4th at 509 (quoting <u>TikTok</u>, 85 F.4th at 358).

#### i.      Court Congestion

A Section 104(1) transfer cannot be granted solely based on court congestion.  <u>Clarke</u>, 94 F.4th at 515.  A court's assessment of another's docket is inherently speculative and to transfer for this sole reason "ignores the plaintiffs' role as master of the complaint."  <u>Id.</u>; <u>see</u> <u>also</u> <u>Planned Parenthood</u>, 52 F.4th at 631 (acknowledging holdings characterizing court congestion as a speculative factor). "[M]easuring [docket] congestion is easier said than done."  <u>Clarke</u>, 94 F.4th at 515.  While the transferor court may be able to estimate the efficiency of its own docket, its assessment of a transferee's docket is "at its core… an uninformed guess."  <u>Id.</u> at 17–18.

The Court declines to speculate about the docket of the Northern District of Texas compared to its own docket.  Furthermore, A.S.H. concedes on this point.  This factor is neutral.

#### ii.      Local Interests

The local interests factor considers "the local interest in having localized interests decided at home."  <u>Volkswagen II</u>, 545 F.3d at 315.  A court looks to "the significant connections between a particular venue and the events that gave rise to a suit," not to "the parties' [] connections to each forum."  <u>TikTok</u>, 85

36

F.4th at 364 (quoting Def. Distrib., 30 F.4th at 435 (internal quotation marks omitted)).  Put simply, "[w]e focus on the *events*—not the *parties*." Clarke, 94 F.4th at 511 (emphasis in original).  "Localized interests are present when the citizens of the forum have a sufficient interest in the controversy to justify burdening them with jury duty."  In re Chamber of Commerce of the United States, 105 F.4th 297, 308 (5th Cir. 2024) (quotation omitted).  However, not all cases are "localized"; many cases involve disputes in which a forum resident would have no more stake than any other Texan.  Id.

"[T]he place of the alleged wrong is one of the most important factors in venue determinations." TikTok, 85 F.4th at 364 (quoting Def. Distrib., 30 F.4th at 435.)  "[T]his factor weighs heavily in favor of transfer [when] ... there is no relevant factual connection to the [transferor district]."  Volkswagen, 545 F.3d at 317–18.  And this factor weighs against transfer when the "citizens of [the transferor district] have a greater stake in the litigation than the citizens of [the transferee district]."  TikTok, 85 F.4th at 364 (quoting Planned Parenthood, 52 F.4th at 632)).

When weighing the local-interest factor, a court should consider the "events that gave rise to the suit" and "the interest of non-party citizens in adjudicating the case."  Clarke, 94 F.4th at 511 (quoting TikTok, 85 F.4th at 364 (cleaned up)).  And again, transfer is decided "based on the situation which existed

37

when the suit was instituted."  In re EMC, 501 F. App'x at 975–76 (quotation omitted).  A court may consider "the location of the injury, witnesses, and the [p]laintiff's residence," but these proxies for local interests "can never subsume the ultimate inquiry."  Id. (quoting Def. Distributed, 30 F.4th at 435).

Here, A.S.H. asserts that "the non-party citizens of San Angelo have an interest in seeing Defendant's business succeed, both for the sake of Defendant and other local businesses and for the individuals [A.S.H.] employs."  (Dkt. # 18 at 3.)  This generic statement fails to clearly demonstrate how the events underlying IBEW's cause of action—A.S.H.'s refusal to sign, implement, and be bound by the New CBA—are related to the success of A.S.H.'s business and employees.  IBEW could just as easily claim that the citizens of the Western District have just as much a stake in the continued success of Local 520 in hiring local electrical workers.  In fact, IBEW asserts an even stronger claim of interest given its consistent allegations that the alleged harm is occurring in the Western District due to A.S.H.'s refusal to be bound by the New CBA.  (See Dkts. ## 1 at 5; 17 at 4.)

Accordingly, this factor is neutral but weighing against transfer based on IBEW's claim of injury in the Western District.

### iii.       Familiarity with Governing Law

A court also considers its "familiarity with the law that will govern the case." Volkswagen, 545 F.3d at 315. Familiarity with governing law weighs most heavily when "the [transferee] venue is in a different State [than the transferor court]—in which case that State's familiarity with the applicable law would be especially probative to the transfer analysis." Planned Parenthood, 52 F.4th at 632 n.5. For this factor, a district court examines the law it will have to apply in the case, including whether it "would be bound to [the transferee court's] law concerning such claims." Def. Distrib., 30 F.4th at 436. "This factor does not weigh in favor of transfer when both districts are 'equally capable of applying the relevant law.'" Tiktok, 85 F.4th at 365 (quoting Radmax, 720 F.3d at 289.))

Here, familiarity with governing law is not in dispute. Each District is equally capable of applying the appropriate law. This factor is neutral.

### iv.       Avoiding Conflict of Law and Foreign Law Problems

The final public interest factor "seeks to avoid 'unnecessary problems of conflict of laws or in the application of foreign law.'" Def. Distributed, 30 F.4th at 436 (quoting Volkswagen II, 545 F.3d at 315). A transfer to the Northern District of Texas would not resolve any problems with the application of foreign law or avoid an issue with conflict of laws. Savage, 2023 WL 3981266, at *4. Once more, this factor is neutral.

v.       The Factors Weigh Against Transfer to the Northern District of Texas, San Angelo Division.

No single factor is dispositive, and the Court does not count the factors so that each weighs the same.  Clarke, 94 F.4th 502 at 509.  To establish good cause and justify a transfer, the moving party must show "(1) that the marginal gain in convenience will be *significant*, and (2) that its evidence makes it plainly obvious . . . that those marginal gains will *actually* materialize in the transferee venue."  Clarke, 94 F.4th at 508 (emphasis in original).

The Court finds that A.S.H. has failed to clearly show that a transfer to Northern District of Texas, San Angelo Division, will realize a gain in convenience.  The Court is not persuaded that any gains in decreased costs of witness attendance or access to physical evidence will actually materialize in the Northern District.  A.S.H. has not demonstrated the existence of more than one key, non-party witness in San Angelo.  Nor has A.S.H. clearly identified the physical evidence located in San Angelo that would be burdensome in production or that has not yet been produced electronically in this litigation.  The parties are split evenly between the two forums, and although there are more non-party witnesses in San Angelo than there are in Austin, the key non-party witnesses are current employees of the respective parties.  Moreover, A.S.H. has not alleged any non-party's unwillingness to attend the proceedings.  Each community is equally impacted, perhaps the Western District more so.  While this suit could have

properly been brought in San Angelo, and it may be slightly more convenient overall for several of the witnesses should this case proceed there, A.S.H. has failed to clearly demonstrate that the private and public factors strongly favor this case being litigated in the Northern District of Texas.  See Houston Trial Reports, 85 F. Supp. 2d at 667–68.  The Court finds the weight of the factors does not support transfer, and IBEW's choice of forum will not be disturbed.

CONCLUSION

For these reasons, the Court **DENIES** Defendant's Motion to Transfer. (Dkt. # 16.)

**IT IS SO ORDERED.**

**SIGNED**: Austin, Texas, April 20, 2026.

_____

David Alan Ezra
Senior United States District Judge