**IN THE UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF TEXAS, AUSTIN DIVISION**

| | | |
|---|---|---|
| **INTERNATIONAL BROTHERHOOD OF** | § | |
| **ELECTRICAL WORKERS, LOCAL 520,** | § | |
|     **Plaintiff,** | § | |
| | § | |
| **v.** | § | **CIVIL ACTION NO. 1:25-cv-1643** |
| | § | |
| **A.S.H. ELECTRICAL SERVICES, LLC,** | § | |
|     **Defendant.** | § | |

**PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**

TO THE HONORABLE COURT:

Comes now Plaintiff, International Brotherhood of Electrical Workers ("IBEW"), Local

520, and files this Motion for Summary Judgment under FED. R. CIV. P. 56, seeking judgment as

a matter of law on all claims in the lawsuit.

## I.     INTRODUCTION

This is a lawsuit to confirm and enforce a May 13, 2025 interest arbitration award, which

included a new collective bargaining agreement ("CBA") issued by the Council on Industrial

Relations for the Electrical Contracting Industry ("CIR"), an arbitration body co-sponsored by the

National Electrical Contractors Association ("NECA") and the IBEW whose purpose is arbitrating

labor disputes within the electrical industry. Defendant has raised various shifting justifications

for its refusal to execute and implement the CBA, all of which lack merit.

## II.     FACTUAL BACKGROUND

On May 13, 2021, Defendant signed a Letter of Assent assigning its collective bargaining

rights to the Central Texas Chapter of NECA as Defendant's representative and agreeing to be

bound by the current and any subsequent approved Inside Agreement between NECA and Local

520. *Exhibit 1*, *Letter of Assent*. Under the Letter of Assent, Defendant became bound to an Inside

Agreement ("the Prior CBA") that remained effective until June 1, 2025, and continued in effect from year to year thereafter from June 1 through May 31 of each year, unless changed or terminated as provided for in other sections of the Agreement. *Exhibit 2*, *Prior CBA*.

Section 1.02(d) of the Prior CBA provided,

> Unresolved issues or disputes arising out of a failure to negotiate a renewal or modification of this agreement that remain on the 20th of the month preceding the next regular meeting of the Council on Industrial Relations for the Electrical Contracting Industry (CIR) may be submitted jointly or unilaterally to the Council for adjudication. Such unresolved issues or disputes shall be submitted no later than the next regular meeting of the Council following the expiration date of this agreement or any subsequent anniversary date. The Council's decisions shall be final and binding.

*Ex. 2*, at Section 1.02.

On May 30, 2023, Defendant purported to revoke the Letter of Assent previously given to NECA. *Exhibit 3*, *May 30, 2023 letter*. On December 27, 2023, Defendant's lawyer sent a letter stating that "A.S.H. considers its contractual relationship with IBEW to be terminated as of November 1, 2023." *Exhibit 4*, *December 27, 2023 letter*. Local 520 informed Defendant that a mid-term termination of the Letter of Assent and the Prior CBA is not permissible. *Exhibit 5*, *January 22, 2024 letter*. Local 520 did, however, accept the premature notices as sufficient to terminate the Letter of Assent upon its anniversary date and as notice of Defendant's desire to terminate the CBA at its expiration date. *Ex. 5.*

On February 3, 2025, Local 520 notified Defendant by letter of Local 520's desire to modify the CBA between the parties. *Exhibit 6*, *February 3, 2025 letter*. The parties met to bargain several times in March and April 2025, but no agreement on a successor to the still effective Prior CBA was reached. *Exhibit 7*, *Local 520 Brief to CIR*.

In 2025, the CIR scheduled regular meetings in February, May, August and November. *See* DEMYSTIFYING CIR, NECA (2025), *available at https://www.necaconvention.org/wp-*

*content/uploads/2025/09/NECA-2025_Convention-Ed_Demystifying-CIR-Andrews-Ian_Krieg-Steve_Woodard-David_Bell-Larry.pdf*. The August and November regular meetings post-dated the Prior CBA's June 1, 2025 expiration date. By April 2025, the CIR's May 2025 regular meeting was the only regular meeting scheduled to occur before that expiration date.

On April 16, 2025, under Prior CBA Section 1.02(d), to timely provide notice in advance of the Prior CBA's expiration date, and to ensure preservation during the Prior CBA's term of Local 520's rights under that section, Local 520 advised Defendant of its wish to submit to the CIR, for adjudication during the CIR's May 2025 regular meeting, unresolved issues that remained between the parties as of April 20, 2025, and that may continue to be unresolved in bargaining conducted after April 20, 2025. *Exhibit 8*, *April 16, 2025 e-mail*. Local 520 invited Defendant to join in the submission to the CIR. Defendant did not respond to the invitation, so on April 17, 2025, Local 520 unilaterally submitted the bargaining dispute to the CIR for adjudication under Section 1.02(d) of the Prior CBA. *Ex. 7*, at 2; *Ex. 8*.

On May 1, 2025, the due date for submissions to CIR for adjudication during its May 2025 session, Local 520 presented its submission to the CIR, which included its proposed changes to the CBA. *Exhibit 9*, *May 1, 2025 e-mail*. The bargaining dispute was presented to the CIR at its May 13, 2025 meeting. *Exhibit 10*, *CIR decision*. Defendant participated by brief only, and Local 520 participated by brief and oral argument by Business Manager Ben Brenneman and Assistant Business Manager Diarmid Campbell during interest arbitration proceedings before the CIR. *Ex. 10.*

The CIR's decision and award, dated May 13, 2025, in which the CIR noted its "careful consideration of the evidence submitted," ordered Local 520 and Defendant to sign and immediately implement the June 2, 2025 to June 4, 2028 collective bargaining agreement ("the

New CBA") attached to and made a part of the CIR's decision and award. *Ex. 10.* The CIR's decision and award addressed all the unresolved issues and disputes between the parties in the included New CBA. *Ex. 10.*

On May 23, 2025, Defendant requested that the CIR reconsider its decision based on Defendant's claim that "a just and reasonable weighing of evidence presented did not occur." *Exhibit 11*, *May 23, 2025 e-mail*. The CIR responded by letter on June 10, 2025, stating, "The CIR fully considered the issues you have raised in your request for reconsideration. There is no basis for the CIR to reconsider its decision, which is final and binding on the parties." *Exhibit 12*, *June 10, 2025 letter.*

At all times since receiving the New CBA, Defendant has failed and refused to sign, implement, and be bound by the New CBA. Defendant continues to refuse to sign, implement, and be bound by the New CBA imposed upon it through interest arbitration before the CIR. *Def's Answer*, ¶15. Plaintiff filed this suit to enforce the CIR award.

### III.    ARGUMENTS & AUTHORITIES

**A.    Clearly established precedent based on similar contract language supports enforcement.**

Several circuit courts have addressed the issue of enforcement of interest arbitration awards under circumstances like those presented here, and they have uniformly ruled in favor of enforcing the awards. Perhaps most importantly, the Fourth Circuit, in *IBEW Local Union No. 666 v. Stokes Electrical Service, Inc.*, 225 F. 3d 415 (4th Cir. 2000), enforced an award based on contractual language nearly identical to that found in this case. In *Stokes*, IBEW Local 666 brought suit under 29 U.S.C. § 185 to enforce two interest arbitration awards that directed the employer to implement new labor contracts. The contractor had signed "'letters of assent' authorizing the Virginia Chapter of NECA to act as its representative for collective bargaining with Local 666." *Id.* at 419. In signing

the Letters of Assent, the contractor became bound to Collective Bargaining Agreements between the Virginia Chapter of NECA and Local 666. *Id.*

The CBAs contained a Section 1.02(d), the interest arbitration clause, with nearly identical language to the contract at issue in this case, providing that any unresolved issues in negotiations may be submitted jointly or unilaterally to the CIR for adjudication. *Id.*

After operating for several years under the terms of the Letters of Assent and CBAs, the contractor withdrew from NECA and revoked the authority of NECA's Virginia Chapter to act as its bargaining agent. *Id.* at 419–20. The contractor also wrote to IBEW Local 666 serving notice that the company intended to terminate the 1992–94 Agreements upon their expiration on August 31, 1994. *Id.* at 420. In response, the union informed the contractor that the union wished to negotiate new agreements in accordance with the terms of the 1992–94 Agreements. *Id.*

Being unable to come to a resolution on a future agreement, the union invited the contractor to submit the unresolved issues to the CIR for interest arbitration pursuant to Section 1.02(d) of the CBAs. *Id.* The employer responded that while it intended to comply with the current Collective Bargaining Agreement until its expiration, "absent a statutory duty to bargain with the union, Stokes Electrical Service has no duty to negotiate successor agreements." *Id.* The union then unilaterally submitted the unresolved issues to the CIR for adjudication, and the CIR issued two awards directing the parties to sign and implement new labor agreements. *Id.* The employer neither signed nor complied with the new agreements. *Id.* The union then brought suit to enforce the award. *Id.* at 421.

Under these circumstances, which are on all fours with the case before the Court, the Fourth Circuit ruled that the employer was bound by the interest arbitration clause in the 1992–94 Agreements and that the CIR's arbitration award implementing the new agreements must be

enforced. *Id.* In doing so, the Court rejected some of the same arguments that are put forth by the employer in this case.

The employer in *Stokes* first argued that the interest arbitration provisions did not apply because notice of the "desire to terminate" had been given. *Id.* The Court rejected this argument based on an analysis of the straightforward reading of the contract language, finding that "an unresolved issue over the desire to terminate the Agreements may be submitted to the CIR for adjudication." *Id.* The version of Section 1.02(d) at issue in *Stokes* provided that "[u]nresolved issues in negotiations . . . be submitted jointly or unilaterally by the parties [to the CIR] for adjudication." *Id.* Noting that "a desire to terminate [the agreement] shall be handled in the same manner as a proposed change," pursuant to Section 1.02(f) of the agreements, the Court found that the unresolved issues are "subject to interest arbitration, at least insofar as the plain language of the Agreements is concerned." *Id.* As a result, "Stokes' notice of a 'desire to terminate' the Agreements did not relieve it of its contractual duty to submit to interest arbitration for successor agreements." *Id.*

It is the contractual obligation Defendant voluntarily undertook in this case that is the foundation for the CIR award. By virtue of the clear language of the agreement the parties entered into, the interest arbitration award is enforceable.

The Fifth Circuit analyzes these issues the same way. In *Sheet Metal Workers Local 54 v. E.F. Etie Sheet Metal Co.*, 1 F.3d 1464 (5th Cir. 1993), the Court enforced an interest arbitration award in substantial part. The Fifth Circuit held that the contractor's letter "retracting its assignment of bargaining authority to the association and expressing a desire to terminate its contract with Local 54 'at the earliest possible time'" did not constitute a repudiation of the CBA. *Id.* at 1472. The Court ruled that the contractor was bound to engage in interest arbitration despite

its withdrawal from the multi-employer organization, noting that an "employer continues to be subject to an interest arbitration clause in its individual negotiations after withdrawing from an employer's association if it is 'arguably' bound by the clause." *Id.* at 1473. The Fifth Circuit rejected the contractor's argument "that the award is void as an imposition against its will of a prehire agreement," noting that the contractor was "already in a voluntary 8(f) relationship at the time of the" interest arbitration award, and holding that the contractor's "failure to repudiate the contract, coupled with the wording of the interest arbitration clause, subjected it to" interest arbitration. *Id.* at 1476.

Other courts considering this issue have come to the same conclusion. In *Sheet Metal Workers Local Union 20 v. Baylor Heating & Air Conditioning, Inc.*, 877 F.2d 547 (7th Cir.1989), the union sought to invoke the jurisdiction of the district court under 29 U.S.C. § 185 to enforce an interest arbitration award against the company. In that case, the employer was not a member of the multi-employer Sheet Metal Contractors Association of Evansville, Inc., but like the employer in this case, voluntarily agreed to be bound by the terms of the CBA between the union and the multi-employer organization. *Id.* at 549. Toward the end of the term of the agreement covered by the letter of assent, the company advised the union that it did not intend to sign a new agreement and refused to negotiate with the union. *Id.* The union invoked the procedures implementing the interest arbitration clause in the underlying agreement, even though the term of the agreement had expired. *Id.* The company refused to participate, taking the position that the arbitration board had no jurisdiction. *Id.* The arbitration board decided in favor of the union, enforced the arbitration clause, and ordered the company to execute the new agreement. *Id.*

Despite the fact that the employer was not a member of the Association, despite the fact that the term of the letter of assent had expired, and despite the fact that the company had given

unmistakable evidence of the intent not to enter into a new agreement, the district court enforced the Collective Bargaining Agreement in favor of the union, and the Seventh Circuit upheld the District Court. The court found that the "Company's actions come within the scope of the broad interest arbitration clause that 'clearly and unmistakably' evidences the parties' intent to arbitrate." *Id.* at 551. The court, like the court in *Stokes*, highlighted the distinction between the statutory duty to bargain and the contractual duty to bargain, and upheld the notion that "the Company's contractual duties were more exacting than its statutory duties." *Id.* at 549.

In *Sheet Metal Workers International Association Local 206 v. R.K. Burner Sheet Metal, Inc.*, 859 F.2d 758 (9th Cir. 1988), the Ninth Circuit reached the same result. In that case, the company appealed an interest arbitration award, arguing that because it was free to unilaterally terminate a Section 8(f) pre-hire agreement[1] upon its expiration under the National Labor Relations Act, there could be no enforceable agreement to arbitrate. *Id.* at 761–62. The court explicitly "rejected the argument that contractual interest arbitration obligations are canceled by the absence of a statutory duty to bargain." *Id.* at 762. Again in this case, the arbitration award was enforced.

The Sixth Circuit reached the same result in two separate cases, finding that interest arbitration clauses in Section 8(f) agreements survive the expiration and even repudiation of the agreements. S*heet Metal Workers International Association Local 24 v. Architectural Metal Works*, 2001 W.L. 818227 (6th Cir. 2001); *Sheet Metal Workers International Association Local 110 Pension Trust Fund v. Dane Sheet Metal Inc.*, 932 F.2d 578 (6th Cir. 1991).

---

[1] 29 U.S.C. § 158(f) creates a limited exception to the majority-support requirement for union representation, permitting an employer "engaged primarily in the building and construction industry" to enter into a collective bargaining agreement with a union before the employer has hired any employees and before the union has demonstrated majority support. *Jim McNeff, Inc. v. Todd*, 461 U.S. 260, 265–66 (1983). All the CBAs at issue in this case are Section 8(f) pre-hire agreements.

The Court should follow this body of precedent and find that the interest arbitration award in this case is likewise enforceable.

**B.     Defendant's shifting explanations for challenging the interest arbitration award all lack merit.**

In its live pleading (Document 6), "Defendant admits that it became bound to the then-current CBA (referred to as the 'prior CBA' by Plaintiff), which, by its terms, was effective from June 2, 2022 to June 1, 2025 unless modified or terminated." *Def's Answer*, ¶6. Defendant's counterclaim alleges that "The CIR exceeded its authority by imposing a CBA on A.S.H. after the termination of the bargaining relationship between A.S.H. and IBEW Local 520 and A.S.H.'s termination of the Central Texas Chapter of NECA's bargaining authority on its behalf" and that "The arbitration award does not draw its essence from the prior CBA, which had been terminated and which Defendant effectively repudiated." *Def's Counterclaim*, ¶¶11–12. As the Court can see, these arguments—that a cancellation of a letter of assent, a purported termination of a CBA, and the lack of a statutory duty to bargain post-expiration make an interest arbitration award unenforceable—have been uniformly rejected by the courts, as described in Section III.A of this motion, above. They should be rejected by this Court as well.

In amended interrogatory answers served late last week (*Exhibit 13*), Defendant completely changed its theory of the case. Defendant now claims,

> The CBA became effective on June 2, 2019, and remained in effect until June 1, 2022. After June 1, 2022, the CBA remained in effect from year to year thereafter, from the start of the first full pay period in June through the last full pay period starting in May of each year, unless changed or terminated as provided in the CBA. Defendant gave timely written notice of withdrawal of assent to the Section 8(f) pre-hire agreement, and termination of the CBA to the Central Texas Chapter of the National Electrical Contractors Association, Inc. ("NCEA"[sic]) and local Union No. 520 of the International Brotherhood of Electrical Workers ("IBEW") by written letter on May 30, 2023, and December 27, 2023. The next anniversary date under the CBA after these notices were received by Plaintiff was

June 1, 2024. Therefore, the last date the bargaining relationship was in effect between Plaintiff and Defendant, contractual or otherwise was May 31, 2024.

*Ex. 13*, at Amended Answer to Interrogatory 4.

Defendant's eleventh-hour amended discovery responses do not explain its new theory for why it did not become bound by the 2022–2025 CBA, as it admitted it did in its answer (¶6) and as it admitted during bargaining, *Exhibit 14*, *April 16, 2025 letter* ("We are currently in contract until June 1, 2025."). There is no viable theory.

It is undisputed that Defendant's Letter of Assent (*Exhibit 1*) was still in effect on June 1, 2022. *Def's Answer*, ¶8 ("Defendant admits that on May 30, 2023, it revoked the Letter of Assent . . . ."). It is undisputed that Defendant agreed in the Letter of Assent "to comply with, and be bound by, all of the provisions contained in said current **and subsequent approved labor agreements**" between Local 520 and NECA. *Ex. 1* (emphasis added). It is undisputed that Local 520 and NECA approved a labor agreement on June 1, 2022, that was in effect through June 1, 2025. *Ex. 2*. Under the Letter of Assent, Defendant was bound by that agreement, including its interest arbitration provision.

Defendant's new discovery responses make clear that almost all its arguments flow from its unsupported and incorrect claim that its CBA with Local 520 terminated on June 1, 2024. That is a basis for all the following claims:

- "the CIR's decision is in violation of the NLRA and is 'repugnant' to the Act." *Ex. 13*, at Answer to Interrogatory 7.

- "the CIR's decision is in violation of the LMRA." *Ex. 13*, at Answer to Interrogatory 8.

- "the CIR reached its decision in bad faith." *Ex. 13*, at Answer to Interrogatory 9.

- "the CIR's decision violates due process." *Ex. 13*, at Answer to Interrogatory 10.

- "the CIR was improperly constituted." *Ex. 13*, at Answer to Interrogatory 11.

- "the CIR's members engaged in fraud and/or corruption." *Ex. 13*, at Answer to Interrogatory 12.

- "Plaintiff disregarded arbitral procedure." *Ex. 13*, at Answer to Interrogatory 13.

These arguments all fail to the extent they all rely on the false premise that the parties' bargaining relationship ended in 2024. As Defendant has admitted in bargaining and during this litigation, and as the documents make clear, Defendant was bound to the Prior CBA and its interest arbitration provision until June 1, 2025.

**C.     The CIR award meets all the standards for confirmation and enforcement.**

The Fifth Circuit uses a three-part test to review arbitration awards in labor disputes: (1) whether there is an agreement to arbitrate that covers the parties; (2) whether the award at issue draws its "essence" from the agreement and does not exceed the scope of the issues presented to the arbitrator; and (3) whether the award at issue is not "repugnant" to the NLRA." *General Warehousemen & Helpers Local 767 v. Standard Brands*, 579 F.2d 1282, 1292 (5th Cir. 1978) (en banc).

*1.     There is an agreement to arbitrate that covers the parties.*

The Prior CBA provided,

Unresolved issues or disputes arising out of a failure to negotiate a renewal or modification of this agreement that remain on the 20th of the month preceding the next regular meeting of the Council on Industrial Relations for the Electrical Contracting Industry (CIR) may be submitted jointly or unilaterally to the Council for adjudication. Such unresolved issues or disputes shall be submitted no later than the next regular meeting of the Council following the expiration date of this agreement or any subsequent anniversary date. The Council's decisions shall be final and binding.

*Ex. 2*, at 2.

As set out in Section III.B above, Defendant has admitted that it was subject to the Prior CBA. It is undisputed that the parties failed to negotiate a renewal or modification of the Prior CBA by April 20, 2025, and that unresolved issues and disputes remained. IBEW Local 520 unilaterally submitted those issues to the CIR for adjudication before the Prior CBA's expiration. The parties agreed that CIR's decision "shall be final and binding."

### 2. *The CIR award draws its essence from the Prior CBA.*

As the Sixth Circuit has explained,

> When we decide whether an award draws its essence from the agreement, we must first assess whether the arbitrator paid heed to the "plain and unambiguous provisions" of the collective bargaining agreement. If an award "conflicts with express terms" of the agreement, "imposes additional requirements that are not expressly provided in the agreement," or "cannot be rationally derived from the terms of the agreement," we must find that it does not draw its essence from the agreement. Conversely, an award draws its essence from a collective bargaining agreement if it rationally may be inferred from the agreement.

*Local 58, IBEW v. SE Mich. Chapter, Nat. Elec. Contractors Ass'n, Inc.*, 43 F.3d 1026, 1030 (6th Cir. 1995) (internal citations omitted).

Here, the CIR's interest arbitration award complied with the plain and unambiguous provisions of the Prior CBA by adjudicating all unresolved issues and disputes. The award does not conflict with any express terms of the Prior CBA or impose additional requirements not expressly provided in it, and Defendant does not claim otherwise. *See Def's Answer and Counterclaim*. The award can be rationally derived from the terms of the Prior CBA.

### 3. *The CIR award is not repugnant to the NLRA.*

The primary inquiry under the "repugnant" prong is whether interest arbitration awards impose so-called second-generation interest arbitration clauses, which are "interest arbitration clauses [that are] included within an interest arbitration award" so that the interest arbitration process is self-perpetuating and "a party may find itself locked into having that procedure imposed

on it for as long as the bargaining relationship endures." *Mulvaney Mech., Inc. v. Sheet Metal Workers Int'l Ass'n., Loc. 38*, 288 F.3d 491, 505 (2d Cir. 2002), *vacated*, *rev'd on other grounds*, 538 U.S. 918, 123 S.Ct. 1572, 155 L.Ed.2d 308 (2003). Many courts have held that public policy prevents such clauses from being imposed. *See, e.g.*, *Loc. 58, IBEW v. SE Mich. Chapter, NECA*, 43 F.3d 1026, 1032 (6th Cir. 1995) ("[A]n arbitrator may not use an interest arbitration clause as a means of self-perpetuation, and . . . this type of 'second generation' interest arbitration clause cannot be included over another party's objection."); *Am. Metal Prods., Inc. v. Sheet Metal Workers Int'l Ass'n, Loc. Union No. 104*, 794 F.2d 1452, 1456–58 (9th Cir. 1986) (affirming district court's enforcement of CIR interest-arbitration award apart from the second-generation interest-arbitration clause); *Sheet Metal Workers' Int'l Ass'n, Loc. 14 v. Aldrich Air Conditioning, Inc.*, 717 F.2d 456, 459 (8th Cir. 1983) ("[A]n interest arbitration clause is unenforceable insofar as it applies to the inclusion of a similar clause in a new collective bargaining agreement."); *Milwaukee Newspaper & Graphic Commc'ns Union v. Newspapers, Inc.*, 586 F.2d 19, 21 (7th Cir. 1978) (affirming district court's enforcement of CIR interest-arbitration award apart from the second-generation interest-arbitration clause).

The CIR award in this case does not impose a second-generation interest arbitration clause, and Defendant does not claim that it does. *Ex. 13*, at Answer to Interrogatory 7. Instead, Defendant has raised six arguments in support of its claim that the award is repugnant to the Act.

First, Defendant argues, "The CIR decision imposes on Defendant an entirely new collective bargaining agreement with IBEW for three years after the pre-hire agreement with IBEW and NCEA [sic] and the CBA had been terminated." *Ex. 13*, at Answer to Interrogatory 7. This assertion is simply untrue. As set out above, the Prior CBA did not terminate until June 1, 2025, and the CIR decision was issued on May 13, 2025. That sequence is the big difference

between this case and *IBEW Local Union No. 898 v. XL Elec., Inc.*, 380 F.3d 868 (5th Cir. 2004), in which the Fifth Circuit affirmed the refusal to enforce a CIR interest arbitration award, writing, "Because the Agreement and by extension the arbitration provision expired before the Union submitted the renegotiation issues to arbitration, the dispute was not arbitrable." In this case, the Union submitted the issues to interest arbitration—and the interest arbitration award was issued—before the Prior CBA expired.

Defendant next urges that "Plaintiff does not represent any of the workers in the bargaining unit, and all employees oppose representation by IBEW." *Ex. 13*, at Answer to Interrogatory 7. Part of this statement is inaccurate, because Local 520 represents all covered employees by contract. *Ex. 2*; *Ex. 10*. The other part is misleading because all CBAs between the parties have been pre-hire agreements under Section 8(f) of the NLRA, which do not require a showing of majority support. 29 U.S.C. § 158(f); *Jim McNeff, Inc. v. Todd*, 461 U.S. 260, 265–66 (1983). Thus, the contention that Defendant's current covered employees have resigned their Union membership is irrelevant to this case.

Defendant's third repugnance argument is that "Plaintiff breached its contractual agreement with Plaintiff prior to Defendant giving notice of termination." *Ex. 13*, at Answer to Interrogatory 7. There is no evidence in the record of any breach of the CBA by Local 520. But if Defendant believed the contract was breached, it could have used the grievance and arbitration procedure in the CBA to resolve any such dispute. *Ex. 2*, at Sections 1.05–1.10. Defendant concedes that it failed to do so. *Ex. 13*, at Answer to Interrogatory 16. The fact that Defendant declined to use the dispute resolution mechanism in the Prior CBA does not make the interest arbitration award issued under it repugnant to the Act.

Defendant next claims, "There has been no Representation Petition filed by Plaintiff claiming that it holds majority support, and no election has been held recognizing Plaintiff as the bargaining representative for employees of Defendant. This violates both the spirit and the letter of the National Labor Relations Act." *Ex. 13*, at Answer to Interrogatory 7. Again, in an 8(f) relationship, majority support is not needed. 29 U.S.C. § 158(f); *Jim McNeff, Inc. v. Todd*, 461 U.S. 260, 265–66 (1983). And Defendant contractually agreed that it "recognizes the Union as the exclusive representative of all its employees performing work within the jurisdiction of the Union for the purpose of collective bargaining in respect to rates of pay, wages, hours of employment and other conditions of employment." *Ex. 2*, at Section 2.02. As set out above, interest arbitration awards have routinely been upheld in 8(f) relationships, even where no statutory obligation to bargain exists. This argument should be rejected.

Defendant's fifth repugnance argument states, "Furthermore, the CIR's decision lacks any reasoning to justify the imposition of a new three-year agreement after the previous contract was terminated." *Ex. 13*, at Answer to Interrogatory 7. Again, the imposition of the New CBA did not occur "after the previous contract was terminated," so the Court should reject this argument.

Finally, Defendant asserts, "There is also no justification or reasoning as to the imposition of a significantly higher wage scale than was included in the previous agreement and in other agreements which include the Zone III MOU." *Ex. 13*, at Answer to Interrogatory 7. The Prior CBA contains no requirement for the CIR to issue a lengthy written opinion that sets out the justifications for its decisions. *Ex. 2*, at Section 1.02. Instead, the Prior CBA only requires the CIR to adjudicate unresolved issues or disputes and render decisions that are "final and binding." *Ex. 2*, at Section 1.02(d). With respect to the wage scale, "The courts are not authorized to reconsider the merits of an award even though the parties may allege that the award rests on errors of fact or

on misinterpretation of the contract." *United Paperworkers Intern. Union, AFL-CIO v. Misco, Inc.*, 484 U.S. 29, 36 (1987). "The refusal of courts to review the merits of an arbitration award is the proper approach to arbitration under collective bargaining agreements. The federal policy of settling labor disputes by arbitration would be undermined if courts had the final say on the merits of the awards." *Steelworkers v. Enterprise Wheel & Car Corp.,* 363 U.S. 593, 596 (1960). As long as the arbitrator's award "draws its essence from the collective bargaining agreement," and is not merely "his own brand of industrial justice," the award is legitimate. *Id.* at 597.

Defendant's repugnance arguments should all be rejected.

**D.    Remedy.**

For all the reasons argued above, Local 520 asks the Court to confirm and enforce the CIR's interest arbitration award, relief that was granted in all the cases cited in Section III.A, above. In addition, Local 520 asks the Court to require Defendant to submit to an audit by an accountant of Local 520's choosing to determine the amounts of any unpaid compensation and/or unpaid fringe benefit contributions accrued from June 2, 2025 to the date of Defendant's full compliance with the New CBA, and to order Defendant to pay to Local 520 all accountant and attorney fees it has incurred in seeking the payment of monies identified in Section 2.02(d) of the New CBA by bringing this action to confirm and enforce the CIR's May 13, 2025 decision and award. This relief is authorized under Section 2.02(d) of the New CBA, and it is required for the Court to fully enforce the CIR's award. Other courts have ordered similar relief. *See In re Williams*, 298 F.3d 458, 460 (5th Cir. 2002) ("The IBEW then filed an action in federal district court to enforce the arbitration award. After conducting a hearing, the district court ordered the debtors to comply with the labor agreement and awarded damages to the IBEW in an amount to be determined by an audit of the debtors' books."); *IBEW, Local Union No. 545 v. Hope Elec. Corp.*,

380 F.3d 1084, 1090 (8th Cir. 2004) (noting the district court's order "that the May 18, 1999 CIR award is confirmed and that defendant is to comply with said award in all respects. It is further [o]rdered that defendant submit to an audit of its business records for the purpose of ascertaining defendant's liability arising from defendant's non-compliance with the [Second] Inside Agreement that defendant was ordered to implement in the CIR award.").

## IV.    CONCLUSION

For these reasons, Local 520 respectfully requests the Court to grant summary judgment in its favor.

*Respectfully submitted,*

DEATS DURST & OWEN, PLLC

*/s/ Matt Bachop*
Matt Bachop
TBN: 24055127
mbachop@ddollaw.com
2901 Bee Caves Rd., Ste. L
Austin, Texas 78746
(512) 474-6200
FAX (512) 474-7896

Attorney for Plaintiff

## CERTIFICATE OF SERVICE

This is to certify that a true and correct copy of the foregoing document has been served on all counsel of record by the Court's CM/ECF system on this 4th day of August, 2026.

*/s/ Matt Bachop*
Matt Bachop