IBEW
INTERNATIONAL BROTHERHOOD OF ELECTRICAL WORKERS

SEVENTH DISTRICT

KENNETH W. COOPER
International President

PAUL A. NOBLE
International Secretary-Treasurer

CHRISTIAN J. WAGNER
International Vice President, Seventh District

320 Westway Place, Suite 531 • Arlington, TX 76018 • Phone 817-557-1611 • Fax 817-557-4801 • Email: ivpd_07@ibew.org

November 25, 2025

Timothy L Watson
Regional Director
NLRB Region 16
819 Taylor St Room 8A24
Fort Worth, TX 76102-6107

**Re: Order to Show Cause in *A.S.H. Electrical Services*, 16-RD-374302**

Dear Mr. Watson,

The petition in this matter asserts that there now exists a CBA which expires on June 4, 2028. The Employer, on the other hand, denies the existence of a valid Agreement. While the Local Union agrees with the Petitioner that there exists a CBA that expires on June 4, 2028, that CBA is not one that the Board recognizes as a valid 8(f) agreement enforceable by Section 8(a)(5). Absent a valid 8(f) agreement that the Board would recognize as such, the petition in this case must be administratively dismissed.

**Facts**

On May 13, 2021 the Employer signed a Letter of Assent, assigning its bargaining rights to the Central Texas Chapter NECA, and binding itself to the then extant collective bargaining agreement and any successor agreements negotiated by NECA and IBEW Local 520. (Exhibit 1). In May 2022 IBEW Local 520 and NECA entered into a successor CBA with effective dates of June 2, 2022 and June 1, 2025. (Exhibit 2). By the terms of the May 13, 2021 Letter of Assent the 2022-2025 CBA bound the Employer.

On December 27, 2023, during the mid-term of the then extant CBA the Employer notified the Central Texas Chapter NECA and IBEW Local 520 that it was terminating both the Letter of Assent and the CBA. (Exhibit 3). See, *Rome Electrical Systems*, 349 NLRB 745 (2007), enfd. 286 Fed.Appx. 697 (11th Cir. 2008)(describing the requirement for terminating the Letter of Assent and the separate requirement to propose to terminate the CBA). After a series of letters between the Employer and the Local Union it appeared that the Employer understood that a mid-term termination of the Letter of Assent and CBA is not permissible. The Local Union did, however, accept the premature termination notices as sufficient to terminate the Letter of Assent upon its anniversary date and as notice of the Employer's desire to terminate the CBA at its expiration date. (Exhibit 4). Subsequently the Local Union timely notified the Employer of its proposal to modify the CBA by letter on February 3, 2025. (Exhibit 5).

The Local Union acknowledges that the 2022-2025 CBA was an 8(f) agreement that the Board would recognize as such and enforce via Section 8(a)(5). Thus the Employer was free

under the statute to terminate the 8(f) relationship upon expiration of the agreement. *John Deklewa & Sons*, 282 NLRB 1375 (1987), enfd. sub nom. *Iron Workers Local 3 v. NLRB*, 843 F.2d 770 (3d Cir. 1987), cert. denied 488 U.S. 889 (1988). However, though the Employer was not required by statute to bargain for a new CBA, it had agreed to do so. This agreement is found at Section 1.02 of the 2022-2025 CBA. See, *IBEW Local 716 (KST Electric, LTD)*, 16-CB-7938 (Advice Memorandum, March 23, 2010).

In accordance with Section 1.02 of the 2022-2025 CBA the Local Union and the Employer attempted to bargain a successor agreement. As the deadline to file for interest arbitration approached without the parties yet agreeing to a successor, the Local Union invited the Employer to jointly submit the case to interest arbitration. 2022-2025 CBA, Section 1.02(d). Getting no response to this request, the Union unilaterally filed an interest arbitration case on April 17, 2025. (Exhibit 6, ¶¶ 9-11).

The interest arbitration case was decided by the Council on Industrial Relations on May 13, 2025, directing the Employer to sign and immediately implement the new contract. (Exhibit 7). On May 23, 2025 the Employer petitioned CIR for reconsideration of its May 13, 2025 award. CIR denied the Employer's request on June 10, 2025. (Exhibit 8).

The Employer has refused to sign the contract imposed by the Council on Industrial Relations. In the face of that refusal, the Local Union filed suit in the United States District Court for the Western District of Texas. The Employer has responded to the Union's effort to confirm the Council on Industrial Relations' award by claiming to have repudiated the 2022-2025 CBA during its term and denying the existence of a valid contract.

**There Currently Exists No 8(f) Agreement that the Board Would Recognize or Enforce**

The Board has described collective bargaining agreements that are permitted by Section 8(f) in part as those that are enforceable through the mechanisms of Section 8(a)(5) and Section 8(b)(3). *John Deklewa & Sons*, 282 NLRB 1375, 1377 (1987)(subsequent history omitted). The Employer here has asserted that there has been no 8(f) agreement in place since as far back as May 20, 2023. (Exhibit 9). Despite the Board's holding in *Deklewa* the Employer apparently claims it has the right to, and indeed has terminated the 2022-2025 CBA during its term.

While the Local Union disputes the right of an employer to repudiate an 8(f) agreement during its term, it agrees that at the time this petition was filed, and continuing thru today, there has existed no contract that the Board would recognize as a valid, enforceable 8(f) agreement. In the absence of such agreement there can be no question concerning representation. The contract that now exists is one that was imposed through interest arbitration. Such a contract, because it is the product of a permissive subject of bargaining, is not an 8(f) agreement that the Board would enforce, but is enforceable only through a Section 301 proceeding. *Hope Electrical Corp.*, 399 NLRB 933, 933 (2003). See also, *Local Union 666 v. Stokes Electric Service, Inc.*, 225 F.3d 415, 424 (4th Cir. 2000)(contract imposed through interest arbitration is enforceable by the court though the union has lost 8(f) status).

In *A.S.H. Electrical Services, LLC*, 16-RM-362398 (April 3, 2025) the Employer had alleged that during the term of the 2022-2025 CBA the Local Union and the Employer were in a 9(a) relationship. Local Union 520 disputed that assertion at that time, alleging the relationship was instead governed by Section 8(f). Back then there did exist a valid 8(f) agreement enforceable by the Board under Sections 8(a)(5) and 8(b)(3), and had employees filed a decertification petition at that time there would have existed a question concerning representation. But the Employer jumped the gun and filed an RM petition. Because the Local Union had never claimed majority support the Regional Director administratively dismissed the RM petition for lack of a question concerning representation.

The Regional Director must again administratively dismiss this petition because absent an 8(f) agreement or a claim of majority support there is now no question concerning representation either.

**The Petition Must be Administratively Dismissed Now Rather than Stayed**

The ruling of the court will have no effect whatsoever on the fact that the contract it enforces is not one recognized by the Board as a valid enforceable 8(f) agreement. *Hope Electric*, supra. The contract at issue in *Hope* was one that had been enforced by the United States District Court for the District of Western District of Missouri. In that case the General Counsel argued that in the absence of court enforcement the Board should continue to apply *Tampa Sheet Metal Co*., 288 NLRB 322 (1988) to find that a contract which is the product of interest arbitration, a well-established permissive subject of bargaining, is unenforceable thru Sections 8(a)(5) and 8(b)(3). But, he argued, once a court enforces such a contract the Board should enforce it as well. *Hope*, supra at 938.

The *Hope* Board rejected the urging of the General Counsel to hold that there is a difference between the statutory enforceability of an interest arbitration award that has been granted court enforcement and one that has not. It held instead that a contract imposed through interest arbitration is not one that the statute empowers the Board to enforce, even though a court may enforce it as a contractual matter. Accordingly, it administratively dismissed a related decertification petition. Supra at fn. 2. This is what the law requires here—immediate administrative dismissal.

**No Question Concerning Representation Exists**

As there does not exist either a 9(a) relationship nor an 8(f) agreement that the Board would recognize or enforce, there is no question concerning representation. The Employer seems to agree that there is no enforceable 8(f) agreement. The Regional Director must administratively dismiss this petition.

Sincerely,

[signature]

**Certificate of Service**

On November 25, 2025 I e-filed this document with NLRB Region 16 and served a copy on the Petitioner and the Employer representatives listed below:

Jared Elkins: jaredelkins@gmail.com
Adam Johenke: adam@ashelectricalservices.com
Jonathan Elifson: Jonathan.elifson@jacksonlewis.com

# LETTER OF ASSENT - A

In signing this letter of assent, the undersigned firm does hereby authorize[1] Central Texas Chapter, NECA as its collective bargaining representative for all matters contained in or pertaining to the current and any subsequent approved[2] Inside labor agreement between the [1] Central Texas Chapter, NECA and Local Union[3] 520, IBEW.

In doing so, the undersigned firm agrees to comply with, and be bound by, all of the provisions contained in said current and subsequent approved labor agreements. This authorization, in compliance with the current approved labor agreement, shall become effective on the[4] 13th day of May, 2021.

It shall remain in effect until terminated by the undersigned employer giving written notice to the [1] Central Texas Chapter, NECA and to the Local Union at least one hundred fifty (150) days prior to the then current anniversary date of the applicable approved labor agreement.

The Employer agrees that if a majority of its employees authorize the Local Union to represent them in collective bargaining, the Employer will recognize the Local Union as the NLRA Section 9(a) collective bargaining agent for all employees performing electrical construction work within the jurisdiction of the Local Union on all present and future jobsites.

In accordance with Orders issued by the United States District Court for the District of Maryland on October 10, 1980, in Civil Action HM-77-1302, if the undersigned employer is not a member of the National Electrical Contractors Association, this letter of assent shall not bind the parties to any provision in the above-mentioned agreement requiring payment into the National Electrical Industry Fund, unless the above Orders of Court shall be stayed, reversed on appeal, or otherwise nullified.

SUBJECT TO THE APPROVAL OF THE INTERNATIONAL PRESIDENT, IBEW

A.S.H. Electrical Services, LLC
[5] Name of Firm

P.O. Box 61905
Street Address/P.O. Box Number

San Angelo Texas
City, State (Abbr.) Zip Code

[6] Federal Employer Identification No. 82-4418735

**APPROVED**
INTERNATIONAL OFFICE - I.B.E.W.
May 18, 2021
Lonnie R. Stephenson, Int'l President
This approval does not make the International a party to this agreement

SIGNED FOR THE EMPLOYER Adam C Johnke - Co-Owner
BY[7] Shannon J Carpenter - Co-Owner (original signature)
NAME[8] Shannon Carpenter Adam Johnke
TITLE/DATE Co-Owners 5-13-2021

SIGNED FOR THE UNION[3] 520, IBEW
BY[7] [signature] (original signature)
NAME[8] Ben Brenneman
TITLE/DATE Business Mgr./Financial Secretary

INSTRUCTIONS (All items must be completed in order for assent to be processed)

[1] NAME OF CHAPTER OR ASSOCIATION
Insert full name of NECA Chapter or Contractors Association involved.

[2] TYPE OF AGREEMENT
Insert type of agreement. Example: Inside, Outside Utility, Outside Commercial, Outside Telephone, Residential, Motor Shop, Sign, Tree Trimming, etc. The Local Union must obtain a separate assent to each agreement the employer is assenting to.

[3] LOCAL UNION
Insert Local Union Number.

[4] EFFECTIVE DATE
Insert date that the assent for this employer becomes effective. Do not use agreement date unless that is to be the effective date of this Assent.

[5] EMPLOYER'S NAME & ADDRESS
Print or type Company name & address.

[6] FEDERAL EMPLOYER IDENTIFICATION NO.
Insert the identification number which must appear on all forms filed by the employer with the Internal Revenue Service.

[7] SIGNATURES

[8] SIGNER'S NAME
Print or type the name of the person signing the Letter of Assent. International Office copy must contain actual signatures-not reproduced-of a Company representative as well as a Local Union officer.

A MINIMUM OF FIVE COPIES OF THE JOINT SIGNED ASSENTS MUST BE SENT TO THE INTERNATIONAL OFFICE FOR PROCESSING. AFTER APPROVAL, THE INTERNATIONAL OFFICE WILL RETAIN ONE COPY FOR OUR FILES, FORWARD ONE COPY TO THE IBEW DISTRICT VICE PRESIDENT AND RETURN THREE COPIES TO THE LOCAL UNION OFFICE. THE LOCALUNION SHALL RETAIN ONE COPY FOR THEIR FILES AND PROVIDE ONE COPY TO THE SIGNATORY EMPLOYER AND ONE COPY TO THE LOCAL NECA CHAPTER.

IBEW.FORM 302 REV. 9/01

# June 2, 2022 – June 1, 2025

# AGREEMENT
# Between

# The CENTRAL TEXAS CHAPTER of the NATIONAL ELECTRICAL CONTRACTORS ASSOCIATION, INC.
# and

# LOCAL UNION NO. 520 of the INTERNATIONAL BROTHERHOOD OF ELECTRICAL WORKERS
# Austin, Texas

## TABLE OF CONTENTS

Parties Clause....................1

Basic Principles....................1

Article I – *Effective Date, Changes, Grievances, Disputes* ....................1

Article II – *Employers Rights, Union Rights, Favored Nations Clause* ....................3

Article III – *Standard Inside Referral, Journeyman Wireman – Journeyman Technician*....................8

Article IV – *Hours, Wage Payment* ....................12

Article V – *General Rules*....................16

Article VI – *Standard Inside Apprenticeship Language*....................19

Article VII – *Vacation* ....................23

Article VIII – *Annuity Plan*....................23

Article IX – *401(k) Savings Plan* ....................24

Article X – *Health and Welfare* ....................24

Article XI – *National Labor Management Cooperative Committee* ....................24

Article XII – *P.A.C. Fund* ....................25

Article XIII....................26

Article XIV – *Substance Abuse Language* ....................26

Article XV – *Code of Excellence, Separability Clause* ....................26

**June 2, 2022 – June 1, 2025**
**AGREEMENT**
**Between**

**The CENTRAL TEXAS CHAPTER of the**
**NATIONAL ELECTRICAL CONTRACTORS**
**ASSOCIATION, INC.**
**and**

**LOCAL UNION NO. 520 of the**
**INTERNATIONAL BROTHERHOOD OF**
**ELECTRICAL WORKERS**
**Austin, Texas**

## PARTIES CLAUSE

Agreement by and between the CENTRAL TEXAS CHAPTER, NATIONAL ELECTRICAL CONTRACTORS ASSOCIATION and LOCAL UNION 520, INTERNATIONAL BROTHERHOOD OF ELECTRICAL WORKERS. As used hereinafter in this Agreement, the term "Chapter" shall mean the CENTRAL TEXAS CHAPTER, NATIONAL ELECTRICAL CONTRACTORS ASSOCIATION, and the term "Union" shall mean LOCAL UNION NO. 520, IBEW. The term "Employer" shall mean an individual firm who has been recognized by an Assent to this Agreement.

## BASIC PRINCIPLES

The Employer and the Union have a common and sympathetic interest in the Electrical Industry. Therefore, a working system and harmonious relations are necessary to improve the relationship between the Employer, the Union, and the Public. Progress in Industry demands a mutuality of confidence between the Employer and the Union. All will benefit by continuous peace, and by adjusting any differences by rational, common sense methods. Now, therefore, in consideration of the mutual promises and agreements herein contained, the parties hereto agree as follows:

## ARTICLE I
## EFFECTIVE DATE/CHANGES/GRIEVANCES/DISPUTES

Section 1.01: This Agreement shall take effect on June 2, 2022 and shall remain in effect through June 1, 2025, unless otherwise specifically provided for herein. It shall continue in effect from year to year thereafter, from the start of the first full pay period in June through the last pay period starting in May of each year, unless changed or terminated in the way later provided herein.

Section 1.02(a): Either party desiring to change or terminate this Agreement must provide written notification at least 90 days prior to the expiration date of the Agreement or any anniversary date occurring thereafter.

(b) Whenever notice is given for changes, the nature of the changes desired must be specified in the notice, or no later than the first negotiating meeting unless mutually agreed otherwise.

(c) The existing provisions of the Agreement, including this Article, shall remain in full force and effect until a conclusion is reached in the matter of proposed changes.

(d) Unresolved issues or disputes arising out of the failure to negotiate a renewal or modification of this agreement that remain on the 20th of the month preceding the next regular meeting of the Council on Industrial Relations for the Electrical Contracting Industry (CIR) may be submitted jointly or unilaterally to the Council for adjudication. Such unresolved issues or disputes shall be submitted no later than the next regular meeting of the Council following the expiration date of this agreement or any subsequent anniversary date. The Council's decisions shall be final and binding.

(e)When a case has been submitted to the Council, it shall be the responsibility of the negotiating committee to continue to meet weekly in an effort to reach a settlement on the local level prior to the meeting of the Council.

(f)Notice of a desire to terminate this Agreement shall be handled in the same manner as a proposed change.

Section 1.03: This Agreement shall be subject to change or supplement at any time by mutual consent of the parties hereto. Any such change or supplement agreed upon shall be reduced to writing, signed by the parties hereto.

Section 1.04: During the term of this Agreement, there shall be no stoppage of work either by strike or lockout because of any proposed changes in this Agreement or dispute over matters relating to this Agreement. All such matters must be handled as stated herein.

**GRIEVANCES/DISPUTES**

Section 1.05: There shall be a Labor-Management Committee of three representing the Union and three representing the Employers. It shall meet regularly at such stated times as it may decide. However, it shall also meet within 48 hours when notice is given by either party. It shall select its own Chairman and Secretary. The Local Union shall select the Union representatives and the Chapter shall select the management representatives.

Section 1.06: All grievances or questions in dispute shall be adjusted by the duly authorized representative of each of the parties to this Agreement. In the event that these two are unable to adjust any matter within 48 hours, they shall refer the same to the Labor-Management Committee.

Section 1.07: All matters coming before the Labor-Management Committee shall be decided by a majority vote. Four members of the Committee, two from each of the parties hereto, shall be a quorum for the transaction of business, but each party shall have the right to cast the full vote of its membership and it shall be counted as though all were present and voting.

Section 1.08: Should the Labor-Management Committee fail to agree or to adjust any matter, such shall then be referred to the Council on Industrial Relations for the Electrical Contracting Industry for adjudication. The Council's decisions shall be final and binding.

Section 1.09: When any matter in dispute has been referred to conciliation or arbitration for adjustment, the provisions and conditions prevailing prior to the time such matters arose shall not be changed or abrogated until agreement has been reached or a ruling has been made.

Section 1.10: The Labor-Management Committee shall not recognize any grievance or dispute unless written notice of the charge is given within thirty (30) days after the representatives of the parties to this Agreement first became aware, or reasonably should have been aware, of a violation of this Agreement. This shall not apply to any Section which requires money to be deposited to any Trust Fund.

## ARTICLE II
## Employers Rights - Union Rights
## Favored Nations Clause

Section 2.01: The Union agrees that if, during the life of this Agreement, it grants to any other Employer in the Electrical Contracting Industry on work covered by this Agreement, any better terms or conditions than those set forth in this Agreement, such better terms or conditions shall be made available to the Employer under this Agreement and the Union shall immediately notify the Employer of any such concession.

Section 2.02: The Employer recognizes the Union as the exclusive representative of all its employees performing work within the jurisdiction of the Union for the purpose of collective bargaining in respect to rates of pay, wages, hours of employment and other conditions of employment.

Section 2.03(a): Certain qualifications, knowledge, experience, and financial responsibility are required of everyone desiring to be an Employer in the Electrical Industry. Therefore, an Employer who contracts for electrical work is a person, firm, or corporation, having these qualifications and maintaining a place of business and suitable financial status to meet payroll requirements and employing at least one Journeyman Wireman.

(b) All Employers subject to the terms of this Agreement shall carry an Indemnity Bond, issued by a company authorized to do business in the State of Texas, the minimum for all employers shall be $5,000.00 as evidence of financial responsibility, and to insure proper payments to the Electrical Joint Apprenticeship and Training Trust Fund, the National Employees Benefit Board, the Austin Vacation Trust Fund, IBEW Local Union 520 Annuity Plan and Health

and Welfare Plan, 401(k), and P.A.C. deductions, to Local Union 520, for any union dues or assessments withheld on behalf of employees, and wages required under this Agreement be paid directly to the affected employee(s). Bond amounts greater than $5000 shall be required based on the following formula outlined below:

(c) Each employer signatory to the collective bargaining agreement shall be required to secure a welfare bond of at least $5000. Employers shall be required to secure larger bonds based on the following formula: Employers shall provide a welfare bond based on the average monthly hours worked utilizing the previous three years to calculate the average. This number shall be multiplied by the aggregate amount of the benefit package and rounded up to the next one thousandth. If an employer has been delinquent in the payment of benefits more than twice, they shall be required to pay benefits timely on a weekly basis for a period of six months and secure the required bond. After a period of six months of timely benefit payments the employer may return to the monthly schedule. If an employer has no previous experience in the jurisdiction the bond shall be based on the estimated monthly hours of the project to be worked. The maximum bond for any employer shall be $50,000.

The aforesaid Bond shall be executed for a period of time to conform to the time limitations set forth in this Agreement and shall be renewed as provided for in subsequent Agreements.

The Bond shall provide that it may not be canceled by either the Employer or the insurance carrier without thirty (30) days written notice in advance to the Union by Certified, Registered, or Insured mail from the Surety. Proof of the execution of the Bond, in the form of an affidavit executed by the insurance carrier, shall be furnished the Union for each Employer. Such affidavit shall show on its face that it may not be canceled by either the insurance carrier of the Employer without prior notification to the Union. The Local Union shall furnish a copy of the affidavit of Bond to each Fund.

The Obligee (Local Union 520, IBEW) shall notify the Surety within thirty (30) days after having knowledge of a breach of this Agreement by the principal hereof.

(d) Fringe benefits provided for under this Agreement are due and payable on or before the 15th day of the month following the month, covering the hours worked by each employee. Each Employer shall file a monthly report for each fringe benefit, in the form established, therefore, each report shall be filed, regardless of whether or not the Employer has employed any employee in the month covered by said report.

Any Employer who fails to file a report and pay contributions for any of the fringe benefits by the 15th day following the month in which such report or payment is due shall be considered delinquent and is in violation of this Agreement. If payments are not mailed in time to reach the Benefit Fund by the prescribed time, interest at the rate of 1½% monthly will be due and payable. Each Employer shall make available applicable books and records for the purpose of auditing same to determine the amount of his liability and shall pay the expense of audit if delinquencies are found, under guidelines of the Funds. Action to collect contributions may be brought in the name of the respective Fund involved, its Trustees and any assignee or agent

designated by said Trustees. Employer hereby accepts and agrees to the terms of each trust agreement and plan for such fringe Benefit Fund.

A delinquent Employer shall be liable to any employee affected by such delinquency for all benefits lost by such employee by virtue of such delinquency, and such delinquent Employer shall also be liable for reasonable attorneys' fees for any action brought to recover the amount of said benefits.

"This section does not waive or deny any remedies of collection in other sections of this Agreement, Trust or a remedy at law".

Section 2.04: For all employees covered by this Agreement the Employer shall carry Workman's Compensation Insurance with a Company authorized to do business in this State, Social Security, and such other protective insurance as may be required by the laws of this State and shall furnish satisfactory proof of such to the Union. He shall also make contributions to the State Unemployment Compensation Commission.

Section 2.05(a): It is agreed that in accord with the Employees Benefit Agreement of the National Electrical Benefit Fund ("NEBF"), as entered into between the National Electrical Contractors Association and the International Brotherhood of Electrical Workers on September 3, 1946, as amended, and now delineated as the Restated Employees Benefit Agreement and Trust, that unless authorized otherwise by the NEBF the individual Employer will forward monthly to the NEBF's designated local collection agent an amount equal to three percent (3 %) of the gross monthly labor payroll, paid to, or accrued by, the employees in this bargaining unit, and a completed payroll report prescribed by the NEBF. The payment shall be made by check or draft and shall constitute a debt due and owing to the NEBF on the last day of each calendar month, which may be recovered by the suit initiated by the NEBF or its assignee. The payment and the payroll report shall be mailed to reach the office of the appropriate local collection agent not later than fifteen (15) calendar days following the end of each calendar month.

The individual Employer hereby accepts, and agrees to be bound by, the Restated Employees Benefit Agreement and Trust.

(b) An individual Employer who fails to remit as provided above shall be additionally subject to having his Agreement terminated upon seventy-two (72) hours' notice in writing being served by the Union, provided the individual Employer fails to show satisfactory proof that the required payments have been paid to the appropriate local collection agent.

The failure of an individual Employer to comply with the applicable provisions of the Restated Employees Benefit Agreement and Trust shall also constitute a breach of this Agreement.

Section 2.06: The Union reserves the right to discipline its members for violations of its laws, rules, and agreements.

Section 2.07: The Local Union is part of the International Brotherhood of Electrical Workers and any violation or annulment by an individual Employer of the approved Agreement of this or any other Local Union of the IBEW, other than violations of Paragraph 2 of this Section, will be sufficient cause for the cancellation of his Agreement by the Local Union after a finding has been made by the International President of the Union that such a violation or annulment has occurred.

The subletting, assigning, or transfer by an individual Employer of any work in connection with electrical work to any person, firm or corporation not recognizing the IBEW or one of its Local Unions as the collective bargaining representative of his employees on any electrical work in the jurisdiction of this or any other Local Union to be performed at the site of the construction, alteration, painting or repair of a building, structure or other work, will be deemed a material breach of this Agreement.

Notwithstanding anything in this Agreement, the Employer may sublet, assign, or transfer the installation of wiring and devices for fire alarm or security systems if those systems are low voltage system, the installation of lightning protection system, trenching and backfilling excavation to a specialty contractor.

The Employer may also sublet, assign, or transfer any work requiring employees to place themselves in any trench that is greater than a depth of five feet.

The following work, systems and/or functions shall not be covered by the terms of this agreement: field instrumentation and installation, process control instrumentation and installation, instrument and control loop testing and certification, instrument calibration, instrument certification, PLC equipment, PLC programming, distributed control and SCADA systems, control system SCADA & HMI software development and programming, radio telemetry systems, and manufacture of control panels.

Nothing in this Agreement should be construed to require the Employer to purchase manufactured products from employers signatory to a collective bargaining agreement.

All charges of violation of Paragraph 2 of this Section shall be considered as a dispute and shall be processed in accordance with the provisions of this Agreement covering the procedure for the handling of grievances and the final and binding resolution of disputes.

Section 2.08: No member of Local Union 520, while he remains a member of such Local Union and subject to employment by the Employers operating under this Agreement shall himself become a contractor for the performance of any electrical work.

Section 2.09: Only two individuals connected with an employing concern as owner, manager, superintendent, partner, or member of a Board of Directors shall perform any manual electrical work where it displaces the service of a Journeyman; and then only when he has at least one Journeyman, working under the terms of this Agreement, employed and working the same hours including overtime, with the exception of emergency repairs not to last over two (2) hours.

Section 2.10(a): The Union understands the Employer is responsible to perform the work required by the owner. The Employer shall, therefore, have no restrictions except those specifically provided for in the collective bargaining agreement, in planning, directing, and controlling the operation of all his work, in deciding the number and kind of employees to properly perform the work, in hiring and laying off employees, in transferring employees from job to job within the Local Union's geographical jurisdiction, in determining the need and number as well as the person who will act as Foreman, in requiring all employees to observe the Employer's and/or owner's rules and regulations not inconsistent with this Agreement, in requiring all employees to observe all safety regulations, and in discharging employees for proper cause.

(b) The employer shall have the right to call a Foreman by name provided:

A) The employer shall notify the business manager in writing of the name of the individual who is to be requested for employment as a Foreman. Upon such request, the business manager shall refer said Foreman provided the name appears on the highest priority group.

B) When an employee is called as a Foreman, he must remain as a Foreman for 500 hours or must receive a reduction in force.

## Portability

Section 2.11: The Employer if signatory to a collective bargaining agreement or to a letter of assent to an agreement with another IBEW Local Union, may bring an unlimited amount of Supervisory bargaining unit employees employed in that Local Union's jurisdiction into Local Union 520's jurisdiction to perform supervisory work. Supervisory bargaining unit employees are defined as those that direct bargaining unit employees. The Employer may also bring one (1) bargaining unit employee employed in that Local Union's jurisdiction into Local Union 520's after the Employer employs one (1) Local Union 520's bargaining unit employee; if necessary this process will continue to alternate. The Employer shall maintain a minimum of a one (1) to one (1) ratio of Local Union 520's bargaining unit employees to those that are brought in through this Portability provision. The employees brought in through portability may remain on the specific job until the job is complete. All employees brought in through this portability provision must check in with the Business Manager of IBEW Local Union 520 and all working assessments shall be paid to Local Union 520. All charges of violations of this section shall be considered as a dispute and shall be processed in accordance with the provisions of the Agreement for the handling of grievances with the exception that any decision of a local labor-management committee that may be contrary to the intent of the parties to the National Agreement on employee Portability, upon recommendation of either or both the appropriate IBEW International Vice President or NECA Regional Executive Director, is subject to review, modification, or rescission by the Council on Industrial Relations.

Section 2.12: The Union has the right to appoint a Steward at any shop and/or job where workmen are employed under the terms of this Agreement. The Employer shall be notified in writing of who the Steward is. No Steward shall be discriminated against by the Employer because of the faithful performance of his duties as Steward.

## ARTICLE III
## Standard Inside Referral

Section 3.01: In the interest of maintaining an efficient system of production in the Industry, providing for an orderly procedure of referral of applicants for employment preserving the legitimate interests of the employees in their employment status within the area and of eliminating discrimination in employment because of membership or non-membership in the Union, the parties hereto agree to the following system of referral of applicants for employment.

Section 3.02: The Union shall be the sole and exclusive source of referral of applicants for employment.

Section 3.03: The Employer shall have the right to reject any applicant for employment.

Section 3.04: The Union shall select and refer applicants for employment without discrimination against such applicants by reason of membership or non-membership in the Union and such selection and referral shall not be affected in any way by rules, regulations, bylaws, constitutional provisions or any other aspect or obligation of Union membership policies or requirements. All such selection and referral shall be in accord with the following procedure.

Section 3.05: The Union shall maintain a register of applicants for employment established on the basis of the Groups listed below. Each applicant for employment shall be registered in the highest priority Group for which he qualifies.

### Journeyman Wireman - Journeyman Technician

**GROUP I** All applicants for employment who have four or more years' experience in the trade, are residents of the geographical area constituting the normal construction labor market, have passed a journeyman's examination given by a duly constituted Inside Construction Local Union of the I.B.E.W. or has been certified as a Journeyman Wireman by any inside Joint Apprenticeship and Training Committee, and, who have been employed in the trade for a period of at least one year in the last four years in the geographical area covered by the collective bargaining agreement.

Group I status shall be limited to one Local Union at one time. An applicant who qualifies for Group I in a local union shall be so registered electronically and remain on Group I in that local union unless and until the applicant designates another local union as his or her Group I local union. If an applicant qualifies for Group I status in a local union other than his or her home local union and designates that local as his or her Group I local union, the business manager of the new Group I status local union shall by electronic means notify the business manager of the applicant's former Group I status local union.

**GROUP II** All applicants for employment who have four or more years' experience in the trade and who have passed a Journeyman Wireman's examination given by a duly constituted Inside Construction Local Union of the IBEW or have been certified as a Journeyman Wireman by any Inside Joint Apprenticeship and Training Committee.

**GROUP III** All applicants for employment who have two or more years' experience in the trade, are residents of the geographical area constituting the normal construction labor market, and who have been employed for at least six months in the last three years in the geographical area covered by the collective bargaining agreement.

**GROUP IV** All applicants for employment who have worked at the trade for more than one year.

Section 3.06: If the registration list is exhausted and the Local Union is unable to refer applicants for employment to the Employer within 48 hours from the time of receiving the Employer's request, Saturdays, Sundays and holidays excepted, the Employer shall be free to secure applicants without using the Referral Procedure. But such applicants, if hired, shall have the status of "temporary employees".

Section 3.07: The Employer shall notify the Business Manager promptly of the names and Social Security numbers of such "temporary employees" and shall replace such "temporary employees" as soon as registered applicants for employment are available under the Referral Procedure.

Section 3.08: "Normal construction labor market" is defined to mean the following geographical area plus the commuting distance adjacent thereto which includes the area from which the normal labor supply is secured: Travis, Bastrop, Hays, Blanco, Burnet, Williamson, Lee, Llano, San Saba, Burleson, Caldwell, Fayette, Runnels, Coleman, Brown, Tom Green, Concho, McCulloch, Menard, Mason, Kimble and parts of Coryell and Bell Counties to include that part of Fort Hood in Coryell County south of Cowhouse Creek, and not to extend more than two (2) miles into Bell County from the Southeast boundary line of Coryell County, Gray Field, and the City of Killeen, and parts of Lampasas, Bell and Milam Counties, which are nearer to Austin than Waco, in the State of Texas.

The above geographical area is agreed upon by the parties to include the area defined by the Secretary of Labor to be the appropriate prevailing wage areas under the Davis-Bacon Act to which the Agreement applies.

Section 3.09: "Resident" means a person who has maintained his permanent home in the above defined geographical area for a period of not less than one year or who, having had a permanent home in this area, has temporarily left with the intention of returning to this area as his permanent home.

Section 3.10: "Examinations" - An "Examination" shall include experience rating tests if such examination shall have been given prior to the date of this procedure, but from and after the date

of this procedure, shall include only written and/or practical examinations given by a duly constituted Inside Construction Local Union of the IBEW. Reasonable intervals of time for examinations are specified as ninety (90) days. An applicant shall be eligible for examination if he has four years' experience in the trade.

Section 3.11: The Union shall maintain an "Available for Work List" which shall list the applicants within each Group in chronological order of the dates they register their availability for employment.

Section 3.12(a): An applicant who is hired and who receives, through no fault of his own, work of forty hours or less shall, upon re-registration, be restored to his appropriate place within his Group.

(b) An applicant who has registered on the "Available for Work List" must renew his application every thirty (30) days or his name will be removed from the "List."

Section 3.13: Employers shall advise the Business Manager of the Local Union of the number of applicants needed. The Business Manager shall refer applicants to the Employer by first referring applicants in GROUP I in the order of their place on the "Available for Work List" and then referring applicants in the same manner successively from the "Available for Work List" in GROUP II, then GROUP III, and then Group IV. Any applicant who is rejected by the Employer shall be returned to his appropriate place within this GROUP and shall be referred to other employment in accordance with the position of his GROUP and his place within his GROUP.

Section 3.13(a): An applicant who is discharged for cause two times within a 12-month period shall be referred to the neutral member of the Appeals Committee for a determination as to the applicant's continued eligibility for referral. The neutral member of the Appeals Committee shall, within three business days, review the qualifications of the applicant and the reasons for the discharges. The neutral member of the Appeals Committee may, in his or her sole discretion: (1) require the applicant to obtain further training from the JATC before again being eligible for referral; (2) disqualify the applicant for referral for a period of four weeks, or longer, depending on the seriousness of the conduct and/or repetitive nature of the conduct; (3) refer the applicant to an employee assistance program, if available, for evaluation and recommended action; or (4) restore the applicant to his/her appropriate place on the referral list.

Section 3.14: The only exceptions which shall be allowed in this order of referral are as follows:

(a) When the employer states bona fide requirements for special skills and abilities in his request for applicants, the Business Manager shall refer the first applicant on the register possessing such skills and abilities.

(b) The age ratio clause in the Agreement calls for the employment of an additional employee or employees on the basis of age. Therefore, the Business Manager shall refer the first applicant on the register satisfying the applicable age requirements provided, however, that all names in higher priority Groups, if any, shall first be exhausted before such overage reference can be made.

Section 3.15: An Appeals Committee is hereby established, composed of one member appointed by the Union, one member appointed by the Employer or by the Association, as the case may be, and a Public Member appointed by both these members.

Section 3.16: It shall be the function of the Appeals Committee to consider any complaint of any employee or applicant for employment arising out of the administration by the Local Union of Sections 4 through 14 of this Agreement. The Appeals Committee shall have the power to make a final and binding decision on any such complaint which shall be complied with by the Local Union. The Appeals Committee is authorized to issue procedural rules for the conduct of its business, but it is not authorized to add to, subtract from, or modify any of the provisions to this Agreement and its decisions shall be in accord with this Agreement.

Section 3.17: A representative of the Employer or of the Association, as the case may be, designated to the Union in writing, shall be permitted to inspect the Referral Procedure records at any time during normal business hours.

Section 3.18: A copy of the Referral Procedure set forth in this Agreement shall be posted on the Bulletin Board in the offices of the Local Union and in the offices of the Employers who are parties to this Agreement.

Section 3.19: Apprentices shall be hired and transferred in accordance with the apprenticeship provisions of the Agreement between the parties.

Section 3.20: When making reductions in the number of employees due to lack of work, Employers shall use the following procedure:

(a) Temporary employees, if any are employed, shall be laid off first. Then employees in Group IV shall be laid off next, if any are employed in this Group. Next to be laid off are employees in Group III, if any are employed in this Group, then those in Group II, and then those in Group I.

(b) Paragraph (a) will not apply as long as the special skills requirement as provided for in Section 14(a) is required.

(c) Supervisory employees covered by the terms of this Agreement will be excluded from layoff as long as they remain in the supervisory capacity. When they are reduced to the status of Journeyman, they will be slotted in the appropriate group in Paragraph (a) above.

Section 3.21: Effective January 1, 2020 all Journeymen and Apprentices are required to provide proof of completion, by originally issued card or certificate, of an OSHA 10 safety training course.

## ARTICLE IV
## Hours - Wage Payment

Section 4.01(a): Eight hours work between the hours of 6:00 A.M. and 6:30 P.M. with thirty (30) minutes for a lunch period, shall constitute a workday. Forty (40) hours within (5) days, Monday through Friday, inclusive, shall constitute the work week. Saturday may be used for a make-up day due to inclement weather. If Saturday is used as a make up day, a minimum of eight (8) hours will be scheduled. The payroll week shall end on Sunday midnight of each week. Any workman required to punch a time clock that requires more than five (5) minutes to check out shall be paid for any additional time used in checking out. Workmen reporting to the shop or job shall not report earlier than 15 minutes prior the starting time. If practical, workmen directed to report to the job shall be at their place of work at the starting time and shall remain at their place of work until quitting time unless otherwise instructed by the Employer.

(b) Any change from the regular working hours must be five (5) or more day's duration. When any change in the starting time is made, lunch period, overtime, and shifts may be changed accordingly.

(c) On jobs where it is required by the general contractor or owner that four ten-hour days be scheduled, the first ten hours of work per day shall be paid at the straight time hourly rate of pay. The four-day work week will be Monday through Thursday. Friday may be used for a make-up day due to inclement weather. If Friday is used as a make-up day, a minimum of 8 hours will be scheduled.

Section 4.02: All work performed outside of regularly scheduled hours will be paid at one and one-half times the regular straight-time rate, provided the employee works all of the regular scheduled hours made available, as defined in Art. IV Sec. 4.01(a) and Sec. 4.01(c). In the event the employee does not work all of the regularly scheduled hours available he will receive no premium rate until after he has worked 40 hours. Work on Sundays shall be paid at double the straight-time rate. The following holidays: New Year's Day, Memorial Day, Fourth of July, Labor Day, Veteran's Day, Thanksgiving Day, the Friday following Thanksgiving Day, and Christmas Day, shall be paid at double the straight-time rate. Holidays shall be recognized only on the day on which they fall.

Section 4.03: The minimum regular straight-time rate of wages for Journeyman Inside Wireman (JIW) shall be as follows:

Effective June 6, 2022: $32.00
Effective January 2, 2023: $34.00
Effective January 1, 2024: $35.00
Effective January 6, 2025: $35.75

**APPENDIX A – MINIMUM BENEFITS**

| Multiplier | Classification | NEBF | Annuity | Medical | JATC |
|---|---|---|---|---|---|
| 130% of JIW wage rate | General Foreman (area foreman required) | 3% | 8% | $5.45 | 1%*** |
| 120% of JIW wage rate | General Foreman (no area foreman required) | 3% | 8% | $5.45 | 1%*** |
| 120% of JIW wage rate | Area Foreman | 3% | 8% | $5.45 | 1%*** |
| 110% of JIW wage rate | Foreman | 3% | 8% | $5.45 | 1%*** |
| 100% | Journeyman Inside Wireman | 3% | 8%* | $5.45 | 1%*** |
| **Apprentice Wireman** | | | | | |
| 50% of JIW wage rate | 1st Year - Period 1 | 3% | ** | $3.70 | 1%*** |
| 55% of JIW wage rate | 1st Year - Period 2 | 3% | 3% | $3.70 | 1%*** |
| 60% of JIW wage rate | 2nd Year - Period 3 | 3% | 3% | $3.70 | 1%*** |
| 70% of JIW wage rate | 3rd Year - Period 4 | 3% | 5% | $3.70 | 1%*** |
| 75% of JIW wage rate | 4th Year - Period 5 | 3% | 5% | $3.70 | 1%*** |
| 80% of JIW wage rate | 5th Year - Period 6 | 3% | 8% | $3.70 | 1%*** |
| | Unindentured Apprentice | 3% | | $3.70 | 1%*** |

* 9% effective January 6th 2025
** 1% effective January 6th 2025
*** 1% of Journeyman Straight-Time Rate

Section 4.04: The Employer shall pay all wages in cash or check weekly, not later than quitting time on Friday. The Employer may pay wages by direct deposit, through debit card by cash or by check. Employees may be required to execute authorization forms for direct electronic deposit of wages on a weekly basis to the bank or credit union of the employee's choice. This manner of payment, once adopted, may not be changed by the Employer except upon 14-day advance written notification to the employee with notification to the Union. In the event that employees are not paid by the above-stated time, waiting time at the regular straight time rate (not to exceed eight (8) hours in any one twenty-four (24) hour period) shall be charged until payment is made. The previous sentence only applies in the event that there has been a previous instance within the

preceding twelve (12) months of the Employer failing to timely pay wages. Otherwise, paid waiting time only begins if payment has not been received by quitting time on Friday.
Section 4.05: Should an Employer issue a paycheck that does not clear the bank for payment, provided the employee does not hold said check for more than thirty (30) days before making attempt to cash said check, then said Employer, while in the jurisdiction of the Local Union, thereafter shall pay in cash.

Section 4.06: When Friday is a recognized holiday, wages shall be paid Thursday for all work during that week. An itemized statement shall be furnished each workman, showing total hours worked, total wages earned, and any deductions from such wages.

Section 4.07: Any man reporting for work and being laid off, not having been notified the day previous of such layoff shall receive not less than two (2) hours wages in order to gather his tools and personal belongings and shall be paid off in full immediately. In the event the employee is not paid off, waiting time at the regular rate (not to exceed eight [8] hours in any one twenty-four [24] hour period) shall be charged until payment is made. Two (2) hours wages for gathering tools and personal belongings will not be paid if the employee has not notified the Employer of a previous day's absence. An employee who voluntarily quits shall receive the employee's final paycheck on the next contractually scheduled pay day.

Section 4.08(a): When men are directed to report to a job or shop and do not start to work due to causes other than weather conditions, they shall receive two (2) hours pay.

(b) When men receive two (2) hours pay as show-up time, they shall remain available for work for a full two (2) hour period.

(c) If requested by the Employer, during inclement weather conditions, men shall remain on the job available for work and shall receive two (2) hours pay.

(d) When men are directed to report to a job and are instructed to go to work by the Employer or his representative, weather conditions permitting, and they refuse, they shall not receive the two (2) hours show-up time.

(e) When men are called out on trouble or emergency calls outside of regularly scheduled working hours, they shall be paid from the time they leave home until they return at the overtime rate, with a minimum of one (1) hour's work.

Section 4.09: The Employer shall pay for traveling time and provide for at least one of the following provisions:

(i) Furnish transportation from shop to job and job to job and job to shop during the regular working hours; or

(ii) Reimburse the employee for mileage at the standard mileage rate determined by the Internal Revenue Service for actual mileage from shop to job and job to job and job to shop during all the regular working hours to be reimbursed.

On work outside the jurisdiction of the Union, the Employer shall provide one of the following:

(i) Furnish transportation, board and all other necessary expenses;

(ii) Reimburse the employee for mileage at the standard mileage rate determined by the Internal Revenue Service and furnish board and all other necessary expenses.

Section 4.10: No traveling time shall be paid before or after working hours to workmen for traveling to or from any job when workmen are ordered to report to the job, provided his day ends at such job.

Section 4.11: The Employer shall furnish a monthly payroll report to Local Union 520 postmarked no later than 15th day of the following month, giving workman's name, classification, wage rate, straight-time hours worked, overtime hours and gross wages paid to all workmen. This report shall identify the exact date of all employees who have quit or been discharged during the working period covered by this report.

A monthly payroll report to the Local Union and to all Trust Funds shall be completed and mailed each month, whether the Contractor has workmen employed or not.

Section 4.12: Workmen being laid off or discharged by an Employer or workmen severing their employment shall be given a termination slip stating the reason for termination and signed by their immediate supervisor or their Employer, and a copy shall be sent to Local Union 520 and the Central Texas Chapter, N.E.C.A. Additionally, employers shall provide a termination slip to the JATC Training Director in the case of an apprentice.

Section 4.13: When so elected by the contractor, multiple shifts of eight (8) hours for at least five (5) days' duration may be worked. When two (2) ore three (3) shifts are worked:

The first shift (day shift) shall consist of eight (8) consecutive hours worked between the hours of 8:00 A.M. and 4:30 P.M. Workmen on the "day shift" shall be paid at the regular hourly rate of pay for all hours worked.

The second shift (swing shift) shall consist of eight (8) consecutive hours worked between the hours of 4:30 P.M. and 1:00 A.M. Workmen on the "swing shift" shall be paid at the regular hourly rate of pay plus **10%** for all hours worked.

The third shift (graveyard shift) shall consist of eight (8) consecutive hours worked between the hours of 1:00 A.M. and 9:00 A.M. Workmen on the "graveyard shift" shall be paid at the regular hourly rate of pay plus **15%** for all hours worked.

The Employer shall be permitted to adjust the starting hours of the shift by up to two (2) hours in order to meet the needs of the customer.

If the parties to the Agreement mutually agree, the shift week may commence with the third shift (graveyard shift) at 12:30 A.M. Monday to coordinate the work with the customer's work

schedule. However, any such adjustment shall last for at least five (5) consecutive days duration unless mutually changed by the parties to this Agreement.

An unpaid lunch period of thirty (30) minutes shall be allowed on each shift. All overtime work required before the established start time and after the completion of eight (8) hours of any shift shall be paid at one and one-half times the "shift" hourly rate.

There shall be no pyramiding of overtime rates and double the straight time rate shall be the maximum compensation for any hour worked. There shall be no requirement for a day shift when either the second or third shift is worked.

## UNION DUES DEDUCTION

Section 4.14: Upon receipt of a voluntary written authorization the Employer agrees to deduct and forward to the Financial Secretary of the Local Union - the additional working dues from the pay of each employee. The amount to be deducted shall be the amount specified in the approved Local Union Bylaws. Such amount shall be certified to the Employer by the Local Union upon request by the Employer.

## ARTICLE V
## General Rules

Section 5:01: In order to comply with existing laws, nothing in this Agreement shall be construed as limiting the right of Employers to move, transfer, or assign employees from his shop to any specific job or from any job to any other job upon which said Employer holds a contract for the performance of the electrical work. An employee, once on the Employer's payroll, may be worked by him at any location at the discretion of the Employer.

Section 5.02: When the Employer has no shop located in the jurisdiction of this Union, then under such circumstances the job site shall be considered the city in which the shop is located with one job site designated as the permanent shop.

Section 5.03: On all jobs requiring five (5) or more Journeymen, at least every fifth Journeyman, if available, shall be fifty (50) years of age or older.

Section 5.04(a): Journeyman shall provide themselves with the following tools:

One tester not over 1000 volts or one Multi Volt Tester
Knife
Crescent wrench 8" to 12"
Screw drivers
Hammer
Small level
Plumb bob
Awl or Center punch
Combination square-Tri-square
Adjustable 12" blade
Hacksaw frame
Two pair channel lock type pliers
One pair long nose pliers
One pair Dyke pliers
One chalk line
Keyhole saw
One steel measuring tape at least

Pencil
One pair side cutting pliers
7" or larger
Wire stripper
16' long
Pipe wrench 12" to 14" or small
Chain tong

(b) Journeyman may furnish other similar tools but shall not be required to do so.

(c) A Journeyman may carry or store in his toolbox small tools furnished by and belonging to his Employer (power tools excluded). Such tools must be the property of the Employer, to be returned to him upon request or termination of the employee but are not to be replaced by the employee if broken or stolen.

(d) Apprentices shall provide themselves with the following tools only, except that first-year Apprentice may provide himself with a small toolbox and a third- or fourth-year Apprentice may have a toolbox on the job and start building up his tool list towards that of a Journeyman.

| | |
|---|---|
| 2 pair channel lock type pliers | Pencil |
| 1 pair side cutters pliers - 7" or larger | Hammer |
| | One voltage tester not over 1000 or Multi Volt Tester |
| One steel measuring tape at least 16' long | Small level |
| Screw drivers | Hacksaw frame |
| Knife | Wire stripper |
| Awl | |

He may furnish one pair of long-nose and one pair of Dyke pliers if he desires.

(e) The Employer shall furnish necessary locked storage to reasonably protect tools from the weather and vandalism on large jobs where it is necessary to leave tools on the job.

<u>Section 5:05</u>: The Employer shall furnish all other necessary tools or equipment. Workmen will be held responsible for the tools or equipment issued to them providing the Employer furnishes the necessary lockers, toolboxes, or other safe place of storage. Tools must be taken out and put away during working hours.

<u>Section 5.06</u>: Workmen shall install all electrical work in a safe and workman like manner in accordance with applicable code and contract specifications.

<u>Section 5.07</u>: The representatives of the Union shall be allowed access to any building at any reasonable time where members of the Union are employed.

<u>Section 5.08</u>: In all shops or on all jobs where four (4) or more Journeymen are employed, one Journeyman shall be designated as a Foreman.

On all jobs, the first working crew may consist of a maximum of eleven (11) men, that is, ten (10) Journeyman and one (1) working Foreman.

When a second crew is established, it may consist of a maximum of eleven (11) men, that is, ten (10) Journeymen and one (1) working General Foreman.

When a third or subsequent crew is established, it may consist of a maximum of eleven (11) men, that is, ten (10) Journeymen and one (1) working Foreman. Each crew shall be supervised by a Foreman and the Foremen shall be supervised by the General Foreman.

No General Foremen shall supervise more than fifty-five (55) men, including Journeymen and Foremen. For each additional fifty-five (55) men, the above procedures shall repeat except that the sixth and subsequent Foremen shall be supervised by an Area Foreman.

Section 5.09: Foremen, Area Foremen, and General Foremen shall be permitted to use tools. This shall not mean that they cannot handle material. Foremen may be required to attend and complete Foremen courses when provided.

Section 5.10: On jobs requiring a Foreman, workmen are not to take directions, orders or accept the layout from anyone other than their Foreman. Foremen are to take directions, orders, or layout from their Area Foreman only, when Area Foremen are required. When Area Foremen are not required, Foremen shall take directions, orders or layouts from the General Foreman only. Area Foremen shall take directions, orders or layout from the General Foreman only.

Section 5.11: No workman on one job shall replace a workman on another for any overtime work. All overtime work on any job shall be distributed fair and equal to all workmen. Exceptions to the two conditions above shall include the need for special skills or when workmen have not worked the available straight time hours during the "work week" as defined in Article IV, Section 1.

Section 5.12: The Employer shall see that cold water (in warm weather) and first-aid kits are available on all jobs and/or trucks.

Section 5.13: The Employer shall furnish protective equipment for workmen on energized circuits or equipment carrying 300 volts or more. On all energized circuits or equipment carrying 440 volts or over, as a safety measure, two (2) or more Journeymen must work together.

Section 5.14: All conduit shall be cut and threaded by workmen covered by this Agreement.

Section 5.15: Where pipe cutting and threading machines, electric drills, electric benders, electric chipping hammers, sanders, similar portable tools and all other power-driven equipment are used, such shall be operated by workmen covered by this agreement in the jurisdiction of the IBEW.

Section 5.16: All pulling of wire or cable shall be done by workmen covered by this Agreement.

Section 5.17: Journeyman cable splicers shall furnish only hand tools. On all work of joining, splicing and insulating and the placing of flame-proof covering where wiped lead joints are necessary, it shall be performed by cable splicers. Journeymen only shall be used in assisting cable splicers, except that one de-energized enclosures, an Apprentice may be used. Cable splicers shall not be required to work on wires or cables when the difference in potential is over 200 volts between any two conductors or between any conductor and ground, unless assisted by one Journeyman. In no case shall cable splicers be required to work on energized cables carrying in excess of 480-volt circuit.

Section 5.18: Welders gloves, sleeves, hoods and all hard hats shall be furnished by the Employer. Workmen may be required to sign a payroll deduction form to authorize the deduction from their final paycheck to cover reimbursement of unreturned hard hats. Charges shall not exceed actual cost paid by the Contractor.

Section 5.19: The installation of all electrical raceways whether metal, wood, fiber, plastic clay or of any other conceivable composition, when used to contain electrical or grounding system conductors, and the installation, preparation and connection of all electrical and/or grounding or bonding conductors shall be performed by workmen employed under the terms of this Agreement and paid the hourly applicable negotiated wage rate contained herein unless it is an integral part of the building structure.

Section 5.20: No work shall be performed on Labor Day except in case of emergency.

Section 5.21: On any job of five (5) or more days duration on the main campus of the University of Texas, the Employer will either provide for employee parking within three blocks of the job or arrange for covered transportation from a parking area within two miles of the job.

## ARTICLE VI
## Standard Inside Apprenticeship Language

Section 6.01: There shall be a local Joint Apprenticeship and Training Committee (JATC) consisting of a total of 6 or 8 members who shall also serve as Trustees to the local apprenticeship and training trust. An equal number of members (either 3 or 4) shall be appointed, in writing, by the local chapter of the National Electrical Contractors Association (NECA) and the local union of the International Brotherhood of Electrical Workers (IBEW).

The local apprenticeship standards shall be in conformance with national guideline standards and industry policies to ensure that each apprentice has satisfactorily completed the NJATC required hours and course of study. All apprenticeship standards shall be registered with the NJATC before being submitted to the appropriate registration agency.

The JATC shall be responsible for the training of apprentices, journeymen, installers, technicians, and all others (un-indentured, intermediate journeymen, etc.).

Section 6.02: All JATC member appointments, reappointments, and acceptance of appointments shall be in writing. Each member shall be appointed for a 3-year term, unless being appointed for a lesser period of time to complete an expired term. The terms shall be staggered, with one (1) term from each side expiring each year. JATC members shall complete their appointed term unless removed for cause by the party they represent, or they voluntarily resign. All vacancies shall be filled immediately

The JATC shall select from its membership, but not both from the same party, a Chairman and a Secretary who shall retain voting privileges. The JATC will maintain one (1) set of minutes for JATC committee meetings and a separate set of minutes for trust meetings.

The JATC should meet on a monthly basis, and also upon the call of the Chairman.

Section 6.03: Any issue concerning an apprentice, or an apprenticeship matter shall be referred to the JATC for its review, evaluation, and resolve, as per standards and policies. If the JATC deadlocks on any issue, the matter shall be referred to the Labor-Management Committee for resolution as outlined in Article One of this Agreement; except for trust fund matters, which shall be resolved as stipulated in the local trust instrument.

Section 6.04: There shall be only one (1) JATC and one (1) local apprenticeship and training trust. The JATC may, however, establish joint subcommittees to meet specific needs, such as residential or telecommunications apprenticeship. The JATC may also establish a subcommittee to oversee an apprenticeship program within a specified area of the jurisdiction covered by this agreement.

All subcommittee members shall be appointed, in writing, by the party they represent. A subcommittee member may or may not be a member of the JATC.

Section 6.05: The JATC may select and employ a part-time or a full-time Training Director and other support staff, as it deems necessary. In considering the qualifications, duties, and responsibilities of the Training Director, the JATC should review the Training Director's Job Description provided by the NJATC. All employees of the JATC shall serve at the pleasure and discretion of the JATC.

Section 6.06: To help ensure diversity of training, provide reasonable continuous employment opportunities, and comply with apprenticeship rules and regulations, the JATC, as the program sponsor, shall have full authority for issuing all job training assignments and for transferring apprentices from one employer to another. The employer shall cooperate in providing apprenticeships with needed work experiences. The local union referral office shall be notified, in writing, of all job training assignments. If the employer is unable to provide reasonable continuous employment for apprentices, the JATC is to be so notified.

Section 6.07: All apprentices shall enter the program through the JATC as provided for in the registered apprenticeship standards and selections procedures.

An apprentice may have their indenture canceled by the JATC at any time prior to completion as stipulated in the registered standards. Time worked and accumulated in apprenticeship shall not be considered for local union referral purposes until the apprentice has satisfied all conditions of apprenticeship. Individuals terminated from apprenticeship shall not be assigned to any job in any classification, or participate in any related training, unless they are reinstated in apprenticeship as per the standards, or they qualify through means other than apprenticeship, at sometime in the future, but no sooner than two years after their class has completed apprenticeship, and they have gained related knowledge and job skills to warrant such classification.

Section 6.08: The JATC shall select and indenture a sufficient number of apprentices to meet local manpower needs. The JATC is authorized to indenture the number of apprentices necessary to meet the jobsite ratio as per section 6.12.

Section 6.09: Though the JATC cannot guarantee any number of apprentices, if a qualified employer requests an apprentice, the JATC shall make every effort to honor the request. If unable to fill the request within ten (10) working days, the JATC shall select and indenture the next available person from the active list of qualified applicants. An active list of qualified applicants shall be maintained by the JATC as per the selection procedures.

Section 6.10: To accommodate short-term needs when apprentices are unavailable, the JATC shall assign un-indentured workers who meet the basic qualifications for apprenticeship. Un-indentured workers shall not remain employed if apprentices become available for OJT assignment. Un-indentured workers shall be used to meet job site ratios except on wage-and-hour (prevailing wage) job sites.

Before being employed, the un-indentured person must sign a letter of understanding with the JATC and the employer - agreeing that they are not to accumulate more than two thousand (2,000) hours as an un-indentured, that they are subject to replacement by indentured apprentices, and that they are not to work on wage-and-hour (prevailing wage) job sites.

Should an un-indentured worker be selected for apprenticeship, the JATC will determine, as provided for in the apprenticeship standards, if some credit for hours worked as an un-indentured will be applied toward the minimum OJT hours of apprenticeship.

The JATC may elect to offer voluntary related training to un-indentured; such as Math Review, English, Safety, Orientation/Awareness, introduction to OSHA, First-Aid and CPR. Participation shall be voluntary.

Section 6.11: The employer shall contribute to the local health and welfare plans and to the National Electrical Benefit Fund (NEBF) on behalf of all apprentices and un-indentured. Contributions to other benefit plans may be addressed in other sections of this agreement. (See Article IV Section 4.03).

Section 6.12: Each job site shall be allowed a ratio of one (1) apprentice(s) for everyone (1) Journeyman Wireman.

| Number of Journeymen | Maximum Number of Apprentices/ Unindentured |
|---|---|
| 1 to 3 | 1 to 3 |
| 4 to 6 | 4 to 6 |
| etc. | etc. |

The first person assigned to any job shall be a Journeyman Wireman.

A job site is considered to be the physical location where employees report for their work assignments. The employer's shop (service center) is considered to be a separate, single job site. All other physical locations where workers report for work are each considered to be a single, separate job site.

Section 6.13: An apprentice is to be under the supervision of a Journeyman Wireman at all times. This does not imply that the apprentice must always be in-sight-of a Journeyman Wireman. Journeymen are not required to constantly watch the apprentice. Supervision will not be of a nature that prevents the development of responsibility and initiative. Work may be laid out by the employer's designated supervisor or journeyman based on their evaluation of the apprentice's skills and ability to perform the job tasks. Apprentices shall be permitted to perform job tasks in order to develop job skills and trade competencies. Journeymen are permitted to leave the immediate work area without being accompanied by the apprentice.

Apprentices who have satisfactorily completed the first four years of related classroom training using the NJATC curriculum and accumulated a minimum of 6,500 hours of OJT with satisfactory performance, shall be permitted to work alone on any job site and receive work assignments in the same manner as a Journeyman Wireman. An apprentice shall not be the first person assigned to a job site and apprentices shall not supervise the work of others.

Section 6.14: Upon satisfactory completion of apprenticeship, the JATC shall issue all graduating apprentices an appropriate diploma from the NJATC. The JATC shall encourage each graduating apprentice to apply for college credit through the NJATC. The JATC may also require each apprentice to acquire any electrical license required for journeymen to work in the jurisdiction covered by this agreement.

Section 6.15: The parties to this Agreement shall be bound by the Local Joint Apprenticeship and Training Trust Fund Agreement which shall conform to Section 302 of the Labor-Management Relations Act of 1947 as amended, ERISA, and other applicable regulations.

The Trustees authorized under this Trust Agreement are hereby empowered to determine the reasonable value of any facilities, materials, or services furnished by either party. All funds shall be handled and disbursed in accordance with the Trust Agreement.

Section 6.16: All employers subject to the terms of this Agreement shall contribute the amount of funds specified by the party's signatory to the local apprenticeship and training trust agreement. The current rate of contribution is: 1% of the Journeyman straight-time rate per hour for each hour worked. This sum shall be due the Trust Fund by the same date as is their payment to the NEBF under the terms of the Restated Employers Benefit Agreement and Trust.

## ARTICLE VII
## Vacation

Section 7.01: Upon written authorization from the employee, the Employer shall make a weekly payroll deduction of six percent (6%) from the gross pay of each employee. The employee shall request the payroll deduction at the beginning of employment with an employer. The employee shall notify the employer, in writing of any modifications to their participation status for the voluntary payroll deduction in the month of January or July. Payroll deduction revisions will be made effective on the first payroll of the following month. The Employer monthly shall forward the amount of individual deductions from each employee as shown on the monthly payroll to Velocity Credit Union, ATTN: Teller Operations, P.O. Box 1089, Austin, TX, 78767, for deposit to that employee's Velocity Credit Union vacation account, and simultaneously shall provide the Local Union with a written report which sets forth, for each employee, the number of hours worked, the employee's classification and pay rate, the employee's gross pay, and the amounts deducted.

Section 7.02: The payment and payroll report shall be mailed to reach the Velocity Credit Union no later than the 15th day of the month following the end of each benefit period.

Section 7.03: Each employee shall be allowed to take two (2) weeks of annual vacation between February 1st and January 31st.

Section 7.04: An Employer's failure to timely remit the payroll deductions or payroll report to the Velocity Credit Union, or the payroll report to the Local Union, as required above shall be treated as a delinquent contribution under the terms of the applicable Inside Construction Agreement.

## ARTICLE VIII
## Annuity Plan

It is mutually agreed between the parties hereto and in accordance with the IBEW Local Union 520 Annuity Plan entered into by and between the Central Texas Chapter, NECA, and Local Union 520, IBEW, the Employer will forward to the Annuity Plan an amount equal to the percentage levels per Appendix A (See Article IV Section 4.03) of the gross wages of all classifications of employees for all hours worked within the geographical limits of the Union's jurisdiction when work is performed for any Employer operating under this Agreement. The payment shall be made monthly, together with the payroll report forms specified in Article IV.

## ARTICLE IX
## 401(k) Savings Plan

All employers signatory to this Agreement and/or employing workmen under the terms of this Agreement, shall deduct from each employee's Gross Weekly Payroll of employees who wish to participate, a voluntary deductible amount to be deposited into a 401(k) savings plan, upon the written request of each employee. Employees may enroll at the beginning of the employment with an Employer and enroll or change withholding each year during the month of January or July. Withholding will be made effective on the first payroll of the following month.

## ARTICLE X
## Health and Welfare

It is hereby mutually agreed between the parties hereto and in accordance with the Benefit contract governing the electrical benefit fund entered into by and between the Central Texas Chapter, NECA, and Local Union 520, IBEW, that the Employer will forward to the Central Texas Health and Benefit Plan the following contributions as per Appendix A (See Article IV Section 4.03) for all hours actually worked by each employee (both straight time and overtime) within the geographical limits of the Union's jurisdiction when work is performed for any Employers operating under the terms of the basic Agreement for all Employers. Payments shall be made monthly together with a monthly payroll report on a form that will be furnished for that purpose by the Trustees of the Electrical Benefit Plan.

It is agreed that employers shall contribute solely up to $5.45 per hour of increases declared by the Trustees of the Plan. Any increases above $5.45 shall be split equally between the employer and employee through a wage reduction of the JIW rate of pay, all other classifications shall adjust accordingly.

## ARTICLE XI

## National Labor Management Cooperative Committee

Section 11.01: The parties agree to participate in the NECA-IBEW National Labor-Management Cooperation Fund, under authority of Section 6(b) of the Labor-Management Cooperation Act of 1978, 29 U.S.C. §175(a) and Section 302(c)(9) of the Labor-Management Relations Act, 29 U.S.C. §186(c)(9). The purposes of this Fund include the following:

(1) to improve communication between representatives of labor and management;
(2) to provide workers and employers with opportunities to study and explore new and innovative joint approaches to achieving organizational effectiveness;
(3) to assist workers and employers in solving problems of mutual concern not susceptible to resolution within the collective bargaining process;
(4) to study and explore ways of eliminating potential problems which reduce the competitiveness and inhibit the economic development of the electrical construction industry;

(5) to sponsor programs which improve job security, enhance economic and community development, and promote the general welfare of the community and the industry;
(6) to encourage and support the initiation and operation of similarly constituted local labor-management cooperation committees;
(7) to engage in research and development programs concerning various aspects of the industry, including, but not limited to, new technologies, occupational safety and health, labor relations, and new methods of improved production;
(8) to engage in public education and other programs to expand the economic development of the electrical construction industry;
(9) to enhance the involvement of workers in making decisions that affect their working lives; and
(10) to engage in any other lawful activities incidental or related to the accomplishment of these purposes and goals.

Section 11.02: The Fund shall function in accordance with, and as provided in, its Agreement and Declaration of Trust, and any amendments thereto and any other of its governing documents. Each Employer hereby accepts, agrees to be bound by, and shall be entitled to participate in the NLMCC, as provided in said Agreement and Declaration of Trust.

Section 11.03: Each employer shall contribute one cent ($.01) per hour worked under this Agreement up to a maximum of 150,000 hours per year. Payment shall be forwarded monthly, in a form and manner prescribed by the Trustees, no later than fifteen (15) calendar days following the last day of the month in which the labor was performed. The Central Texas Chapter, NECA, or its designee, shall be the collection agent for this Fund.

Section 11.04: If an Employer fails to make the required contributions to the Fund, the Trustees shall have the right to take whatever steps are necessary to secure compliance. In the event the Employer is in default, the Employer shall be liable for a sum equal to 15% of the delinquent payment, but not less than the sum of twenty dollars ($20), for each month payment of contributions is delinquent to the Fund, such amount being liquidated damages, and not a penalty, reflecting the reasonable damages incurred by the Fund due to the delinquency of the payments. Such amount shall be added to and become a part of the contributions due and payable, and the whole amount due shall bear interest at the rate of ten percent (10%) per annum until paid. The Employer shall also be liable for all costs of collecting the payment together with attorneys' fees.

## ARTICLE XII
## P.A.C. Fund

The Employer agrees to deduct and transmit to the Local Union 520, IBEW, Committee on Political Education (IBEW-COPE) .05 cents for each clock hour worked from the wages of those employees who voluntarily authorize such contributions on the forms provided for that purpose by IBEW-COPE.

The deductions will be made monthly and reported and remitted in accordance with Article IV, Section 11 of this Agreement.

Any Employee may revoke the voluntary authorization at any time by notifying the Company and IBEW-COPE in writing of a desire to do so.

The Union will indemnify and save the Company harmless from any claims, suits, or any other form of liability as a result of making payroll deductions described above.

## ARTICLE XIII

This Agreement set forth the entire contract between the Chapter and the Union and supersedes all previous understandings and Agreements between them and amendments thereto.

## ARTICLE XIV
## Substance Abuse Language

The dangers and costs that alcohol and other chemical abuses can create in the electrical contracting industry in terms of safety and productivity are significant. The parties to this Agreement resolve to combat chemical abuse in any form and agree that, to be effective, programs to eliminate substance abuse and impairment should contain a strong rehabilitation component. The local parties recognize that the implementation of a drug and alcohol policy and program must be subject to all applicable federal, state, and local laws and regulations. Such policies and programs must also be administered in accordance with accepted scientific principles and must incorporate procedural safeguards to ensure fairness in application and protection of legitimate interests of privacy and confidentiality. To provide a drug-free workforce for the Electrical Construction Industry, each IBEW local union and NECA chapter shall implement an area-wide Substance Abuse Testing Policy. The policy shall include minimum standards as required by the IBEW and NECA. Should any of the required minimum standards fail to comply with federal, state, and/or local laws and regulations, they shall be modified by the local union and chapter to meet the requirements of those laws and regulations.

## ARTICLE XV
## Code of Excellence

The parties to this Agreement recognize that to meet the needs of our customers, both employer and employee must meet the highest levels of performance, professionalism, and productivity. The Code of Excellence has proven to be a vital element in meeting the customers' expectations. Therefore, each IBEW local union and NECA chapter shall implement a Code of Excellence Program. The program shall include minimum standards as designed by the IBEW and NECA.

ARTICLE XV1 – Local Union 520 Administrative Fund

(a) Effective June 6, 2022, all employers subject to the terms of this Agreement shall contribute an amount equal to ten cents($.10) per hour worked by each employee working under the terms of this agreement. The sum shall be due no later than the 15th of the month following the end of the calendar month in which the work was performed on a form provided by the Administration Fund.

(b) These funds are for the administration of the benefits processing and the Administrator of the "Fund" shall be appointed by the Central Texas Chapter, NECA. The Administrator and CTXNECA will indemnify and save the Union harmless from any claims, suits, or any other form of liability as a result or administering this fund as described above.

(c) No part of the funds collected under this fund shall be used for any purpose which is held to be in conflict with the interests of the IBEW and its Local Unions.

(d) The failure of an individual employer to comply with the applicable provisions of the fund shall constitute a breach of this labor agreement and shall be subject to the same delinquency requirements as pertain to the other trust funds set forth in this agreement. It shall be the responsibility of the fund and/or the fund administrator, not the Local Union to enforce this provision.

**Separability Clause**

Should any provision of this Agreement be declared illegal by any court of competent jurisdiction, such provision shall immediately become null and void, leaving the remainder of the Agreement in full force and effect and the parties shall, thereupon, seek to negotiate substitute provisions which are in conformity with the applicable laws.

SIGNED FOR THE UNION:

Local Union No. 520 of the International Brotherhood of Electrical Workers

By: [signature]
Ben Brenneman
Business Manager/Financial Secretary

Date: 6/1/2022

SIGNED FOR THE EMPLOYER:

Central Texas Chapter National Electrical Contractors Association

By: [signature]
Don Kanetzky
Chapter Manager

Date: 6-1-2022

**1st YEAR APPRENTICE WAGE
MEMORANDUM OF UNDERSTANDING**

**BETWEEN**

**CENTRAL TEXAS CHAPTER, NECA**

**AND**

**IBEW LOCAL UNION 520**

It is mutually agreed upon between IBEW Local 520 and Central Texas Chapter, NECA, effective May 27, 2019, that the minimum wage for a first-year apprentice shall be $15.00 per hour. This MOU shall remain in effect until such time as 50% of the JIW wage rate is greater than $15.00 per hour.

SIGNED FOR THE UNION:

Local Union No. 520 of the International Brotherhood of Electrical Workers

By: [signature]
Ben Brenneman
Business Manager/Financial Secretary

Date 6/1/2022

SIGNED FOR THE EMPLOYER:

CENTRAL TEXAS CHAPTER, NECA

By: [signature]
Don Kanetzky
Executive Director

Date 6-1-2022

**CE ADVANCEMENT**
**MEMORANDUM OF UNDERSTANDING**

**BETWEEN**

**CENTRAL TEXAS CHAPTER, NECA**

**AND**

**IBEW LOCAL UNION 520**

A CE shall obtain a Texas State Journeyman's License before being upgraded to JIW status.

SIGNED FOR THE UNION:

Local Union No. 520 of the International
Brotherhood of Electrical Workers

By: [signature]
Ben Brenneman
Business Manager/Financial Secretary

Date 6/1/2022

SIGNED FOR THE EMPLOYER:

CENTRAL TEXAS CHAPTER, NECA

By: [signature]
Don Kanetzky
Executive Director

Date 6-1-2K22

2022 Residential MOU

**Scope:** This MOU shall apply to all dwelling units including single family dwellings, apartments, and condominiums four stories and below. This MOU shall not apply to the commercial portion of mixed-use developments.

1. A CW/CE, having attained a Residential Journeyman's License, shall be awarded 2000 SBCs/ OJT hours. This CW/CE shall be allowed to work unsupervised on residential construction/service work.
2. A worker holding a Residential or Unrestricted Journeyman's License shall be the first person assigned to any residential project.
3. On all residential projects with four or more workers, a worker holding a Residential Journeyman's License shall be designated Residential foreman. This Residential foreman shall be allowed to supervise a crew of up to 10 workers of his classification or below, including first- and second-year apprentices. This Residential foreman shall receive a 10% pay premium above his/her classification.
4. On all residential projects requiring more than 11 workers, one shall be designated Residential General Foreman. The Residential General Foreman shall receive a 20% pay premium above his/her classification.
5. There shall be one foreman per 10 workers.
6. A CW/CE with a Residential Journeyman's License shall continue to accrue SBCs/OJT hours and be advanced in the CW/CE program accordingly.

SIGNED FOR THE UNION:

Local Union No. 520 of the International Brotherhood of Electrical Workers

By: [signature]

Ben Brenneman
Business Manager/Financial Secretary

Date: 6/7/2022

SIGNED FOR THE EMPLOYER:

Central Texas Chapter National Electrical Contractors Association

By: [signature]

Don Kanetzky
Chapter Manager

Date: 6-7-2K22

# SHORT CALL EXTENSION

## MEMORANDUM OF UNDERSTANDING
## BETWEEN
## CENTRAL TEXAS CHAPTER, NECA
## AND
## IBEW LOCAL UNION 520

In order to accommodate short term employment needs of the employer signed to this agreement, and the needs of our customers, the union and employer agree to the following:

Article III, Section 3.12 of the Inside Agreement between Central Texas Chapter, NECA and Local Union 520, of the International Brotherhood of Electrical Workers, shall have the following language added to the existing language contained in Article III, Section 3.12:

> A forty (40) hour call may be extended an additional forty (40) hours by the employer is job conditions warrant such extension. An applicant is not required to stay for the second forty (40) hour period unless told in advance the job as for eighty (80) hours. For the purposes of calculating hours worked under this Memorandum, only the straight time hours worked will be used. Any overtime worked during the one (1) or two (2) week period covered by this Memorandum will not affect the applicant's position on the Out-of-Work List.

This Memorandum shall continue in effect from year to year hereafter unless changed or terminated in the same manner as prescribed for the Inside Agreement.

By: [signature]
Chris Wagner
Business Manager/Financial Secretary
IBEW Local Union 520

Date 6/1/2022

By: [signature]
Don Kanetzky
Executive Director
Central Texas NECA

Date 6-1-2022

# SMALL WORKS
# MEMORANDUM OF UNDERSTANDING

## BETWEEN

## CENTRAL TEXAS CHAPTER, NECA

## AND

## IBEW LOCAL UNION 520

IBEW Local Union 520 and Central Texas Chapter NECA bargaining unit employers have repeatedly discussed possible solutions to gaining market share within the small works arena. In an effort to assist all signatory contractors in this arena, Local 520 offers the following:

**Four Person Crew**

Effective June 6, 2022 the Union agrees on any/all jobs throughout the Local 520 jurisdiction, with four (4) or less employees, the signatory contractor may utilize the services of a Construction Electrician (CE) and/or a 6th period apprentice. This CE or apprentice must be in possession of a State of Texas Journeyman License and may work alone, if necessary.

Additionally, the licensed CE may supervise up to three (3) additional equal or lower classified workers (CE's and/or CW's). This crew mix would not include Apprentice Wiremen. As long as the jobsite requires 4 or less employees, there will be no need for a Journeyman Inside Wireman (JIW) nor a Foreman (F). Should the four-person crew increase to five (5) or more, a licensed JIW or a licensed Foreman must be utilized.

Due to the market conditions, the parties recognize this agreement to be a variance to Article VI Section 6.12 of the inside agreement that necessitates the JIW being the first person on the job. The parties recognize Apprentices and CW/CEs operate under a formal training program where OJT under direct and indirect supervision by a JIW is still an important component to their development. Therefore, employers must be diligent to ensure CW/CE employees receive OJT training supervised by a JIW outside of these qualifying projects.

Signatory Contractors are not limited to any number of Four Person Crew jobsites. Pay rates and applicable benefits for the above classified workers shall be the ones listed in the Local 520 Inside Collective Bargaining Agreement between IBEW Local Union 520 and Central Texas Chapter NECA.

This Memorandum of Understanding will expire on June 2, 2025 unless both Parties agree to extend it for an additional timeframe.

SIGNED FOR THE UNION:

Local Union No. 520 of the International
Brotherhood of Electrical Workers

By: ______________________
Ben Brenneman
Business Manager/Financial Secretary

Date 6/1/2022

SIGNED FOR THE EMPLOYER:

CENTRAL TEXAS CHAPTER, NECA

By: ______________________
Don Kanetzky
Executive Director

Date 6-1-2022

**Memorandum of Understanding**
**Summer Worker Program**

1. Must be by informal understanding between the local Union, the Employer and the JATC, with written guidelines.

2. The guidelines should specify the following conditions:

   a. The maximum number to be employed.

   b. Effective only when placement will not displace an Apprentice or Intermediate Journeyman.

   c. Qualifications:
      1. At least 16 years old
      2. A bona fide student (evidence required)
      3. Summer worker and employer signatures on statement of understanding (sample attached)

   d. Placement for a specific period of time, not to exceed 90 days. (Ending with the first pay period in September).

   e. Placed as a Summer Worker. NOT as an apprentice. (Cannot be referred, or worked on jobs requiring registered apprentices).

   f. Rate of pay shall be equal to that of a first period indentured apprentice.

   g. Work performed as a Summer Worker is not counted towards apprenticeship.

   h. Wages paid to Summer Workers are included in gross labor payroll, and the 3% of gross labor payroll payment to NEBF must include Summer Workers wages.

   i. Limited electrical work (same as unindentured apprentice).

By: [signature]
Benn Brenneman
Business Manager/Financial Secretary
IBEW Local Union 520

Date 6/1/2022

By: [signature]
Don Kanetzky
Executive Director
Central Texas NECA

Date 6-1-2K22

**REVISED (Date corrected)**

**Memorandum of Understanding**

**Between IBEW Local Union 520 and Central Texas Chapter, NECA**

Effective June 6, 2022 through June 2, 2025.

On jobs of five (5) or more days duration on the main campus* of the University of Texas, if parking is not provided, the employer will reimburse $6.00 per day for parking to each employee who reports to work on time and works all regular hours available to him. The employer is not responsible to provide transportation to and from parking areas.

By: [signature]
Ben Brenneman
Business Manager/Financial Secretary
IBEW Local Union 520

By: [signature]
Don Kanetzky
Executive Director
Central Texas NECA

Date: 6/1/2022

Date: 6-7-2022

*from I-35 to Guadalupe Street, from East & West Dean Keeton Street to East & West Martin Luther King, Jr. Blvd.

## ZONE III MEMORANDUM OF UNDERSTANDING

It is mutually agreed between IBEW Local Union 520 and Central Texas Chapter, NECA, effective June 6, 2022, that the following counties shall be designated as "Zone III":

> Runnels, Coleman, Brown, Tom Green, Concho, McCulloch, Menard, Mason, and Kimble

It is further agreed that, within Zone III, the JIW rate of pay shall be as follows:

| | |
|---|---|
| June 6, 2022: | $28.52 |
| January 1, 2023: | $28.52 |
| January 2, 2024: | $28.75 |
| January 6, 2025: | $29.00 |

Wage rates for CEs shall be set per the following table for the period of June 6, 2022 – June 2, 2025:

| CE 1 | CE 2 | CE 3 | CE 4 | CE 5 | CE 6 | CE 7 | CE 8 | CE 9 | CE 10 |
|---|---|---|---|---|---|---|---|---|---|
| 45% | 45% | 50% | 55% | 60% | 65% | 70% | 75% | 80% | 90% |

All other terms and conditions of employment will be those set forth in the AGREEMENT Between The CENTRAL TEXAS CHAPTER of the NATIONAL ELECTRICAL CONTRACTORS ASSOCIATION, INC. and LOCAL UNION NO. 520 of the INTERNATIONAL BROTHERHOOD OF ELECTRICAL WORKERS.

SIGNED FOR THE UNION:

Local Union No. 520 of the
International Brotherhood of
Electrical Workers

Ben Brenneman
Business Manager

6/7/2022
Date

SIGNED FOR THE CHAPTER:

Central Texas Chapter
National Electrical Contractors
Association, Inc.

Don Kanetzky
Chapter Manager

6-7-2022
Date

# Construction Wireman/Construction Electrician Memorandum of Understanding

**PURPOSE:**

This agreement has two goals; one is to recruit an adequate number of personnel to meet the demands of the electrical construction industry in the jurisdiction covered by the inside construction and maintenance agreement. The second objective is to establish a standard by which those recruited will be properly placed for continuing skills based training.

**OBJECTIVES:**

A. Provide a uniform means by which individuals can be brought into the organized industry.
B. Provide employment opportunities for those individuals who may not meet the entrance requirements of the local AETA
C. Establish a fair wage scale based on a skill standard that provides a clear and formal path to becoming a Journeyman Inside Wireman while maintaining a productive workforce.
D. Provide electrical employees with experience and potential, an avenue to becoming a Journeyman Inside Wireman.
E. To provide a second chance program for those indentured apprentices who discover that they do not fit into the AETA program.
F. To provide Central Texas Chapter, NECA and IBEW Local Union 520 the autonomous means of developing training programs to meet the needs of changing local markets.

**DEFINITIONS:**

A. CW/CE – Construction Wireman/Construction Electrician
B. SBC – Skill Based Credits
C. AETA – Austin Electrical Training Alliance (formerly called Joint Apprenticeship Training Center)
D. JATC – Joint Apprenticeship Training Committee
E. LU 520 – International Brotherhood of Electrical Workers Local Union 520
F. NECA – Central Texas National Electrical Contractors Association
G. TDLR – Texas Department of Licensing and Regulation
H. OJT – On the Job Training

**SECTION 1 – ADMINISTRATION**

A. The AETA and LU 520 shall be responsible for:

1) Administering skill-based evaluations (supervised by Local Union staff)
2) Monitoring progress of the CW/CE for wage advancement
3) Develop and deliver skill-based training courses
4) Notifying LU 520 of the number of apprentices available for work assignments
5) Recruiting, processing and dispatching applicants to employers for assignment.

B. Either party (NECA, LU 520 or AETA) may review all skill-based evaluations and evaluation procedures.

## SECTION 2 – WAGES, BENEFITS AND ADVANCEMENT

Upon successful accumulation of 16,000 Skill Based Credits (SBC) and successful completion of a Texas State Journeyman's License the Construction Electrician shall be upgraded to Journeyman Inside Wireman.

**A. Wages Appendices A1 and A2**

1. Accumulated SBC's shall determine the individuals initial pay rate. Individuals shall advance upon meeting the requirements shown in Appendix D.
   or

2. Experienced Applicants with verifiable industry wage -or- AETA Transferees (Ref: SECTION 5): wages shall remain frozen until accumulated SBC's warrant pay advancement.

**a. BENEFITS – REFERENCE APPENDICES A1 and A2:**

1. Accumulated SBC's shall determine what level of benefits shall apply.
2. All benefits shall be paid in accordance with the various trust fund qualifications.

**b. SKILLS BASED CREDITS (SBC'S)** shall accrue by the following methods:

1. One SBC per each OJT hour worked for a signatory contractor.
2. One SBC for every two (2) OJT hours worked for a non-signatory contractor (wage documentation required; no credit (SBC's) for hours worked prior to program enrollment).
3. SBC's from skill based evaluation.
4. SBC's credited by successful completion of skills based courses. SBC's achieved in this manner shall not exceed 4,000 for the life of the program.
   (see APPENDIX C)

   Note: In no case shall SBC's be earned above the stated maximums through the evaluation process and/or the optional course work within each skill discipline (see APPENDIX B).

c. **EXPERIENCED APPLICANTS SHALL**:

1) Provide verifiable electrical industry wage documentation to establish their wage rate. (wage documents for public works projects where a wage determination is established shall not be eligible for verification)

OR

2) Take the next available skills based evaluation to determine how many SBC's shall be credited and establish initial wage rate.

SEE APPENDICES A1 AND A2 FOR EVALUATION, CLASS SBC'S AND WAGE SCHEDULE.

**SECTION 3 – IMPLEMENTATION**:

The LU 520 shall be primarily responsible for the recruitment, processing and dispatching of applicants to employers. The LU 520 shall provide all processing information to the AETA for the purpose of tracking the CW/CE's progress in the program.

The JATC shall be responsible for the training of participants in accordance with Article VI, section 6.01 of the inside agreement.

The EMPLOYER shall be responsible for providing a termination slip to the LU 520, NECA, and the AETA when a CW/CE becomes unemployed.

CW/CE shall be employed on a conditional basis for 90 days from their first assignment. During the conditional employment period the LU 520 and NECA shall determine the individuals continued status in the program.

No employer is guaranteed a specific number of CW/CE.

Each job shall follow a ratio of one or more (1 or more) CW/CE(s) to one (1) JIW.

An employer who fails or refuses to hire available apprentices, in accordance with the agreed upon ratio of apprentices to journeymen, shall not be entitled to hire CW/CE.

CW/CE may be transferred from one qualifying project to another by the employer.

CW/CE shall not be included in the calculation of the apprentice to journeyman ratio.

Referral records may be inspected at LU 520 by a representative of the Employer or the Association.

# Construction Wireman/Construction Electrician Memorandum of Understanding

Effective January 1, 2020 all Construction Wiremen and Construction Electricians are required to provide proof of completion, by originally issued card or certificate, of an OSHA 10 safety training course.

## SECTION 4 – SUPERVISION:

The CW/CE who has less than 8,000 SBC's shall be under the supervision of a Journeyman Inside Wireman. It shall be the responsibility of the supervisor to lay out the work required and to permit the CW/CE to perform the work on his/her own. A CW/CE who has 8,000 SBC's shall be allowed to work with no supervision but shall not supervise any apprentices or Journeyman Wireman.

## SECTION 5 – TRANSFERS:

A. All transfers shall be approved by the JATC.
B. Individuals are limited to a maximum of (2) transfers.
C. Transferees shall not experience a Wage Rate or Benefit Reduction.
D. AETA to CW/CE program:
   Local Apprentices from AETA apprenticeship program may transfer to the CW/CE program at an equal pay rate providing the apprentice has:
   1) A satisfactory work history (hours worked, absenteeism, and tardiness); and
   2) Established in writing the basis for the transfer.
   3) Apprentice transferees shall be credited one (1) SBC for each OJT Hour + (500) SBC's per completed academic year of apprenticeship. In no instance shall this transfer result in the apprentice being granted more than the maximum SBC's as shown below:

**AETA to CW/CE Credit Table**

| AETA Completed | Credited SBC's | AETA Completed | Credited SBC's |
|---|---|---|---|
| Less than 1 year | 2000 | Completed 3rd year | 8000 |
| Complete 1st year | 4000 | Completed 4th year | 10000 |
| Complete 2nd year | 6000 | Completed 5th year | 12000 |

E. CW/CE to AETA Program:

   CW/CE meeting the requirements for entrance into the AETA program may transfer to the AETA program as outlined by the JATC standards. The transferring CW/CE will complete the IBEW/NECA ETA Proficiency Exam to determine placement in the academic portion of the training and will receive OJT Hour credits based on JATC guidelines. Transferees shall not experience a reduction in their wage rate.

**SECTION 6 – TERM OF AGREEMENT:**

This Agreement shall take effect on June 2, 2019. The terms and conditions of this Agreement shall continue on jobs bid under said terms until such jobs are completed.

**Disputes:** All allegations of infractions of this agreement shall be referred to the Labor Management Committee as defined in the current inside/maintenance collective bargaining agreement. In the event of a deadlock the matter shall be referred to the IBEW Seventh District Vice-president and the NECA Southern Region Director for final and binding adjudication. This agreement is a Memorandum of Understanding to the area inside construction and maintenance collective bargaining agreement and may continue with or without requirement of separate notice.

**Commitment:** The two parties, by signature below, hereby commit and promise to use their best efforts to see that this Memorandum is used to its highest level for the maximum benefit of employers and employees alike.

The parties further promise and agree that if changes are needed to this Memorandum; those changes will be addressed in an atmosphere of mutual trust and cooperation for the equal benefit of employers and employees alike. **Furthermore, any changes to this agreement or program shall be subject to review by the IBEW Seventh District Vice-President and the NECA Southern Region Director.**

| | |
|---|---|
| ______________________________ | ______________________________ |
| Ben Brenneman | Don Kanetzky |
| Business Manager/Financial Secretary | Chapter Manager |
| IBEW Local Union 520 | Central Texas Chapter, NECA |
| Date:____________________________ | Date: ____________________________ |

# Construction Wireman/Construction Electrician Memorandum of Understanding

## APPENDIX A1 (CW1-CW6)

| Benefits | CE 1 | CE 2 | CE 3 | CE 4 | CE 5 | CE 6 |
|---|---|---|---|---|---|---|
| Range SBC'S | 0-2K | 2.01K-4K | 4.01K-6K | 6.01K-8K | 8.01K-10K | 10.01K-12K |
| JIW Rate | 44% | 44% | 49% | 54% | 59% | 64% |
| A.E.T.A. | NA | NA | NA | 1% of JIW | 1% of JIW | 1% of JIW |
| NLMCC | $0.01 | $0.01 | $0.01 | $0.01 | $0.01 | $0.01 |
| H&B | Plan C | Plan B | Plan B | Plan B | Plan B | Plan B |
| NEBF (3%) | 3% | 3% | 3% | 3% | 3% | 3% |
| Annuity | NA | NA | NA | 3% | 3% | 3% |
| AMF | .10 | .10 | .10 | .10 | .10 | .10 |

## APPENDIX A2 (CE1- CE 4)

| Benefits | CE 7 | CE 8 | CE 9 | CE 10 |
|---|---|---|---|---|
| Range SBC's | 12.01K-13K | 13.01K-14K | 14.01K-15K | 15.01K- more |
| JIW Rate | 68% | 73% | 78% | 85% |
| A.E.T.A. | 1% of JIW | 1% of JIW | 1% of JIW | 1% of JIW |
| NLMCC | $0.01 | $0.01 | $0.01 | $0.01 |
| H&B | Plan B | Plan B | Plan B | Plan B |
| NEBF (3%) | 3% | 3% | 3% | 3% |
| Annuity | 5% | 5% | 5% | 5% |
| AMF | .10 | .10 | .10 | .10 |

| |
|---|
| Low |
| Middle |
| High |

**Construction Wireman/Construction Electrician**
**Memorandum of Understanding**

**NOTE: Benefit Schedule shown reflects current rates. Rates shall be adjusted as per the Current Inside Agreement.**
**-Health and Welfare provides the employee with the option to select employee single coverage (for Levels 2, 3 & 4 only) or employee/dependent coverage (for Levels 2-8). Employees may change this election once each calendar year or more often as the trust fund rules provide.**
**-Only SBCs earned from participating employers qualify for benefits eligibility.**

## APPENDIX B

| SKILL DISCIPLINE | MAX SBC's |
|---|---|
| Branch Wiring | 6,400 |
| Feeder Wiring | 1,600 |
| Panels & Transformers | 1,600 |
| Switchgear & Motor Control Center | 1,120 |
| Motors & Motor Controls | 800 |
| Lighting & Lighting Controls | 2,400 |
| Grounding | 160 |
| Devices | 320 |
| Electrical Codes & Ordinances | 160 |
| Blueprints & Specifications | 160 |
| Meters & Tools | 160 |
| OSHA & Job Safety | 160 |
| Agreements | 160 |
| Service & Troubleshooting | 800 |

## APPENDIX C

### Optional Coursework SBC Curriculum Allocation

| Skills Course | SBC's Credit | Course Hours |
|---|---|---|
| Branch Wiring | 920 | 72 |
| Electrical Codes & Ordinances | 320 | 30 |
| Service/Troubleshooting | 280 | 24 |
| Panels & Transformers | 280 | 24 |
| OSHA & Job Safety | 280 | 24 |
| Meters & Tools | 280 | 24 |
| Feeder Wiring | 280 | 24 |
| Blueprints & Specifications | 280 | 24 |
| Agreements | 240 | 24 |
| Switchgear & Motor Control Centers | 200 | 18 |
| Motors & Motor Controls | 200 | 18 |
| Lighting & Lighting Controls | 200 | 18 |
| Grounding | 120 | 12 |
| Devices | 120 | 12 |
| TOTAL | 4000 | 180 |

APPENDIX D

| Classification | SBC's | Training | Awarded |
|---|---|---|---|
| **CW2** | 2000 | Conduit Bending 1 | 230 |
| **CW3** | 4000 | Blueprint Reading | 280 |
| **CW4** | 6000 | Conduit Bending 2 | 230 |
| **CW5** | 8000 | Codeology | 120 |
| **CW6** | 10000 | Basic Code | 120 |
| **CE1** | 12000 | Conduit Bending 3 | 230 |
| **CE2** | 13000 | Grounding/Transformers | 320 (120+200) |
| **CE3** | 14000 | Services | 200 |
| **CE4** | 15000 | Motor Control | 280 |
| **JIW** | 16000 | | |

B|N BELLNUNNALLY
ATTORNEYS & COUNSELORS

JAY WALLACE
TEL: 214.740.1407
FAX: 214.740.1407
JWALLACE@BELLNUNNALLY.COM

December 27, 2023

**VIA CMRRR #9414 7266 9904 2221 4527 24**
I.B.E.W. Local Union 520
Attn: Diarmid Campbell
909 Caddo Street
San Angelo, Texas 76901

**VIA CMRRR #9414 7266 9904 2221 4527 31**
Central Texas Chapter, NECA
Attn: Don Kanetzky
4000 Caven Road
Austin, Texas 78744

Re: Confirmation of May 30, 2023 Termination of Letter of Assent-A, Labor Agreement, and Bargaining Rights Assigned to NECA and IBEW, Local Union No. 520

To Whom it May Concern:

This firm represents A.S.H. Electrical Services, LLC ("A.S.H."). Direct all future communications regarding your contractual relationship with A.S.H and its termination to me.

As you are aware, A.S.H. sent a letter to both Central Texas Chapter, NECA and I.B.E.W. Local Union 520 ("Local Union") dated May 30, 2023 stating its intent to terminate its contract with both entities upon 150 days' notice and detailing the Local Union's failures to uphold its obligations under the collective bargaining agreement. According to the terms set forth in the Letter of Assent-A, A.S.H.'s May 30, 2023 letter, receipt of which has been confirmed, dutifully informed Local Union and Central Texas Chapter, NECA of its intent to terminate.

With regard to the Local Union's failures, specifically, the Local Union fraudulently induced A.S.H. into the Letter of Assent-A by promising to provide qualified craftsmen and women knowing that it could not fulfil this promise.

Furthermore, the Local Union made additional promises to A.S.H. that the union craftsmen in A.S.H.'s workforce would be subject to the Code of Excellence program, ensuring that the workers would adhere to certain rules and regulations. However, when issues with drug use by craftsmen **on the job** were brought before the Local Union, the Local Union took no action, despite such behaviors by craftsmen putting A.S.H. at high risk of liability, as well as its clients' and the general public's safety in risk. A.S.H. will not and cannot tolerate the Local Union's negligent operations within its business.

For these reasons, among others, A.S.H. properly provided notice of termination on May 30, 2023. Accordingly, A.S.H. considers its contractual relationship with IBEW to be terminated as of November 1, 2023 and withdrawals and/or revokes all collective bargaining rights assigned to the Local Union and Central Texas Chapter, NECA.

Sincerely,

Jay Wallace

INTERNATIONAL BROTHERHOOD OF ELECTRICAL WORKERS
LOCAL UNION 520
4818 East Ben White Boulevard, Suite 300 • Austin, Texas 78741
512.326.9540 • Fax 512.326.9596
Local 520

May 30, 2024

Adam Johnke
ASH Electrical Services
3214 Sunset Dr
San Angelo, TX 76904

Mr. Johnke,

I appreciate your commitment, as stated in your January 30, 2024 letter, to continue to abide by the terms of the CBA, at least through May 31, 2024. However, the CBA does not expire until June 1, 2025. In order to head off the litigation that will ensue the moment you prematurely move to terminate the CBA I will make one more attempt at explaining to you how termination or modification of the Agreement works.

As you note, Article I, Section 1.02(a) provides that "either party desiring to change or terminate this Agreement must provide written notification at least 90 days prior to the expiration date of the Agreement…" Though you provided the notice well over a year in advance of the expiration date of the Agreement, the Union will recognize that notice as you giving the Union a heads-up well in advance of the Agreement's expiration date that, once the Agreement expires on June 1, 2025, you wish to terminate the Agreement. The next phrase in Article I, Section 1.02 (a) states "…or any anniversary date occurring thereafter." This phrase means that, had you failed to timely provide notice 90 days prior to the expiration date, you would not forever waive your right to bargain for a termination of the Agreement, but rather you would again have a chance 90 days before the anniversary of the previous expiration date to again attempt to provide timely notice. Note that the duty to provide 90 days notice of a desire to change or terminate the Agreement applies to both parties. Thus, if the Local Union desires that the Agreement NOT be terminated, but instead to be "changed," the Union must provide you with notice at least 90 days prior to the June 1, 2025 expiration date. You can be assured that you will receive from the Union such notice at some point at least 90 days prior to the June 1, 2025 expiration date.

The exchange of notifications described in the paragraph above does not effect any change or termination of the Agreement. This merely begins a negotiation process wherein the parties must meet and confer to attempt to come to a mutual agreement. If none is reached then the parties may jointly or unilaterally submit the unresolved dispute to the Council on Industrial Relations (CIR). See Article I, Section 1.02(d). The CIR will then resolve the dispute by either authorizing your desired termination of the Agreement, or by imposing a new CBA with its own

expiration date. Until the dispute is resolved the current Agreement's terms remain in effect. See Article I, Section 1.02(c).

In your January 30, 2024 letter you cite to the CBA's Article I, Section 1.01 to claim that Article I allows parties to terminate the Agreement on an annual basis. This is a misreading of the language. What the language actually means is that, in the event the parties do not timely exchange the required notifications and just let the expiration date pass without terminating or changing the Agreement, there is another opportunity to terminate or to make changes by providing the required notifications prior to the anniversary of the CBA's expiration date. And if they fail to provide the notifications after the first anniversary, they may do so at the next one, and so on.

Please confirm your understanding that the CBA remains in effect until changed or terminated in accordance with the terms of Article I, which contains no provisions allowing either party to unilaterally change or terminate it. Also, to the extent you believe that the Local Union has not, in any way, abided by the Agreement, Article I, Sections 1.05-1.10 sets forth a grievance procedure for adjudicating your claims. Please feel free to make use of that procedure.

Kind Regards

Ben Brenneman
Business Manager/Financial Secretary
IBEW Local 520

Local 520

# International Brotherhood of Electrical Workers

Local Union 520

4818 East Ben White Boulevard, Suite 300 • Austin, Texas 78741
512.326.9540 • Fax 512.326.9596

2/3/2025

Adam Jhonke
A.S.H. Electrical Services
4000 Caven Rd.
Austin, TX 78745

RE: Changes to the A.S.H. Electrical Services/IBEW 520 Agreement

Mr. Johnke,

As I assured you by letter of May 30, 2024, this is notice, per Article I, Section 1.02(a) of the Inside Agreement, of IBEW Local 520's desire to modify the terms and conditions of said Agreement. Further, per Section 1.02(b) of said Article, the proposed changes will be specified in writing and provided to you no later than the first bargaining session. I propose that we meet on February 20, 2025 to begin negotiating a successor Agreement. I am, of course, open to considering any alternative dates you might propose.

Should there be any questions concerning the nature of this notice, please contact me at your earliest convenience.

Thank you,

Ben Brenneman
Business Manager
IBEW Local 520

IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS, AUSTIN DIVISION

| | | |
|---|---|---|
| **INTERNATIONAL BROTHERHOOD OF ELECTRICAL WORKERS, LOCAL 520, Plaintiff,** | § § § | |
| **v.** | § § | **CIVIL ACTION NO. 1:25-cv-1643** |
| **A.S.H. ELECTRICAL SERVICES, LLC, Defendant.** | § § § | |

**PLAINTIFF'S ORIGINAL COMPLAINT**

TO THE HONORABLE UNITED STATES DISTRICT JUDGE:

Comes now Plaintiff, International Brotherhood of Electrical Workers ("IBEW"), Local 520, and complains of Defendant A.S.H. Electrical Services, LLC. In support of its complaint, Plaintiff states the following:

**NATURE OF THE ACTION**

1. IBEW Local 520 brings this action against Defendant to confirm and enforce a May 13, 2025 interest arbitration award, which included a new collective bargaining agreement ("CBA") issued by the Council on Industrial Relations for the Electrical Contracting Industry ("CIR"), an arbitration body co-sponsored by the National Electrical Contractors Association ("NECA") and the IBEW whose purpose is arbitrating labor disputes within the electrical industry. This action is filed under Section 301 of the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 185.

**JURISDICTION AND VENUE**

2. This Court has jurisdiction over Plaintiff's claims pursuant to 28 U.S.C. §§ 1331, 1343 and 29 U.S.C. § 185.

3. A substantial part of the events and omissions giving rise to the claim in this suit occurred in Travis County, Texas, and venue is thus proper in this Court pursuant to 28 U.S.C. § 1391 and 29 U.S.C. § 185.

**PARTIES**

4. Plaintiff IBEW Local 520 is a "labor organization" as defined in 29 U.S.C. § 152(5), which represents and seeks to represent workers employed in the electrical industry in Central Texas.

5. Defendant A.S.H. Electrical Services, LLC is a Texas limited liability company engaged in the electrical trade. Defendant is an "employer" as defined in 29 U.S.C. § 152(2). Defendant may be served with process by serving its registered agent, Adam Christopher Johnke, at 3214 Sunset Drive, San Angelo, Texas 76904, or wherever he may be found.

**FACTS**

6. On May 13, 2021, Defendant signed a Letter of Assent assigning its collective bargaining rights to the Central Texas Chapter of NECA as Defendant's representative and agreeing to be bound by the current and any subsequent approved Inside Agreement between NECA and Local 520. Under the Letter of Assent, Defendant became bound to an Inside Agreement ("the prior CBA") that remained effective until June 1, 2025, and continued in effect from year to year thereafter from June 1 through May 31 of each year, unless changed or terminated as provided for in other sections of the Agreement.

7. Section 1.02(d) of the Prior CBA provided,

> Unresolved issues or disputes arising out of a failure to negotiate a renewal or modification of this agreement that remain on the 20th of the month preceding the next regular meeting of the Council on Industrial Relations for the Electrical Contracting Industry (CIR) may be submitted jointly or unilaterally to the Council for adjudication. Such unresolved issues or disputes shall be submitted no later than the next regular meeting of the Council following the expiration date of this

agreement or any subsequent anniversary date. The Council's decisions shall be final and binding.

8. On May 30, 2023, Defendant purported to revoke the Letter of Assent previously given to NECA. On December 27, 2023, Defendant announced its desire to terminate the Prior CBA. Local 520 informed Defendant that a mid-term termination of the Letter of Assent and the Prior CBA is not permissible. Local 520 did, however, accept the premature notices as sufficient to terminate the Letter of Assent upon its anniversary date and as notice of Defendant's desire to terminate the CBA at its expiration date.

9. On February 3, 2025, Local 520 notified Defendant by letter of Local 520's desire to modify the CBA between the parties. The parties met to bargain several times in March and April 2025, but no agreement on a successor to the still effective Prior CBA was reached.

10. In 2025, the CIR scheduled regular meetings in February, May, August and November. The August and November regular meetings post-dated the Prior CBA's June 1, 2025 expiration date. By April 2025, the CIR's May 2025 regular meeting was the only regular meeting scheduled to occur before that expiration date.

11. On April 16, 2025, under Prior CBA Section 1.02(d), to timely provide notice in advance of the Prior CBA's expiration date, and to ensure preservation during the Prior CBA's term of Local 520's rights under that section, Local 520 advised Defendant of its wish to submit to the CIR, for adjudication during the CIR's May 2025 regular meeting, unresolved issues that remained between the parties as of April 20, 2025, and that may continue to be unresolved in bargaining conducted after April 20, 2025. Local 520 invited Defendant to join in the submission to the CIR. Defendant did not respond to the invitation, so on April 17, 2025, Local 520 unilaterally submitted the bargaining dispute to the CIR for adjudication under Section 1.02(d) of the Prior CBA.

Case 1:25-cv-01643 Document 1-3 Filed 10/13/25 Page 4 of 6

12. On May 1, 2025, the due date for submissions to CIR for adjudication during its May 2025 session, Local 520 presented its submission to the CIR, which included its proposed changes to the CBA. The bargaining dispute was presented to the CIR at its May 13, 2025 meeting. Defendant participated by brief only, and Local 520 participated by brief and oral argument by Business Manager Ben Brenneman and Assistant Business Manager Diarmid Campbell during interest arbitration proceedings before the CIR.

13. The CIR's decision and award, dated May 13, 2025, in which the CIR noted its "careful consideration of the evidence submitted," ordered Local 520 and Defendant to sign and immediately implement the June 2, 2025 to June 4, 2028 collective bargaining agreement ("the New CBA") attached to and made a part of the CIR's decision and award. The CIR's decision and award addressed all the unresolved issues and disputes between the parties in the included New CBA.

14. On May 23, 2025, Defendant requested that the CIR reconsider its decision based on Defendant's claim that "a just and reasonable weighing of evidence presented did not occur." The CIR responded by letter on June 10, 2025, stating, "The CIR fully considered the issues you have raised in your request for reconsideration. There is no basis for the CIR to reconsider its decision, which is final and binding on the parties."

15. At all times since receiving the New CBA, Defendant has failed and refused to sign, implement, and be bound by the New CBA. Defendant continues to refuse to sign, implement, and be bound by the New CBA imposed upon it through interest arbitration before the CIR.

## CAUSE OF ACTION

16. In hearing and deciding the unresolved bargaining issues and disputes placed before it by Local 520, and in issuing its decision and award, the CIR acted within the scope of its authority, to which Defendant agreed under the Prior CBA.

17. The CIR arguably construed and/or applied the Prior CBA in issuing its May 13, 2025 decision and award, and the decision and award drew its essence from the Prior CBA. Any legal determination made by the CIR is beyond the authority of this Court to review and/or was proper. Under the Prior CBA and the CIR's May 13, 2025 decision and award, and accordingly under LMRA Section 301, 29 U.S.C. § 185, Defendant is obligated to accept the CIR's May 13, 2025 decision and award and to sign, implement, and comply with the New CBA that was a part of that decision and award. Local 520 is entitled to confirmation and enforcement of the CIR's May 13, 2025 decision and award.

## INJURY

18. As a result of Defendant's refusal to sign, implement, and comply with the New CBA, Local 520 and its members have been harmed. Specifically, Local 520 has been deprived of the benefit of a contract it negotiated on behalf of its members and the benefits paid to several joint NECA/IBEW funds on Local 520's behalf. Local 520's members have been harmed by being deprived of wages, hours, working conditions, and benefits required by the New CBA imposed upon Defendant through interest arbitration.

## PRAYER FOR RELIEF

Wherefore, premises considered, Plaintiff respectfully requests that Defendant be cited to appear and answer herein, and upon hearing, that the Court award Plaintiff the following relief:

A. Confirm and enforce the CIR's May 13, 2025 decision and award, and the included New CBA, by ordering Defendant to sign, implement, and comply with the entirety of the New CBA, including, but not limited to the payment of any unpaid compensation or unpaid fringe benefit contributions accrued from June 2, 2025 to the date of Defendant's full compliance with the New CBA.

B. Order Defendant to submit to an audit by an accountant of Local 520's choosing to determine the amounts of any unpaid compensation and/or unpaid fringe benefit contributions accrued from June 2, 2025 to the date of Defendant's full compliance with the New CBA.

C. Under Section 2.02(d) of the New CBA, order Defendant to pay to Local 520 all accountant and attorney fees it incurs in seeking the payment of monies identified in that section by bringing this action to confirm and enforce the CIR's May 13, 2025 decision and award.

D. Order Defendant to pay any attorney fees and costs incurred by Local 520, in addition to those described in the preceding paragraph, by bringing this action to confirm and enforce the CIR's May 13, 2025 decision and award.

E. Order all additional legal or equitable relief that the Court deems just and proper.

*Respectfully submitted,*

DEATS DURST & OWEN, PLLC

/s/ Matt Bachop

Matt Bachop
TBN: 24055127
mbachop@ddollaw.com
8140 N Mopac Expy, Suite 4-250
Austin, Texas 78759
(512) 474-6200
FAX (512) 474-7896

Attorney for Plaintiff

# Council on Industrial Relations for the Electrical Contracting Industry

DECISION NO. 8883

PARTIES IN DISPUTE:
A.S.H. Electric
Local Union No. 520

Austin, Texas
May 13, 2025
Inside

PRESENTATION:
By brief only for A.S.H. Electric
By brief and oral argument for Local Union No. 520

APPEARANCES:
For Local Union No. 520: B. Brenneman, D. Campbell

MATTERS IN DISPUTE:
1. Article I, Section 1.01 – Length of Agreement
2. Article II, Section 2.01 – Favored Nations
3. Article IV, Section 4.02 – Paid Holidays
4. Article IV, Section 4.03 – Wages
5. Article V – General Rules
6. Article V – Walk Time
7. Article VI, Section 6.16 – Apprenticeship Contribution
8. Article VIII – Annuity Plan

MEMBERS OF COUNCIL SITTING:

| FOR THE EMPLOYER | FOR THE UNION |
|---|---|
| D. Laffoon | M. Hager |
| S. Krieg | C. Bergfeld |
| J. Brunia | A. Warwick |
| T. Maloney | D. McInerney |
| F. Piatt | R. Wolf |
| L. Bell | D. Robinson |

DECISION:

After careful consideration of the evidence submitted, the Council rules as follows:

In the instant case, the parties are directed to sign and immediately implement the Collective Bargaining Agreement which is attached hereto and hereby made a part of this decision. The Council retains jurisdiction over disputes pertaining to this Agreement including any wage/fringe opener(s) contained therein and such disputes are to be returned to Council through the normal procedures if the parties are unable to reach agreement.

COUNCIL ON INDUSTRIAL RELATIONS
FOR THE ELECTRICAL CONTRACTING INDUSTRY

DECISION NO. 8883

UNANIMOUSLY ADOPTED:
Washington, DC
May 13, 2025

Acting Co-Chairman

Acting Co-Chairman

Secretary

June 2, 2025 - June 4, 2028

# AGREEMENT
Between

## A.S.H. Electrical Services LLC

and

## LOCAL UNION NO. 520 of the INTERNATIONAL BROTHERHOOD OF ELECTRICAL WORKERS

Austin, Texas

**June 2, 2022 - June 1, 2025**
**AGREEMENT**

**Between**

**A.S.H. Electrical Services LLC**

**and**

**LOCAL UNION NO. 520 of the**
**INTERNATIONAL BROTHERHOOD OF**
**ELECTRICAL WORKERS**
**Austin, Texas**

## PARTIES CLAUSE

Agreement by and between the A.S.H. Electrical Services LLC and LOCAL UNION 520, INTERNATIONAL BROTHERHOOD OF ELECTRICAL WORKERS. As used hereinafter in this Agreement, the term "Employer" shall mean A.S.H. Electrical Services LLC, and the term "Union" shall mean LOCAL UNION NO. 520, IBEW.

## BASIC PRINCIPLES

The Employer and the Union have a common and sympathetic interest in the Electrical Industry. Therefore, a working system and harmonious relations are necessary to improve the relationship between the Employer, the Union, and the Public. Progress in Industry demands a mutuality of confidence between the Employer and the Union. All will benefit by continuous peace, and by adjusting any differences by rational, common sense methods. Now, therefore, in consideration of the mutual promises and agreements herein contained, the parties hereto agree as follows:

# ARTICLE I
## EFFECTIVE DATE/CHANGES/GRIEVANCES/DISPUTES

Section 1.01: This Agreement shall take effect on June 2, 2025 and shall remain in effect through June 4, 2028, unless otherwise specifically provided for herein. It shall continue in effect from year to year thereafter, from the start of the first full pay period in June through the last pay period starting in May of each year, unless changed or terminated in the way later provided herein.

Section 1.02(a): Either party or an Employer withdrawing representation from the Chapter or not represented by the Chapter, desiring to change or terminate this Agreement must provide written notification at least 90 days prior to the expiration date of this Agreement or any anniversary date occurring thereafter.

(b) Whenever notice is given for changes, the nature of the changes desired must be specified in the notice, or no later than the first negotiating meeting unless mutually agreed otherwise.

(c) The existing provisions of the Agreement, including this Article, shall remain in full force and effect until a conclusion is reached in the matter of proposed changes.

(d) In the event that either party, or an Employer withdrawing representation from the Chapter or not represented by the Chapter, has given a timely notice of proposed changes and an agreement has not been reached by the expiration date or by any subsequent anniversary date to renew, modify, or extend this Agreement, or to submit the unresolved issues to the Council on Industrial Relations for the Electrical Contracting Industry (CIR), either party or such an Employer, may serve the other a ten (10) day written notice terminating this Agreement. The terms and conditions of this Agreement shall remain in full force and effect until the expiration of the ten (10) day period.

(e) By mutual agreement only, the Chapter, or an Employer withdrawing representation from the Chapter or not represented by the Chapter, may jointly, with the Union, submit the unresolved issues to the Council on Industrial Relations for adjudication. Such unresolved issues shall be submitted no later than the next regular meeting of the Council following the expiration date of this Agreement or any subsequent anniversary dates. The Council's decisions shall be final and binding.

(f) When a case has been submitted to the Council, it shall be the responsibility of the negotiating committee to continue to meet weekly in an effort to reach a settlement on the local level prior to the meeting of Council.

(g) Notice of a desire to terminate this Agreement shall be handled in the same manner as a proposed change.

Section 1.03: This Agreement shall be subject to change or supplement at any time by mutual consent of the parties hereto. Any such change or supplement agreed upon shall be reduced to writing, signed by the parties hereto, and submitted to the International Office of the IBEW for approval, the same as this Agreement.

Section 1.04: During the term of this Agreement, there shall be no stoppage of work either by strike or lockout because of any proposed changes in this Agreement or dispute over matters relating to this Agreement. All such matters must be handled as stated herein.

**GRIEVANCES/DISPUTES**

Section 1.05: There shall be a Labor-Management Committee of trustees representing the Union and three representing the Employers. It shall meet regularly at such stated times as it may decide. However, it shall also meet within 48 hours when notice is given by either party. It shall select its own Chairman and Secretary. The Local Union shall select the Union representatives and the Employer shall select the management representatives.

Section 1.06: All grievances or questions in dispute shall be adjusted by the duly authorized representative of each of the parties to this Agreement. In the event that these two are unable to adjust any matter within 48 hours, they shall refer the same to the Labor-Management Committee.

Section 1.07: All matters coming before the Labor-Management Committee shall be decided by a majority vote. Four members of the Committee, two from each of the parties hereto, shall be a quorum for the transaction of business, but each party shall have the right to cast the full vote of its membership and it shall be counted as though all were present and voting.

Section 1.08: Should the Labor-Management Committee fail to agree or to adjust any matter, such shall then be referred to the Council on Industrial Relations for the Electrical Contracting Industry for adjudication. The Council's decisions shall be final and binding.

Section 1.09: When any matter in dispute has been referred to conciliation or arbitration for adjustment, the provisions and conditions prevailing prior to the time such matters arose shall not be changed or abrogated until agreement has been reached or a ruling has been made.

Section 1.10: The Labor-Management Committee shall not recognize any grievance or dispute unless written notice of the charge is given within thirty (30) days after the representatives of the parties to this Agreement first became aware, or reasonably should have been aware, of a violation of this Agreement. This shall not apply to any Section which requires money to be deposited to any Trust Fund.

**ARTICLE II**
**Employers Rights - Union Rights**

Section 2.01: The Employer recognizes the Union as the exclusive representative of all its employees performing work within the jurisdiction of the Union for the purpose of collective bargaining in respect to rates of pay, wages, hours of employment and other conditions of employment.

Section 2.02(a): Certain qualifications, knowledge, experience, and financial responsibility are required of everyone desiring to be an Employer in the Electrical Industry. Therefore, an Employer who contracts for electrical work is a person, firm, or corporation, having these qualifications and maintaining a place of business and suitable financial status to meet payroll requirements and

employing at least one Journeyman Wireman.

(b) All Employers subject to the terms of this Agreement shall carry an Indemnity Bond, issued by a company authorized to do business in the State of Texas, the minimum for all employers shall be $5,000.00 as evidence of financial responsibility, and to insure proper payments to the Electrical Joint Apprenticeship and Training Trust Fund, the National Employees Benefit Board, the Austin Vacation Trust Fund, IBEW Local Union 520 Annuity Plan and Health and Welfare Plan, 401(k), and P.A.C. deductions, to Local Union 520, for any union dues or assessments withheld on behalf of employees, and wages required under this Agreement be paid directly to the affected employee(s). Bond amounts greater than $5000 shall be required based on the following formula outlined below:

(c) Each employer signatory to the collective bargaining agreement shall be required to secure a welfare bond of at least $5000. Employers shall be required to secure larger bonds based on the following formula: Employers shall provide a welfare bond based on the average monthly hours worked utilizing the previous three years to calculate the average. This number shall be multiplied by the aggregate amount of the benefit package and rounded up to the next one thousandth. If an employer has been delinquent in the payment of benefits more than twice, they shall be required to pay benefits timely on a weekly basis for a period of six months and secure the required bond. After a period of six months of timely benefit payments the employer may return to the monthly schedule. If an employer has no previous experience in the jurisdiction the bond shall be based on the estimated monthly hours of the project to be worked. The maximum bond for any employer shall be $50,000.

The aforesaid Bond shall be executed for a period of time to conform to the time limitations set forth in this Agreement and shall be renewed as provided for in subsequent Agreements.

The Bond shall provide that it may not be canceled by either the Employer or the insurance carrier without thirty (30) days written notice in advance to the Union by Certified, Registered, or Insured mail from the Surety. Proof of the execution of the Bond, in the form of an affidavit executed by the insurance carrier, shall be furnished the Union for each Employer. Such affidavit shall show on its face that it may not be canceled by either the insurance carrier of the Employer without prior notification to the Union. The Local Union shall furnish a copy of the affidavit of Bond to each Fund.

The Obligee (Local Union 520, IBEW) shall notify the Surety within thirty (30) days after having knowledge of a breach of this Agreement by the principal hereof.

(d) Fringe benefits provided for under this Agreement are due and payable on or before the 15th day of the month following the month, covering the hours worked by each employee. Each Employer shall file a monthly report for each fringe benefit, in the form established, therefore, each report shall be filed, regardless of whether or not the Employer has employed any employee in the month covered by said report.

Any Employer who fails to file a report and pay contributions for any of the fringe benefits by the 15th day following the month in which such report or payment is due shall be considered delinquent and is in violation of this Agreement. If payments are not mailed in time to reach the

Benefit Fund by the prescribed time, interest at the rate of 1½% monthly will be due and payable. Each Employer shall make available applicable books and records for the purpose of auditing same to determine the amount of his liability and shall pay the expense of audit if delinquencies are found, under guidelines of the Funds. Action to collect contributions may be brought in the name of the respective Fund involved, its Trustees and any assignee or agent designated by said Trustees. Employer hereby accepts and agrees to the terms of each trust agreement and plan for such fringe Benefit Fund.

A delinquent Employer shall be liable to any employee affected by such delinquency for all benefits lost by such employee by virtue of such delinquency, and such delinquent Employer shall also be liable for reasonable attorneys' fees for any action brought to recover the amount of said benefits.

"This section does not waive or deny any remedies of collection in other sections of this Agreement, Trust or a remedy at law".

Section 2.03: For all employees covered by this Agreement the Employer shall carry Workman's Compensation Insurance with a Company authorized to do business in this State, Social Security, and such other protective insurance as may be required by the laws of this State and shall furnish satisfactory proof of such to the Union. He shall also make contributions to the State Unemployment Compensation Commission.

Section 2.04(a): It is agreed that in accord with the Employees Benefit Agreement of the National Electrical Benefit Fund ("NEBF"), as entered into between the National Electrical Contractors Association and the International Brotherhood of Electrical Workers on September 3, 1946, as amended, and now delineated as the Restated Employees Benefit Agreement and Trust, that unless authorized otherwise by the NEBF the individual Employer will forward monthly to the NEBF's designated local collection agent an amount equal to three percent (3 %) of the gross monthly labor payroll, paid to, or accrued by, the employees in this bargaining unit, and a completed payroll report prescribed by the NEBF. The payment shall be made by check or draft and shall constitute a debt due and owing to the NEBF on the last day of each calendar month, which may be recovered by the suit initiated by the NEBF or its assignee. The payment and the payroll report shall be mailed to reach the office of the appropriate local collection agent not later than fifteen (15) calendar days following the end of each calendar month.

The individual Employer hereby accepts, and agrees to be bound by, the Restated Employees Benefit Agreement and Trust.

(b) An individual Employer who fails to remit as provided above shall be additionally subject to having his Agreement terminated upon seventy-two (72) hours' notice in writing being served by the Union, provided the individual Employer fails to show satisfactory proof that the required payments have been paid to the appropriate local collection agent.

The failure of an individual Employer to comply with the applicable provisions of the Restated Employees Benefit Agreement and Trust shall also constitute a breach of this Agreement.

Section 2.05: The Union reserves the right to discipline its members for violations of its laws,

rules, and agreements.

Section 2.06: The Local Union is part of the International Brotherhood of Electrical Workers and any violation or annulment by an individual Employer of the approved Agreement of this or any other Local Union of the IBEW, other than violations of Paragraph 2 of this Section, will be sufficient cause for the cancellation of his Agreement by the Local Union after a finding has been made by the International President of the Union that such a violation or annulment has occurred.

The subletting, assigning, or transfer by an individual Employer of any work in connection with electrical work to any person, firm or corporation not recognizing the IBEW or one of its Local Unions as the collective bargaining representative of his employees on any electrical work in the jurisdiction of this or any other Local Union to be performed at the site of the construction, alteration, painting or repair of a building, structure or other work, will be deemed a material breach of this Agreement.

Notwithstanding anything in this Agreement, the Employer may sublet, assign, or transfer the installation of wiring and devices for fire alarm or security systems if those systems are low voltage system, the installation of lightning protection system, trenching and backfilling excavation to a specialty contractor.

The Employer may also sublet, assign, or transfer any work requiring employees to place themselves in any trench that is greater than a depth of five feet.

The following work, systems and/or functions shall not be covered by the terms of this agreement: field instrumentation and installation, process control instrumentation and installation, instrument and control loop testing and certification, instrument calibration, instrument certification, PLC equipment, PLC programming, distributed control and SCADA systems, control system SCADA & HMI software development and programming, radio telemetry systems, and manufacture of control panels.

Nothing in this Agreement should be construed to require the Employer to purchase manufactured products from employer's signatory to a collective bargaining agreement.

All charges of violation of Paragraph 2 of this Section shall be considered as a dispute and shall be processed in accordance with the provisions of this Agreement covering the procedure for the handling of grievances and the final and binding resolution of disputes.

Section 2.07: No member of Local Union 520, while he remains a member of such Local Union and subject to employment by the Employers operating under this Agreement shall himself become a contractor for the performance of any electrical work.

Section 2.08: Only two individuals connected with an employing concern as owner, manager, superintendent, partner, or member of a Board of Directors shall perform any manual electrical work where it displaces the service of a Journeyman; and then only when he has at least one Journeyman, working under the terms of this Agreement, employed and working the same hours including overtime, with the exception of emergency repairs not to last over two (2) hours.

Section 2.09(a): The Union understands the Employer is responsible to perform the work required by the owner. The Employer shall, therefore, have no restrictions except those specifically provided for in the collective bargaining agreement, in planning, directing, and controlling the operation of all his work, in deciding the number and kind of employees to properly perform the work, in hiring and laying off employees, in transferring employees from job to job within the Local Union's geographical jurisdiction, in determining the need and number as well as the person who will act as Foreman, in requiring all employees to observe the Employer's and/or owner's rules and regulations not inconsistent with this Agreement, in requiring all employees to observe all safety regulations, and in discharging employees for proper cause.

(b) The employer shall have the right to call a Foreman by name provided:

A) The employer shall notify the business manager in writing of the name of the individual who is to be requested for employment as a Foreman. Upon such request, the business manager shall refer said Foreman provided the name appears on the highest priority group.

B) When an employee is called as a Foreman, he must remain as a Foreman for 500 hours or must receive a reduction in force.

## Portability

Section 2.10: The Employer, if signatory to a collective bargaining agreement or to a letter of assent to an agreement with another IBEW Local Union, may bring an unlimited amount of Supervisory bargaining unit employees employed in that Local Union's jurisdiction into Local Union 520's jurisdiction to perform supervisory work. Supervisory bargaining unit employees are defined as those that direct bargaining unit employees. The Employer may also bring one (1) bargaining unit employee employed in that Local Union's jurisdiction into Local Union 520's after the Employer employs one (1) Local Union 520's bargaining unit employee; if necessary this process will continue to alternate. The Employer shall maintain a minimum of a one (1) to one (1) ratio of Local Union 520's bargaining unit employees to those that are brought in through this Portability provision. The employees brought in through portability may remain on the specific job until the job is complete. All employees brought in through this portability provision must check in with the Business Manager of IBEW Local Union 520 and all working assessments shall be paid to Local Union 520. All charges of violations of this section shall be considered as a dispute and shall be processed in accordance with the provisions of the Agreement for the handling of grievances with the exception that any decision of a local labor-management committee that may be contrary to the intent of the parties to the National Agreement on employee Portability, upon recommendation of either or both the appropriate IBEW International Vice President or NECA Regional Executive Director, is subject to review, modification, or rescission by the Council on Industrial Relations.

Section 2.11: The Union has the right to appoint a Steward at any shop and/or job where workmen are employed under the terms of this Agreement. The Employer shall be notified in writing of who the Steward is. No Steward shall be discriminated against by the Employer because of the faithful performance of his duties as Steward.

## ARTICLE III
## Standard Inside Referral

Section 3.01: In the interest of maintaining an efficient system of production in the Industry, providing for an orderly procedure of referral of applicants for employment preserving the legitimate interests of the employees in their employment status within the area and of eliminating discrimination in employment because of membership or non-membership in the Union, the parties hereto agree to the following system of referral of applicants for employment.

Section 3.02: The Union shall be the sole and exclusive source of referral of applicants for employment.

Section 3.03: The Employer shall have the right to reject any applicant for employment.

Section 3.04: The Union shall select and refer applicants for employment without discrimination against such applicants by reason of membership or non-membership in the Union and such selection and referral shall not be affected in any way by rules, regulations, bylaws, constitutional provisions or any other aspect or obligation of Union membership policies or requirements. All such selection and referral shall be in accord with the following procedure.

Section 3.05: The Union shall maintain a register of applicants for employment established on the basis of the Groups listed below. Each applicant for employment shall be registered in the highest priority Group for which he qualifies.

### Journeyman Wireman - Journeyman Technician

**GROUP I** All applicants for employment who have four or more years' experience in the trade, are residents of the geographical area constituting the normal construction labor market, have passed a journeyman's examination given by a duly constituted Inside Construction Local Union of the I.B.E.W. or has been certified as a Journeyman Wireman by any inside Joint Apprenticeship and Training Committee, and, who have been employed in the trade for a period of at least one year in the last four years in the geographical area covered by the collective bargaining agreement.

Group I status shall be limited to one Local Union at one time. An applicant who qualifies for Group I in a local union shall be so registered electronically and remain on Group I in that local union unless and until the applicant designates another local union as his or her Group I local union. If an applicant qualifies for Group I status in a local union other than his or her home local union and designates that local as his or her Group I local union, the business manager of the new Group I status local union shall by electronic means notify the business manager of the applicant's former Group I status local union.

**GROUP II** All applicants for employment who have four or more years' experience in the trade and who have passed a Journeyman Wireman's examination given by a duly constituted Inside Construction Local Union of the IBEW or have been certified as a Journeyman Wireman by any Inside Joint Apprenticeship and Training Committee.

**GROUP III** All applicants for employment who have two or more years' experience in the trade, are residents of the geographical area constituting the normal construction labor market, and who have been employed for at least six months in the last three years in the geographical area covered by the collective bargaining agreement.

**GROUP IV** All applicants for employment who have worked at the trade for more than one year.

Section 3.06: If the registration list is exhausted and the Local Union is unable to refer applicants for employment to the Employer within 48 hours from the time of receiving the Employer's request, Saturdays, Sundays and holidays excepted, the Employer shall be free to secure applicants without using the Referral Procedure. But such applicants, if hired, shall have the status of "temporary employees".

Section 3.07: The Employer shall notify the Business Manager promptly of the names and Social Security numbers of such "temporary employees" and shall replace such "temporary employees" as soon as registered applicants for employment are available under the Referral Procedure.

Section 3.08: "Normal construction labor market" is defined to mean the following geographical area plus the commuting distance adjacent thereto which includes the area from which the normal labor supply is secured: Travis, Bastrop, Hays, Blanco, Burnet, Williamson, Lee, Llano, San Saba, Burleson, Caldwell, Fayette, Runnels, Coleman, Brown, Tom Green, Concho, McCulloch, Menard, Mason, Kimble and parts of Coryell and Bell Counties to include that part of Fort Hood in Coryell County south of Cowhouse Creek, and not to extend more than two (2) miles into Bell County from the Southeast boundary line of Coryell County, Gray Field, and the City of Killeen, and parts of Lampasas, Bell and Milam Counties, which are nearer to Austin than Waco, in the State of Texas.

The above geographical area is agreed upon by the parties to include the area defined by the Secretary of Labor to be the appropriate prevailing wage areas under the Davis-Bacon Act to which the Agreement applies.

Section 3.09: "Resident" means a person who has maintained his permanent home in the above defined geographical area for a period of not less than one year or who, having had a permanent home in this area, has temporarily left with the intention of returning to this area as his permanent home.

Section 3.10: "Examinations" - An "Examination" shall include experience rating tests if such examination shall have been given prior to the date of this procedure, but from and after the date

of this procedure, shall include only written and/or practical examinations given by a duly constituted Inside Construction Local Union of the IBEW. Reasonable intervals of time for examinations are specified as ninety (90) days. An applicant shall be eligible for examination if he has four years' experience in the trade.

Section 3.11: The Union shall maintain an "Available for Work List" which shall list the applicants within each Group in chronological order of the dates they register their availability for employment.

Section 3.12(a): An applicant who is hired and who receives, through no fault of his own, work of forty hours or less shall, upon re-registration, be restored to his appropriate place within his Group.

(b) An applicant who has registered on the "Available for Work List" must renew his application every thirty (30) days or his name will be removed from the "List."

Section 3.13: Employers shall advise the Business Manager of the Local Union of the number of applicants needed. The Business Manager shall refer applicants to the Employer by first referring applicants in GROUP I in the order of their place on the "Available for Work List" and then referring applicants in the same manner successively from the "Available for Work List" in GROUP II, then GROUP III, and then GROUP IV. Any applicant who is rejected by the Employer shall be returned to his appropriate place within this GROUP and shall be referred to other employment in accordance with the position of his GROUP and his place within his GROUP.

Section 3.13(a): An applicant who is discharged for cause two times within a 12-month period shall be referred to the neutral member of the Appeals Committee for a determination as to the applicant's continued eligibility for referral. The neutral member of the Appeals Committee shall, within three business days, review the qualifications of the applicant and the reasons for the discharges. The neutral member of the Appeals Committee may, in his or her sole discretion: (1) require the applicant to obtain further training from the JATC before again being eligible for referral; (2) disqualify the applicant for referral for a period of four weeks, or longer, depending on the seriousness of the conduct and/or repetitive nature of the conduct; (3) refer the applicant to an employee assistance program, if available, for evaluation and recommended action; or (4) restore the applicant to his/her appropriate place on the referral list.

Section 3.14: The only exceptions which shall be allowed in this order of referral are as follows:

(a) When the employer states bona fide requirements for special skills and abilities in his request for applicants, the Business Manager shall refer the first applicant on the register possessing such skills and abilities.

(b) The age ratio clause in the Agreement calls for the employment of an additional employee or employees on the basis of age. Therefore, the Business Manager shall refer the first applicant on the register satisfying the applicable age requirements provided, however, that all names in higher priority Groups, if any, shall first be exhausted before such overage reference can be made.

Section 3.15: An Appeals Committee is hereby established, composed of one member appointed by the Union, one member appointed by the Employer or by the Association, as the case may be, and a Public Member appointed by both these members.

Section 3.16: It shall be the function of the Appeals Committee to consider any complaint of any employee or applicant for employment arising out of the administration by the Local Union of Sections 4 through 14 of this Agreement. The Appeals Committee shall have the power to make a final and binding decision on any such complaint which shall be complied with by the Local Union. The Appeals Committee is authorized to issue procedural rules for the conduct of its business, but it is not authorized to add to, subtract from, or modify any of the provisions to this Agreement and its decisions shall be in accord with this Agreement.

Section 3.17: A representative of the Employer or of the Association, as the case may be, designated to the Union in writing, shall be permitted to inspect the Referral Procedure records at any time during normal business hours.

Section 3.18: A copy of the Referral Procedure set forth in this Agreement shall be posted on the Bulletin Board in the offices of the Local Union and in the offices of the Employers who are parties to this Agreement.

Section 3.19: Apprentices shall be hired and transferred in accordance with the apprenticeship provisions of the Agreement between the parties.

Section 3.20: When making reductions in the number of employees due to lack of work, Employers shall use the following procedure:

(a) Temporary employees, if any are employed, shall be laid off first. Then employees in Group IV shall be laid off next, if any are employed in this Group. Next to be laid off are employees in Group III, if any are employed in this Group, then those in Group IV, and then those in Group I.

(b) Paragraph (a) will not apply as long as the special skills requirement as provided for in Section 14(a) is required.

(c) Supervisory employees covered by the terms of this Agreement will be excluded from layoff as long as they remain in the supervisory capacity. When they are reduced to the status of Journeyman, they will be slotted in the appropriate group in Paragraph (a) above.

Section 3.21: All Journeymen and Apprentices are required to provide proof of completion, by originally issued card or certificate, of an OSHA 10 safety training course.

## ARTICLE IV
## Hours - Wage Payment

Section 4.0l(a): Eight hours work between the hours of 6:00 A.M. and 6:30 P.M. with thirty (30) minutes for a lunch period, shall constitute a workday. Forty (40) hours within (5) days, Monday through Friday, inclusive, shall constitute the work week. Saturday may be used for a make-up day due to inclement weather. If Saturday is used as a make up day, a minimum of eight (8) hours will be scheduled. The payroll week shall end on Sunday midnight of each week. Any workman required to punch a time clock that requires more than five (5) minutes to check out shall be paid for any additional time used in checking out. Workmen reporting to the shop or job shall not report earlier than 15 minutes prior the starting time. If practical, workmen directed to report to the job shall be at their place of work at the starting time and shall remain at their place of work until quitting time unless otherwise instructed by the Employer.

(b) Any change from the regular working hours must be five (5) or more day's duration. When any change in the starting time is made, lunch period, overtime, and shifts may be changed accordingly.

(c) The Employer with 24-hour notice to the Union may elect to work 4-10 hour days to be scheduled. The first 10 hours of work per day shall be paid at the hourly straight time rate of pay. When working 4-10s, the Employer can schedule the work week for Monday through Thursday, 10 hours per day. A second work week can be scheduled from Tuesday through Friday, 10 hours per day. The 4 day work week will be Monday through Thursday. Friday can be used as a make-up day due to inclement weather. If Friday is used as a make-up day, a minimum of 8 hours will be scheduled. Any four day/ten-hour work schedule shall be a minimum of 2 weeks duration.

(d) In order to coordinate with other crafts, summer hours, customer requests, and the like, the starting time for each job shall be subject to variance of not more than 1 hour. Advanced notice to the Union will be required to approve any such variance greater than 1 hour. These alternate starting times must run for a minimum of 5 consecutive workdays, and all other times listed in this agreement will shift accordingly.

Section 4.02: All work performed outside of regularly scheduled hours will be paid at one and one-half times the regular straight-time rate, provided the employee works all of the regular scheduled hours made available, as defined in Art. IV Sec. 4.0l(a) and Sec. 4.0l(c). In the event the employee does not work all of the regularly scheduled hours available he will receive no premium rate until after he has worked 40 hours. Work on Sundays shall be paid at double the straight-time rate. The following holidays: New Year's Day, Memorial Day, Fourth of July, Labor Day, Veteran's Day, Thanksgiving Day, the Friday following Thanksgiving Day, and Christmas Day, shall be paid at double the straight-time rate. The following holidays shall be paid holidays starting June 2, 2025, Thanksgiving Day and Friday following, January 4, 2027, Christmas Day, January 3, 2028, New Year's Day. Eligible employees must have been employed for two weeks and worked the available workday before and the available workday after the holiday. Holidays shall be recognized only on the day on which they fall.

Section 4.03: The minimum regular straight-time rate of wages for Journeyman Inside Wireman (JIW) shall be as follows:

Effective June 2, 2025: $36.50
Effective January 5, 2026: $38.50
Effective January 4, 2027: $40.50
Effective January 3, 2028: $42.50

**APPENDIX A - MINIMUM BENEFITS**

| Multiplier | Classification | NEBF | Annuity | Medical | JATC |
|---|---|---|---|---|---|
| 130% of JIW wage rate | General Foreman (area foreman required) | 3% | 8% | $5.45 | 1%*** |
| 120% of JIW wage rate | General Foreman (no area foreman required) | 3% | 8% | $5.45 | 1%*** |
| 120% of JIW wage rate | Area Foreman | 3% | 8% | $5.45 | 1%*** |
| 110% of JIW wage rate | Foreman | 3% | 8% | $5.45 | 1%*** |
| 100% | Journeyman Inside Wireman | 3% | 8%* | $5.45 | 1%*** |
| **Apprentice Wireman** | | | | | |
| 50% of JIW wage rate | 1st Year - Period 1 | 3% | ** | $3.70 | 1%*** |
| 55% of JIW wage rate | 1st Year - Period 2 | 3% | 3% | $3.70 | 1%*** |
| 60% of JIW wage rate | 2nd Year- Period 3 | 3% | 3% | $3.70 | 1%*** |
| 70% of JIW wage rate | 3rd Year - Period 4 | 3% | 5% | $3.70 | 1%*** |
| 75% of JIW wage rate | 4th Year- Period 5 | 3% | 5% | $3.70 | 1%*** |
| 80% of JIW wage rate | 5th Year - Period 6 | 3% | 8% | $3.70 | 1%*** |
| | Unindentured Apprentice | 3% | | $3.70 | 1%*** |

* 9% effective January 6th 2025
** 1% effective January 6th 2025
*** 1% of Journeyman Straight-Time Rate

Section 4.04: The Employer shall pay all wages in cash or check weekly, not later than quitting time on Friday. The Employer may pay wages by direct deposit, through debit card by cash or by

check. Employees may be required to execute authorization forms for direct electronic deposit of wages on a weekly basis to the bank or credit union of the employee's choice. This manner of payment, once adopted, may not be changed by the Employer except upon 14-day advance written notification to the employee with notification to the Union. In the event that employees are not paid by the above-stated time, waiting time at the regular straight time rate (not to exceed eight (8) hours in any one twenty-four (24) hour period) shall be charged until payment is made. The previous sentence only applies in the event that there has been a previous instance within the preceding twelve (12) months of the Employer failing to timely pay wages. Otherwise, paid waiting time only begins if payment has not been received by quitting time on Friday.

Section 4.05: Should the Employer issue a paycheck that does not clear the bank for payment, provided the employee does not hold said check for more than thirty (30) days before making attempt to cash said check, then said Employer, while in the jurisdiction of the Local Union, thereafter shall pay in cash.

Section 4.06: When Friday is a recognized holiday, wages shall be paid Thursday for all work during that week. An itemized statement shall be furnished each workman, showing total hours worked, total wages earned, and any deductions from such wages.

Section 4.07: Any man reporting for work and being laid off, not having been notified the day previous of such layoff shall receive not less than two (2) hours wages in order to gather his tools and personal belongings and shall be paid off in full immediately. In the event the employee is not paid off, waiting time at the regular rate (not to exceed eight [8] hours in any one twenty-four [24] hour period) shall be charged until payment is made. Two (2) hours wages for gathering tools and personal belongings will not be paid if the employee has not notified the Employer of a previous day's absence. An employee who voluntarily quits shall receive the employee's final paycheck on the next contractually scheduled pay day.

Section 4.08(a): When men are directed to report to a job or shop and do not start to work due to causes other than weather conditions, they shall receive two (2) hours pay.

(b) When men receive two (2) hours pay as show-up time, they shall remain available for work for a full two (2) hour period.

(c) If requested by the Employer, during inclement weather conditions, men shall remain on the job available for work and shall receive two (2) hours pay.

(d) When men are directed to report to a job and are instructed to go to work by the Employer or his representative, weather conditions permitting, and they refuse, they shall not receive the two (2) hours show-up time.

(e) When men are called out on trouble or emergency calls outside of regularly scheduled working hours, they shall be paid from the time they leave home until they return at the overtime rate, with a minimum of one (1) hour's work.

Section 4.09: The Employer shall pay for traveling time and provide for at least one of the following provisions:

(i) Furnish transportation from shop to job and job to job and job to shop during the regular working hours; or

(ii) Reimburse the employee for mileage at the standard mileage rate determined by the Internal Revenue Service for actual mileage from shop to job and job to job and job to shop during all the regular working hours to be reimbursed.

On work outside the jurisdiction of the Union, the Employer shall provide one of the following:

(i) Furnish transportation, board and all other necessary expenses;

(ii) Reimburse the employee for mileage at the standard mileage rate determined by the Internal Revenue Service and furnish board and all other necessary expenses.

Section 4.10: No traveling time shall be paid before or after working hours to workmen for traveling to or from any job when workmen are ordered to report to the job, provided his day ends at such job.

Section 4.11: The Employer shall furnish a monthly payroll report to Local Union 520 postmarked no later than 15th day of the following month, giving workman's name, classification, wage rate, straight-time hours worked, overtime hours and gross wages paid to all workmen. This report shall identify the exact date of all employees who have quit or been discharged during the working period covered by this report.

A monthly payroll report to the Local Union and to all Trust Funds shall be completed and mailed each month, whether the Contractor has workmen employed or not.

Section 4.12: Workmen being laid off or discharged by an Employer or workmen severing their employment shall be given a termination slip stating the reason for termination and signed by their immediate supervisor or their Employer, and a copy shall be sent to Local Union 520. Additionally, employers shall provide a termination slip to the JATC Training Director in the case of an apprentice.

Section 4.13: When so elected by the contractor, multiple shifts of eight (8) hours for at least five (5) days' duration may be worked. When two (2) or three (3) shifts are worked:

The first shift (day shift) shall consist of eight (8) consecutive hours worked between the hours of 8:00 A.M. and 4:30 P.M. Workmen on the "day shift" shall be paid at the regular hourly rate of pay for all hours worked.

The second shift (swing shift) shall consist of eight (8) consecutive hours worked between the hours of 4:30 P.M. and 1:00 A.M. Workmen on the "swing shift" shall be paid at the regular hourly rate of pay plus **10%** for all hours worked.

The third shift (graveyard shift) shall consist of eight (8) consecutive hours worked between the hours of 1:00 A.M. and 9:00 A.M. Workmen on the "graveyard shift" shall be paid at the regular hourly rate of pay plus **15%** for all hours worked.

The Employer shall be permitted to adjust the starting hours of the shift by up to two (2) hours in order to meet the needs of the customer.

If the parties to the Agreement mutually agree, the shift week may commence with the third shift (graveyard shift) at 12:30 A.M. Monday to coordinate the work with the customer's work schedule. However, any such adjustment shall last for at least five (5) consecutive days duration unless mutually changed by the parties to this Agreement.

An unpaid lunch period of thirty (30) minutes shall be allowed on each shift. All overtime work required before the established start time and after the completion of eight (8) hours of any shift shall be paid at one and one-half times the "shift" hourly rate.

There shall be no pyramiding of overtime rates and double the straight time rate shall be the maximum compensation for any hour worked. There shall be no requirement for a day shift when either the second or third shift is worked.

## UNION DUES DEDUCTION

Section 4.14: Upon receipt of a voluntary written authorization the Employer agrees to deduct and forward to the Financial Secretary of the Local Union - the additional working dues from the pay of each employee. The amount to be deducted shall be the amount specified in the approved Local Union Bylaws. Such amount shall be certified to the Employer by the Local Union upon request by the Employer.

## ARTICLE V
## General Rules

Section 5:01: In order to comply with existing laws, nothing in this Agreement shall be construed as limiting the right of Employers to move, transfer, or assign employees from his shop to any specific job or from any job to any other job upon which said Employer bolds a contract for the performance of the electrical work. An employee, once on the Employer's payroll, may be worked by him at any location at the discretion of the Employer.

Section 5.02: When the Employer has no shop located in the jurisdiction of this Union, then under such circumstances the job site shall be considered the city in which the shop is located with one job site designated as the permanent shop.

Section 5.03: On all jobs requiring five (5) or more Journeymen, at least every fifth Journeyman, if available, shall be fifty (50) years of age or older.

Section 5.04(a): Journeyman shall provide themselves with the following tools:

One tester not over 1000 volts or one Multi Volt Tester
Knife
Crescent Wrench 8" to 12"
Screw drivers
Hammer
Small level

Combination square-Tri-square
Adjustable 12" blade
Hacksaw frame
Two pair channel lock type pliers
One pair long nose pliers
One pair Dyke pliers

| | |
|---|---|
| Plumb bob | One chalk line |
| Awl or Center punch | Keyhole saw |
| Pencil | One steel measuring tape at least 16' long |
| One pair side cutting pliers 7" or larger | Pipe wrench 12" to 14" or small |
| Wire stripper | Chain tong |

(b) Journeyman may furnish other similar tools but shall not be required to do so.

(c) A Journeyman may carry or store in his toolbox small tools furnished by and belonging to his Employer (power tools excluded). Such tools must be the property of the Employer, to be returned to him upon request or termination of the employee but are not to be replaced by the employee if broken or stolen.

(d) Apprentices shall provide themselves with the following tools only, except that first-year Apprentice may provide himself with a small toolbox and a third- or fourth-year Apprentice may have a toolbox on the job and start building up his tool list towards that of a Journeyman.

| | |
|---|---|
| 2 pair channel lock type pliers | Pencil |
| 1 pair side cutters pliers – 7" or larger | Hammer |
| One steel measuring tape at least 16' long | One voltage tester not over 1000 or Multi Volt Tester |
| Screw drivers | Small level |
| Knife | Hacksaw frame |
| Awl | Wire stripper |

He may furnish one pair of long-nose and one pair of Dyke pliers if he desires.

(e) The Employer shall furnish necessary locked storage to reasonably protect tools from the weather and vandalism on large jobs where it is necessary to leave tools on the job.

Section 5:05: The Employer shall furnish all other necessary tools or equipment. Workmen will be held responsible for the tools or equipment issued to them providing the Employer furnishes the necessary lockers, toolboxes, or other safe place of storage. Tools must be taken out and put away during working hours.

Section 5.06: Workmen shall install all electrical work in a safe and workman like manner in accordance with applicable code and contract specifications.

Section 5.07: The representatives of the Union shall be allowed access to any building at any reasonable time where members of the Union are employed.

Section 5.08: In all shops or on all jobs where four (4) or more Journeymen are employed, one Journeyman shall be designated as a Foreman.

On all jobs, the first working crew may consist of a maximum of eleven (11) men, that is, ten (10) Journeyman and one (1) working Foreman.

When a second crew is established, it may consist of a maximum of eleven (11) men, that is, ten

(10) Journeymen and one (1) working General Foreman.

When a third or subsequent crew is established, it may consist of a maximum of eleven (11) men, that is, ten (10) Journeymen and one (1) working Foreman. Each crew shall be supervised by a Foreman and the Foremen shall be supervised by the General Foreman.

No General Foremen shall supervise more than fifty-five (55) men, including Journeymen and Foremen. For each additional fifty-five (55) men, the above procedures shall repeat except that the sixth and subsequent Foremen shall be supervised by an Area Foreman.

Section 5.09: Foremen, Area Foremen, and General Foremen shall be permitted to use tools. This shall not mean that they cannot handle material. Foremen may be required to attend and complete Foremen courses when provided.

Section 5.10: On jobs requiring a Foreman, workmen are not to take directions, orders or accept the layout from anyone other than their Foreman. Foremen are to take directions, orders, or layout from their Area Foreman only, when Area Foremen are required. When Area Foremen are not required, Foremen shall take directions, orders or layouts from the General Foreman only. Area Foremen shall take directions, orders or layout from the General Foreman only.

Section 5.11: No workman on one job shall replace a workman on another for any overtime work. All overtime work on any job shall be distributed fair and equal to all workmen. Exceptions to the two conditions above shall include the need for special skills or when workmen have not worked the available straight time hours during the "work week" as defined in Article IV, Section 1.

Section 5.12: The Employer shall see that cold water (in warm weather) and first-aid kits are available on all jobs and/or trucks.

Section 5.13: The Employer shall furnish protective equipment for workmen on energized circuits or equipment carrying 300 volts or more. On all energized circuits or equipment carrying 440 volts or over, as a safety measure, two (2) or more Journeymen must work together.

Section 5.14: All conduit shall be cut and threaded by workmen covered by this Agreement.

Section 5.15: Where pipe cutting and threading machines, electric drills, electric benders, electric chipping hammers, sanders, similar portable tools and all other power-driven equipment are used, such shall be operated by workmen covered by this agreement in the jurisdiction of the IBEW.

Section 5.16: All pulling of wire or cable shall be done by workmen covered by this Agreement.

Section 5.17: Journeyman cable splicers shall furnish only hand tools. On all work of joining, splicing and insulating and the placing of flame-proof covering where wiped lead joints are necessary, it shall be performed by cable splicers. Journeymen only shall be used in assisting cable splicers, except that one de-energized enclosures, an Apprentice may be used. Cable splicers shall not be required to work on wires or cables when the difference in potential is over 200 volts between any two conductors or between any conductor and ground, unless assisted by one Journeyman. In no case shall cable splicers be required to work on energized cables carrying in excess of 480-volt circuit.

Section 5.18: Welders gloves, sleeves, hoods and all hard hats shall be furnished by the Employer. Workmen may be required to sign a payroll deduction form to authorize the deduction from their final paycheck to cover reimbursement of unreturned hard hats. Charges shall not exceed actual cost paid by the Contractor.

Section 5.19: The installation of all electrical raceways whether metal, wood, fiber, plastic clay or of any other conceivable composition, when used to contain electrical or grounding system conductors, and the installation, preparation and connection of all electrical and/or grounding or bonding conductors shall be performed by workmen employed under the terms of this Agreement and paid the hourly applicable negotiated wage rate contained herein unless it is an integral part of the building structure.

Section 5.20: No work shall be performed on Labor Day except in case of emergency.

Section 5.21: On any job of five (5) or more days duration on the main campus of the University of Texas, the Employer will either provide for employee parking within three blocks of the job or arrange for covered transportation from a parking area within two miles of the job.

## ARTICLE VI
## Standard Inside Apprenticeship Language

Section 6.01: There shall be a local Joint Apprenticeship and Training Committee (JATC) consisting of a total of 6 or 8 members who shall also serve as Trustees to the local apprenticeship and training trust. An equal number of members (either 3 or 4) shall be appointed, in writing, by the local chapter of the National Electrical Contractors Association (NECA) and the local union of the International Brotherhood of Electrical Workers (IBEW).

The local apprenticeship standards shall be in conformance with national guideline standards and industry policies to ensure that each apprentice has satisfactorily completed the NJATC required hours and course of study. All apprenticeship standards shall be registered with the NJATC before being submitted to the appropriate registration agency.

The JATC shall be responsible for the training of apprentices, journeymen, installers, technicians, and all others (un-indentured, intermediate journeymen, etc.).

Section 6.02: All JATC member appointments, reappointments, and acceptance of appointments shall be in writing. Each member shall be appointed for a 3-year term, unless being appointed for a lesser period of time to complete an expired term. The terms shall be staggered, with one (1) term from each side expiring each year. JATC members shall complete their appointed term unless removed for cause by the party they represent, or they voluntarily resign. All vacancies shall be filled immediately

The JATC shall select from its membership, but not both from the same party, a Chairman and a Secretary who shall retain voting privileges. The JATC will maintain one (1) set of minutes for JATC committee meetings and a separate set of minutes for trust meetings.

The JATC should meet on a monthly basis, and also upon the call of the Chairman.

Section 6.03: Any issue concerning an apprentice, or an apprenticeship matter shall be referred to the JATC for its review, evaluation, and resolve, as per standards and policies. If the JATC deadlocks on any issue, the matter shall be referred to the Labor-Management Committee for resolution as outlined in Article One of this Agreement; except for trust fund matters, which shall be resolved as stipulated in the local trust instrument.

Section 6.04: There shall be only one (1) JATC and one (1) local apprenticeship and training trust. The JATC may, however, establish joint subcommittees to meet specific needs, such as residential or telecommunications apprenticeship. The JATC may also establish a subcommittee to oversee an apprenticeship program within a specified area of the jurisdiction covered by this agreement.

All subcommittee members shall be appointed, in writing, by the party they represent. A subcommittee member may or may not be a member of the JATC.

Section 6.05: The JATC may select and employ a part-time or a full-time Training Director and other support staff, as it deems necessary. In considering the qualifications, duties, and responsibilities of the Training Director, the JATC should review the Training Director's Job Description provided by the NJATC. All employees of the JATC shall serve at the pleasure and discretion of the JATC.

Section 6.06: To help ensure diversity of training, provide reasonable continuous employment opportunities, and comply with apprenticeship rules and regulations, the JATC, as the program sponsor, shall have full authority for issuing all job training assignments and for transferring apprentices from one employer to another. The employer shall cooperate in providing apprenticeships with needed work experiences. The local union referral office shall be notified, in writing, of all job training assignments. If the employer is unable to provide reasonable continuous employment for apprentices, the JATC is to be so notified.

Section 6.07: All apprentices shall enter the program through the JATC as provided for in the registered apprenticeship standards and selections procedures.

An apprentice may have their indenture canceled by the JATC at any time prior to completion as stipulated in the registered standards. Time worked and accumulated in apprenticeship shall not be considered for local union referral purposes until the apprentice has satisfied all conditions of apprenticeship. Individuals terminated from apprenticeship shall not be assigned to any job in any classification, or participate in any related training, unless they are reinstated in apprenticeship as per the standards, or they qualify through means other than apprenticeship, at sometime in the future, but no sooner than two years after their class has completed apprenticeship, and they have gained related knowledge and job skills to warrant such classification.

Section 6.08: The JATC shall select and indenture a sufficient number of apprentices to meet local manpower needs. The JATC is authorized to indenture the number of apprentices necessary to meet the jobsite ratio as per section 6.12.

Section 6.09: Though the JATC cannot guarantee any number of apprentices, if a qualified employer requests an apprentice, the JATC shall make every effort to honor the request. If unable to fill the request within ten (10) working days, the JATC shall select and indenture the next available person from the active list of qualified applicants. An active list of qualified applicants shall be maintained by the JATC as per the selection procedures.

Section 6.10: To accommodate short-term needs when apprentices are unavailable, the JATC shall assign un-indentured workers who meet the basic qualifications for apprenticeship. Un- indentured workers shall not remain employed if apprentices become available for OJT assignment. Un-indentured workers shall be used to meet job site ratios except on wage-and-hour (prevailing wage) job sites.

Before being employed, the un-indentured person must sign a letter of understanding with the JATC and the employer - agreeing that they are not to accumulate more than two thousand (2,000) hours as an un-indentured, that they are subject to replacement by indentured apprentices, and that they are not to work on wage-and-hour (prevailing wage) job sites.

Should an un-indentured worker be selected for apprenticeship, the JATC will determine, as provided for in the apprenticeship standards, if some credit for hours worked as an un-indentured will be applied toward the minimum OJT hours of apprenticeship.

The JATC may elect to offer voluntary related training to un-indentured; such as Math Review, English, Safety, Orientation/Awareness, introduction to OSHA, First-Aid and CPR. Participation shall be voluntary.

Section 6.11: The employer shall contribute to the local health and welfare plans and to the National Electrical Benefit Fund (NEBF) on behalf of all apprentices and un-indentured. Contributions to other benefit plans may be addressed in other sections of this agreement. (See Article IV Section 4.03).

Section 6.12: Each job site shall be allowed a ratio of one (1) apprentice(s) for everyone (1) Journeyman Wireman.

| Number of Journeymen | Maximum Number of Apprentices/Unindentured |
|---|---|
| 1 to 3 | 1 to 3 |
| 4 to 6 | 4 to 6 |
| Etc. | Etc. |

The first person assigned to any job shall be a Journeyman Wireman.

A job site is considered to be the physical location where employees report for their work assignments. The employer's shop (service center) is considered to be a separate, single job site. All other physical locations where workers report for work are each considered to be a single, separate job site.

Section 6.13: An apprentice is to be under the supervision of a Journeyman Wireman at all times. This does not imply that the apprentice must always be in-sight-of a Journeyman Wireman. Journeymen are not required to constantly watch the apprentice. Supervision will not be of a nature that prevents the development of responsibility and initiative. Work may be laid out by the employer's designated supervisor or journeyman based on their evaluation of the apprentice's skills and ability to perform the job tasks. Apprentices shall be permitted to perform job tasks in order to develop job skills and trade competencies. Journeymen are permitted to leave the immediate work area without being accompanied by the apprentice.

Apprentices who have satisfactorily completed the first four years of related classroom training using the NJATC curriculum and accumulated a minimum of 6,500 hours of OJT with satisfactory performance, shall be permitted to work alone on any job site and receive work assignments in the same manner as a Journeyman Wireman. An apprentice shall not be the first person assigned to a job site and apprentices shall not supervise the work of others.

Section 6.14: Upon satisfactory completion of apprenticeship, the JATC shall issue all graduating apprentices an appropriate diploma from the NJATC. The JATC shall encourage each graduating apprentice to apply for college credit through the NJATC. The JATC may also require each apprentice to acquire any electrical license required for journeymen to work in the jurisdiction covered by this agreement.

Section 6.15: The parties to this Agreement shall be bound by the Local Joint Apprenticeship and Training Trust Fund Agreement which shall conform to Section 302 of the Labor- Management Relations Act of 1947 as amended, ERISA, and other applicable regulations.

The Trustees authorized under this Trust Agreement are hereby empowered to determine the reasonable value of any facilities, materials, or services furnished by either party. All funds shall be handled and disbursed in accordance with the Trust Agreement.

Section 6.16: All employers subject to the terms of this Agreement shall contribute the amount of funds specified by the party's signatory to the local apprenticeship and training trust agreement. The current rate of contribution is: 1% of the Journeyman straight-time rate per hour for each hour worked. This sum shall be due the Trust Fund by the same date as is their payment to the NEBF under the terms of the Restated Employers Benefit Agreement and Trust.

## ARTICLE VII
## Vacation

Section 7.01: Upon written authorization from the employee, the Employer shall make a weekly payroll deduction of six percent (6%) from the gross pay of each employee. The employee shall request the payroll deduction at the beginning of employment with an employer. The employee shall notify the employer, in writing of any modifications to their participation status for the voluntary payroll deduction in the month of January or July. Payroll deduction revisions will be made effective on the first payroll of the following month. The Employer monthly shall forward the amount of individual deductions from each employee as shown on the monthly payroll to Velocity Credit Union, ATTN: Teller Operations, P.O. Box 1089, Austin, TX, 78767, for deposit to that employee's Velocity Credit Union vacation account, and simultaneously shall provide the Local Union with a written report which sets forth, for each employee, the number of hours worked, the employee's classification and pay rate, the employee's gross pay, and the amounts deducted.

Section 7.02: The payment and payroll report shall be mailed to reach the Velocity Credit Union no later than the 15th day of the month following the end of each benefit period.

Section 7.03: Each employee shall be allowed to take two (2) weeks of annual vacation between February 1st and January 31st.

Section 7.04: An Employer's failure to timely remit the payroll deductions or payroll report to the

Velocity Credit Union, or the payroll report to the Local Union, as required above shall be treated as a delinquent contribution under the terms of the applicable Inside Construction Agreement.

## ARTICLE VIII
## Annuity Plan

It is mutually agreed between the parties hereto and in accordance with the IBEW Local Union 520 Annuity Plan entered into by and between the Central Texas Chapter, NECA, and Local Union 520, IBEW, the Employer will forward to the Annuity Plan an amount equal to the percentage levels per Appendix A (See Article IV Section 4.03) of the gross wages of all classifications of employees for all hours worked within the geographical limits of the Union's jurisdiction when work is performed for any Employer operating under this Agreement. The payment shall be made monthly, together with the payroll report forms specified in Article IV.

## ARTICLE IX
## 401(k) Savings Plan

All employers signatory to this Agreement and/or employing workmen under the terms of this Agreement, shall deduct from each employee's Gross Weekly Payroll of employees who wish to participate, a voluntary deductible amount to be deposited into a 401(k) savings plan, upon the written request of each employee. Employees may enroll at the beginning of the employment with an Employer and enroll or change withholding each year during the month of January or July. Withholding will be made effective on the first payroll of the following month.

## ARTICLE X
## Health and Welfare

It is hereby mutually agreed between the parties hereto and in accordance with the Benefit contract governing the electrical benefit fund entered into by and between the Central Texas Chapter, NECA, and Local Union 520, IBEW, that the Employer will forward to the Central Texas Health and Benefit Plan the following contributions as per Appendix A (See Article IV Section 4.03) for all hours actually worked by each employee (both straight time and overtime) within the geographical limits of the Union's jurisdiction when work is performed for any Employers operating under the terms of the basic Agreement for all Employers. Payments shall be made monthly together with a monthly payroll report on a form that will be furnished for that purpose by the Trustees of the Electrical Benefit Plan.

It is agreed that employers shall contribute solely up to $5.45 per hour of increases declared by the Trustees of the Plan. Any increases above $5.45 shall be split equally between the employer and employee through a wage reduction of the JIW rate of pay, all other classifications shall adjust accordingly.

## ARTICLE XI
## National Labor Management Cooperative Committee

Section 11.01: The parties agree to participate in the NECA-IBEW National Labor-Management Cooperation Fund, under authority of Section 6(b) of the Labor-Management Cooperation Act of 1978, 29 U.S.C. §175(a) and Section 302(c)(9) of the Labor-Management Relations Act, 29 U.S.C. §186(c)(9). The purposes of this Fund include the following:

(1) to improve communication between representatives of labor and management;
(2) to provide workers and employers with opportunities to study and explore new and innovative joint approaches to achieving organizational effectiveness;
(3) to assist workers and employers in solving problems of mutual concern not susceptible to resolution within the collective bargaining process;
(4) to study and explore ways of eliminating potential problems which reduce the competitiveness and inhibit the economic development of the electrical construction industry;
(5) to sponsor programs which improve job security, enhance economic and community development, and promote the general welfare of the community and the industry;
(6) to encourage and support the initiation and operation of similarly constituted local labor-management cooperation committees;
(7) to engage in research and development programs concerning various aspects of the industry, including, but not limited to, new technologies, occupational safety and health, labor relations, and new methods of improved production;
(8) to engage in public education and other programs to expand the economic development of the electrical construction industry;
(9) to enhance the involvement of workers in making decisions that affect their working lives; and
(10) to engage in any other lawful activities incidental or related to the accomplishment of these purposes and goals.

Section 11.02: The Fund shall function in accordance with, and as provided in, its Agreement and Declaration of Trust, and any amendments thereto and any other of its governing documents. Each Employer hereby accepts, agrees to be bound by, and shall be entitled to participate in the NLMCC, as provided in said Agreement and Declaration of Trust.

Section 11.03: Each employer shall contribute one cent ($.01) per hour worked under this Agreement up to a maximum of 150,000 hours per year. Payment shall be forwarded monthly, in a form and manner prescribed by the Trustees, no later than fifteen (15) calendar days following the last day of the month in which the labor was performed. The Central Texas Chapter, NECA, or its designee, shall be the collection agent for this Fund.

Section 11.04: If an Employer fails to make the required contributions to the Fund, the Trustees shall have the right to take whatever steps are necessary to secure compliance. In the event the Employer is in default, the Employer shall be liable for a sum equal to 15% of the delinquent payment, but not less than the sum of twenty dollars ($20), for each month payment of contributions is delinquent to the Fund, such amount being liquidated damages, and not a penalty, reflecting the reasonable damages incurred by the Fund due to the delinquency of the payments.

Such amount shall be added to and become a part of the contributions due and payable, and the whole amount due shall bear interest at the rate of ten percent (10%) per annum until paid. The Employer shall also be liable for all costs of collecting the payment together with attorneys' fees.

## ARTICLE XII
## P.A.C. Fund

The Employer agrees to deduct and transmit to the Local Union 520, IBEW, Committee on Political Education (IBEW-COPE) .05 cents for each clock hour worked from the wages of those employees who voluntarily authorize such contributions on the forms provided for that purpose by IBEW-COPE. The deductions will be made monthly and reported and remitted in accordance with Article IV, Section 11 of this Agreement.

Any Employee may revoke the voluntary authorization at any time by notifying the Company and IBEW-COPE in writing of a desire to do so.

The Union will indemnify and save the Company harmless from any claims, suits, or any other form of liability as a result of making payroll deductions described above.

## ARTICLE XIII

This Agreement set forth the entire contract between the Chapter and the Union and supersedes all previous understandings and Agreements between them and amendments thereto.

## ARTICLE XIV
## Substance Abuse Language

The dangers and costs that alcohol and other chemical abuses can create in the electrical contracting industry in terms of safety and productivity are significant. The parties to this Agreement resolve to combat chemical abuse in any form and agree that, to be effective, programs to eliminate substance abuse and impairment should contain a strong rehabilitation component. The local parties recognize that the implementation of a drug and alcohol policy and program must be subject to all applicable federal, state, and local laws and regulations. Such policies and programs must also be administered in accordance with accepted scientific principles and must incorporate procedural safeguards to ensure fairness in application and protection of legitimate interests of privacy and confidentiality. To provide a drug-free workforce for the Electrical Construction Industry, each IBEW local union and NECA chapter shall implement an area-wide Substance Abuse Testing Policy. The policy shall include minimum standards as required by the IBEW and NECA. Should any of the required minimum standards fail to comply with federal, state, and/or local laws and regulations, they shall be modified by the local union and chapter to meet the requirements of those laws and regulations.

## ARTICLE XV
## Code of Excellence

The parties to this Agreement recognize that to meet the needs of our customers, both employer and employee must meet the highest levels of performance, professionalism, and productivity. The Code of Excellence has proven to be a vital element in meeting the customers' expectations.

Therefore, each IBEW local union and NECA chapter shall implement a Code of Excellence Program. The program shall include minimum standards as designed by the IBEW and NECA.

## Separability Clause

Should any provision of this Agreement be declared illegal by any court of competent jurisdiction, such provision shall immediately become null and void, leaving the remainder of the Agreement in full force and effect and the parties shall, thereupon, seek to negotiate substitute provisions which are in conformity with the applicable laws.

SIGNED FOR THE UNION:
Local Union No. 520 of the International
Brotherhood of Electrical Workers

Ben Brenneman
Business Manager/Financial Secretary
IBEW Local Union 520

SIGNED FOR THE EMPLOYER:
A.S.H. Electrical Services LLC

A.S.H. Electrical Services LLC Representative

# 1st YEAR APPRENTICE WAGE MEMORANDUM OF UNDERSTANDING

**BETWEEN**

**A.S.H. ELECTRICAL SERVICES LLC**

**AND**

**IBEW LOCAL UNION 520**

It is mutually agreed upon between IBEW Local 520 and A.S.H. Electrical Services LLC, effective May 27, 2019, that the minimum wage for a first-year apprentice shall be $15.00 per hour. This MOU shall remain in effect until such time as 50% of the JIW wage rate is greater than $15.00 per hour.

SIGNED FOR THE UNION:
Local Union No. 520 of the International
Brotherhood of Electrical Workers

SIGNED FOR THE EMPLOYER:
A.S.H. Electrical Services LLC

Ben Brenneman
Business Manager/Financial Secretary
IBEW Local Union 520

A.S.H. Electrical Services LLC Representative

**CE ADVANCEMENT**
**MEMORANDUM OF UNDERSTANDING**

**BETWEEN**

**A.S.H. ELECTRICAL SERVICES**

**LLC**

**AND**

**IBEW LOCAL UNION 520**

A CE shall obtain a Texas State Journeyman's License before being upgraded to JIW status.

SIGNED FOR THE UNION:
Local Union No. 520 of the International
Brotherhood of Electrical Workers

SIGNED FOR THE EMPLOYER:
A.S.H. Electrical Services LLC

Ben Brenneman
Business Manager/Financial Secretary
IBEW Local Union 520

A.S.H. Electrical Services LLC Representative

**2022 Residential MOU**

**Scope:** This MOU shall apply to all dwelling units including single family dwellings, apartments, and condominiums four stories and below. This MOU shall not apply to the commercial portion of mixed-use developments.

1. A CW/CE, having attained a Residential Journeyman's License, shall be awarded 2000 SBCs/ OJT hours. This CW/CE shall be allowed to work unsupervised on residential construction/service work.
2. A worker holding a Residential or Unrestricted Journeyman's License shall be the first person assigned to any residential project.
3. On all residential projects with four or more workers, a worker holding a Residential Journeyman's License shall be designated Residential foreman. This Residential foreman shall be allowed to supervise a crew of up to 10 workers of his classification or below, including first- and second-year apprentices. This Residential foreman shall receive a 10% pay premium above his/her classification.
4. On all residential projects requiring more than 11 workers, one shall be designated Residential General Foreman. The Residential General Foreman shall receive a 20% pay premium above his/her classification.
5. There shall be one foreman per 10 workers.
6. A CW/CE with a Residential Journeyman's License shall continue to accrue SBCs/OJT hours and be advanced in the CW/CE program accordingly.

SIGNED FOR THE UNION:
Local Union No. 520 of the International
Brotherhood of Electrical Workers

SIGNED FOR THE EMPLOYER:
A.S.H. Electrical Services LLC

______________________________

Ben Brenneman
Business Manager/Financial Secretary
IBEW Local Union 520

______________________________

A.S.H. Electrical Services LLC Representative

# SHORT CALL EXTENSION

## MEMORANDUM OF UNDERSTANDING BETWEEN A.S.H. ELECTRICAL SERVICES LLC AND IBEW LOCAL UNION 520

In order to accommodate short term employment needs of the employer signed to this agreement, and the needs of our customers, the union and employer agree to the following:

Article III, Section 3.12 of the Inside Agreement between A.S.H. Electrical Services LLC and Local Union 520, of the International Brotherhood of Electrical Workers, shall have the following language added to the existing language contained in Article III, Section 3.12:

> A forty (40) hour call may be extended an additional forty (40) hours by the employer is job conditions warrant such extension. An applicant is not required to stay for the second forty (40) hour period unless told in advance the job as for eighty (80) hours. For the purposes of calculating hours worked under this Memorandum, only the straight time hours worked will be used. Any overtime worked during the one (1) or two (2) week period covered by this Memorandum will not affect the applicant's position on the Out-of-Work List.

This Memorandum shall continue in effect from year to year hereafter unless changed or terminated in the same manner as prescribed for the Inside Agreement.

SIGNED FOR THE UNION:
Local Union No. 520 of the International Brotherhood of Electrical Workers

SIGNED FOR THE EMPLOYER:
A.S.H. Electrical Services LLC

Ben Brenneman
Business Manager/Financial Secretary
IBEW Local Union 520

A.S.H. Electrical Services LLC Representative

# SMALL WORKS MEMORANDUM OF UNDERSTANDING

## BETWEEN

## A.S.H. ELECTRICAL SERVICES LLC

## AND

## IBEW LOCAL UNION 520

IBEW Local Union 520 and EMPLOYER have repeatedly discussed possible solutions to gaining market share within the small works arena. In an effort to assist all signatory contractors in this arena, Local 520 offers the following:

**Four Person Crew**

Effective June 6, 2022, the Union agrees on any/all jobs throughout the Local 520 jurisdiction, with four (4) or less employees, the signatory contractor may utilize the services of a Construction Electrician (CE) and/or a 6th period apprentice. This CE or apprentice must be in possession of a State of Texas Journeyman License and may work alone, if necessary.

Additionally, the licensed CE may supervise up to three (3) additional equal or lower classified workers (CE's and/or CW's). This crew mix would not include Apprentice Wiremen. As long as the jobsite requires 4 or less employees, there will be no need for a Journeyman Inside Wireman (JIW) nor a Foreman (F). Should the four-person crew increase to five (5) or more, a licensed JIW or a licensed Foreman must be utilized.

Due to the market conditions, the parties recognize this agreement to be a variance to Article VI Section 6.12 of the inside agreement that necessitates the JIW being the first person on the job. The parties recognize Apprentices and CW/CEs operate under a formal training program where OJT under direct and indirect supervision by a JIW is still an important component to their development. Therefore, employers must be diligent to ensure CW/CE employees receive OJT training supervised by a JIW outside of these qualifying projects.

Signatory Contractors are not limited to any number of Four Person Crew jobsites. Pay rates and applicable benefits for the above classified workers shall be the ones listed in the Local 520 Inside Collective Bargaining Agreement between IBEW Local Union 520 and A.S.H. Electrical Services LLC.

This Memorandum of Understanding will expire on June 4, 2028, unless both Parties agree to extend it for an additional timeframe.

SIGNED FOR THE UNION:
Local Union No. 520 of the International Brotherhood of Electrical Workers

SIGNED FOR THE EMPLOYER:
A.S.H. Electrical Services LLC

Ben Brenneman
Business Manager/Financial Secretary
IBEW Local Union 520

A.S.H. Electrical Services LLC Representative

**Memorandum of Understanding**
**Summer Worker Program**

1. Must be by informal understanding between the local Union, the Employer and the JATC, with written guidelines.

2. The guidelines should specify the following conditions:

   a. The maximum number to be employed.

   b. Effective only when placement will not displace an Apprentice or Intermediate Journeyman.

   c. Qualifications:
      1. At least 16 years old
      2. A bona fide student (evidence required)
      3. Summer worker and employer signatures on statement of understanding (sample attached)

   d. Placement for a specific period of time, not to exceed 90 days. (Ending with the first pay period in September).

   e. Placed as a Summer Worker. NOT as an apprentice. (Cannot be referred or worked on jobs requiring registered apprentices).

   f. Rate of pay shall be equal to that of a first period indentured apprentice.

   g. Work performed as a Summer Worker is not counted towards apprenticeship.

   h. Wages paid to Summer Workers are included in gross labor payroll, and the 3% of gross labor payroll payment to NEBF must include Summer Workers wages.

   i. Limited electrical work (same as unindentured apprentice).

SIGNED FOR THE UNION:
Local Union No. 520 of the International
Brotherhood of Electrical Workers

SIGNED FOR THE EMPLOYER:
A.S.H. Electrical Services LLC

______________________________

Ben Brenneman
Business Manager/Financial Secretary
IBEW Local Union 520

______________________________

A.S.H. Electrical Services LLC Representative

**Memorandum**
**of Understanding**

**Between IBEW Local**
**Union 520**
**and**
**A.S.H. ELECTRICAL SERVICES LLC**

Effective June 2, 2025 through June 4, 2028.

On jobs of five (5) or more days duration on the main campus* of the University of Texas, if parking is not provided, the employer will reimburse $6.00 per day for parking to each employee who reports to work on time and works all regular hours available to him. The employer is not responsible to provide transportation to and from parking areas.

SIGNED FOR THE UNION:
Local Union No. 520 of the International
Brotherhood of Electrical Workers

SIGNED FOR THE EMPLOYER:
A.S.H. Electrical Services LLC

Ben Brenneman
Business Manager/Financial Secretary
IBEW Local Union 520

A.S.H. Electrical Services LLC Representative

*from I-35 to Guadalupe Street, from East & West Dean Keeton Street to East & West Martin Luther King, Jr. Blvd.

# Construction Wireman/Construction Electrician Memorandum of Understanding

## PURPOSE:

This agreement has two goals; one is to recruit an adequate number of personnel to meet the demands of the electrical construction industry in the jurisdiction covered by the inside construction and maintenance agreement. The second objective is to establish a standard by which those recruited will be properly placed for continuing skills based training.

## OBJECTIVES:

A. Provide a uniform means by which individuals can be brought into the organized industry.
B. Provide employment opportunities for those individuals who may not meet the entrance requirements of the local AETA
C. Establish a fair wage scale based on a skill standard that provides a clear and formal path to becoming a Journeyman Inside Wireman while maintaining a productive workforce.
D. Provide electrical employees with experience and potential, an avenue to becoming a Journeyman Inside Wireman.
E. To provide a second chance program for those indentured apprentices who discover that they do not fit into the AETA program.
F. To provide A.S.H. Electrical Services LLC and IBEW Local Union 520 the autonomous means of developing training programs to meet the needs of changing local markets.

## DEFINITIONS:

A. CW/CE – Construction Wireman/Construction Electrician
B. SBC – Skill Based Credits
C. AETA – Austin Electrical Training Alliance (formerly called Joint Apprenticeship Training Center)
D. JATC – Joint Apprenticeship Training Committee
E. LU 520 – International Brotherhood of Electrical Workers Local Union 520
F. Employer – A.S.H. Electrical Services LLC
G. TDLR – Texas Department of Licensing and Regulation
H. OJT – On the Job Training

## SECTION 1 – ADMINISTRATION

A. The AETA and LU 520 shall be responsible for:

1) Administering skill-based evaluations (supervised by Local Union staff)
2) Monitoring progress of the CW/CE for wage advancement
3) Develop and deliver skill-based training courses
4) Notifying LU 520 of the number of apprentices available for work assignments
5) Recruiting, processing and dispatching applicants to employers for assignment.

B. Either party (EMPLOYER, LU 520 or AETA) may review all skill-based evaluations and evaluation procedures.

**SECTION 2 – WAGES, BENEFITS AND ADVANCEMENT**

Upon successful accumulation of 16,000 Skill Based Credits (SBC) and successful completion of a Texas State Journeyman's License the Construction Electrician shall be upgraded to Journeyman Inside Wireman.

**A. Wages Appendices A1 and A2**

1. Accumulated SBC's shall determine the individuals initial pay rate. Individuals shall advance upon meeting the requirements shown in Appendix D.
   or

2. Experienced Applicants with verifiable industry wage -or- AETA Transferees (Ref: SECTION 5): wages shall remain frozen until accumulated SBC's warrant pay advancement.

**a. BENEFITS – REFERENCE APPENDICES A1 and A2:**

1. Accumulated SBC's shall determine what level of benefits shall apply.
2. All benefits shall be paid in accordance with the various trust fund qualifications.

**b. SKILLS BASED CREDITS (SBC'S)** shall accrue by the following methods:

1. One SBC per each OJT hour worked for a signatory contractor.
2. One SBC for every two (2) OJT hours worked for a non-signatory contractor (wage documentation required; no credit (SBC's) for hours worked prior to program enrollment).
3. SBC's from skill based evaluation.
4. SBC's credited by successful completion of skills based courses. SBC's achieved in this manner shall not exceed 4,000 for the life of the program.
   (see APPENDIX C)

Note: In no case shall SBC's be earned above the stated maximums through the evaluation process and/or the optional course work within each skill discipline (see APPENDIX B).

c. <u>EXPERIENCED APPLICANTS SHALL</u>:

1) Provide verifiable electrical industry wage documentation to establish their wage rate. <u>(wage documents for public works projects where a wage determination is established shall not be eligible for verification)</u>

<u>OR</u>

2) Take the next available skills based evaluation to determine how many SBC's shall be credited and establish initial wage rate.

SEE APPENDICES A1 AND A2 FOR EVALUATION, CLASS SBC'S AND WAGE SCHEDULE.

## <u>SECTION 3 – IMPLEMENTATION</u>:

The LU 520 shall be primarily responsible for the recruitment, processing and dispatching of applicants to employers. The LU 520 shall provide all processing information to the AETA for the purpose of tracking the CW/CE's progress in the program.

The JATC shall be responsible for the training of participants in accordance with Article VI, section 6.01 of the inside agreement.

The Employer shall be responsible for providing a termination slip to the LU 520 and the AETA when a CW/CE becomes unemployed.

CW/CE shall be employed on a conditional basis for 90 days from their first assignment. During the conditional employment period the LU 520 and A.S.H. Electrical Services LLC shall determine the individuals continued status in the program.

No employer is guaranteed a specific number of CW/CE.

Each job shall follow a ratio of one or more (1 or more) CW/CE(s) to one (1) JIW.

An employer who fails or refuses to hire available apprentices, in accordance with the agreed upon ratio of apprentices to journeymen, shall not be entitled to hire CW/CE.

CW/CE may be transferred from one qualifying project to another by the employer.

CW/CE shall not be included in the calculation of the apprentice to journeyman ratio.

Referral records may be inspected at LU 520 by a representative of the Employer.

# Construction Wireman/Construction Electrician Memorandum of Understanding

Effective January 1, 2020, all Construction Wiremen and Construction Electricians are required to provide proof of completion, by originally issued card or certificate, of an OSHA 10 safety training course.

## SECTION 4 – SUPERVISION:

The CW/CE who has less than 8,000 SBC's shall be under the supervision of a Journeyman Inside Wireman. It shall be the responsibility of the supervisor to lay out the work required and to permit the CW/CE to perform the work on his/her own. A CW/CE who has 8,000 SBC's shall be allowed to work with no supervision but shall not supervise any apprentices or Journeyman Wireman.

## SECTION 5 – TRANSFERS:

A. All transfers shall be approved by the JATC.
B. Individuals are limited to a maximum of (2) transfers.
C. Transferees shall not experience a Wage Rate or Benefit Reduction.
D. AETA to CW/CE program:
   Local Apprentices from AETA apprenticeship program may transfer to the CW/CE program at an equal pay rate providing the apprentice has:
   1) A satisfactory work history (hours worked, absenteeism, and tardiness); and
   2) Established in writing the basis for the transfer.
   3) Apprentice transferees shall be credited one (1) SBC for each OJT Hour + (500) SBC's per completed academic year of apprenticeship. In no instance shall this transfer result in the apprentice being granted more than the maximum SBC's as shown below:

**AETA to CW/CE Credit Table**

| AETA Completed | Credited SBC's | AETA Completed | Credited SBC's |
|---|---|---|---|
| Less than 1 year | 2000 | Completed 3rd year | 8000 |
| Complete 1st year | 4000 | Completed 4th year | 10000 |
| Complete 2nd year | 6000 | Completed 5th year | 12000 |

E. CW/CE to AETA Program:

   CW/CE meeting the requirements for entrance into the AETA program may transfer to the AETA program as outlined by the JATC standards. The transferring CW/CE will complete the IBEW/NECA ETA Proficiency Exam to determine placement in the academic portion of the training and will receive OJT Hour credits based on JATC guidelines. Transferees shall not experience a reduction in their wage rate.

**Construction Wireman/Construction Electrician**
**Memorandum of Understanding**

**SECTION 6 – TERM OF AGREEMENT:**

This Agreement shall take effect on June 2, 2019. The terms and conditions of this Agreement shall continue on jobs bid under said terms until such jobs are completed.

**Disputes:** All allegations of infractions of this agreement shall be referred to the Labor Management Committee as defined in the current inside/maintenance collective bargaining agreement. In the event of a deadlock the matter shall be referred to the IBEW Seventh District Vice-president and the NECA Southern Region Director for final and binding adjudication. This agreement is a Memorandum of Understanding to the area inside construction and maintenance collective bargaining agreement and may continue with or without requirement of separate notice.

**Commitment:** The two parties, by signature below, hereby commit and promise to use their best efforts to see that this Memorandum is used to its highest level for the maximum benefit of employers and employees alike.

The parties further promise and agree that if changes are needed to this Memorandum; those changes will be addressed in an atmosphere of mutual trust and cooperation for the equal benefit of employers and employees alike. **Furthermore, any changes to this agreement or program shall be subject to review by the IBEW Seventh District Vice-President and the NECA Southern Region Director.**

SIGNED FOR THE UNION:
Local Union No. 520 of the International
Brotherhood of Electrical Workers

SIGNED FOR THE EMPLOYER:
A.S.H. Electrical Services LLC

Ben Brenneman
Business Manager/Financial Secretary
IBEW Local Union 520

A.S.H. Electrical Services LLC Representative

# Construction Wireman/Construction Electrician Memorandum of Understanding

## APPENDIX A1 (CW1-CW6)

| Benefits | CE 1 | CE 2 | CE 3 | CE 4 | CE 5 | CE 6 |
|---|---|---|---|---|---|---|
| Range SBC'S | 0-2K | 2.01K-4K | 4.01K-6K | 6.01K-8K | 8.01K-10K | 10.01K-12K |
| JIW Rate | 44% | 44% | 49% | 54% | 59% | 64% |
| A.E.T.A. | NA | NA | NA | 1% of JIW | 1% of JIW | 1% of JIW |
| NLMCC | $0.01 | $0.01 | $0.01 | $0.01 | $0.01 | $0.01 |
| H&B | Plan C | Plan B | Plan B | Plan B | Plan B | Plan B |
| NEBF (3%) | 3% | 3% | 3% | 3% | 3% | 3% |
| Annuity | NA | NA | NA | 3% | 3% | 3% |
| AMF | .10 | .10 | .10 | .10 | .10 | .10 |

## APPENDIX A2 (CE1- CE 4)

| Benefits | CE 7 | CE 8 | CE 9 | CE 10 |
|---|---|---|---|---|
| Range SBC's | 12.01K-13K | 13.01K-14K | 14.01K-15K | 15.01K- more |
| JIW Rate | 68% | 73% | 78% | 85% |
| A.E.T.A. | 1% of JIW | 1% of JIW | 1% of JIW | 1% of JIW |
| NLMCC | $0.01 | $0.01 | $0.01 | $0.01 |
| H&B | Plan B | Plan B | Plan B | Plan B |
| NEBF (3%) | 3% | 3% | 3% | 3% |
| Annuity | 5% | 5% | 5% | 5% |
| AMF | .10 | .10 | .10 | .10 |

| |
|---|
| Low |
| Middle |
| High |

**NOTE: Benefit Schedule shown reflects current rates. Rates shall be adjusted as per the Current Inside Agreement.**
**-Health and Welfare provides the employee with the option to select employee single coverage (for Levels 2, 3 & 4 only) or employee/dependent coverage (for Levels 2-8). Employees may change this election once each calendar year or more often as the trust fund rules provide.**
**-Only SBCs earned from participating employers qualify for benefits eligibility.**

# Construction Wireman/Construction Electrician Memorandum of Understanding

## APPENDIX B

| SKILL DISCIPLINE | MAX SBC's |
|---|---|
| Branch Wiring | 6,400 |
| Feeder Wiring | 1,600 |
| Panels & Transformers | 1,600 |
| Switchgear & Motor Control Center | 1,120 |
| Motors & Motor Controls | 800 |
| Lighting & Lighting Controls | 2,400 |
| Grounding | 160 |
| Devices | 320 |
| Electrical Codes & Ordinances | 160 |
| Blueprints & Specifications | 160 |
| Meters & Tools | 160 |
| OSHA & Job Safety | 160 |
| Agreements | 160 |
| Service & Troubleshooting | 800 |

# Construction Wireman/Construction Electrician Memorandum of Understanding

## APPENDIX C

### Optional Coursework SBC Curriculum Allocation

| Skills Course | SBC's Credit | Course Hours |
|---|---|---|
| Branch Wiring | 920 | 72 |
| Electrical Codes & Ordinances | 320 | 30 |
| Service/Troubleshooting | 280 | 24 |
| Panels & Transformers | 280 | 24 |
| OSHA & Job Safety | 280 | 24 |
| Meters & Tools | 280 | 24 |
| Feeder Wiring | 280 | 24 |
| Blueprints & Specifications | 280 | 24 |
| Agreements | 240 | 24 |
| Switchgear & Motor Control Centers | 200 | 18 |
| Motors & Motor Controls | 200 | 18 |
| Lighting & Lighting Controls | 200 | 18 |
| Grounding | 120 | 12 |
| Devices | 120 | 12 |
| TOTAL | 4000 | 180 |

Construction Wireman/Construction Electrician
Memorandum of Understanding

APPENDIX D

| Classification | SBC's | Training | Awarded |
|---|---|---|---|
| **CW2** | 2000 | Conduit Bending 1 | 230 |
| **CW3** | 4000 | Blueprint Reading | 280 |
| **CW4** | 6000 | Conduit Bending 2 | 230 |
| **CW5** | 8000 | Codeology | 120 |
| **CW6** | 10000 | Basic Code | 120 |
| **CE1** | 12000 | Conduit Bending 3 | 230 |
| **CE2** | 13000 | Grounding/Transformers | 320 (120+200) |
| **CE3** | 14000 | Services | 200 |
| **CE4** | 15000 | Motor Control | 280 |
| **JIW** | 16000 | | |

NECA

IBEW LOCAL 520

## Memorandum of Understanding
## Four Year Apprenticeship Program Conversion

Made and entered into April 10, 2023, between IBEW Local Union 520, hereafter referred to as the Union, and the EMPLOYER, hereafter referred to as the Employer. This Agreement shall remain in effect from year to year throughout the current collective bargaining agreement and will expire at that time on June 1, 2025.

1. The parties hereby agree that Article IV, Section 4.03 Appendix A (Wages) of the Inside Agreement between the parties shall be modified with an additional schedule to meet the needs of the apprenticeship wage and benefit schedule for those starting the (4) Four Year Program.

| **Apprentice Wireman** | | | | | |
|---|---|---|---|---|---|
| Multiplier | Class | NEBF | Annuity | Medical | JATC |
| 50% of JIW<br>0-999 Hrs | 1st Period | 3% | ** | $3.70 | 1%*** |
| 55% of JIW<br>1000-1999 Hrs | 2nd Period | 3% | 3% | $3.70 | 1%*** |
| 60% of JIW<br>2000-3499 Hrs | 3rd Period<br>**180 Hrs Instruction** | 3% | 3% | $3.70 | 1%*** |
| 65% of JIW<br>3500-4999 Hrs | 4th Period<br>**360 Hrs Instruction** | 3% | 5% | $3.70 | 1%*** |
| 70% of JIW<br>5000-6499 Hrs | 5th Period<br>**540 Hrs Instruction** | 3% | 5% | $3.70 | 1%*** |
| 75% of JIW<br>6500-8000 Hrs | 6th Period<br>**720 Hrs Instruction** | 3% | 8% | $3.70 | 1%*** |
| 50% of JIW<br>**Max Hrs2000** | Unindentured Apprentice | 3% | ---------------- | $2.65 | 1%*** |
| **Journeyman 8000, completed 900 hours of related instruction and obtained State of Texas Journeyman license. Classroom instruction hours are cumulative.**<br>**1% effective January 6 2025<br>***1% of Journeyman Straight -Time Rate | | | | | |

SIGNED FOR THE UNION:
Local Union No. 520 of the International
Brotherhood of Electrical Workers

Ben Brenneman
Business Manager/Financial Secretary
IBEW Local Union 520

SIGNED FOR THE EMPLOYER:
A.S.H. Electrical Services LLC

A.S.H. Electrical Services LLC Representative

THE COUNCIL ON INDUSTRIAL RELATIONS
FOR THE ELECTRICAL CONTRACTING INDUSTRY

OFFICE OF THE SECRETARY • 900 7th STREET, N.W. • WASHINGTON, D.C. 20001
PHONE (202) 728-6165 • FAX (202) 728-6168 • WEBSITE: WWW.THECIR.ORG

June 10, 2025

Mr. Adam C. Johnke
Co-Owner
A.S.H. Electrical Services, LLC
P.O. Box 61905
San Angelo, Texas 76906

Mr. Ben Brenneman
Business Manager
IBEW Local Union 520
4818 East Ben White Blvd
Austin, TX 78741

RE: Reconsideration of Council on Industrial Relations Decision

Dear Mr. Johnke:

We have received your request that the Council on Industrial Relations ("CIR") reconsider its May 13, 2025, decision in which it directed A.S.H. Electrical Services, LLC and IBEW Local 520 "to sign and immediately implement the Collective Bargaining Agreement" attached to the CIR's decision. The CIR fully considered the issues you have raised in your request for reconsideration. There is no basis for the CIR to reconsider its decision, which is final and binding on the parties.

Al D. Davis
Secretary, CIR

Steve Krieg
Treasurer, CIR

SK/ADD:ek

Copy to: Chris J. Wagner, International Vice President, IBEW Seventh District
Frank Piatt, Executive Director, Southern Region, NECA

PARTIES IN DISPUTE:
A.S.H. Electric
Local Union No. 520

Austin, Texas
May 13, 2025
Inside

PRESENTATION:
By brief only for A.S.H. Electric
By brief and oral argument for Local Union No. 520

APPEARANCES:
For Local Union No. 520: B. Brenneman, D. Campbell

MATTERS IN DISPUTE:

1. Article I, Section 1.01 – Length of Agreement
2. Article II, Section 2.01 – Favored Nations
3. Article IV, Section 4.02 – Paid Holidays
4. Article IV, Section 4.03 – Wages
5. Article V – General Rules
6. Article V – Walk Time
7. Article VI, Section 6.16 – Apprenticeship Contribution
8. Article VIII – Annuity Plan

MEMBERS OF COUNCIL SITTING:

| FOR THE EMPLOYER | FOR THE UNION |
|---|---|
| D. Laffoon | M. Hager |
| S. Krieg | C. Bergfeld |
| J. Brunia | A. Warwick |
| T. Maloney | D. McInerney |
| F. Piatt | R. Wolf |
| L. Bell | D. Robinson |

DECISION:

After careful consideration of the evidence submitted, the Council rules as follows:

In the instant case, the parties are directed to sign and immediately implement the Collective Bargaining Agreement which is attached hereto and hereby made a part of this decision. The Council retains jurisdiction over disputes pertaining to this Agreement including any wage/fringe opener(s) contained therein and such disputes are to be returned to Council through the normal procedures if the parties are unable to reach agreement.

UNANIMOUSLY ADOPTED:
Washington, DC
May 13, 2025

____________________________ ____________________________

Acting Co-Chairman Acting Co-Chairman

_________________________________

Secretary

June 2, 2025 - June 4, 2028

# AGREEMENT
Between

A.S.H. Electrical Services LLC

and

LOCAL UNION NO. 520 of the
INTERNATIONAL BROTHERHOOD OF
ELECTRICAL WORKERS

Austin, Texas

**June 2, 2022 - June 1, 2025**
**AGREEMENT**

**Between**

**A.S.H. Electrical Services LLC**

**and**

**LOCAL UNION NO. 520 of the**
**INTERNATIONAL BROTHERHOOD OF**
**ELECTRICAL WORKERS**
**Austin, Texas**

## PARTIES CLAUSE

Agreement by and between the A.S.H. Electrical Services LLC and LOCAL UNION 520, INTERNATIONAL BROTHERHOOD OF ELECTRICAL WORKERS. As used hereinafter in this Agreement, the term "Employer" shall mean A.S.H. Electrical Services LLC, and the term "Union" shall mean LOCAL UNION NO. 520, IBEW.

## BASIC PRINCIPLES

The Employer and the Union have a common and sympathetic interest in the Electrical Industry. Therefore, a working system and harmonious relations are necessary to improve the relationship between the Employer, the Union, and the Public. Progress in Industry demands a mutuality of confidence between the Employer and the Union. All will benefit by continuous peace, and by adjusting any differences by rational, common sense methods. Now, therefore, in consideration of the mutual promises and agreements herein contained, the parties hereto agree as follows:

## ARTICLE I
## EFFECTIVE DATE/CHANGES/GRIEVANCES/DISPUTES

Section 1.01: This Agreement shall take effect on June 2, 2025 and shall remain in effect through June 4, 2028, unless otherwise specifically provided for herein. It shall continue in effect from year to year thereafter, from the start of the first full pay period in June through the last pay period starting in May of each year, unless changed or terminated in the way later provided herein.

Section 1.02(a): Either party or an Employer withdrawing representation from the Chapter or not represented by the Chapter, desiring to change or terminate this Agreement must provide written notification at least 90 days prior to the expiration date of this Agreement or any anniversary date occurring thereafter.

(b) Whenever notice is given for changes, the nature of the changes desired must be specified in the notice, or no later than the first negotiating meeting unless mutually agreed otherwise.

(c) The existing provisions of the Agreement, including this Article, shall remain in full force and effect until a conclusion is reached in the matter of proposed changes.

(d) In the event that either party, or an Employer withdrawing representation from the Chapter or not represented by the Chapter, has given a timely notice of proposed changes and an agreement has not been reached by the expiration date or by any subsequent anniversary date to renew, modify, or extend this Agreement, or to submit the unresolved issues to the Council on Industrial Relations for the Electrical Contracting Industry (CIR), either party or such an Employer, may serve the other a ten (10) day written notice terminating this Agreement. The terms and conditions of this Agreement shall remain in full force and effect until the expiration of the ten (10) day period.

(e) By mutual agreement only, the Chapter, or an Employer withdrawing representation from the Chapter or not represented by the Chapter, may jointly, with the Union, submit the unresolved issues to the Council on Industrial Relations for adjudication. Such unresolved issues shall be submitted no later than the next regular meeting of the Council following the expiration date of this Agreement or any subsequent anniversary dates. The Council's decisions shall be final and binding.

(f) When a case has been submitted to the Council, it shall be the responsibility of the negotiating committee to continue to meet weekly in an effort to reach a settlement on the local level prior to the meeting of Council.

(g) Notice of a desire to terminate this Agreement shall be handled in the same manner as a proposed change.

Section 1.03: This Agreement shall be subject to change or supplement at any time by mutual consent of the parties hereto. Any such change or supplement agreed upon shall be reduced to writing, signed by the parties hereto, and submitted to the International Office of the IBEW for approval, the same as this Agreement.

Section 1.04: During the term of this Agreement, there shall be no stoppage of work either by strike or lockout because of any proposed changes in this Agreement or dispute over matters relating to this Agreement. All such matters must be handled as stated herein.

**GRIEVANCES/DISPUTES**

Section 1.05: There shall be a Labor-Management Committee of trustees representing the Union and three representing the Employers. It shall meet regularly at such stated times as it may decide. However, it shall also meet within 48 hours when notice is given by either party. It shall select its own Chairman and Secretary. The Local Union shall select the Union representatives and the Employer shall select the management representatives.

Section 1.06: All grievances or questions in dispute shall be adjusted by the duly authorized representative of each of the parties to this Agreement. In the event that these two are unable to adjust any matter within 48 hours, they shall refer the same to the Labor-Management Committee.

Section 1.07: All matters coming before the Labor-Management Committee shall be decided by a majority vote. Four members of the Committee, two from each of the parties hereto, shall be a quorum for the transaction of business, but each party shall have the right to cast the full vote of its membership and it shall be counted as though all were present and voting.

Section 1.08: Should the Labor-Management Committee fail to agree or to adjust any matter, such shall then be referred to the Council on Industrial Relations for the Electrical Contracting Industry for adjudication. The Council's decisions shall be final and binding.

Section 1.09: When any matter in dispute has been referred to conciliation or arbitration for adjustment, the provisions and conditions prevailing prior to the time such matters arose shall not be changed or abrogated until agreement has been reached or a ruling has been made.

Section 1.10: The Labor-Management Committee shall not recognize any grievance or dispute unless written notice of the charge is given within thirty (30) days after the representatives of the parties to this Agreement first became aware, or reasonably should have been aware, of a violation of this Agreement. This shall not apply to any Section which requires money to be deposited to any Trust Fund.

## ARTICLE II
## Employers Rights - Union Rights

Section 2.01: The Employer recognizes the Union as the exclusive representative of all its employees performing work within the jurisdiction of the Union for the purpose of collective bargaining in respect to rates of pay, wages, hours of employment and other conditions of employment.

Section 2.02(a): Certain qualifications, knowledge, experience, and financial responsibility are required of everyone desiring to be an Employer in the Electrical Industry. Therefore, an Employer who contracts for electrical work is a person, firm, or corporation, having these qualifications and maintaining a place of business and suitable financial status to meet payroll requirements and

employing at least one Journeyman Wireman.

(b) All Employers subject to the terms of this Agreement shall carry an Indemnity Bond, issued by a company authorized to do business in the State of Texas, the minimum for all employers shall be $5,000.00 as evidence of financial responsibility, and to insure proper payments to the Electrical Joint Apprenticeship and Training Trust Fund, the National Employees Benefit Board, the Austin Vacation Trust Fund, IBEW Local Union 520 Annuity Plan and Health and Welfare Plan, 401(k), and P.A.C. deductions, to Local Union 520, for any union dues or assessments withheld on behalf of employees, and wages required under this Agreement be paid directly to the affected employee(s). Bond amounts greater than $5000 shall be required based on the following formula outlined below:

(c) Each employer signatory to the collective bargaining agreement shall be required to secure a welfare bond of at least $5000. Employers shall be required to secure larger bonds based on the following formula: Employers shall provide a welfare bond based on the average monthly hours worked utilizing the previous three years to calculate the average. This number shall be multiplied by the aggregate amount of the benefit package and rounded up to the next one thousandth. If an employer has been delinquent in the payment of benefits more than twice, they shall be required to pay benefits timely on a weekly basis for a period of six months and secure the required bond. After a period of six months of timely benefit payments the employer may return to the monthly schedule. If an employer has no previous experience in the jurisdiction the bond shall be based on the estimated monthly hours of the project to be worked. The maximum bond for any employer shall be $50,000.

The aforesaid Bond shall be executed for a period of time to conform to the time limitations set forth in this Agreement and shall be renewed as provided for in subsequent Agreements.

The Bond shall provide that it may not be canceled by either the Employer or the insurance carrier without thirty (30) days written notice in advance to the Union by Certified, Registered, or Insured mail from the Surety. Proof of the execution of the Bond, in the form of an affidavit executed by the insurance carrier, shall be furnished the Union for each Employer. Such affidavit shall show on its face that it may not be canceled by either the insurance carrier of the Employer without prior notification to the Union. The Local Union shall furnish a copy of the affidavit of Bond to each Fund.

The Obligee (Local Union 520, IBEW) shall notify the Surety within thirty (30) days after having knowledge of a breach of this Agreement by the principal hereof.

(d) Fringe benefits provided for under this Agreement are due and payable on or before the 15th day of the month following the month, covering the hours worked by each employee. Each Employer shall file a monthly report for each fringe benefit, in the form established, therefore, each report shall be filed, regardless of whether or not the Employer has employed any employee in the month covered by said report.

Any Employer who fails to file a report and pay contributions for any of the fringe benefits by the 15th day following the month in which such report or payment is due shall be considered delinquent and is in violation of this Agreement. If payments are not mailed in time to reach the

Benefit Fund by the prescribed time, interest at the rate of 1½% monthly will be due and payable. Each Employer shall make available applicable books and records for the purpose of auditing same to determine the amount of his liability and shall pay the expense of audit if delinquencies are found, under guidelines of the Funds. Action to collect contributions may be brought in the name of the respective Fund involved, its Trustees and any assignee or agent designated by said Trustees. Employer hereby accepts and agrees to the terms of each trust agreement and plan for such fringe Benefit Fund.

A delinquent Employer shall be liable to any employee affected by such delinquency for all benefits lost by such employee by virtue of such delinquency, and such delinquent Employer shall also be liable for reasonable attorneys' fees for any action brought to recover the amount of said benefits.

"This section does not waive or deny any remedies of collection in other sections of this Agreement, Trust or a remedy at law".

Section 2.03: For all employees covered by this Agreement the Employer shall carry Workman's Compensation Insurance with a Company authorized to do business in this State, Social Security, and such other protective insurance as may be required by the laws of this State and shall furnish satisfactory proof of such to the Union. He shall also make contributions to the State Unemployment Compensation Commission.

Section 2.04(a): It is agreed that in accord with the Employees Benefit Agreement of the National Electrical Benefit Fund ("NEBF"), as entered into between the National Electrical Contractors Association and the International Brotherhood of Electrical Workers on September 3, 1946, as amended, and now delineated as the Restated Employees Benefit Agreement and Trust, that unless authorized otherwise by the NEBF the individual Employer will forward monthly to the NEBF's designated local collection agent an amount equal to three percent (3 %) of the gross monthly labor payroll, paid to, or accrued by, the employees in this bargaining unit, and a completed payroll report prescribed by the NEBF. The payment shall be made by check or draft and shall constitute a debt due and owing to the NEBF on the last day of each calendar month, which may be recovered by the suit initiated by the NEBF or its assignee. The payment and the payroll report shall be mailed to reach the office of the appropriate local collection agent not later than fifteen (15) calendar days following the end of each calendar month.

The individual Employer hereby accepts, and agrees to be bound by, the Restated Employees Benefit Agreement and Trust.

(b) An individual Employer who fails to remit as provided above shall be additionally subject to having his Agreement terminated upon seventy-two (72) hours' notice in writing being served by the Union, provided the individual Employer fails to show satisfactory proof that the required payments have been paid to the appropriate local collection agent.

The failure of an individual Employer to comply with the applicable provisions of the Restated Employees Benefit Agreement and Trust shall also constitute a breach of this Agreement.

Section 2.05: The Union reserves the right to discipline its members for violations of its laws,

rules, and agreements.

Section 2.06: The Local Union is part of the International Brotherhood of Electrical Workers and any violation or annulment by an individual Employer of the approved Agreement of this or any other Local Union of the IBEW, other than violations of Paragraph 2 of this Section, will be sufficient cause for the cancellation of his Agreement by the Local Union after a finding has been made by the International President of the Union that such a violation or annulment has occurred.

The subletting, assigning, or transfer by an individual Employer of any work in connection with electrical work to any person, firm or corporation not recognizing the IBEW or one of its Local Unions as the collective bargaining representative of his employees on any electrical work in the jurisdiction of this or any other Local Union to be performed at the site of the construction, alteration, painting or repair of a building, structure or other work, will be deemed a material breach of this Agreement.

Notwithstanding anything in this Agreement, the Employer may sublet, assign, or transfer the installation of wiring and devices for fire alarm or security systems if those systems are low voltage system, the installation of lightning protection system, trenching and backfilling excavation to a specialty contractor.

The Employer may also sublet, assign, or transfer any work requiring employees to place themselves in any trench that is greater than a depth of five feet.

The following work, systems and/or functions shall not be covered by the terms of this agreement: field instrumentation and installation, process control instrumentation and installation, instrument and control loop testing and certification, instrument calibration, instrument certification, PLC equipment, PLC programming, distributed control and SCADA systems, control system SCADA & HMI software development and programming, radio telemetry systems, and manufacture of control panels.

Nothing in this Agreement should be construed to require the Employer to purchase manufactured products from employer's signatory to a collective bargaining agreement.

All charges of violation of Paragraph 2 of this Section shall be considered as a dispute and shall be processed in accordance with the provisions of this Agreement covering the procedure for the handling of grievances and the final and binding resolution of disputes.

Section 2.07: No member of Local Union 520, while he remains a member of such Local Union and subject to employment by the Employers operating under this Agreement shall himself become a contractor for the performance of any electrical work.

Section 2.08: Only two individuals connected with an employing concern as owner, manager, superintendent, partner, or member of a Board of Directors shall perform any manual electrical work where it displaces the service of a Journeyman; and then only when he has at least one Journeyman, working under the terms of this Agreement, employed and working the same hours including overtime, with the exception of emergency repairs not to last over two (2) hours.

Section 2.09(a): The Union understands the Employer is responsible to perform the work required by the owner. The Employer shall, therefore, have no restrictions except those specifically provided for in the collective bargaining agreement, in planning, directing, and controlling the operation of all his work, in deciding the number and kind of employees to properly perform the work, in hiring and laying off employees, in transferring employees from job to job within the Local Union's geographical jurisdiction, in determining the need and number as well as the person who will act as Foreman, in requiring all employees to observe the Employer's and/or owner's rules and regulations not inconsistent with this Agreement, in requiring all employees to observe all safety regulations, and in discharging employees for proper cause.

(b) The employer shall have the right to call a Foreman by name provided:

A) The employer shall notify the business manager in writing of the name of the individual who is to be requested for employment as a Foreman. Upon such request, the business manager shall refer said Foreman provided the name appears on the highest priority group.

B) When an employee is called as a Foreman, he must remain as a Foreman for 500 hours or must receive a reduction in force.

## Portability

Section 2.10: The Employer, if signatory to a collective bargaining agreement or to a letter of assent to an agreement with another IBEW Local Union, may bring an unlimited amount of Supervisory bargaining unit employees employed in that Local Union's jurisdiction into Local Union 520's jurisdiction to perform supervisory work. Supervisory bargaining unit employees are defined as those that direct bargaining unit employees. The Employer may also bring one (1) bargaining unit employee employed in that Local Union's jurisdiction into Local Union 520's after the Employer employs one (1) Local Union 520's bargaining unit employee; if necessary this process will continue to alternate. The Employer shall maintain a minimum of a one (1) to one (1) ratio of Local Union 520's bargaining unit employees to those that are brought in through this Portability provision. The employees brought in through portability may remain on the specific job until the job is complete. All employees brought in through this portability provision must check in with the Business Manager of IBEW Local Union 520 and all working assessments shall be paid to Local Union 520. All charges of violations of this section shall be considered as a dispute and shall be processed in accordance with the provisions of the Agreement for the handling of grievances with the exception that any decision of a local labor-management committee that may be contrary to the intent of the parties to the National Agreement on employee Portability, upon recommendation of either or both the appropriate IBEW International Vice President or NECA Regional Executive Director, is subject to review, modification, or rescission by the Council on Industrial Relations.

Section 2.11: The Union has the right to appoint a Steward at any shop and/or job where workmen are employed under the terms of this Agreement. The Employer shall be notified in writing of who the Steward is. No Steward shall be discriminated against by the Employer because of the faithful performance of his duties as Steward.

## ARTICLE III
## Standard Inside Referral

Section 3.01: In the interest of maintaining an efficient system of production in the Industry, providing for an orderly procedure of referral of applicants for employment preserving the legitimate interests of the employees in their employment status within the area and of eliminating discrimination in employment because of membership or non-membership in the Union, the parties hereto agree to the following system of referral of applicants for employment.

Section 3.02: The Union shall be the sole and exclusive source of referral of applicants for employment.

Section 3.03: The Employer shall have the right to reject any applicant for employment.

Section 3.04: The Union shall select and refer applicants for employment without discrimination against such applicants by reason of membership or non-membership in the Union and such selection and referral shall not be affected in any way by rules, regulations, bylaws, constitutional provisions or any other aspect or obligation of Union membership policies or requirements. All such selection and referral shall be in accord with the following procedure.

Section 3.05: The Union shall maintain a register of applicants for employment established on the basis of the Groups listed below. Each applicant for employment shall be registered in the highest priority Group for which he qualifies.

### Journeyman Wireman - Journeyman Technician

**GROUP I** All applicants for employment who have four or more years' experience in the trade, are residents of the geographical area constituting the normal construction labor market, have passed a journeyman's examination given by a duly constituted Inside Construction Local Union of the I.B.E.W. or has been certified as a Journeyman Wireman by any inside Joint Apprenticeship and Training Committee, and, who have been employed in the trade for a period of at least one year in the last four years in the geographical area covered by the collective bargaining agreement.

Group I status shall be limited to one Local Union at one time. An applicant who qualifies for Group I in a local union shall be so registered electronically and remain on Group I in that local union unless and until the applicant designates another local union as his or her Group I local union. If an applicant qualifies for Group I status in a local union other than his or her home local union and designates that local as his or her Group I local union, the business manager of the new Group I status local union shall by electronic means notify the business manager of the applicant's former Group I status local union.

**GROUP II** All applicants for employment who have four or more years' experience in the trade and who have passed a Journeyman Wireman's examination given by a duly constituted Inside Construction Local Union of the IBEW or have been certified as a Journeyman Wireman by any Inside Joint Apprenticeship and Training Committee.

**GROUP III** All applicants for employment who have two or more years' experience in the trade, are residents of the geographical area constituting the normal construction labor market, and who have been employed for at least six months in the last three years in the geographical area covered by the collective bargaining agreement.

**GROUP IV** All applicants for employment who have worked at the trade for more than one year.

Section 3.06: If the registration list is exhausted and the Local Union is unable to refer applicants for employment to the Employer within 48 hours from the time of receiving the Employer's request, Saturdays, Sundays and holidays excepted, the Employer shall be free to secure applicants without using the Referral Procedure. But such applicants, if hired, shall have the status of "temporary employees".

Section 3.07: The Employer shall notify the Business Manager promptly of the names and Social Security numbers of such "temporary employees" and shall replace such "temporary employees" as soon as registered applicants for employment are available under the Referral Procedure.

Section 3.08: "Normal construction labor market" is defined to mean the following geographical area plus the commuting distance adjacent thereto which includes the area from which the normal labor supply is secured: Travis, Bastrop, Hays, Blanco, Burnet, Williamson, Lee, Llano, San Saba, Burleson, Caldwell, Fayette, Runnels, Coleman, Brown, Tom Green, Concho, McCulloch, Menard, Mason, Kimble and parts of Coryell and Bell Counties to include that part of Fort Hood in Coryell County south of Cowhouse Creek, and not to extend more than two (2) miles into Bell County from the Southeast boundary line of Coryell County, Gray Field, and the City of Killeen, and parts of Lampasas, Bell and Milam Counties, which are nearer to Austin than Waco, in the State of Texas.

The above geographical area is agreed upon by the parties to include the area defined by the Secretary of Labor to be the appropriate prevailing wage areas under the Davis-Bacon Act to which the Agreement applies.

Section 3.09: "Resident" means a person who has maintained his permanent home in the above defined geographical area for a period of not less than one year or who, having had a permanent home in this area, has temporarily left with the intention of returning to this area as his permanent home.

Section 3.10: "Examinations" - An "Examination" shall include experience rating tests if such examination shall have been given prior to the date of this procedure, but from and after the date

of this procedure, shall include only written and/or practical examinations given by a duly constituted Inside Construction Local Union of the IBEW. Reasonable intervals of time for examinations are specified as ninety (90) days. An applicant shall be eligible for examination if he has four years' experience in the trade.

Section 3.11: The Union shall maintain an "Available for Work List" which shall list the applicants within each Group in chronological order of the dates they register their availability for employment.

Section 3.12(a): An applicant who is hired and who receives, through no fault of his own, work of forty hours or less shall, upon re-registration, be restored to his appropriate place within his Group.

(b) An applicant who has registered on the "Available for Work List" must renew his application every thirty (30) days or his name will be removed from the "List."

Section 3.13: Employers shall advise the Business Manager of the Local Union of the number of applicants needed. The Business Manager shall refer applicants to the Employer by first referring applicants in GROUP I in the order of their place on the "Available for Work List" and then referring applicants in the same manner successively from the "Available for Work List" in GROUP II, then GROUP III, and then GROUP IV. Any applicant who is rejected by the Employer shall be returned to his appropriate place within this GROUP and shall be referred to other employment in accordance with the position of his GROUP and his place within his GROUP.

Section 3.13(a): An applicant who is discharged for cause two times within a 12-month period shall be referred to the neutral member of the Appeals Committee for a determination as to the applicant's continued eligibility for referral. The neutral member of the Appeals Committee shall, within three business days, review the qualifications of the applicant and the reasons for the discharges. The neutral member of the Appeals Committee may, in his or her sole discretion: (1) require the applicant to obtain further training from the JATC before again being eligible for referral; (2) disqualify the applicant for referral for a period of four weeks, or longer, depending on the seriousness of the conduct and/or repetitive nature of the conduct; (3) refer the applicant to an employee assistance program, if available, for evaluation and recommended action; or (4) restore the applicant to his/her appropriate place on the referral list.

Section 3.14: The only exceptions which shall be allowed in this order of referral are as follows:

(a) When the employer states bona fide requirements for special skills and abilities in his request for applicants, the Business Manager shall refer the first applicant on the register possessing such skills and abilities.

(b) The age ratio clause in the Agreement calls for the employment of an additional employee or employees on the basis of age. Therefore, the Business Manager shall refer the first applicant on the register satisfying the applicable age requirements provided, however, that all names in higher priority Groups, if any, shall first be exhausted before such overage reference can be made.

Section 3.15: An Appeals Committee is hereby established, composed of one member appointed by the Union, one member appointed by the Employer or by the Association, as the case may be, and a Public Member appointed by both these members.

Section 3.16: It shall be the function of the Appeals Committee to consider any complaint of any employee or applicant for employment arising out of the administration by the Local Union of Sections 4 through 14 of this Agreement. The Appeals Committee shall have the power to make a final and binding decision on any such complaint which shall be complied with by the Local Union. The Appeals Committee is authorized to issue procedural rules for the conduct of its business, but it is not authorized to add to, subtract from, or modify any of the provisions to this Agreement and its decisions shall be in accord with this Agreement.

Section 3.17: A representative of the Employer or of the Association, as the case may be, designated to the Union in writing, shall be permitted to inspect the Referral Procedure records at any time during normal business hours.

Section 3.18: A copy of the Referral Procedure set forth in this Agreement shall be posted on the Bulletin Board in the offices of the Local Union and in the offices of the Employers who are parties to this Agreement.

Section 3.19: Apprentices shall be hired and transferred in accordance with the apprenticeship provisions of the Agreement between the parties.

Section 3.20: When making reductions in the number of employees due to lack of work, Employers shall use the following procedure:

(a) Temporary employees, if any are employed, shall be laid off first. Then employees in Group IV shall be laid off next, if any are employed in this Group. Next to be laid off are employees in Group III, if any are employed in this Group, then those in Group IV, and then those in Group I.

(b) Paragraph (a) will not apply as long as the special skills requirement as provided for in Section 14(a) is required.

(c) Supervisory employees covered by the terms of this Agreement will be excluded from layoff as long as they remain in the supervisory capacity. When they are reduced to the status of Journeyman, they will be slotted in the appropriate group in Paragraph (a) above.

Section 3.21: All Journeymen and Apprentices are required to provide proof of completion, by originally issued card or certificate, of an OSHA 10 safety training course.

## ARTICLE IV
## Hours - Wage Payment

Section 4.0l(a): Eight hours work between the hours of 6:00 A.M. and 6:30 P.M. with thirty (30) minutes for a lunch period, shall constitute a workday. Forty (40) hours within (5) days, Monday through Friday, inclusive, shall constitute the work week. Saturday may be used for a make-up day due to inclement weather. If Saturday is used as a make up day, a minimum of eight (8) hours will be scheduled. The payroll week shall end on Sunday midnight of each week. Any workman required to punch a time clock that requires more than five (5) minutes to check out shall be paid for any additional time used in checking out. Workmen reporting to the shop or job shall not report earlier than 15 minutes prior the starting time. If practical, workmen directed to report to the job shall be at their place of work at the starting time and shall remain at their place of work until quitting time unless otherwise instructed by the Employer.

(b) Any change from the regular working hours must be five (5) or more day's duration. When any change in the starting time is made, lunch period, overtime, and shifts may be changed accordingly.

(c) The Employer with 24-hour notice to the Union may elect to work 4-10 hour days to be scheduled. The first 10 hours of work per day shall be paid at the hourly straight time rate of pay. When working 4-10s, the Employer can schedule the work week for Monday through Thursday, 10 hours per day. A second work week can be scheduled from Tuesday through Friday, 10 hours per day. The 4 day work week will be Monday through Thursday. Friday can be used as a make-up day due to inclement weather. If Friday is used as a make-up day, a minimum of 8 hours will be scheduled. Any four day/ten-hour work schedule shall be a minimum of 2 weeks duration.

(d) In order to coordinate with other crafts, summer hours, customer requests, and the like, the starting time for each job shall be subject to variance of not more than 1 hour. Advanced notice to the Union will be required to approve any such variance greater than 1 hour. These alternate starting times must run for a minimum of 5 consecutive workdays, and all other times listed in this agreement will shift accordingly.

Section 4.02: All work performed outside of regularly scheduled hours will be paid at one and one-half times the regular straight-time rate, provided the employee works all of the regular scheduled hours made available, as defined in Art. IV Sec. 4.0l(a) and Sec. 4.0l(c). In the event the employee does not work all of the regularly scheduled hours available he will receive no premium rate until after he has worked 40 hours. Work on Sundays shall be paid at double the straight-time rate. The following holidays: New Year's Day, Memorial Day, Fourth of July, Labor Day, Veteran's Day, Thanksgiving Day, the Friday following Thanksgiving Day, and Christmas Day, shall be paid at double the straight-time rate. The following holidays shall be paid holidays starting June 2, 2025, Thanksgiving Day and Friday following, January 4, 2027, Christmas Day, January 3, 2028, New Year's Day. Eligible employees must have been employed for two weeks and worked the available workday before and the available workday after the holiday. Holidays shall be recognized only on the day on which they fall.

Section 4.03: The minimum regular straight-time rate of wages for Journeyman Inside Wireman (JIW) shall be as follows:

Effective June 2, 2025: $36.50
Effective January 5, 2026: $38.50
Effective January 4, 2027: $40.50
Effective January 3, 2028: $42.50

**APPENDIX A - MINIMUM BENEFITS**

| Multiplier | Classification | NEBF | Annuity | Medical | JATC |
|---|---|---|---|---|---|
| 130% of JIW wage rate | General Foreman (area foreman required) | 3% | 8% | $5.45 | 1%*** |
| 120% of JIW wage rate | General Foreman (no area foreman required) | 3% | 8% | $5.45 | 1%*** |
| 120% of JIW wage rate | Area Foreman | 3% | 8% | $5.45 | 1%*** |
| 110% of JIW wage rate | Foreman | 3% | 8% | $5.45 | 1%*** |
| 100% | Journeyman Inside Wireman | 3% | 8%* | $5.45 | 1%*** |
| **Apprentice Wireman** | | | | | |
| 50% of JIW wage rate | 1st Year - Period 1 | 3% | ** | $3.70 | 1%*** |
| 55% of JIW wage rate | 1st Year - Period 2 | 3% | 3% | $3.70 | 1%*** |
| 60% of JIW wage rate | 2nd Year- Period 3 | 3% | 3% | $3.70 | 1%*** |
| 70% of JIW wage rate | 3rd Year - Period 4 | 3% | 5% | $3.70 | 1%*** |
| 75% of JIW wage rate | 4th Year- Period 5 | 3% | 5% | $3.70 | 1%*** |
| 80% of JIW wage rate | 5th Year - Period 6 | 3% | 8% | $3.70 | 1%*** |
| | Unindentured Apprentice | 3% | | $3.70 | 1%*** |

* 9% effective January 6th 2025
** 1% effective January 6th 2025
*** 1% of Journeyman Straight-Time Rate

Section 4.04: The Employer shall pay all wages in cash or check weekly, not later than quitting time on Friday. The Employer may pay wages by direct deposit, through debit card by cash or by

check. Employees may be required to execute authorization forms for direct electronic deposit of wages on a weekly basis to the bank or credit union of the employee's choice. This manner of payment, once adopted, may not be changed by the Employer except upon 14-day advance written notification to the employee with notification to the Union. In the event that employees are not paid by the above-stated time, waiting time at the regular straight time rate (not to exceed eight (8) hours in any one twenty-four (24) hour period) shall be charged until payment is made. The previous sentence only applies in the event that there has been a previous instance within the preceding twelve (12) months of the Employer failing to timely pay wages. Otherwise, paid waiting time only begins if payment has not been received by quitting time on Friday.

Section 4.05: Should the Employer issue a paycheck that does not clear the bank for payment, provided the employee does not hold said check for more than thirty (30) days before making attempt to cash said check, then said Employer, while in the jurisdiction of the Local Union, thereafter shall pay in cash.

Section 4.06: When Friday is a recognized holiday, wages shall be paid Thursday for all work during that week. An itemized statement shall be furnished each workman, showing total hours worked, total wages earned, and any deductions from such wages.

Section 4.07: Any man reporting for work and being laid off, not having been notified the day previous of such layoff shall receive not less than two (2) hours wages in order to gather his tools and personal belongings and shall be paid off in full immediately. In the event the employee is not paid off, waiting time at the regular rate (not to exceed eight [8] hours in any one twenty-four [24] hour period) shall be charged until payment is made. Two (2) hours wages for gathering tools and personal belongings will not be paid if the employee has not notified the Employer of a previous day's absence. An employee who voluntarily quits shall receive the employee's final paycheck on the next contractually scheduled pay day.

Section 4.08(a): When men are directed to report to a job or shop and do not start to work due to causes other than weather conditions, they shall receive two (2) hours pay.

(b) When men receive two (2) hours pay as show-up time, they shall remain available for work for a full two (2) hour period.

(c) If requested by the Employer, during inclement weather conditions, men shall remain on the job available for work and shall receive two (2) hours pay.

(d) When men are directed to report to a job and are instructed to go to work by the Employer or his representative, weather conditions permitting, and they refuse, they shall not receive the two (2) hours show-up time.

(e) When men are called out on trouble or emergency calls outside of regularly scheduled working hours, they shall be paid from the time they leave home until they return at the overtime rate, with a minimum of one (1) hour's work.

Section 4.09: The Employer shall pay for traveling time and provide for at least one of the following provisions:

(i) Furnish transportation from shop to job and job to job and job to shop during the regular working hours; or

(ii) Reimburse the employee for mileage at the standard mileage rate determined by the Internal Revenue Service for actual mileage from shop to job and job to job and job to shop during all the regular working hours to be reimbursed.

On work outside the jurisdiction of the Union, the Employer shall provide one of the following:

(i) Furnish transportation, board and all other necessary expenses;

(ii) Reimburse the employee for mileage at the standard mileage rate determined by the Internal Revenue Service and furnish board and all other necessary expenses.

<u>Section 4.10:</u> No traveling time shall be paid before or after working hours to workmen for traveling to or from any job when workmen are ordered to report to the job, provided his day ends at such job.

<u>Section 4.11:</u> The Employer shall furnish a monthly payroll report to Local Union 520 postmarked no later than 15th day of the following month, giving workman's name, classification, wage rate, straight-time hours worked, overtime hours and gross wages paid to all workmen. This report shall identify the exact date of all employees who have quit or been discharged during the working period covered by this report.

A monthly payroll report to the Local Union and to all Trust Funds shall be completed and mailed each month, whether the Contractor has workmen employed or not.

<u>Section 4.12:</u> Workmen being laid off or discharged by an Employer or workmen severing their employment shall be given a termination slip stating the reason for termination and signed by their immediate supervisor or their Employer, and a copy shall be sent to Local Union 520. Additionally, employers shall provide a termination slip to the JATC Training Director in the case of an apprentice.

<u>Section 4.13:</u> When so elected by the contractor, multiple shifts of eight (8) hours for at least five (5) days' duration may be worked. When two (2) or three (3) shifts are worked:

The first shift (day shift) shall consist of eight (8) consecutive hours worked between the hours of 8:00 A.M. and 4:30 P.M. Workmen on the "day shift" shall be paid at the regular hourly rate of pay for all hours worked.

The second shift (swing shift) shall consist of eight (8) consecutive hours worked between the hours of 4:30 P.M. and 1:00 A.M. Workmen on the "swing shift" shall be paid at the regular hourly rate of pay plus **10%** for all hours worked.

The third shift (graveyard shift) shall consist of eight (8) consecutive hours worked between the hours of 1:00 A.M. and 9:00 A.M. Workmen on the "graveyard shift" shall be paid at the regular hourly rate of pay plus **15%** for all hours worked.

The Employer shall be permitted to adjust the starting hours of the shift by up to two (2) hours in order to meet the needs of the customer.

If the parties to the Agreement mutually agree, the shift week may commence with the third shift (graveyard shift) at 12:30 A.M. Monday to coordinate the work with the customer's work schedule. However, any such adjustment shall last for at least five (5) consecutive days duration unless mutually changed by the parties to this Agreement.

An unpaid lunch period of thirty (30) minutes shall be allowed on each shift. All overtime work required before the established start time and after the completion of eight (8) hours of any shift shall be paid at one and one-half times the "shift" hourly rate.

There shall be no pyramiding of overtime rates and double the straight time rate shall be the maximum compensation for any hour worked. There shall be no requirement for a day shift when either the second or third shift is worked.

## UNION DUES DEDUCTION

Section 4.14: Upon receipt of a voluntary written authorization the Employer agrees to deduct and forward to the Financial Secretary of the Local Union - the additional working dues from the pay of each employee. The amount to be deducted shall be the amount specified in the approved Local Union Bylaws. Such amount shall be certified to the Employer by the Local Union upon request by the Employer.

## ARTICLE V
## General Rules

Section 5:01: In order to comply with existing laws, nothing in this Agreement shall be construed as limiting the right of Employers to move, transfer, or assign employees from his shop to any specific job or from any job to any other job upon which said Employer bolds a contract for the performance of the electrical work. An employee, once on the Employer's payroll, may be worked by him at any location at the discretion of the Employer.

Section 5.02: When the Employer has no shop located in the jurisdiction of this Union, then under such circumstances the job site shall be considered the city in which the shop is located with one job site designated as the permanent shop.

Section 5.03: On all jobs requiring five (5) or more Journeymen, at least every fifth Journeyman, if available, shall be fifty (50) years of age or older.

Section 5.04(a): Journeyman shall provide themselves with the following tools:

| | |
|---|---|
| One tester not over 1000 volts or one Multi Volt Tester | Combination square-Tri-square |
| Knife | Adjustable 12” blade |
| Crescent Wrench 8” to 12” | Hacksaw frame |
| Screw drivers | Two pair channel lock type pliers |
| Hammer | One pair long nose pliers |
| Small level | One pair Dyke pliers |

| | |
|---|---|
| Plumb bob | One chalk line |
| Awl or Center punch | Keyhole saw |
| Pencil | One steel measuring tape at least 16' long |
| One pair side cutting pliers 7" or larger | Pipe wrench 12" to 14" or small |
| Wire stripper | Chain tong |

(b) Journeyman may furnish other similar tools but shall not be required to do so.

(c) A Journeyman may carry or store in his toolbox small tools furnished by and belonging to his Employer (power tools excluded). Such tools must be the property of the Employer, to be returned to him upon request or termination of the employee but are not to be replaced by the employee if broken or stolen.

(d) Apprentices shall provide themselves with the following tools only, except that first-year Apprentice may provide himself with a small toolbox and a third- or fourth-year Apprentice may have a toolbox on the job and start building up his tool list towards that of a Journeyman.

| | |
|---|---|
| 2 pair channel lock type pliers | Pencil |
| 1 pair side cutters pliers – 7" or larger | Hammer |
| One steel measuring tape at least 16' long | One voltage tester not over 1000 or Multi Volt Tester |
| Screw drivers | Small level |
| Knife | Hacksaw frame |
| Awl | Wire stripper |

He may furnish one pair of long-nose and one pair of Dyke pliers if he desires.

(e) The Employer shall furnish necessary locked storage to reasonably protect tools from the weather and vandalism on large jobs where it is necessary to leave tools on the job.

<u>Section 5:05</u>: The Employer shall furnish all other necessary tools or equipment. Workmen will be held responsible for the tools or equipment issued to them providing the Employer furnishes the necessary lockers, toolboxes, or other safe place of storage. Tools must be taken out and put away during working hours.

<u>Section 5.06:</u> Workmen shall install all electrical work in a safe and workman like manner in accordance with applicable code and contract specifications.

<u>Section 5.07:</u> The representatives of the Union shall be allowed access to any building at any reasonable time where members of the Union are employed.

<u>Section 5.08:</u> In all shops or on all jobs where four (4) or more Journeymen are employed, one Journeyman shall be designated as a Foreman.

On all jobs, the first working crew may consist of a maximum of eleven (11) men, that is, ten (10) Journeyman and one (1) working Foreman.

When a second crew is established, it may consist of a maximum of eleven (11) men, that is, ten

(10) Journeymen and one (1) working General Foreman.

When a third or subsequent crew is established, it may consist of a maximum of eleven (11) men, that is, ten (10) Journeymen and one (1) working Foreman. Each crew shall be supervised by a Foreman and the Foremen shall be supervised by the General Foreman.

No General Foremen shall supervise more than fifty-five (55) men, including Journeymen and Foremen. For each additional fifty-five (55) men, the above procedures shall repeat except that the sixth and subsequent Foremen shall be supervised by an Area Foreman.

Section 5.09: Foremen, Area Foremen, and General Foremen shall be permitted to use tools. This shall not mean that they cannot handle material. Foremen may be required to attend and complete Foremen courses when provided.

Section 5.10: On jobs requiring a Foreman, workmen are not to take directions, orders or accept the layout from anyone other than their Foreman. Foremen are to take directions, orders, or layout from their Area Foreman only, when Area Foremen are required. When Area Foremen are not required, Foremen shall take directions, orders or layouts from the General Foreman only. Area Foremen shall take directions, orders or layout from the General Foreman only.

Section 5.11: No workman on one job shall replace a workman on another for any overtime work. All overtime work on any job shall be distributed fair and equal to all workmen. Exceptions to the two conditions above shall include the need for special skills or when workmen have not worked the available straight time hours during the "work week" as defined in Article IV, Section 1.

Section 5.12: The Employer shall see that cold water (in warm weather) and first-aid kits are available on all jobs and/or trucks.

Section 5.13: The Employer shall furnish protective equipment for workmen on energized circuits or equipment carrying 300 volts or more. On all energized circuits or equipment carrying 440 volts or over, as a safety measure, two (2) or more Journeymen must work together.

Section 5.14: All conduit shall be cut and threaded by workmen covered by this Agreement.

Section 5.15: Where pipe cutting and threading machines, electric drills, electric benders, electric chipping hammers, sanders, similar portable tools and all other power-driven equipment are used, such shall be operated by workmen covered by this agreement in the jurisdiction of the IBEW.

Section 5.16: All pulling of wire or cable shall be done by workmen covered by this Agreement.

Section 5.17: Journeyman cable splicers shall furnish only hand tools. On all work of joining, splicing and insulating and the placing of flame-proof covering where wiped lead joints are necessary, it shall be performed by cable splicers. Journeymen only shall be used in assisting cable splicers, except that one de-energized enclosures, an Apprentice may be used. Cable splicers shall not be required to work on wires or cables when the difference in potential is over 200 volts between any two conductors or between any conductor and ground, unless assisted by one Journeyman. In no case shall cable splicers be required to work on energized cables carrying in excess of 480-volt circuit.

Section 5.18: Welders gloves, sleeves, hoods and all hard hats shall be furnished by the Employer. Workmen may be required to sign a payroll deduction form to authorize the deduction from their final paycheck to cover reimbursement of unreturned hard hats. Charges shall not exceed actual cost paid by the Contractor.

Section 5.19: The installation of all electrical raceways whether metal, wood, fiber, plastic clay or of any other conceivable composition, when used to contain electrical or grounding system conductors, and the installation, preparation and connection of all electrical and/or grounding or bonding conductors shall be performed by workmen employed under the terms of this Agreement and paid the hourly applicable negotiated wage rate contained herein unless it is an integral part of the building structure.

Section 5.20: No work shall be performed on Labor Day except in case of emergency.

Section 5.21: On any job of five (5) or more days duration on the main campus of the University of Texas, the Employer will either provide for employee parking within three blocks of the job or arrange for covered transportation from a parking area within two miles of the job.

## ARTICLE VI
## Standard Inside Apprenticeship Language

Section 6.01: There shall be a local Joint Apprenticeship and Training Committee (JATC) consisting of a total of 6 or 8 members who shall also serve as Trustees to the local apprenticeship and training trust. An equal number of members (either 3 or 4) shall be appointed, in writing, by the local chapter of the National Electrical Contractors Association (NECA) and the local union of the International Brotherhood of Electrical Workers (IBEW).

The local apprenticeship standards shall be in conformance with national guideline standards and industry policies to ensure that each apprentice has satisfactorily completed the NJATC required hours and course of study. All apprenticeship standards shall be registered with the NJATC before being submitted to the appropriate registration agency.

The JATC shall be responsible for the training of apprentices, journeymen, installers, technicians, and all others (un-indentured, intermediate journeymen, etc.).

Section 6.02: All JATC member appointments, reappointments, and acceptance of appointments shall be in writing. Each member shall be appointed for a 3-year term, unless being appointed for a lesser period of time to complete an expired term. The terms shall be staggered, with one (1) term from each side expiring each year. JATC members shall complete their appointed term unless removed for cause by the party they represent, or they voluntarily resign. All vacancies shall be filled immediately

The JATC shall select from its membership, but not both from the same party, a Chairman and a Secretary who shall retain voting privileges. The JATC will maintain one (1) set of minutes for JATC committee meetings and a separate set of minutes for trust meetings.

The JATC should meet on a monthly basis, and also upon the call of the Chairman.

Section 6.03: Any issue concerning an apprentice, or an apprenticeship matter shall be referred to the JATC for its review, evaluation, and resolve, as per standards and policies. If the JATC deadlocks on any issue, the matter shall be referred to the Labor-Management Committee for resolution as outlined in Article One of this Agreement; except for trust fund matters, which shall be resolved as stipulated in the local trust instrument.

Section 6.04: There shall be only one (1) JATC and one (1) local apprenticeship and training trust. The JATC may, however, establish joint subcommittees to meet specific needs, such as residential or telecommunications apprenticeship. The JATC may also establish a subcommittee to oversee an apprenticeship program within a specified area of the jurisdiction covered by this agreement.

All subcommittee members shall be appointed, in writing, by the party they represent. A subcommittee member may or may not be a member of the JATC.

Section 6.05: The JATC may select and employ a part-time or a full-time Training Director and other support staff, as it deems necessary. In considering the qualifications, duties, and responsibilities of the Training Director, the JATC should review the Training Director's Job Description provided by the NJATC. All employees of the JATC shall serve at the pleasure and discretion of the JATC.

Section 6.06: To help ensure diversity of training, provide reasonable continuous employment opportunities, and comply with apprenticeship rules and regulations, the JATC, as the program sponsor, shall have full authority for issuing all job training assignments and for transferring apprentices from one employer to another. The employer shall cooperate in providing apprenticeships with needed work experiences. The local union referral office shall be notified, in writing, of all job training assignments. If the employer is unable to provide reasonable continuous employment for apprentices, the JATC is to be so notified.

Section 6.07: All apprentices shall enter the program through the JATC as provided for in the registered apprenticeship standards and selections procedures.

An apprentice may have their indenture canceled by the JATC at any time prior to completion as stipulated in the registered standards. Time worked and accumulated in apprenticeship shall not be considered for local union referral purposes until the apprentice has satisfied all conditions of apprenticeship. Individuals terminated from apprenticeship shall not be assigned to any job in any classification, or participate in any related training, unless they are reinstated in apprenticeship as per the standards, or they qualify through means other than apprenticeship, at sometime in the future, but no sooner than two years after their class has completed apprenticeship, and they have gained related knowledge and job skills to warrant such classification.

Section 6.08: The JATC shall select and indenture a sufficient number of apprentices to meet local manpower needs. The JATC is authorized to indenture the number of apprentices necessary to meet the jobsite ratio as per section 6.12.

Section 6.09: Though the JATC cannot guarantee any number of apprentices, if a qualified employer requests an apprentice, the JATC shall make every effort to honor the request. If unable to fill the request within ten (10) working days, the JATC shall select and indenture the next available person from the active list of qualified applicants. An active list of qualified applicants shall be maintained by the JATC as per the selection procedures.

Section 6.10: To accommodate short-term needs when apprentices are unavailable, the JATC shall assign un-indentured workers who meet the basic qualifications for apprenticeship. Un- indentured workers shall not remain employed if apprentices become available for OJT assignment. Un-indentured workers shall be used to meet job site ratios except on wage-and-hour (prevailing wage) job sites.

Before being employed, the un-indentured person must sign a letter of understanding with the JATC and the employer - agreeing that they are not to accumulate more than two thousand (2,000) hours as an un-indentured, that they are subject to replacement by indentured apprentices, and that they are not to work on wage-and-hour (prevailing wage) job sites.

Should an un-indentured worker be selected for apprenticeship, the JATC will determine, as provided for in the apprenticeship standards, if some credit for hours worked as an un-indentured will be applied toward the minimum OJT hours of apprenticeship.

The JATC may elect to offer voluntary related training to un-indentured; such as Math Review, English, Safety, Orientation/Awareness, introduction to OSHA, First-Aid and CPR. Participation shall be voluntary.

Section 6.11: The employer shall contribute to the local health and welfare plans and to the National Electrical Benefit Fund (NEBF) on behalf of all apprentices and un-indentured. Contributions to other benefit plans may be addressed in other sections of this agreement. (See Article IV Section 4.03).

Section 6.12: Each job site shall be allowed a ratio of one (1) apprentice(s) for everyone (1) Journeyman Wireman.

| Number of Journeymen | Maximum Number of Apprentices/Unindentured |
|---|---|
| 1 to 3 | 1 to 3 |
| 4 to 6 | 4 to 6 |
| Etc. | Etc. |

The first person assigned to any job shall be a Journeyman Wireman.

A job site is considered to be the physical location where employees report for their work assignments. The employer's shop (service center) is considered to be a separate, single job site. All other physical locations where workers report for work are each considered to be a single, separate job site.

Section 6.13: An apprentice is to be under the supervision of a Journeyman Wireman at all times. This does not imply that the apprentice must always be in-sight-of a Journeyman Wireman. Journeymen are not required to constantly watch the apprentice. Supervision will not be of a nature that prevents the development of responsibility and initiative. Work may be laid out by the employer's designated supervisor or journeyman based on their evaluation of the apprentice's skills and ability to perform the job tasks. Apprentices shall be permitted to perform job tasks in order to develop job skills and trade competencies. Journeymen are permitted to leave the immediate work area without being accompanied by the apprentice.

Apprentices who have satisfactorily completed the first four years of related classroom training using the NJATC curriculum and accumulated a minimum of 6,500 hours of OJT with satisfactory performance, shall be permitted to work alone on any job site and receive work assignments in the same manner as a Journeyman Wireman. An apprentice shall not be the first person assigned to a job site and apprentices shall not supervise the work of others.

Section 6.14: Upon satisfactory completion of apprenticeship, the JATC shall issue all graduating apprentices an appropriate diploma from the NJATC. The JATC shall encourage each graduating apprentice to apply for college credit through the NJATC. The JATC may also require each apprentice to acquire any electrical license required for journeymen to work in the jurisdiction covered by this agreement.

Section 6.15: The parties to this Agreement shall be bound by the Local Joint Apprenticeship and Training Trust Fund Agreement which shall conform to Section 302 of the Labor- Management Relations Act of 1947 as amended, ERISA, and other applicable regulations.

The Trustees authorized under this Trust Agreement are hereby empowered to determine the reasonable value of any facilities, materials, or services furnished by either party. All funds shall be handled and disbursed in accordance with the Trust Agreement.

Section 6.16: All employers subject to the terms of this Agreement shall contribute the amount of funds specified by the party's signatory to the local apprenticeship and training trust agreement. The current rate of contribution is: 1% of the Journeyman straight-time rate per hour for each hour worked. This sum shall be due the Trust Fund by the same date as is their payment to the NEBF under the terms of the Restated Employers Benefit Agreement and Trust.

## ARTICLE VII
## Vacation

Section 7.01: Upon written authorization from the employee, the Employer shall make a weekly payroll deduction of six percent (6%) from the gross pay of each employee. The employee shall request the payroll deduction at the beginning of employment with an employer. The employee shall notify the employer, in writing of any modifications to their participation status for the voluntary payroll deduction in the month of January or July. Payroll deduction revisions will be made effective on the first payroll of the following month. The Employer monthly shall forward the amount of individual deductions from each employee as shown on the monthly payroll to Velocity Credit Union, ATTN: Teller Operations, P.O. Box 1089, Austin, TX, 78767, for deposit to that employee's Velocity Credit Union vacation account, and simultaneously shall provide the Local Union with a written report which sets forth, for each employee, the number of hours worked, the employee's classification and pay rate, the employee's gross pay, and the amounts deducted.

Section 7.02: The payment and payroll report shall be mailed to reach the Velocity Credit Union no later than the 15th day of the month following the end of each benefit period.

Section 7.03: Each employee shall be allowed to take two (2) weeks of annual vacation between February 1st and January 31st.

Section 7.04: An Employer's failure to timely remit the payroll deductions or payroll report to the

Velocity Credit Union, or the payroll report to the Local Union, as required above shall be treated as a delinquent contribution under the terms of the applicable Inside Construction Agreement.

## ARTICLE VIII
## Annuity Plan

It is mutually agreed between the parties hereto and in accordance with the IBEW Local Union 520 Annuity Plan entered into by and between the Central Texas Chapter, NECA, and Local Union 520, IBEW, the Employer will forward to the Annuity Plan an amount equal to the percentage levels per Appendix A (See Article IV Section 4.03) of the gross wages of all classifications of employees for all hours worked within the geographical limits of the Union's jurisdiction when work is performed for any Employer operating under this Agreement. The payment shall be made monthly, together with the payroll report forms specified in Article IV.

## ARTICLE IX
## 401(k) Savings Plan

All employers signatory to this Agreement and/or employing workmen under the terms of this Agreement, shall deduct from each employee's Gross Weekly Payroll of employees who wish to participate, a voluntary deductible amount to be deposited into a 401(k) savings plan, upon the written request of each employee. Employees may enroll at the beginning of the employment with an Employer and enroll or change withholding each year during the month of January or July. Withholding will be made effective on the first payroll of the following month.

## ARTICLE X
## Health and Welfare

It is hereby mutually agreed between the parties hereto and in accordance with the Benefit contract governing the electrical benefit fund entered into by and between the Central Texas Chapter, NECA, and Local Union 520, IBEW, that the Employer will forward to the Central Texas Health and Benefit Plan the following contributions as per Appendix A (See Article IV Section 4.03) for all hours actually worked by each employee (both straight time and overtime) within the geographical limits of the Union's jurisdiction when work is performed for any Employers operating under the terms of the basic Agreement for all Employers. Payments shall be made monthly together with a monthly payroll report on a form that will be furnished for that purpose by the Trustees of the Electrical Benefit Plan.

It is agreed that employers shall contribute solely up to $5.45 per hour of increases declared by the Trustees of the Plan. Any increases above $5.45 shall be split equally between the employer and employee through a wage reduction of the JIW rate of pay, all other classifications shall adjust accordingly.

## ARTICLE XI
## National Labor Management Cooperative Committee

Section 11.01: The parties agree to participate in the NECA-IBEW National Labor-Management Cooperation Fund, under authority of Section 6(b) of the Labor-Management Cooperation Act of 1978, 29 U.S.C. §175(a) and Section 302(c)(9) of the Labor-Management Relations Act, 29 U.S.C. §186(c)(9). The purposes of this Fund include the following:

(1) to improve communication between representatives of labor and management;
(2) to provide workers and employers with opportunities to study and explore new and innovative joint approaches to achieving organizational effectiveness;
(3) to assist workers and employers in solving problems of mutual concern not susceptible to resolution within the collective bargaining process;
(4) to study and explore ways of eliminating potential problems which reduce the competitiveness and inhibit the economic development of the electrical construction industry;
(5) to sponsor programs which improve job security, enhance economic and community development, and promote the general welfare of the community and the industry;
(6) to encourage and support the initiation and operation of similarly constituted local labor-management cooperation committees;
(7) to engage in research and development programs concerning various aspects of the industry, including, but not limited to, new technologies, occupational safety and health, labor relations, and new methods of improved production;
(8) to engage in public education and other programs to expand the economic development of the electrical construction industry;
(9) to enhance the involvement of workers in making decisions that affect their working lives; and
(10) to engage in any other lawful activities incidental or related to the accomplishment of these purposes and goals.

Section 11.02: The Fund shall function in accordance with, and as provided in, its Agreement and Declaration of Trust, and any amendments thereto and any other of its governing documents. Each Employer hereby accepts, agrees to be bound by, and shall be entitled to participate in the NLMCC, as provided in said Agreement and Declaration of Trust.

Section 11.03: Each employer shall contribute one cent ($.01) per hour worked under this Agreement up to a maximum of 150,000 hours per year. Payment shall be forwarded monthly, in a form and manner prescribed by the Trustees, no later than fifteen (15) calendar days following the last day of the month in which the labor was performed. The Central Texas Chapter, NECA, or its designee, shall be the collection agent for this Fund.

Section 11.04: If an Employer fails to make the required contributions to the Fund, the Trustees shall have the right to take whatever steps are necessary to secure compliance. In the event the Employer is in default, the Employer shall be liable for a sum equal to 15% of the delinquent payment, but not less than the sum of twenty dollars ($20), for each month payment of contributions is delinquent to the Fund, such amount being liquidated damages, and not a penalty, reflecting the reasonable damages incurred by the Fund due to the delinquency of the payments.

Such amount shall be added to and become a part of the contributions due and payable, and the whole amount due shall bear interest at the rate of ten percent (10%) per annum until paid. The Employer shall also be liable for all costs of collecting the payment together with attorneys' fees.

## ARTICLE XII
## P.A.C. Fund

The Employer agrees to deduct and transmit to the Local Union 520, IBEW, Committee on Political Education (IBEW-COPE) .05 cents for each clock hour worked from the wages of those employees who voluntarily authorize such contributions on the forms provided for that purpose by IBEW-COPE. The deductions will be made monthly and reported and remitted in accordance with Article IV, Section 11 of this Agreement.

Any Employee may revoke the voluntary authorization at any time by notifying the Company and IBEW-COPE in writing of a desire to do so.

The Union will indemnify and save the Company harmless from any claims, suits, or any other form of liability as a result of making payroll deductions described above.

## ARTICLE XIII

This Agreement set forth the entire contract between the Chapter and the Union and supersedes all previous understandings and Agreements between them and amendments thereto.

## ARTICLE XIV
## Substance Abuse Language

The dangers and costs that alcohol and other chemical abuses can create in the electrical contracting industry in terms of safety and productivity are significant. The parties to this Agreement resolve to combat chemical abuse in any form and agree that, to be effective, programs to eliminate substance abuse and impairment should contain a strong rehabilitation component. The local parties recognize that the implementation of a drug and alcohol policy and program must be subject to all applicable federal, state, and local laws and regulations. Such policies and programs must also be administered in accordance with accepted scientific principles and must incorporate procedural safeguards to ensure fairness in application and protection of legitimate interests of privacy and confidentiality. To provide a drug-free workforce for the Electrical Construction Industry, each IBEW local union and NECA chapter shall implement an area-wide Substance Abuse Testing Policy. The policy shall include minimum standards as required by the IBEW and NECA. Should any of the required minimum standards fail to comply with federal, state, and/or local laws and regulations, they shall be modified by the local union and chapter to meet the requirements of those laws and regulations.

## ARTICLE XV
## Code of Excellence

The parties to this Agreement recognize that to meet the needs of our customers, both employer and employee must meet the highest levels of performance, professionalism, and productivity. The Code of Excellence has proven to be a vital element in meeting the customers' expectations.

Therefore, each IBEW local union and NECA chapter shall implement a Code of Excellence Program. The program shall include minimum standards as designed by the IBEW and NECA.

**Separability Clause**

Should any provision of this Agreement be declared illegal by any court of competent jurisdiction, such provision shall immediately become null and void, leaving the remainder of the Agreement in full force and effect and the parties shall, thereupon, seek to negotiate substitute provisions which are in conformity with the applicable laws.

SIGNED FOR THE UNION:
Local Union No. 520 of the International
Brotherhood of Electrical Workers

______________________________
Ben Brenneman
Business Manager/Financial Secretary
IBEW Local Union 520

SIGNED FOR THE EMPLOYER:
A.S.H. Electrical Services LLC

______________________________
A.S.H. Electrical Services LLC Representative

**1st YEAR APPRENTICE WAGE**
**MEMORANDUM OF UNDERSTANDING**

**BETWEEN**

**A.S.H. ELECTRICAL SERVICES LLC**

**AND**

**IBEW LOCAL UNION 520**

It is mutually agreed upon between IBEW Local 520 and A.S.H. Electrical Services LLC, effective May 27, 2019, that the minimum wage for a first-year apprentice shall be $15.00 per hour. This MOU shall remain in effect until such time as 50% of the JIW wage rate is greater than $15.00 per hour.

SIGNED FOR THE UNION:
Local Union No. 520 of the International
Brotherhood of Electrical Workers

______________________________
Ben Brenneman
Business Manager/Financial Secretary
IBEW Local Union 520

SIGNED FOR THE EMPLOYER:
A.S.H. Electrical Services LLC

______________________________
A.S.H. Electrical Services LLC Representative

**CE ADVANCEMENT**
**MEMORANDUM OF UNDERSTANDING**

**BETWEEN**

**A.S.H. ELECTRICAL SERVICES**

**LLC**

**AND**

**IBEW LOCAL UNION 520**

A CE shall obtain a Texas State Journeyman's License before being upgraded to JIW status.

SIGNED FOR THE UNION:
Local Union No. 520 of the International Brotherhood of Electrical Workers

________________________________
Ben Brenneman
Business Manager/Financial Secretary
IBEW Local Union 520

SIGNED FOR THE EMPLOYER:
A.S.H. Electrical Services LLC

________________________________
A.S.H. Electrical Services LLC Representative

# 2022 Residential MOU

**Scope:** This MOU shall apply to all dwelling units including single family dwellings, apartments, and condominiums four stories and below. This MOU shall not apply to the commercial portion of mixed-use developments.

1. A CW/CE, having attained a Residential Journeyman's License, shall be awarded 2000 SBCs/ OJT hours. This CW/CE shall be allowed to work unsupervised on residential construction/service work.
2. A worker holding a Residential or Unrestricted Journeyman's License shall be the first person assigned to any residential project.
3. On all residential projects with four or more workers, a worker holding a Residential Journeyman's License shall be designated Residential foreman. This Residential foreman shall be allowed to supervise a crew of up to 10 workers of his classification or below, including first- and second-year apprentices. This Residential foreman shall receive a 10% pay premium above his/her classification.
4. On all residential projects requiring more than 11 workers, one shall be designated Residential General Foreman. The Residential General Foreman shall receive a 20% pay premium above his/her classification.
5. There shall be one foreman per 10 workers.
6. A CW/CE with a Residential Journeyman's License shall continue to accrue SBCs/OJT hours and be advanced in the CW/CE program accordingly.

SIGNED FOR THE UNION:
Local Union No. 520 of the International
Brotherhood of Electrical Workers

SIGNED FOR THE EMPLOYER:
A.S.H. Electrical Services LLC

Ben Brenneman
Business Manager/Financial Secretary
IBEW Local Union 520

A.S.H. Electrical Services LLC Representative

## SHORT CALL EXTENSION

## MEMORANDUM OF UNDERSTANDING BETWEEN A.S.H. ELECTRICAL SERVICES LLC AND IBEW LOCAL UNION 520

In order to accommodate short term employment needs of the employer signed to this agreement, and the needs of our customers, the union and employer agree to the following:

Article III, Section 3.12 of the Inside Agreement between A.S.H. Electrical Services LLC and Local Union 520, of the International Brotherhood of Electrical Workers, shall have the following language added to the existing language contained in Article III, Section 3.12:

> A forty (40) hour call may be extended an additional forty (40) hours by the employer is job conditions warrant such extension. An applicant is not required to stay for the second forty (40) hour period unless told in advance the job as for eighty (80) hours. For the purposes of calculating hours worked under this Memorandum, only the <u>straight time hours worked</u> will be used. Any overtime worked during the one (1) or two (2) week period covered by this Memorandum <u>will not affect the applicant's position</u> on the Out-of-Work List.

This Memorandum shall continue in effect from year to year hereafter unless changed or terminated in the same manner as prescribed for the Inside Agreement.

| | |
|---|---|
| <u>SIGNED FOR THE UNION:</u><br>Local Union No. 520 of the International Brotherhood of Electrical Workers | <u>SIGNED FOR THE EMPLOYER:</u><br>A.S.H. Electrical Services LLC |
| ______________________________<br>Ben Brenneman<br>Business Manager/Financial Secretary<br>IBEW Local Union 520 | ______________________________<br>A.S.H. Electrical Services LLC Representative |

**SMALL WORKS**
**MEMORANDUM OF UNDERSTANDING**

**BETWEEN**

**A.S.H. ELECTRICAL SERVICES LLC**

**AND**

**IBEW LOCAL UNION 520**

IBEW Local Union 520 and EMPLOYER have repeatedly discussed possible solutions to gaining market share within the small works arena. In an effort to assist all signatory contractors in this arena, Local 520 offers the following:

**Four Person Crew**

Effective June 6, 2022, the Union agrees on any/all jobs throughout the Local 520 jurisdiction, with four (4) or less employees, the signatory contractor may utilize the services of a Construction Electrician (CE) and/or a 6th period apprentice. This CE or apprentice must be in possession of a State of Texas Journeyman License and may work alone, if necessary.

Additionally, the licensed CE may supervise up to three (3) additional equal or lower classified workers (CE's and/or CW's). This crew mix would not include Apprentice Wiremen. As long as the jobsite requires 4 or less employees, there will be no need for a Journeyman Inside Wireman (JIW) nor a Foreman (F). Should the four-person crew increase to five (5) or more, a licensed JIW or a licensed Foreman must be utilized.

Due to the market conditions, the parties recognize this agreement to be a variance to Article VI Section 6.12 of the inside agreement that necessitates the JIW being the first person on the job. The parties recognize Apprentices and CW/CEs operate under a formal training program where OJT under direct and indirect supervision by a JIW is still an important component to their development. Therefore, employers must be diligent to ensure CW/CE employees receive OJT training supervised by a JIW outside of these qualifying projects.

Signatory Contractors are not limited to any number of Four Person Crew jobsites. Pay rates and applicable benefits for the above classified workers shall be the ones listed in the Local 520 Inside Collective Bargaining Agreement between IBEW Local Union 520 and A.S.H. Electrical Services LLC.

This Memorandum of Understanding will expire on June 4, 2028, unless both Parties agree to extend it for an additional timeframe.

SIGNED FOR THE UNION:
Local Union No. 520 of the International Brotherhood of Electrical Workers

SIGNED FOR THE EMPLOYER:
A.S.H. Electrical Services LLC

Ben Brenneman
Business Manager/Financial Secretary
IBEW Local Union 520

A.S.H. Electrical Services LLC Representative

**Memorandum of Understanding**
**Summer Worker Program**

1. Must be by informal understanding between the local Union, the Employer and the JATC, with written guidelines.

2. The guidelines should specify the following conditions:

   a. The maximum number to be employed.

   b. Effective only when placement will not displace an Apprentice or Intermediate Journeyman.

   c. Qualifications:
      1. At least 16 years old
      2. A bona fide student (evidence required)
      3. Summer worker and employer signatures on statement of understanding (sample attached)

   d. Placement for a specific period of time, not to exceed 90 days. (Ending with the first pay period in September).

   e. Placed as a Summer Worker. NOT as an apprentice. (Cannot be referred or worked on jobs requiring registered apprentices).

   f. Rate of pay shall be equal to that of a first period indentured apprentice.

   g. Work performed as a Summer Worker is not counted towards apprenticeship.

   h. Wages paid to Summer Workers are included in gross labor payroll, and the 3% of gross labor payroll payment to NEBF must include Summer Workers wages.

   i. Limited electrical work (same as unindentured apprentice).

SIGNED FOR THE UNION:
Local Union No. 520 of the International
Brotherhood of Electrical Workers

______________________________
Ben Brenneman
Business Manager/Financial Secretary
IBEW Local Union 520

SIGNED FOR THE EMPLOYER:
A.S.H. Electrical Services LLC

______________________________
A.S.H. Electrical Services LLC Representative

# Memorandum of Understanding

## Between IBEW Local Union 520 and A.S.H. ELECTRICAL SERVICES LLC

Effective June 2, 2025 through June 4, 2028.

On jobs of five (5) or more days duration on the main campus* of the University of Texas, if parking is not provided, the employer will reimburse $6.00 per day for parking to each employee who reports to work on time and works all regular hours available to him. The employer is not responsible to provide transportation to and from parking areas.

SIGNED FOR THE UNION:
Local Union No. 520 of the International
Brotherhood of Electrical Workers

______________________________
Ben Brenneman
Business Manager/Financial Secretary
IBEW Local Union 520

SIGNED FOR THE EMPLOYER:
A.S.H. Electrical Services LLC

______________________________
A.S.H. Electrical Services LLC Representative

*from I-35 to Guadalupe Street, from East & West Dean Keeton Street to East & West Martin Luther King, Jr. Blvd.

# Construction Wireman/Construction Electrician Memorandum of Understanding

**PURPOSE:**

This agreement has two goals; one is to recruit an adequate number of personnel to meet the demands of the electrical construction industry in the jurisdiction covered by the inside construction and maintenance agreement. The second objective is to establish a standard by which those recruited will be properly placed for continuing skills based training.

**OBJECTIVES:**

A. Provide a uniform means by which individuals can be brought into the organized industry.
B. Provide employment opportunities for those individuals who may not meet the entrance requirements of the local AETA
C. Establish a fair wage scale based on a skill standard that provides a clear and formal path to becoming a Journeyman Inside Wireman while maintaining a productive workforce.
D. Provide electrical employees with experience and potential, an avenue to becoming a Journeyman Inside Wireman.
E. To provide a second chance program for those indentured apprentices who discover that they do not fit into the AETA program.
F. To provide A.S.H. Electrical Services LLC and IBEW Local Union 520 the autonomous means of developing training programs to meet the needs of changing local markets.

**DEFINITIONS:**

A. CW/CE – Construction Wireman/Construction Electrician
B. SBC – Skill Based Credits
C. AETA – Austin Electrical Training Alliance (formerly called Joint Apprenticeship Training Center)
D. JATC – Joint Apprenticeship Training Committee
E. LU 520 – International Brotherhood of Electrical Workers Local Union 520
F. Employer – A.S.H. Electrical Services LLC
G. TDLR – Texas Department of Licensing and Regulation
H. OJT – On the Job Training

**SECTION 1 – ADMINISTRATION**

A. The AETA and LU 520 shall be responsible for:

1) Administering skill-based evaluations (supervised by Local Union staff)
2) Monitoring progress of the CW/CE for wage advancement
3) Develop and deliver skill-based training courses
4) Notifying LU 520 of the number of apprentices available for work assignments
5) Recruiting, processing and dispatching applicants to employers for assignment.

B. Either party (EMPLOYER, LU 520 or AETA) may review all skill-based evaluations and evaluation procedures.

**SECTION 2 – WAGES, BENEFITS AND ADVANCEMENT**

Upon successful accumulation of 16,000 Skill Based Credits (SBC) and successful completion of a Texas State Journeyman's License the Construction Electrician shall be upgraded to Journeyman Inside Wireman.

**A. Wages Appendices A1 and A2**

1. Accumulated SBC's shall determine the individuals initial pay rate. Individuals shall advance upon meeting the requirements shown in Appendix D.
   or

2. Experienced Applicants with verifiable industry wage -or- AETA Transferees (Ref: SECTION 5): wages shall remain frozen until accumulated SBC's warrant pay advancement.

**a. BENEFITS – REFERENCE APPENDICES A1 and A2:**

1. Accumulated SBC's shall determine what level of benefits shall apply.
2. All benefits shall be paid in accordance with the various trust fund qualifications.

**b. SKILLS BASED CREDITS (SBC'S)** shall accrue by the following methods:

1. One SBC per each OJT hour worked for a signatory contractor.
2. One SBC for every two (2) OJT hours worked for a non-signatory contractor (wage documentation required; no credit (SBC's) for hours worked prior to program enrollment).
3. SBC's from skill based evaluation.
4. SBC's credited by successful completion of skills based courses. SBC's achieved in this manner shall not exceed 4,000 for the life of the program.
   (see APPENDIX C)

Note: In no case shall SBC's be earned above the stated maximums through the evaluation process and/or the optional course work within each skill discipline (see APPENDIX B).

c. **EXPERIENCED APPLICANTS SHALL**:

1) Provide verifiable electrical industry wage documentation to establish their wage rate. (wage documents for public works projects where a wage determination is established shall not be eligible for verification)

OR

2) Take the next available skills based evaluation to determine how many SBC's shall be credited and establish initial wage rate.

SEE APPENDICES A1 AND A2 FOR EVALUATION, CLASS SBC'S AND WAGE SCHEDULE.

**SECTION 3 – IMPLEMENTATION**:

The LU 520 shall be primarily responsible for the recruitment, processing and dispatching of applicants to employers. The LU 520 shall provide all processing information to the AETA for the purpose of tracking the CW/CE's progress in the program.

The JATC shall be responsible for the training of participants in accordance with Article VI, section 6.01 of the inside agreement.

The Employer shall be responsible for providing a termination slip to the LU 520 and the AETA when a CW/CE becomes unemployed.

CW/CE shall be employed on a conditional basis for 90 days from their first assignment. During the conditional employment period the LU 520 and A.S.H. Electrical Services LLC shall determine the individuals continued status in the program.

No employer is guaranteed a specific number of CW/CE.

Each job shall follow a ratio of one or more (1 or more) CW/CE(s) to one (1) JIW.

An employer who fails or refuses to hire available apprentices, in accordance with the agreed upon ratio of apprentices to journeymen, shall not be entitled to hire CW/CE.

CW/CE may be transferred from one qualifying project to another by the employer.

CW/CE shall not be included in the calculation of the apprentice to journeyman ratio.

Referral records may be inspected at LU 520 by a representative of the Employer.

## Construction Wireman/Construction Electrician Memorandum of Understanding

Effective January 1, 2020, all Construction Wiremen and Construction Electricians are required to provide proof of completion, by originally issued card or certificate, of an OSHA 10 safety training course.

**SECTION 4 – SUPERVISION:**

The CW/CE who has less than 8,000 SBC's shall be under the supervision of a Journeyman Inside Wireman. It shall be the responsibility of the supervisor to lay out the work required and to permit the CW/CE to perform the work on his/her own. A CW/CE who has 8,000 SBC's shall be allowed to work with no supervision but shall not supervise any apprentices or Journeyman Wireman.

**SECTION 5 – TRANSFERS:**

A. All transfers shall be approved by the JATC.
B. Individuals are limited to a maximum of (2) transfers.
C. Transferees shall not experience a Wage Rate or Benefit Reduction.
D. AETA to CW/CE program:
   Local Apprentices from AETA apprenticeship program may transfer to the CW/CE program at an equal pay rate providing the apprentice has:
   1) A satisfactory work history (hours worked, absenteeism, and tardiness); and
   2) Established in writing the basis for the transfer.
   3) Apprentice transferees shall be credited one (1) SBC for each OJT Hour + (500) SBC's per completed academic year of apprenticeship. In no instance shall this transfer result in the apprentice being granted more than the maximum SBC's as shown below:

**AETA to CW/CE Credit Table**

| AETA Completed | Credited SBC's | AETA Completed | Credited SBC's |
|---|---|---|---|
| Less than 1 year | 2000 | Completed 3rd year | 8000 |
| Complete 1st year | 4000 | Completed 4th year | 10000 |
| Complete 2nd year | 6000 | Completed 5th year | 12000 |

E. CW/CE to AETA Program:

   CW/CE meeting the requirements for entrance into the AETA program may transfer to the AETA program as outlined by the JATC standards. The transferring CW/CE will complete the IBEW/NECA ETA Proficiency Exam to determine placement in the academic portion of the training and will receive OJT Hour credits based on JATC guidelines. Transferees shall not experience a reduction in their wage rate.

# Construction Wireman/Construction Electrician Memorandum of Understanding

**SECTION 6 – TERM OF AGREEMENT:**

This Agreement shall take effect on June 2, 2019. The terms and conditions of this Agreement shall continue on jobs bid under said terms until such jobs are completed.

**Disputes:** All allegations of infractions of this agreement shall be referred to the Labor Management Committee as defined in the current inside/maintenance collective bargaining agreement. In the event of a deadlock the matter shall be referred to the IBEW Seventh District Vice-president and the NECA Southern Region Director for final and binding adjudication. This agreement is a Memorandum of Understanding to the area inside construction and maintenance collective bargaining agreement and may continue with or without requirement of separate notice.

**Commitment:** The two parties, by signature below, hereby commit and promise to use their best efforts to see that this Memorandum is used to its highest level for the maximum benefit of employers and employees alike.

The parties further promise and agree that if changes are needed to this Memorandum; those changes will be addressed in an atmosphere of mutual trust and cooperation for the equal benefit of employers and employees alike. **Furthermore, any changes to this agreement or program shall be subject to review by the IBEW Seventh District Vice-President and the NECA Southern Region Director.**

SIGNED FOR THE UNION:
Local Union No. 520 of the International
Brotherhood of Electrical Workers

SIGNED FOR THE EMPLOYER:
A.S.H. Electrical Services LLC

______________________________
Ben Brenneman
Business Manager/Financial Secretary
IBEW Local Union 520

______________________________
A.S.H. Electrical Services LLC Representative

# Construction Wireman/Construction Electrician Memorandum of Understanding

## APPENDIX A1 (CW1-CW6)

| Benefits | CE 1 | CE 2 | CE 3 | CE 4 | CE 5 | CE 6 |
|---|---|---|---|---|---|---|
| Range SBC'S | 0-2K | 2.01K-4K | 4.01K-6K | 6.01K-8K | 8.01K-10K | 10.01K-12K |
| JIW Rate | 44% | 44% | 49% | 54% | 59% | 64% |
| A.E.T.A. | NA | NA | NA | 1% of JIW | 1% of JIW | 1% of JIW |
| NLMCC | $0.01 | $0.01 | $0.01 | $0.01 | $0.01 | $0.01 |
| H&B | Plan C | Plan B | Plan B | Plan B | Plan B | Plan B |
| NEBF (3%) | 3% | 3% | 3% | 3% | 3% | 3% |
| Annuity | NA | NA | NA | 3% | 3% | 3% |
| AMF | .10 | .10 | .10 | .10 | .10 | .10 |

## APPENDIX A2 (CE1- CE 4)

| Benefits | CE 7 | CE 8 | CE 9 | CE 10 |
|---|---|---|---|---|
| Range SBC's | 12.01K-13K | 13.01K-14K | 14.01K-15K | 15.01K- more |
| JIW Rate | 68% | 73% | 78% | 85% |
| A.E.T.A. | 1% of JIW | 1% of JIW | 1% of JIW | 1% of JIW |
| NLMCC | $0.01 | $0.01 | $0.01 | $0.01 |
| H&B | Plan B | Plan B | Plan B | Plan B |
| NEBF (3%) | 3% | 3% | 3% | 3% |
| Annuity | 5% | 5% | 5% | 5% |
| AMF | .10 | .10 | .10 | .10 |

| |
|---|
| Low |
| Middle |
| High |

**NOTE: Benefit Schedule shown reflects current rates. Rates shall be adjusted as per the Current Inside Agreement.**

**-Health and Welfare provides the employee with the option to select employee single coverage (for Levels 2, 3 & 4 only) or employee/dependent coverage (for Levels 2-8). Employees may change this election once each calendar year or more often as the trust fund rules provide.**

**-Only SBCs earned from participating employers qualify for benefits eligibility.**

**Construction Wireman/Construction Electrician**
**Memorandum of Understanding**

## APPENDIX B

| SKILL DISCIPLINE | MAX SBC's |
|---|---|
| Branch Wiring | 6,400 |
| Feeder Wiring | 1,600 |
| Panels & Transformers | 1,600 |
| Switchgear & Motor Control Center | 1,120 |
| Motors & Motor Controls | 800 |
| Lighting & Lighting Controls | 2,400 |
| Grounding | 160 |
| Devices | 320 |
| Electrical Codes & Ordinances | 160 |
| Blueprints & Specifications | 160 |
| Meters & Tools | 160 |
| OSHA & Job Safety | 160 |
| Agreements | 160 |
| Service & Troubleshooting | 800 |

# Construction Wireman/Construction Electrician Memorandum of Understanding

## APPENDIX C

### Optional Coursework SBC Curriculum Allocation

| Skills Course | SBC's Credit | Course Hours |
|---|---|---|
| Branch Wiring | 920 | 72 |
| Electrical Codes & Ordinances | 320 | 30 |
| Service/Troubleshooting | 280 | 24 |
| Panels & Transformers | 280 | 24 |
| OSHA & Job Safety | 280 | 24 |
| Meters & Tools | 280 | 24 |
| Feeder Wiring | 280 | 24 |
| Blueprints & Specifications | 280 | 24 |
| Agreements | 240 | 24 |
| Switchgear & Motor Control Centers | 200 | 18 |
| Motors & Motor Controls | 200 | 18 |
| Lighting & Lighting Controls | 200 | 18 |
| Grounding | 120 | 12 |
| Devices | 120 | 12 |
| TOTAL | 4000 | 180 |

APPENDIX D

| Classification | SBC's | Training | Awarded |
|---|---|---|---|
| **CW2** | 2000 | Conduit Bending 1 | 230 |
| **CW3** | 4000 | Blueprint Reading | 280 |
| **CW4** | 6000 | Conduit Bending 2 | 230 |
| **CW5** | 8000 | Codeology | 120 |
| **CW6** | 10000 | Basic Code | 120 |
| **CE1** | 12000 | Conduit Bending 3 | 230 |
| **CE2** | 13000 | Grounding/Transformers | 320 (120+200) |
| **CE3** | 14000 | Services | 200 |
| **CE4** | 15000 | Motor Control | 280 |
| **JIW** | 16000 | | |

NECA IBEW LOCAL 520 AUSTIN TEXAS

## Memorandum of Understanding
## Four Year Apprenticeship Program Conversion

Made and entered into April 10, 2023, between IBEW Local Union 520, hereafter referred to as the Union, and the EMPLOYER, hereafter referred to as the Employer. This Agreement shall remain in effect from year to year throughout the current collective bargaining agreement and will expire at that time on June 1, 2025.

1. The parties hereby agree that Article IV, Section 4.03 Appendix A (Wages) of the Inside Agreement between the parties shall be modified with an additional schedule to meet the needs of the apprenticeship wage and benefit schedule for those starting the (4) Four Year Program.

| Apprentice Wireman | | | | | |
|---|---|---|---|---|---|
| Multiplier | Class | NEBF | Annuity | Medical | JATC |
| 50% of JIW<br>0-999 Hrs | 1st Period | 3% | ** | $3.70 | 1%*** |
| 55% of JIW<br>1000-1999 Hrs | 2nd Period | 3% | 3% | $3.70 | 1%*** |
| 60% of JIW<br>2000-3499 Hrs | 3rd Period<br>**180 Hrs Instruction** | 3% | 3% | $3.70 | 1%*** |
| 65% of JIW<br>3500-4999 Hrs | 4th Period<br>**360 Hrs Instruction** | 3% | 5% | $3.70 | 1%*** |
| 70% of JIW<br>5000-6499 Hrs | 5th Period<br>**540 Hrs Instruction** | 3% | 5% | $3.70 | 1%*** |
| 75% of JIW<br>6500-8000 Hrs | 6th Period<br>**720 Hrs Instruction** | 3% | 8% | $3.70 | 1%*** |
| 50% of JIW<br>**Max Hrs2000** | Unindentured Apprentice | 3% | ---------------- | $2.65 | 1%*** |
| **Journeyman 8000, completed 900 hours of related instruction and obtained State of Texas Journeyman license. Classroom instruction hours are cumulative.**<br>**1% effective January 6 2025<br>***1% of Journeyman Straight -Time Rate | | | | | |

SIGNED FOR THE UNION:
Local Union No. 520 of the International
Brotherhood of Electrical Workers

Ben Brenneman
Business Manager/Financial Secretary
IBEW Local Union 520

SIGNED FOR THE EMPLOYER:
A.S.H. Electrical Services LLC

A.S.H. Electrical Services LLC Representative

JacksonLewis

**Jackson Lewis P.C.**
500 N. Akard Street, Suite 2500
Dallas TX 75201
(214) 520-2400 Direct
(214) 520-2008 Fax
jacksonlewis.com
Direct Dial: 972-728-3258

Jonathan.Elifson@jacksonlewis.com

October 1, 2025

Diarmid Campbell, Assistant Business Agent
IBEW Local 520
4818 E. Ben White Blvd, Suite 300
Austin, TX 78741

Re: Grievance and Request for Information

Dear Mr. Campbell:

This Firm represents A.S.H. Electrical Services, LLC ("A.S.H.") with respect to all disputes with IBEW Local 520. Please direct all further communications regarding A.S.H. to me.

On September 17, 2025, you sent my client what purports to be a grievance "concerning a potential violation of terms related to Contract Wage Adjustments." As you know, on December 27, 2023, A.S.H. sent a letter to IBEW Local 520 stating that "A.S.H. considers its contractual relationship with IBEW to be terminated as of November 1, 2023, and withdraws and revokes all collective bargaining rights assigned to the Local Union and Central Texas Chapter, NECA." (Exhibit A). This letter followed A.S.H.'s May 30, 2023, notice of cancellation of both the Letter of Assent assigning A.S.H.'s bargaining rights to the Central Texas Chapter of NECA and the parties' CBA (Exhibit B). As no valid collective bargaining agreement or collective bargaining relationship with IBEW Local 520 currently exists, there is no basis to process a purported "grievance."

Further, because A.S.H. terminated its previous 8(f) relationship with the Union, it has no duty under Section 8(a)(5) of the Act to furnish information requested by the Union. Because my client has no duty to furnish IBEW Local 520 with the information it requested on September 17, 2025, (and again today), A.S.H. will not be furnishing you with the requested information.

Should you wish to discuss this matter, I can be reached by phone at (972)728-3258 or via e-mail at Jonathan.Elifson@jacksonlewis.com

Sincerely,

/s/ *Jonathan Elifson*

Jonathan Elifson
Counsel for A.S.H. Electric