**UNITED STATES OF AMERICA**
**BEFORE THE NATIONAL LABOR RELATIONS BOARD**
**REGION 16**

**A.S.H. ELECTRICAL SERVICES, LLC**

**Employer**

**and** **Case 16-RD-374302**

**JARED LANE ELKINS, AN INDIVIDUAL**

**Petitioner**

**and**

**INTERNATIONAL BROTHERHOOD OF ELECTRICAL WORKERS, LOCAL UNION 520**

**Union**

## DECISION AND ORDER DISMISSING PETITION AND WITHDRAWING NOTICE OF REPRESENTATION HEARING

On September 30, 2025, Jared Lane Elkins, an Individual, (Petitioner) filed the instant RD petition seeking to decertify the International Brotherhood of Electrical Workers, Local Union 520 (Union) as representative of employees of A.S.H. Electrical Services (Employer). On November 21, 2025, the Regional Director issued an Order to Show Cause and Rescheduling Representation Hearing. In that Order, the parties were directed to provide their position and evidence regarding two questions:

1. Whether the parties currently have a relationship governed by Section 8(f) of the Act.

2. Whether the instant petition should be stayed pending a resolution of the District Court litigation between the Employer and Union.

The Employer and Union timely filed responsive position statements with exhibits. The Petitioner did not file a response. Having duly considered the parties' positions, and for the reasons set forth below, I am dismissing the Petition.

## FACTS AND PARTIES' POSITIONS

The material facts in this case are largely undisputed and described in the Order to Show Cause noted above. I hereby incorporate by reference the procedural history described in the Order to Show Cause but, for the sake of clarity, I briefly explain the most relevant facts here. In 2021, the Employer signed a "Letter of Assent – A" authorizing the National Electrical Contractors Association (NECA) to act as its collective bargaining representative for all matters contained in or pertaining to the current and any subsequent approved labor agreement between NECA and the Union. In May 2022, the Employer and Union entered into a collective bargaining agreement (the First CBA) that was effective through June 1, 2025. At no point did the Union make a demand for

recognition as the majority-supported representative of the Employer's employees under Section 9(a) of the Act. Thus, the Employer and Union enjoyed a collective bargaining relationship covered by Section 8(f) of the Act. During the term of the agreement, the Employer notified the Union that it was revoking its Letter of Assent – A and that it intended to terminate the CBA upon its expiration. Prior to the expiration of the First CBA, the Union invoked an interest arbitration clause contained within the First CBA. The matter was arbitrated and on May 13, 2025, a joint labor-management panel ordered the Employer to sign and implement a new CBA (the Second CBA). The First CBA expired on June 1, 2025, and the Employer has refused to sign or implement the Second CBA. In October 2025, the Union filed suit in the United States District Court, Western District of Texas seeking to enforce the arbitration award. The Employer responded by arguing, *inter alia*, that the labor-management arbitration panel lacked the authority to order the Employer to sign and implement the Second CBA. That litigation remains pending. As a result, there is an active dispute over whether there is a current 8(f) relationship between the Employer and Union.

In response to the Order to show cause, the Employer asserts that the Region should continue to process the Petition because "processing the petition is the most effective way to address the parties' representation dispute, or 'question concerning representation.'" The Employer further asserts that while it claims no current 8(f) relationship exists, the Union, by its acts (e.g., filing a grievance, making a request for information), "clearly demonstrated … that it believes 8(f) relationship exists." Therefore, the Employer argues, processing the Petition will preserve judicial resources and allow the Board to "utilize its expertise in matters of labor relations."

The Union, for its part, alleges there is currently no 8(f) agreement "that the Board would recognize or enforce," and thus there is no question concerning representation and the Petition must be dismissed. The Union's argument is premised on its claim that the Second CBA, imposed as a result of interest arbitration, is "the product of a permissive subject of bargaining, is not an 8(f) agreement that the Board would enforce, but is enforceable only through a Section 301 proceeding."

## ANALYSIS

Section 9(c)(1)(A) of the Act describes a decertification petition as one filed "by an employee or group of employees or any individual or labor organization acting in their behalf alleging that a substantial number of employees…assert that the individual or labor organization, which *has been certified or is being currently recognized* by their employer as the bargaining representative, is no longer a representative…". (Emphasis added). Thus, the Act's text expressly presumes that to hold a decertification election, there must be a currently certified or recognized union to decertify. In this case, the Regional Director has already found that no Section 9(a) relationship exists.[1] Although the parties dispute the validity of the arbitration award and its resulting Second CBA, at present there is no signed CBA implemented by the Employer, who denies that any 8(f) relationship exists. If the Employer is correct that the arbitration award is invalid and there is no current 8(f) relationship,[2] the Board has no jurisdiction to hold a

[1] Neither party requested review of the decision to dismiss in Case 16-RM-362398.

[2] I emphasize here that I express no opinion on the merits of either the Employer's or Union's arguments on that question.

decertification election because there is no "certified or … currently recognized" bargaining representative to decertify.

The Employer has cited no precedent to support ordering an election in the absence of a current 8(f) relationship and I find no basis to do so here. To be sure, the Employer is correct in stating that a successful decertification petition invalidates an 8(f) agreement. However, the case quoted by the Employer expressly cabins that holding within the premise that the election is held "*during the term of an 8(f) agreement.*" *Raymond Interior Systems*, 367 NLRB No. 124 (2019). (Emphasis added). In this case, by contrast, there is an underlying threshold question of whether a valid 8(f) agreement exists pursuant to the joint labor-management panel's arbitration award. That question is undoubtedly one of contract interpretation, and the Board will "leave to the courts' determination the question of whether an employer is bound to the interest arbitration provision." *IBEW Loc. 113 (Collier Elec.)*, 296 NLRB 1095, 1098 (1989). See also, *AT&T Technologies v. Communications Workers*, 475 U.S. 643, 649 (1986). Examples of this policy abound. See e.g., *Local Union No. 666 Int'l Bhd. of Elec. Workers, AFL-CIO v. Stokes Elec. Serv., Inc.*, 225 F.3d 415 (4th Cir. 2000); *Loc. Union No. 898 of Int'l Bhd. of Elec. Workers, AFL-CIO v. XL Elec., Inc.*, 2002 WL 31689677 (N.D. Tex. Nov. 26, 2002), aff'd, 380 F.3d 868 (5th Cir. 2004); *Sheet Metal Workers Local Union 20 v. Baylor Heating & Air Conditioning, Inc.*, 877 F.2d 547 (7th Cir. 1989); *Sheet Metal Workers Int'l Ass'n Local 206 v. R.K. Burner Sheet Metal, Inc.*, 859 F.2d 758 (9th Cir.1988); *Sheet Metal Workers Int'l Ass'n Local 110 Pension Trust Fund v. Dane Sheet Metal, Inc.*, 932 F.2d 578 (6th Cir.1991); *Sheet Metal Workers Int'l Ass'n Local 24 v. Architectural Metal Works*, 259 F.3d 418, 2001 WL 818227 (6th Cir. 2001); *Brent Elec. Co., Inc. v. Int'l Bhd. of Elec. Workers Loc. Union No. 584*, 110 F.4th 1196, 1203 (10th Cir. 2024); *GF Elec., Inc. v. Loc. Union 426, Int'l Bhd. of Elec. Workers*, 2005 WL 3448022, (D.S.D. Dec. 15, 2005).

Furthermore, although the Employer asserts that principles of judicial efficiency support holding the decertification election based, seemingly, on a presumption that the petition is successful, it does not explain how the cause of efficiency will be served if employees determine *not* to decertify the Union. Presumably the Employer would continue to press its contractual claims in federal court. Jurisdictional questions notwithstanding, it is not clear how holding an unnecessary election (if the District Court later declines to enforce the arbitration award) promotes the efficient use of Board resources. Without a currently recognized or certified bargaining representative, dismissal of the Petition is the appropriate course. See, *IBEW Local 545 (Hope Electrical Corp.)*, Case 17-RD-1506, unpub. Board Order issued July 21, 2003. ("[I]n the absence of a union whose majority status is at issue, there is no reasonable alternative to dismissal of the petition.").[3]

While I agree with the Union that the instant Petition should be dismissed because no current 8(f) relationship has been established, I do not agree with its characterization of 8(f) agreements more generally. Specifically, the Union claims that an 8(f) agreement is, in part, defined as an agreement that is enforceable through Sections 8(a)(5) and 8(b)(3) of the Act. Therefore, the Union argues, because the Second CBA is the product of interest arbitration and a permissive subject of bargaining, it may only be enforced through a proceeding under Section 301 of the LMRA. 29 U.S.C. §185. As a result, the Union argues the Second CBA is not an 8(f)

[3] The Board's unpublished Order in this case is not available electronically. I have therefore attached it to this decision for future reference.

agreement. Implicit in that argument is the potential claim that, because the Second CBA is not an 8(f) agreement, it cannot be invalidated by a successful decertification petition.[4]

Section 8(f) of the Act states in relevant part:

> It shall not be an unfair labor practice under subsections (a) and (b) of this section for any employer engaged primarily in the building and construction industry to make an agreement covering employees engaged (or who, upon their employment, will be engaged) in the building and construction industry with a labor organization of which building and construction employees are members ... because (1) the majority status of such labor organization has not been established under the provisions of section 159 of this title prior to the making of such agreement, or (2) such agreement requires as a condition of employment, membership in such labor organization after the seventh day following the beginning of such employment or the effective date of the agreement, whichever is later, or (3) such agreement requires the employer to notify such labor organization of opportunities for employment with such employer, or gives such labor organization an opportunity to refer qualified applicants for such employment, or (4) such agreement specifies minimum training or experience qualifications for employment or provides for priority in opportunities for employment based upon length of service with such employer, in the industry or in the particular geographical area.

In essence, 8(f) is a shield protecting unions and employers in the construction industry when they enter into a collective bargaining agreement absent a showing that the union enjoys support from a majority of employees and/or containing certain terms. *Jim McNeff, Inc. v. Todd*, 461 U.S. 260, 266 (1983). With the protection of 8(f) comes also its provisos. Specifically relevant to this case, 8(f) provides that "any agreement which would be invalid, but for clause (1) of this subsection, shall not be a bar to a petition filed pursuant to section 159(c) or 159(e) of this title."

If, ultimately, the District Court finds that the Second CBA was validly imposed by the arbitration panel, it would be subject to 8(f)'s election proviso. The Union's interpretation of the Board's holding in *John Deklewa & Sons*, 282 NLRB 1375 (1987) is incorrect. The Board did not define an 8(f) agreement based in part on its enforceability through the Act's bargaining protections. Rather, the Board simply made clear that an existing 8(f) agreement "shall be enforceable through the mechanisms of Section 8(a)(5) and Section 8(b)(3)." *Id.* at 1377. The enforceability of the agreement under the Act is not a prerequisite for finding that an 8(f) agreement exists. And while the Board has held that a CBA imposed as a result of interest arbitration may only be enforced via breach of contract litigation, that does not render the underlying agreement

---

[4] The Union cites to *In Re Hope Elec. Corp.*, 339 NLRB 933 at fn. 2 (2003) for the proposition that the Board upheld the dismissal of a related decertification petition because "a contract imposed through interest arbitration is not one that the statute empowers the Board to enforce, even though a court may enforce it as a contractual matter." However, in that case, the Board upheld the dismissal of the related decertification petition because (1) the 8(f) agreement at issue had expired and (2) the union had disclaimed interest in the unit. *IBEW Local 545 (Hope Electrical Corp.)*, Case 17-RD-1506, unpub. Board Order issued July 21, 2003. As the Union has not disclaimed interest in the unit, and there is active litigation over whether a valid 8(f) agreement exists, the instant case is plainly distinguishable.

any less protected by Section 8(f). *In Re Hope Elec. Corp.*, 339 NLRB 933, 933 (2003); *Tampa Sheet Metal Co.*, 288 NLRB 322, 325-326 (1988); *IBEW Loc. 113 (Collier Elec.)*, 296 NLRB 1095, 1098 (1989). Cf., *Jim McNeff, Inc.*, supra at 269 ("In a § 301 suit, the District Court merely enforces a contract entered into by the employer. … Such enforcement does not grant the [] union a right otherwise enjoyed only by a majority union except in the very narrow sense, expressly intended by Congress, that employers and minority unions in the construction industry do not violate the Act by entering into prehire agreements.").

For much the same reason, the Employer's contention that dismissal of the instant petition would "force-feed a void CBA … on the Employer for life," is also incorrect. Although there is no current basis to order an election, if the District Court ultimately enforces the arbitration award, employees, if they so choose, may petition for a decertification election at that point. If that decertification petition is successful, the Second CBA would be void. See, *Sheet Metal Workers' Int'l Ass'n*, 314 NLRB 923, 928 fn. 19 (1994) (finding contract imposed by interest arbitration void after subsequent successful decertification petition); *Sheet Metal Workers Local 162 v. Jason Mfg.*, 900 F.2d 1392, 1399-1400 (9th Cir. 1990) (same). Moreover, the Second CBA provides for future interest arbitration by mutual agreement only. Thus, this "decision does not saddle the parties with a perpetual cycle of binding interest arbitration." *IBEW Loc. 113 (Collier Elec.)*, 296 NLRB 1095, 1097 fn. 9 (1989). See also, *Local Union No. 666 Int'l Bhd. of Elec. Workers, AFL-CIO v. Stokes Elec. Serv., Inc.*, 225 F.3d 415, 125 (4th Cir. 2000). ("By holding that the CIR's interest arbitration awards are enforceable, we are not condemning Stokes to a perpetual cycle of interest arbitration for new labor agreements. As a contractual matter, the new [] Agreements do not allow unilateral submission of issues to interest arbitration. By their terms the new Agreements require both parties to agree to interest arbitration …").

In sum, because there is an ongoing contractual dispute over the propriety of the arbitration award, no current Section 8(f) relationship has been established. I will follow established Board policy and allow the District Court to answer the threshold question of whether the arbitration panel validly imposed the Second CBA.

Based on the foregoing, I am dismissing the Petition.

## ORDER

**IT IS HEREBY ORDERED** that the petition in this matter is dismissed.

**IT IS FURTHER ORDERED** that the previously issued Notice of Representation Hearing and Order Rescheduling the Hearing in this matter are withdrawn.

## RIGHT TO REQUEST REVIEW

Pursuant to Section 102.67(c) of the Board's Rules and Regulations, any party may file with the Board in Washington, D.C., a request for review of this Decision. The request for review must conform with the requirements of Sections 102.67 of the Board's Rules and must be received by the Board in Washington by ten business days from the date of the final decision of the Regional Director in this case.

A request for review must be E-Filed through the Agency's website and may not be filed by facsimile. To E-File the request for review, go to www.nlrb.gov, select E-File Documents, enter the NLRB Case Number, and follow the detailed instructions. If not E-Filed, the request for review should be addressed to the Executive Secretary, National Labor Relations Board, 1015 Half Street SE, Washington, DC 20570-0001, and must be accompanied by a statement explaining the circumstances concerning not having access to the Agency's E-Filing system or why filing electronically would impose an undue burden. A party filing a request for review must serve a copy of the request on the other parties and file a copy with the Regional Director. A certificate of service must be filed with the Board together with the request for review

**DATED** at Fort Worth, Texas, this 2nd day of December 2025.



Roberto Perez
Acting Regional Director
National Labor Relations Board, Region 16
Hipolito F. Garcia Federal Building and U.S. Courthouse
615 E. Houston Street Suite 559
San Antonio, Texas 78205-2039