**IN THE UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF TEXAS, AUSTIN DIVISION**

| | | |
|---|---|---|
| **INTERNATIONAL BROTHERHOOD OF ELECTRICAL WORKERS, LOCAL 520,** | § | |
| **Plaintiff,** | § | |
| | § | |
| **v.** | § | **CIVIL ACTION NO. 1:25-cv-1643** |
| | § | |
| **A.S.H. ELECTRICAL SERVICES, LLC,** | § | |
| **Defendant.** | § | |

**PLAINTIFF'S REPLY IN SUPPORT OF**
**ITS MOTION FOR SUMMARY JUDGMENT**

TO THE HONORABLE COURT:

Plaintiff International Brotherhood of Electrical Workers, Local 520 files this Reply in support of its Motion for Summary Judgment (Dkt. 32) and in response to Defendant's Response opposing that Motion (Dkt. 37). Defendant's Response largely repeats (often verbatim) the arguments Defendant made in its own Motion for Summary Judgment on its Counterclaim (Dkt. 33), which Local 520 has already refuted point-by-point in Plaintiff's Response to Defendant's Motion for Summary Judgment (Dkt. 36). Rather than repeating those arguments at length, this Reply identifies where each was addressed and focuses on the handful of points Defendant raises for the first time in its Response. On August 24, 2026, Defendant moved for leave to file a First Amended Answer and Counterclaim that would, among other things, withdraw its admission regarding the Prior CBA's term and formally plead the fraud-based defenses addressed in Section V below. Local 520 opposes that motion, which remains pending, but its filing does not change the analysis that follows.

## I. LEGAL STANDARD.

Defendant repeatedly asserts that "genuine issues of material fact" preclude summary judgment, but a party cannot manufacture a fact issue with speculation, conclusory assertions, or

a scintilla of evidence. *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc). A dispute is "genuine" only if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Where the record as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). And when a party's version of events is "blatantly contradicted by the record, so that no reasonable jury could believe it," a court need not adopt that version for purposes of summary judgment. *Scott v. Harris*, 550 U.S. 372, 380 (2007). None of Defendant's newly raised assertions clears this bar.

## II. LOCAL 520'S ANSWER TO THE COUNTERCLAIM MOOTS DEFENDANT'S ADMISSION ARGUMENT, WHICH FAILS REGARDLESS.

Defendant argues that because Local 520 did not timely answer Defendant's Counterclaim, Local 520 has "admitted" Counterclaim ¶ 11—that the "CIR exceeded its authority by imposing a CBA on A.S.H. after the termination of the bargaining relationship"—and is barred from disputing it under FED. R. CIV. P. 8(b)(6). *Def's Resp.*, at 6. Local 520 addressed this issue in Section II of its Response to Defendant's Motion, which it incorporates here: no entry of default has been made under Rule 55(a), default is not automatic, and Local 520 has moved for leave to file its Answer (Dkt. 35), denying Counterclaim ¶ 11 and every other allegation Defendant relies on. Defendant's proposed Amended Counterclaim repeats the identical allegation, Dkt. 39-1, ¶ 13, so this analysis applies with equal force whichever version of the counterclaim is ultimately operative.

Even if the Court treated ¶ 11 as unanswered, Rule 8(b)(6) admits only well-pleaded facts, not legal conclusions, and a court is not bound by a defaulting party's characterization of the law. *Nishimatsu Constr. Co. v. Houston Nat'l Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975). Whether the CIR "exceeded its authority" is the legal question at the heart of both motions for summary

judgment, not a fact subject to admission by omission. The Court should decide that question on the summary judgment record, not on a pleading technicality that Local 520 has moved to cure.

## III. THE UNDISPUTED RECORD ESTABLISHES THE PRIOR CBA DID NOT TERMINATE UNTIL JUNE 1, 2025.

Local 520 fully briefed this issue in Section III.B of its Response to Defendant's Motion, which it incorporates here: the 2019–2022 typo carried over into Section 1.01 of the Prior CBA is contradicted by the cover page, the wage and benefit schedules in Section 4.03 and Article XVI, the Zone III and Small Works MOU addenda, the parties' June 2022 signature dates, and Defendant's own repeated contemporaneous admissions that the agreement ran through June 1, 2025.

Defendant's Response raises one new argument: that Local 520 submitted two different versions of the CBA to the NLRB in two different representation proceedings, with Section 1.01 differing between the first submission (March 2025) and the second (November 2025). *Def's Resp.*, at 3–4. That difference is immaterial. The discrepancy is confined to Section 1.01. Every other piece of undisputed extrinsic evidence—the cover page, the wage and benefit schedules, the MOU addenda, the June 2022 signature dates, and Defendant's own contemporaneous statements—consistently confirms that the agreement's actual term ran from June 2022 to June 2025, regardless of which copy of Section 1.01 is examined. Apart from the Section 1.01 language itself, Defendant identifies nothing in either submission consistent with a 2022 or 2024 expiration. Defendant itself told Local 520 in January 2025 that "notice of our intent to terminate current Collective Bargaining Agreement upon expiration, June 01, 2025" had been given, *Def's MSJ*, Ex. 16, and again in April 2025 that "[w]e are currently in contract until June 1, 2025." *Pl's MSJ*, Ex. 14. Those admissions do not depend on which copy of the CBA Local 520 filed with the NLRB,

and Defendant offers no explanation for why its own contemporaneous understanding of the term would be wrong.

Defendant's Response adds further proof that the Prior CBA ran through June 1, 2025, from Defendant's own hand. Item 10 of the RM Petition Defendant signed on March 21, 2025, and filed with the NLRB on March 24, 2025 (submitted as Tab 2 to Defendant's Appendix), asked Defendant to state the "Expiration Date of Current or Most Recent Contract, if any (Month, Day, Year)." *Def's Resp.*, Appendix 2. Defendant, through co-owner Adam Johnke, answered "06/01/2025." *Id.* The form warns that willful false statements can be punished by fine and imprisonment under 18 U.S.C. § 1001, and Johnke certified that he had "read the above petition and that the statements are true to the best of [his] knowledge and belief." *Id.* Under Defendant's current theory, the bargaining relationship had already ended nine months earlier, on June 1, 2024. If Defendant genuinely believed that, the truthful answer to Item 10 was 06/01/2024. It wrote 06/01/2025 instead, which is a certified representation to a federal agency.

The Regional Director's contemporaneous review of that same NLRB proceeding confirms the same term. On March 30, 2025, both parties submitted written responses to an Order to Show Cause in Case 16-RM-362398, and Local 520's submission included the version of the CBA that Defendant contends still contained the "old" 2019–2022 language in Section 1.01. *Def's Resp.*, at 3–4 (citing *Def's Resp.*, Appendix 10, 12). Four days later, on April 3, 2025, the Regional Director issued a Decision and Order finding, as fact, that "[t]he current labor agreement between the NECA and the Union is effective June 2, 2022, through June 1, 2025." *Def's Resp.*, at Appendix 92. Defendant participated in that proceeding and did not dispute the Regional Director's statement of the term, and the record does not reflect that Defendant sought Board review of it. A neutral federal official's contemporaneous understanding of the term, which was recorded before Defendant says

Section 1.01 was ever altered, confirms what Item 10 and the rest of the record already show: the Prior CBA ran through June 1, 2025.

Indeed, by arguing that "the evidence of two different clauses establishes a genuine issue of material fact as to why and when [S]ection 1.01 was changed, who changed it, and when the CBA expired," *Def's Resp.*, at 6, Defendant concedes that summary judgment is unavailable on its own Counterclaim-based Motion for Summary Judgment (Dkt. 33), which rests on the same 2024 termination theory.

Defendant's Response also asks, in a single sentence and for the first time, to be allowed to withdraw its judicial admission that the Prior CBA was "effective from June 2, 2022 to June 1, 2025 unless modified or terminated." *Def's Resp.*, at 6; *Def's Answer*, ¶ 6. Defendant has since converted that single sentence into a formal motion for leave to amend that would replace the admission with an outright denial. Dkt. 39; Dkt. 39-1, ¶ 6. That motion, aimed at nothing but escaping an admission that is outcome-determinative when combined with the other evidence of the contract's duration, remains pending and opposed. On the current record and the current pleadings, the admission stands. In any event, Local 520's showing that the Prior CBA ran through June 1, 2025 does not depend on the admission alone. Defendant is right that admitting the agreement's stated term is not the same as admitting that term was never cut short by timely notice, but the admitted stated term is flatly inconsistent with Defendant's newly invented theory that the operative agreement ran from 2019 to 2022 with annual renewals thereafter. A judicial admission is not merely evidence; it withdraws a fact from contention altogether, and it binds the admitting party unless that party formally moves to amend under Rule 15 and shows good cause. *Martinez v. Bally's La., Inc.*, 244 F.3d 474, 476–77 (5th Cir. 2001); *White v. ARCO/Polymers, Inc.*, 720 F.2d 1391, 1396 (5th Cir. 1983). And even now that Defendant has filed such a motion, it should not

succeed: discovery has closed, the summary judgment record is complete, Local 520 has relied on Defendant's admission throughout this litigation, and the motion comes only after it was revealed that Defendant's newly invented 2024 termination theory cannot survive the summary judgment record on the current pleadings. Allowing Defendant to disavow its own pleaded admission on this record, at this stage, would be untimely and prejudicial, and the Court should decline to do so.

## IV. DEFENDANT'S "BAD FAITH" EVIDENCE DOES NOT CREATE AN ISSUE FOR THIS COURT.

Local 520 explained in Section III.D of its Response to Defendant's Motion, incorporated here, that the quality of bargaining is a question of procedural arbitrability committed to the arbitrator, not the Court, *John Wiley & Sons, Inc. v. Livingston*, 376 U.S. 543, 557 (1964); *accord BG Group plc v. Republic of Argentina*, 572 U.S. 25, 34–35 (2014); *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 84–85 (2002), and that the "meaningful chance to engage in good faith negotiations" standard Defendant invokes does not appear in Section 1.02 or anywhere else in the Prior CBA. Defendant's Response adds new specifics, including Assistant Business Manager Diarmid Campbell's statements during the April 8, 2025 negotiating session and his contemporaneous notes, but they do not change the analysis or create a genuine issue for the Court to decide.

First, the argument remains focused on the quality of bargaining, an argument that Defendant already made to the CIR and lost. *Def's MSJ*, Ex. 22. Section 301 review does not permit the Court to reweigh this argument. *United Paperworkers Int'l Union v. Misco, Inc.*, 484 U.S. 29, 36 (1987).

Second, even considered on the merits, Campbell's statements do not show bad faith. Instead, they show Local 520 doing exactly what Section 1.02(f) required by treating Defendant's stated desire to terminate "in the same manner as a proposed change" and folding it into the

successor negotiation. *Def's MSJ*, Ex. 2, at Section 1.02(f). Campbell's explanation that Local 520 was "negotiating against the CBA" because Defendant sought to terminate it describes that contractual process. Taken at face value, it does not establish a refusal to bargain, and in any event the Court does not weigh it; CIR already did. Nor does Defendant's account of Campbell's exchange with co-owner Shannon Carpenter change the analysis: when asked whether Local 520 was "gonna punish [Defendant] by making it harder," Campbell responded, "We're not punishing you . . . It may look like that . . . ." *Def's Resp.*, Appendix 277. His contemporaneous notes record the same non-punitive rationale: that "everything they were offered is what NECA was offered." *Def's Resp.*, Appendix 303–304.

The Court should reject Defendant's newly framed bad-faith arguments for the reasons already briefed in Local 520's Response to Defendant's Motion.

## V. DEFENDANT'S FRAUD, MUTUAL MISTAKE, AND MEETING-OF-THE-MINDS DEFENSES REMAIN WAIVED AND MERITLESS.

Defendant's Response restates, without adding any new facts, the same unpleaded contract-formation defenses Local 520 addressed at length in Section III.E of its Response to Defendant's Motion, which Local 520 incorporates here: these defenses were never pleaded, do not satisfy Rule 9(b)'s particularity requirement, and were disclosed for the first time in Defendant's summary judgment briefing, resulting in unfair surprise and waiver under Rule 8(c). *Rogers v. McDorman*, 521 F.3d 381, 385 (5th Cir. 2008). Even considered on the merits, Defendant still does not allege that Local 520 did anything to prevent it from reading the CBA before signing, which is the showing required to excuse a party's failure to read a contract it had the opportunity to review. *MZM Constr. Co. v. N.J. Bldg. Laborers Statewide Benefit Funds*, 974 F.3d 386, 404 (3d Cir. 2020). Defendant's Response does not attempt to meet that standard. Defendant's Motion for Leave to plead these defenses for the first time, filed August 24, 2026, confirms what Local 520

has argued throughout: these theories were absent from Defendant's live pleading when Defendant argued them in its summary-judgment briefing. Dkt. 39, at 2–3.

## VI. THE CIR AWARD DRAWS ITS ESSENCE FROM THE PRIOR CBA.

Local 520 addressed each of Defendant's essence arguments in Section III.F of its Response to Defendant's Motion, incorporated here: the Prior CBA did not terminate before the award issued; imposing terms different from the Prior CBA is not itself evidence that the award fails to draw its essence from that CBA, *Local 58, IBEW v. SE Mich. Chapter, NECA*, 43 F.3d 1026, 1031 (6th Cir. 1995); and the wage scale Defendant challenges was supported by market evidence Local 520 submitted to the CIR documenting $40–$45 hourly rates for comparable work that Defendant itself had bid and won. *Def's MSJ*, Ex. 21.

Defendant's Response adds no new argument on this point, only additional rhetoric characterizing the award as "retaliation" or "punishment," *Def's Resp.*, at 14–15. These assertions go to the wisdom of the CIR's decision rather than whether the award can be rationally derived from the Prior CBA. Courts do not review the merits of a labor arbitration award. *United Steelworkers v. Enterprise Wheel & Car Corp.*, 363 U.S. 593, 596 (1960); *Misco*, 484 U.S. at 36. Defendant's essence argument should be rejected.

## VII. CONCLUSION.

For these reasons, and the reasons set out in Local 520's Motion for Summary Judgment and its Response to Defendant's Motion for Summary Judgment, all of which Local 520 incorporates by reference, the Court should grant Local 520's Motion for Summary Judgment and confirm and enforce the CIR's May 13, 2025 award.

*Respectfully submitted,*

DEATS DURST & OWEN, PLLC

*/s/ Matt Bachop*
Matt Bachop
TBN: 24055127
mbachop@ddollaw.com
2901 Bee Caves Rd., Ste. L
Austin, Texas 78746
(512) 474-6200
FAX (512) 474-7896

Attorney for Plaintiff

**CERTIFICATE OF SERVICE**

This is to certify that a true and correct copy of the foregoing document has been served on all counsel of record by the Court's CM/ECF system on this 25th day of August, 2026.

*/s/ Matt Bachop*
Matt Bachop