**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**AUSTIN DIVISION**

| | | |
|---|---|---|
| **INTERNATIONAL BROTHERHOOD OF ELECTRICAL WORKERS, LOCAL 520** | § § § § | |
| **v.** | § | **CIVIL ACTION NO. 1:25-cv-1643** |
| **A.S.H. ELECTRICAL SERVICES, LLC** | § § § | |

**DEFENDANT/COUNTER-PLAINTIFF'S REPLY TO PLAINTIFF'S RESPONSE TO MOTION FOR LEAVE TO FILE FIRST AMENDED ANSWER AND COUNTERCLAIM**

TO THE HONORABLE UNITED STATES DISTRICT JUDGE DAVID A. EZRA:

In its response, IBEW again ignores the fact that in Defendant's Original Answer, ASH never admitted that the CBA terminated on June 1, 2025, as opposed to June 1, 2024. There is nothing new about this claim by Defendant. It has held this position since the beginning of this case and only agreed to enter negotiations for a new CBA under Section 1.02 because IBEW insisted, without providing any proof, that the CBA, did not terminate until June 1, 2025, contrary to the plain language of the agreement. It took ASH's prior counsel several letters before he could even get IBEW to clarify that was their contention.

IBEW also ignores the fact that ASH is not seeking to amend its answer and counterclaim to undeem an admission. It is seeking leave to amend to clarify what it believes is already its position as set out in its Original Answer. Reading Defendant's Original Answer as a whole, it is clear that Defendant has contended, and continues to argue, that the CBA it was under terminated before negotiations began or the case was submitted to CIR.

Specifically, in ¶ 9 Defendant pleaded, "Defendant admits that the parties met for the purpose of bargaining for a short-term agreement as a compromise after which both parties would "walk away," despite Defendant's termination of the prior CBA and no existing bargaining relationship or obligation." (ECF 6).

In ¶2 of its Affirmative Defenses on page 6 of its Original Answer Defendant pleaded, "The Imposed CBA is not valid and/or binding on Defendant because the CIR exceeded its authority and/or jurisdiction in imposing a Collective Bargaining Agreement **where the underlying relationships between the parties were terminated and no bargaining relationship or obligation existed**. [Emphasis added]

In ¶ 17 of its Affirmative Defenses on page 8 of its Original Answer Defendant pleaded, "The Imposed CBA is not valid and/or binding on Defendant because the CIR exceeded its authority and/or jurisdiction in imposing a Collective Bargaining Agreement where the underlying relationships between the parties were terminated and no bargaining relationship or obligation existed." (ECF 6).

In ¶ 11 of its Counterclaim on page 19 its Original Answer Defendant pleaded, "The CIR exceeded its authority by imposing a CBA on A.S.H. after the termination of the bargaining relationship between A.S.H. and IBEW Local 520 and A.S.H.'s termination of the Central Texas Chapter of NECA's bargaining authority on its behalf." (ECF 6).

IBEW knew there was a dispute as to when the CBA terminated from the very beginning of this case. It sent Defendant interrogatories asking ASH to state when it contended the CBA terminated. (Exhibit 1). If it truly thought ASH had admitted termination occurred on June 1, 2025, or that there was no dispute as to termination, why was this interrogatory even necessary? The answers to Plaintiff's interrogatories were already overdue when undersigned counsel

entered his appearance in this case. Understandably Plaintiff's counsel was impatient for the long overdue answers. Counsel served answers on Plaintiff on April 27, 2026, just thirteen days after entering his appearance, and before he had time to review all the documents and pleadings in this case and gain a full understanding of the issues. Regardless, Plaintiff was aware that Defendant contended the CBA did not terminate on June 1, 2025, but in 2024.

Defendant supplemented its responses providing a corrected date of termination and explanation on July 29, 2026, less than sixty days after receiving Plaintiff's discovery responses. (Exhibit 2) In its original answer to the interrogatories, Defendant replied that the agreement terminated on May 26, 2024. (Exhibit 1). In its supplement on July 29, 2026, it corrected that date to June 1, 2024. (Exh. 2). Defendant also provided a detailed explanation as to how it determined this was the termination date. It stated in answer to Interrogatory No. 4.

> "The CBA became effective on June 2, 2019, and remained in effect until June 1, 2022. After June 1, 2022, the CBA remained in effect from year to year thereafter, from the start of the first full pay period in June through the last full pay period starting in May of each year, unless changed or terminated as provided in the CBA. Defendant gave timely written notice of withdrawal of assent to the Section 8(f) pre-hire agreement, and termination of the CBA to the Central Texas Chapter of the National Electrical Contractors Association, Inc. ("NCEA") and local Union No. 520 of the International Brotherhood of Electrical Workers ("IBEW") by written letter on May 30, 2023, and December 27, 2023. The next anniversary date under the CBA after these notices were received by Plaintiff was June 1, 2024. Therefore, the last date the bargaining relationship was in effect between Plaintiff and Defendant, contractual or otherwise was May 31, 2024." (Exh. 2)

Plaintiff never raised the issue of surprise as to Defendant's position on the date of termination until its Response to Defendant's Motion for Summary Judgment on its counterclaim. IBEW seems to argue that ASH has been laying behind the proverbial log, but that is not the case. It is a matter of new counsel coming into a complicated case late and trying to get a grasp on the issues relevant to the case, and understanding ASH's rights under the letter of assent and CBA. IBEW has not moved for an extension of the summary judgment deadline,

or requested further discovery from ASH on this issue before responding to Defendant's Motion for Summary Judgment.

The issue of the date of termination of the CBA has been in issue since long before this lawsuit was filed. It is disingenuous for IBEW now to argue it had no idea of Defendant's claim until now. IBEW never provided any copy of any CBA to Defendant until it this was produced in discovery. It was only after discovery that the existence of the CBA with two different provisions on the term of the agreement was revealed. IBEW knew there were two different version of the CBA because apparently it was the one that changed the language of Section 1.01 to match its position.

As to the fraud, misrepresentation, mutual mistake or no meeting of the minds claims Defendant seeks to add, Plaintiff argues that ASH's representatives have known about this claim all along since they were participants in the negotiations where it was discussed. This humorous since, under that theory, IBEW knew about its misrepresentations made to ASH at the same time ASH did. The same IBEW representative was present when the misrepresentations were made and was also present during the negotiations when the fact that ASH was told they could get out of the agreement after a year was made.

Neither owner of ASH Electrical is a lawyer. ASH is a small electrical contractor operated out of the owner's house. It has only two employees. Neither have had any experience dealing with the NLRA, section 8(f) agreements, or interest arbitration clauses. While they may have felt the IBEW misrepresented the nature of the agreement, IBEW consistently told them there was nothing they could do to get out of the agreement. This is a far cry from understanding the legal ramifications of such misrepresentations in contract formation, and whether a legally binding agreement based on those representations even existed. Counsel did not discover this

evidence and was not able to determine whether there was any claim that needed to be asserted until he was in the process of preparing the motion for summary judgment. Additionally, counsel mistakenly was under the impression that the claims of fraud and misrepresentation were already pleaded in the Original Answer filed by prior counsel. It was only when opposing counsel pointed out that those were limited to fraud and misrepresentation regarding the CIR proceedings that counsel realized the need to amend the answer and counterclaim.

IBEW complains about the new claims and asks for recovery of attorney fees and costs in doing additional discovery, and supplementing its summary judgment evidence and briefing, but has not filed a motion for continuance or stated that it actually needs further discovery. In truth discovery is not needed because IBEW already knows what its representatives told ASH at the time it signed the letter of assent. They were there and made the representations. They already know what ASH's owners contend the misrepresentations were because it is in the recordings produced in discovery and in the affidavits of Adam Johnke and Shannon Carpenter included in the Appendix filed in support of their motion for summary judgment.

Regardless, awards of attorney's fees and costs are best addressed after judgment, not during the summary judgment stage or trial. Plaintiff has not moved for sanctions for discovery abuse or withholding evidence. There is no allegation that Plaintiff or counsel intentionally withheld evidence or arguments until right before the summary judgment deadline. This is clear since the recordings that contained the discussion of the fraud and misrepresentation issue were provided to Plaintiff on July 8, 2026, as soon as Defendant's counsel was aware of their contents.

WHEREFORE, Defendant asks the Court grant Defendant's Motion for Leave to File First Amended Answer and Counterclaim and for any other relief to which it is entitled.

Respectfully submitted,

By: /s/ *Jon Mark Hogg*

Jon Mark Hogg
State Bar No. 00784286

JON MARK HOGG PLLC
1 East Twohig Ave, 2nd Floor
San Angelo, Texas 76903
(325) 777-0455
jmh@jmhogglaw.com

ATTORNEY FOR DEFENDANT A.S.H. ELECTRICAL SERVICES

**CERTIFICATE OF SERVICE**

This is to certify that on September 8, 2026, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system which will send notification of such filing to all attorneys of record on file.

*/s/ Jon Mark Hogg*
Jon Mark Hogg