**IN THE UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF TEXAS, AUSTIN DIVISION**

| | | |
|---|---|---|
| **INTERNATIONAL BROTHERHOOD OF ELECTRICAL WORKERS, LOCAL 520, Plaintiff,** | § § § § | |
| **v.** | § | **CIVIL ACTION NO. 1:25-cv-1643-DAE** |
| **A.S.H. ELECTRICAL SERVICES, LLC, Defendant.** | § § § | |

**PLAINTIFF'S MOTION TO DISMISS A PORTION OF DEFENDANT'S FIRST AMENDED COUNTERCLAIM AND TO STRIKE AFFIRMATIVE DEFENSE 2**

TO THE HONORABLE COURT:

Plaintiff International Brotherhood of Electrical Workers, Local 520 files this motion under FED. R. CIV. P. 12(b)(6) and 12(f), asking the Court to dismiss the contract-formation claim added in Defendant's First Amended Counterclaim (Dkt. 50) and to strike Affirmative Defense 2 of Defendant's First Amended Answer, because neither pleads fraud, misrepresentation, or mistake with the particularity FED. R. CIV. P. 9(b) requires; because, even taken as pleaded, the claim fails as a matter of law for want of justifiable reliance; and because the relief the claim demands—a declaration that the Prior CBA was "void ab initio"—is not available for fraud in the inducement.

## I. INTRODUCTION AND BACKGROUND

This is a suit under Section 301 of the Labor Management Relations Act to enforce an interest-arbitration award issued by the Council on Industrial Relations for the Electrical Contracting Industry ("CIR") on May 13, 2025. Defendant A.S.H. Electrical Services, LLC ("ASH") signed a Letter of Assent on May 13, 2021 that bound it to the Inside Agreement between the Central Texas Chapter of NECA and Local 520 and to "any subsequent approved" agreement (the "Prior CBA"). *Am. Countercl.* ¶¶ 3–4. ASH filed its Original Answer and Counterclaim on November 6, 2025. *Dkt. 6.* That pleading challenged the CIR's award on the ground that the

parties' bargaining relationship had ended before the award issued. It said nothing about how the Letter of Assent came to be signed.

The parties completed discovery and filed cross-motions for summary judgment on August 4, 2026. *Dkt. 32*; *Dkt. 33*. ASH's motion argued, for the first time, that its assent to the Prior CBA was procured by fraud. Local 520 objected that the theory had never been pleaded. *Dkt. 36*, § III.E. ASH then moved for leave to amend, *Dkt. 39*, and Local 520 opposed, pointing out (among other things) that the proposed pleading did not satisfy Rule 9(b) and identifying the particulars it lacked. *Dkt. 42,* at 4–5. The Magistrate Judge granted leave on October 22, 2026, *Dkt. 48*, and ASH filed its First Amended Answer and Counterclaim the same day. *Dkt. 50*. The pleading ASH filed is the same one it tendered in August. On October 28, 2026, the Court denied both summary-judgment motions without prejudice, reopened discovery "solely as to the contract-formation theories pleaded for the first time" in the amended pleading, and set February 19, 2027 as the deadline for renewed motions. *Dkt. 52.* The question before the Magistrate Judge was whether ASH could file the pleading, not whether it states a claim. This motion presents that question.

The amended pleading adds a single new claim for relief, which reads in its entirety:

> The Prior CBA is void ab initio because Defendant's assent to it was secured by fraud, misrepresentation, mutual mistake or there was no meeting of the minds. Specifically, Defendant relied on misrepresentations made by IBEW representatives that Defendant could get out of the agreement after one year.

*Am. Countercl.* ¶ 23. Affirmative Defense 2 of the amended Answer repeats the same two sentences word for word. The only other allegation on the subject is paragraph 5 of the counterclaim: "To obtain A.S.H's signature on the Letter of Assent, representatives of IBEW 520 falsely represented to A.S.H.'s owners that by signing the letter they were not committing to a long term agreement and that they could get out of the agreement after a year." *Am. Countercl.* ¶ 5. The pleading does not say who made the representation, to whom, when, where, in what words, or why

it was false when made, and it alleges no facts at all in support of the "mutual mistake" and absence of a "meeting of the minds" theories.

## II. LEGAL STANDARD

A motion under FED. R. CIV. P. 12(b)(6) tests the legal sufficiency of the pleading. To survive it, a pleading must contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Labels, conclusions, and "a formulaic recitation of the elements of a cause of action" do not suffice. *Id.* at 555; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Dismissal is also proper where the pleader asserts a legal theory that is not cognizable as a matter of law, because Rule 12(b)(6) "authorizes a court to dismiss a claim on the basis of a dispositive issue of law." *Neitzke v. Williams*, 490 U.S. 319, 326 (1989).

In evaluating a Rule 12(b)(6) motion, a court is to presume that all well-pleaded allegations are true, resolve all doubts and inferences in the pleader's favor, and view the pleading in the light most favorable to the pleader. *See Fitzgerald v. Barnstable Sch. Comm.*, 555 U.S. 246, 249 (2009); *Twombly*, 550 U.S. at 555; *United States ex rel. Willard v. Humana Health Plan of Texas, Inc.*, 336 F.3d 375, 379 (5th Cir. 2003). The same standards govern a motion to dismiss a counterclaim. Although a court ordinarily affords the pleader an opportunity to amend before dismissing with prejudice, it need not do so where "the defect is simply incurable or the plaintiff has failed to plead with particularity after being afforded repeated opportunities to do so." *Hart v. Bayer Corp.,* 199 F.3d 239, 247 n.6 (5th Cir. 2000); *see Stripling v. Jordan Prod. Co.,* 234 F.3d 863, 873 (5th Cir. 2000) (amendment is futile where the amended pleading would still fail to state a claim).

Claims that sound in fraud must also satisfy Rule 9(b), which provides that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." FED. R. CIV. P. 9(b). In this circuit, that means pleading the particulars of "time, place

and contents of the false representations, as well as the identity of the person making the misrepresentation and what [that person] obtained thereby." *Williams v. WMX Techs., Inc.*, 112 F.3d 175, 177 (5th Cir. 1997) (quoting *Tuchman v. DSC Commc'ns Corp.*, 14 F.3d 1061, 1068 (5th Cir. 1994)). "Put simply, Rule 9(b) requires 'the who, what, when, where, and how' to be laid out." *Benchmark Elecs., Inc. v. J.M. Huber Corp.*, 343 F.3d 719, 724 (5th Cir. 2003), *modified on reh'g,* 355 F.3d 356 (5th Cir. 2003) (quoting *Williams*, 112 F.3d at 179). A dismissal for failure to plead fraud with particularity is a dismissal for failure to state a claim. *United States ex rel. Grubbs v. Kanneganti*, 565 F.3d 180, 185 n.8 (5th Cir. 2009).

## III. ARGUMENT AND AUTHORITIES

### A. Rule 9(b) governs every theory in paragraph 23 and Affirmative Defense 2.

Paragraph 23 pleads four labels: fraud, misrepresentation, mutual mistake, and no meeting of the minds. Rule 9(b) applies to all four. Fraud is the rule's core subject. "Mistake" is named in the rule's text alongside it. And a misrepresentation claim that rests on the same facts as the fraud claim is held to the same standard. *Benchmark Elecs.*, 343 F.3d at 723–24 (applying Rule 9(b) to negligent-misrepresentation claim that rested on the same alleged facts as the fraud claim); *Lone Star Ladies Inv. Club v. Schlotzsky's Inc.*, 238 F.3d 363, 368 (5th Cir. 2001). Here, the four labels are not pleaded as separate claims with separate facts. The "no meeting of the minds" theory is pleaded as a conclusion with no facts of its own and so fails under Rule 8 even if Rule 9(b) did not apply. *Iqbal*, 556 U.S. at 678.

### B. The amended counterclaim pleads none of the particulars Rule 9(b) requires.

Measured against *Williams* and *Benchmark*, the amended counterclaim is missing every element.

***1. Who.***

The only identification of a speaker is "representatives of IBEW 520" in paragraph 5 and "IBEW representatives" in paragraph 23. No individual is named. The listener is "A.S.H.'s owners," who are also unnamed. Rule 9(b) requires "the identity of the person making the misrepresentation." *Williams*, 112 F.3d at 177. A pleading that attributes a statement to an organization's unnamed "representatives" does not identify anyone.

***2. When and where.***

The pleading gives no date and no place. The closest it comes is the phrase "[t]o obtain A.S.H's signature on the Letter of Assent," *Am. Countercl.* ¶ 5, which at most implies that the statement preceded the signing. It does not say whether the statement was made the day of the signing, a month before, or a year before, or whether it was made in person, by telephone, or in writing.

***3. What.***

The pleading does not quote or describe the words used. It paraphrases a conclusion—that ASH "could get out of the agreement after a year"—without saying what was actually said, by whom, in response to what. The "contents of the false representations" must be pleaded, *Williams*, 112 F.3d at 177, and a paraphrase of the pleader's own understanding is not the contents of a representation.

***4. How and why.***

Rule 9(b) also requires the pleader to "explain why the statements were fraudulent." *Id.* Although intent may be alleged generally, "simple allegations that defendants possess fraudulent intent will not satisfy Rule 9(b)"; instead, the pleader must "set forth specific facts supporting an inference of fraud." *Melder v. Morris*, 27 F.3d 1097, 1102 (5th Cir. 1994); *Tuchman,* 14 F.3d at

1068. The amended counterclaim alleges no fact suggesting that the unnamed speaker knew the statement was false when made, or made it recklessly, or had any motive to mislead a two-person electrical contractor into signing a form Letter of Assent. It alleges only that the statement was "false[]." *Am. Countercl.* ¶ 5. And ASH's own allegations contradict that claim. Paragraph 7 alleges that the CBA "would renew on an annual basis on June 1 o[f] each year" and that ASH's May 30, 2023 notice therefore terminated it on "June 1, 2024." *Am. Countercl.* ¶ 7. ASH's theory is that it could end the agreement as of an annual date by giving notice, which is what it says it was told by Local 520. What ASH actually complains about is not the term of the agreement but the agreement's provision for interest arbitration of unresolved issues upon its expiration, *Am. Countercl.* ¶¶ 9–10, 13, and the pleading alleges no representation about that provision at all. A pleading that does not explain why the statement was false, and whose own allegations suggest that it was not, does not satisfy Rule 9(b).

***5. Mutual mistake and meeting of the minds.***

On these two theories, the pleading contains nothing at all beyond the labels themselves. A claim of mutual mistake requires a mistake of fact held by both parties. The pleading does not say what fact Local 520 was mistaken about, what fact ASH was mistaken about, or how the two coincided. Rule 9(b) requires "the circumstances constituting . . . mistake" to be stated with particularity, and none are stated in this pleading. The "no meeting of the minds" theory is a legal conclusion, and the only fact pleaded is that ASH signed a Letter of Assent binding it to the "current and any subsequent approved" agreement. *Am. Countercl.* ¶¶ 3–4. That fact is an objective manifestation of assent, not an indication of the absence of assent.

Rule 9(b) exists so that a party accused of fraud knows what it is accused of and can answer. *Williams*, 112 F.3d at 178 ("Directly put, the who, what, when, and where must be laid out before

access to the discovery process is granted.”). Local 520 cannot tell from this pleading which of its officers or agents is alleged to have lied, on what day, in what words. It cannot plead a response to a statement it cannot identify.

**C. Even if pleaded with particularity, the claim fails because ASH could not justifiably rely on the alleged statement as a matter of law.**

Justifiable reliance is an element of fraud, fraudulent inducement, and negligent misrepresentation, and it “can be negated as a matter of law when circumstances exist under which reliance cannot be justified.” *JPMorgan Chase Bank, N.A. v. Orca Assets G.P., L.L.C.*, 546 S.W.3d 648, 653–54 (Tex. 2018). Two such circumstances are well-established. First, “a party to a written contract cannot justifiably rely on oral misrepresentations regarding the contract’s unambiguous terms.” *Nat’l Prop. Holdings, L.P. v. Westergren*, 453 S.W.3d 419, 424 (Tex. 2015). Second, reliance on an oral representation “that is directly contradicted by the express, unambiguous terms” of the written agreement is unjustified as a matter of law, *Orca Assets,* 546 S.W.3d at 658 (quoting *DRC Parts & Accessories, L.L.C. v. VM Motori, S.P.A.,* 112 S.W.3d 854, 858 (Tex. App.—Houston [14th Dist.] 2003, pet. denied)); *id.* at 660 & n.2, because the conflict between the two “is itself a large red flag.” *Mercedes-Benz USA, LLC v. Carduco, Inc.*, 583 S.W.3d 553, 559 (Tex. 2019). Both rules rest on the duty to read. “[A] party who signs a document is presumed to know its contents, including documents specifically incorporated by reference,” *In re Int’l Profit Assocs., Inc.*, 286 S.W.3d 921, 923 (Tex. 2009) (per curiam) (quoting *In re Lyon Fin. Servs., Inc.,* 257 S.W.3d 228, 232 (Tex. 2008) (per curiam)), and reasonable diligence “is not excused by mere confidence in the honesty and integrity of the other party.” *Thigpen v. Locke*, 363 S.W.2d 247, 251 (Tex. 1962).

The Fifth Circuit applies these rules as written. *Jacked Up, L.L.C. v. Sara Lee Corp.*, 854 F.3d 797, 811 (5th Cir. 2017); *Bank of Am., N.A. v. Ztar Mobile, Inc.*, No. 25-11330, 2026 WL

3034770, at *4–5 (5th Cir. Oct. 9, 2026) (reliance on oral statement that conflicted with the executed agreement unjustifiable as a matter of law). They apply here. Collective bargaining agreements are read under "ordinary principles of contract law," *M&G Polymers USA, LLC v. Tackett*, 574 U.S. 427, 435 (2015), as ASH itself has argued, *Dkt. 41*, at 2. And the federal common law that governs a claim that a labor agreement was fraudulently induced, *Rozay's Transfer v. Local Freight Drivers, Local 208,* 850 F.2d 1321, 1326 (9th Cir. 1988), is to the same effect: an employer "cannot reasonably rely on a union's erroneous representation" about its obligations under the written agreement it signed. *Id.* at 1329–30; *see also Sheet Metal Workers Local 54 v. E.F. Etie Sheet Metal Co.*, 1 F.3d 1464 (5th Cir. 1993) (applying Texas law to an employer's fraud claim arising from its entry into a multiemployer bargaining arrangement).

The Court may consider the Letter of Assent in connection with this motion because the counterclaim refers to it and it is central to the claim. *Am. Countercl.* ¶¶ 3–4; *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498–99 (5th Cir. 2000). A copy is attached as Exhibit 1. ASH alleges it was told that "by signing the letter they were not committing to a long term agreement and that they could get out of the agreement after a year." *Am. Countercl.* ¶ 5. The one-page letter ASH signed is the direct contradiction of the first half of that assurance. It authorizes the Central Texas Chapter of NECA as ASH's bargaining representative "for all matters contained in or pertaining to the current and any subsequent approved" labor agreement; it recites that ASH "agrees to comply with, and be bound by, all of the provisions contained in said current and subsequent approved labor agreements"; and it provides that it "shall remain in effect until terminated by the undersigned employer giving written notice to the Central Texas Chapter, NECA and to the Local Union at least one hundred fifty (150) days prior to the then current anniversary date of the applicable approved labor agreement." *Ex. 1.* A party who is told it is "not committing

to a long term agreement," and then signs a document binding it to the current agreement and to every successor agreement, indefinitely, until it gives timed written notice, has in hand the "large red flag" that *Carduco* describes. Under *Westergren*, it cannot justifiably rely on the oral assurance over the written terms. 453 S.W.3d at 424–25. As for the second half of the assurance—that ASH "could get out of the agreement after a year"—ASH appears to contend that the letter's termination clause is consistent with it. If so, the statement was not false, and the claim fails for the reason argued in Section III.B.4. Either way, the alleged statement cannot support a claim: the part of it the letter contradicts could not be relied on, and the part the letter does not contradict was, according to ASH's own allegations, accurate.

The counterclaim does not allege that Local 520 prevented ASH from reading the Letter of Assent, that ASH asked for the labor agreement the letter incorporates and was refused, or that anything about the circumstances of the signing kept ASH from protecting its own interests, as "the party alleging fraud must have exercised ordinary care" to do. *Carduco,* 583 S.W.3d at 563. It alleges only that ASH signed. Having signed, ASH is presumed to know what it signed, including the agreement the letter incorporates by reference, *Int'l Profit Assocs.,* 286 S.W.3d at 923, and its claim that it relied instead on what it says it was told orally fails as a matter of law. *Westergren*, 453 S.W.3d at 424–25. Because justifiable reliance is an element of every theory in paragraph 23—fraud, misrepresentation, and the mistake and meeting-of-the-minds labels that depend on the same alleged statement—the claim should be dismissed on this ground as well.

### D. Fraud in the inducement would make the Prior CBA voidable, not "void ab initio," and ASH does not plead rescission.

Paragraph 23 asks the Court to declare the Prior CBA "void ab initio." The theory it pleads cannot produce that result. The law distinguishes fraud in the execution, which "results in the agreement being void ab initio," from fraud in the inducement, which "makes the transaction

merely voidable." *Sw. Adm'rs, Inc. v. Rozay's Transfer,* 791 F.2d 769, 774 (9th Cir. 1986). Fraud in the execution requires "excusable ignorance of the contents of the writing signed"; it is not presented where "there simply was no confusion as to the actual contents of the agreement" and the alleged misrepresentation instead "concerned whether the express provisions of the agreement would in fact be enforced." *Id.* at 775. In that circumstance, which is what ASH alleges in this case, "the bargaining agreement was not 'void,' but merely 'voidable.'" *Id.* Texas law is the same. *Italian Cowboy Partners, Ltd. v. Prudential Ins. Co. of Am.,* 341 S.W.3d 323, 331 (Tex. 2011) (a contract procured by fraudulent inducement is "subject to avoidance"). ASH does not allege that it did not know it was signing a Letter of Assent or did not know what the letter said. It alleges that it was told the commitment would be shorter than the document provides. That is a claim of inducement, and the most it could yield is a right to avoid the contract, not a declaration that no contract was ever formed.

The distinction matters because a voidable contract remains in force unless and until the defrauded party elects to rescind it, and the party must choose: it may "either (1) fully rescind the contract or (2) affirm the contract and recover any monetary damages for its injuries." *Ztar Mobile,* at *5 (citing *Perenco Nigeria Ltd. v. Ashland Inc.,* 242 F.3d 299, 306 (5th Cir. 2001)). Where fraudulent inducement is raised as a defense to enforcement of the agreement, rescission is the only option. *Id.* ASH does not plead rescission. It does not allege that it gave notice of rescission when it learned the alleged truth, that it tendered back what it received, or that it ever treated the agreement as a nullity. It pleads the opposite: that it operated under the Letter of Assent and the Prior CBA for two years, that it then "revoked the Letter of Assent" and gave notice that "it was terminating the CBA," that the CBA "would renew on an annual basis" unless terminated, and that its notice therefore ended the CBA on "June 1, 2024." *Am. Countercl.* ¶¶ 6–8. Revoking a letter

and terminating an agreement under their own provisions, effective on a date those provisions supply, is the conduct of a party enforcing a contract, not avoiding one. Whether that conduct ratified the agreement as a matter of law is a question for summary judgment. For now, it is enough that the claim ASH pleaded—that the Prior CBA was "void ab initio"—is not one the law recognizes on the facts alleged, and that ASH has pleaded no alternative.

**E. Leave to replead should be denied or, at most, confined to fourteen days.**

The specific facts that Rule 9(b) requires were not unavailable to ASH when it drafted this pleading. ASH filed affidavits from both of its owners with its summary-judgment motion on August 4, 2026, twenty days before it tendered the amended counterclaim. *Dkt. 34-1*, at 236–49. Those affidavits name the speakers, give the date and the place, and recount the words. ASH then drafted a pleading that omitted all of it. Local 520's opposition to leave pointed out exactly what was missing, *Dkt. 42*, at 4–5, and ASH, with that opposition in hand, filed the same pleading without adding a word.

Dismissal with leave to amend is the ordinary remedy, but not where "the defect is simply incurable or the plaintiff has failed to plead with particularity after being afforded repeated opportunities to do so." *Hart*, 199 F.3d at 247 n.6. Both conditions are met here. ASH has had two opportunities to plead this claim with particularity, once when it tendered the pleading and again after being told what it lacked, and it declined both. And the defects identified in Sections III.C and III.D of this Motion—that ASH signed a letter whose terms contradict the oral assurance it says it relied on, and that the relief it seeks is unavailable for fraud in the inducement—are not defects of particularity. No added detail about who spoke or when can cure them. *Stripling,* 234 F.3d at 873. "At some point a court must decide that a plaintiff has had fair opportunity to make his case; if, after that time, a cause of action has not been established, the court should finally dismiss the suit." *Jacquez v. Procunier*, 801 F.2d 789, 792 (5th Cir. 1986). The claim in paragraph

23 should be dismissed without leave to replead. If the Court is nonetheless inclined to permit repleading, Local 520 asks that ASH be ordered to file any amended counterclaim within 14 days, so that the depositions the Court has authorized, *Dkt. 52*, proceed on a pleading that says what ASH contends was said, by whom, and when.

**F. Affirmative Defense 2 should be stricken for the same reasons.**

Rule 12(f) permits the Court to strike "an insufficient defense," and a motion to strike is proper "when the defense is insufficient as a matter of law." *Kaiser Aluminum & Chem. Sales, Inc. v. Avondale Shipyards, Inc.*, 677 F.2d 1045, 1057 (5th Cir. 1982). Affirmative Defense 2 is paragraph 23 restated word for word as a defense, and it is insufficient for the same reasons: it pleads none of the particulars Rule 9(b) requires of any "party" alleging fraud or mistake, and it rests on reliance that was not justifiable as a matter of law. *See Woodfield v. Bowman*, 193 F.3d 354, 362 (5th Cir. 1999) (an affirmative defense must give the opposing party fair notice of its nature). It should be stricken.

## IV. CONCLUSION AND PRAYER FOR RELIEF

For these reasons, Local 520 asks the Court to dismiss the claim pleaded in paragraph 23 of Defendant's First Amended Counterclaim, and any request for relief that depends on it, under Rule 12(b)(6), because it does not plead fraud or mistake with particularity, because ASH could not justifiably rely on the alleged statement as a matter of law, and because the relief it seeks is unavailable for fraud in the inducement; to strike Affirmative Defense 2 of Defendant's First Amended Answer under Rule 12(f); to deny leave to replead or, in the alternative, to require any amended pleading within fourteen days; and to grant Local 520 all other relief to which it is entitled.

*Respectfully submitted,*

DEATS DURST & OWEN, PLLC

*/s/ Matt Bachop*

Matt Bachop
TBN: 24055127
mbachop@ddollaw.com
2901 Bee Caves Rd., Ste. L
Austin, Texas 78746
(512) 474-6200
FAX (512) 474-7896

Attorney for Plaintiff

**CERTIFICATE OF SERVICE**

This is to certify that a true and correct copy of the foregoing document has been served on all counsel of record by the Court's CM/ECF system on this 3rd day of November, 2026.

*/s/ Matt Bachop*
Matt Bachop